George Haines, Esq.
Nevada Bar No. 9411
Gerardo Avalos, Esq.
NV Bar No. 15171
**FREEDOM LAW FIRM**
8985 South Eastern Ave., Suite 350
Las Vegas, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: info@freedomlegalteam.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Lisa Bryant, | Case No.: 2:20-cv-00594-JAD-EJY |
| Plaintiff, | **Plaintiff's Motion for Summary Judgment** |
| v. | |
| Madison Management Services, LLC, and Waldman & Porras, PLLC, | |
| Defendants | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Lisa Bryant hereby moves this Court for an order granting summary judgment in favor of Plaintiff, against Defendants Madison Management Services, LLC ("Madison"), and Waldman & Porras, PLLC ("W&P") as to Plaintiff's FDCPA and Slander of Title claims. This motion is based upon the records and papers on file herein, the accompanying Memorandum of Points and Authorities, declarations, exhibits and such other evidence as may be presented at the hearing of this motion.

**TABLE OF CONTENTS**

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

II. Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   A. Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   B. The Fair Debt Collection Practices Act . . . . . . . . . . . . . . . . . . . .9

      1. The Least Sophisticated Consumer Standard . . . . . . . . . . . . . . . . . . . .10

      2. The FDCPA is a strict liability statute . . . . . . . . . . . . . . . . . . . . . 10

   C. Slander of Title . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

IV. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

   A. Defendants violated the FDCPA . . . . . . . . . . . . . . . . . . . . . . . . . .12

      1. The FDCPA applies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

      2. Defendants each violated 15 U.S.C. § 1692e(2) . . . . . . . . . . . . . . . . . . .12

   B. Defendants committed slander of title . . . . . . . . . . . . . . . . . . . . . . . . 13

V. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **Introduction**

Plaintiff Lisa A. Bryant ("Plaintiff" or "Bryant") respectfully requests that this Court enter summary judgment in her favor on her Fair Debt Collection Practices Act ("FDCPA") and Slander of Title claims.

The material facts are not contested in that a second note that was procured through Accredited Home Lenders, Inc. in the amount of $90,250.00 is a fraudulent loan. This second note was allegedly secured by a deed of trust on Plaintiff's real property known as 719 North Racetrack Road, Henderson, NV 89015, Parcel No. 179-04-506-001 (the "Home") (collectively, the "Second Mortgage Loan"). Defendant Madison Management Services, LLC ("Madison") is a "debt collector" and currently services the fraudulent Second Mortgage Loan on behalf of PVK Properties, LLC ("PVK"), the alleged assignee of the Second Mortgage Loan. Defendant Waldman & Porras, PLLC ("W&P") is also a "debt collector" acting as the agent and attorney for Madison and PVK with respect to conduct set forth herein.

Even though Madison and W&P (collectively "Defendants") have knowledge that the Second Mortgage Loan was procured by fraud, Defendants have attempted and continue to attempt to collect upon the amounts evidenced by the Second Mortgage Loan in violation of numerous provisions of the FDCPA.

On or about August 20, 2018, First American Title Insurance Company filed a deed of reconveyance with the Clark County Recorder's Office releasing Bryant from the Second Mortgage Loan. Despite the reconveyance filed on August 20, 2018, Defendants issued and filed a notice of default and election to sell the Home on or about October 10, 2019, based upon the alleged default on the Second Mortgage Loan (the "Notice"). Bryant attempted to refinance her home on three separate occasions between October 10, 2019, the date the Defendants issued and

1   filed a notice of default, and March 4, 2020, the date the Defendants rescinded the notice of default.

2   She was denied all three times by the mortgage companies based on the notice of default that was

3   filed by the Defendants on October 19, 2019 on her Home.  If not for the Notice of Default that

4   was filed by the Defendants, Bryant would have been able to refinance her home at a lower interest

5   rate. Defendants have slandered Bryant's title on her home by filing the Notice of Default.  If not

6   for the Notice of Default that was filed by the Defendants, Bryant would have been able to

7   refinance her home at a lower interest rate.

8
9   **II. Statement of the Undisputed Facts**

10          1.      Madison is doing business in the State of Nevada as a business entity.  (ECF No.

11   35, ¶ 6).

12          2.      Defendant Waldman & Porras, PLLC ("W&P") is a Nevada professional limited

13   liability company which has members and employees engaged in the practice of law in the State

14   of Nevada.  (ECF No. 35, ¶ 7).

15
16          3.      On or about March 26, 2004, Bryant obtained a loan as evidenced by a note and

17   deed of trust on the Home allegedly securing said note (collectively, the "First Mortgage Loan").

18          4.      Bryant is presently current on her obligations under the First Mortgage Loan.

19          5.      Unbeknownst to Bryant, a second note was procured through Accredited Home

20   Lenders, Inc. in the amount of $90,250.00 which was then allegedly secured by a deed of trust on

21   the Home (collectively, the "Second Mortgage Loan"). *See*, a copy of the Second Mortgage Loan

22   documents, attached as <u>Exhibit 1</u>.

23
24          6.      Defendant Madison is the current servicer of the Second Mortgage Loan. (Doc. 35, ¶ 13);

25   *see also*, Madison's written discovery responses, attached as <u>Exhibit 2</u> at p. 1.

26
27

7.     Madison obtained servicing rights to the Second Mortgage Loan in or around September 2017. (Doc. 35, ¶ 13); *see also*, Exhibit 2, p. 2.

8.     The Second Mortgage Loan was in default at the time Madison obtained servicing rights to the Loan. Exhibit 2, p. 2.

9.     Madison services the Second Mortgage Loan on behalf of PVK Properties, LLC ("PVK"), the alleged assignee of the Second Mortgage Loan. (Doc. 35, ¶ 12).

10.    W&P acted as the agent and attorney for Madison and PVK. (Doc. 35, ¶ 14).

11.    The Second Mortgage Loan is believed to have been procured through fraudulent means as Bryant did not fully execute the same and received no funds through the same. *See*, the transcript of Bryant's deposition taken on February 8, 2022, attached as Exhibit 3; Exhibit 3 at 15:9-18:21, 21:5-21:8, 21:12-22:18, 52:2-54:1.

12.    Nancy Garnett, the notary public who allegedly notarized Bryant's signature on the Second Mortgage Loan Documents, has averred on numerous occasions that Bryant refused to execute the Second Mortgage Loan documents in full. *See*, *inter alia*, the transcript of the deposition of Nancy Garnett taken on July 30, 2021, attached as Exhibit 4; Exhibit 4 at 11:11-13:13, 18:23-21:6, 23:1-23:13; Exhibit 4-A.

13.    Bryant refused to sign the Second Mortgage Loan documents as she did not agree with the terms. Exhibit 3 at 22:19-28:24; Exhibit 4 at 10:10-10:22.

14.    Bryant received no communications or documentation regarding the Second Mortgage Loan and had no knowledge of the Second Mortgage Loan until receiving notice that Madison had obtained servicing rights to the same in or around September 2017. Exhibit 3 at 30:25-31:23, 40:17-41:6, 66:12-66:19.

15. Bryant repeatedly averred to Madison that she had no prior knowledge of the Second Mortgage Loan after beginning to receive notices from Madison and informed Madison that the Second Mortgage Loan was presumably procured through fraudulent means. *See*, conversation log for the Second Mortgage Loan from Madison, attached as <u>Exhibit 5</u> at p. 9, 12.

16. Madison, through their counsel W&P, sent correspondence to Bryant dated May 25, 2018 and captioned "NOTICE OF DEFAULT AND INTENT TO ACCELERATE AND ENFORCE THE POWER OF SALE" claiming that the Second Mortgage Loan was in default for failure to make the payment due for August 1, 2014 and that the amount required to reinstate the Second Mortgage Loan and cure the alleged default was $41,438.41. *See*, letter dated May 25, 2018 from Waldman & Porras, PLLC, attached as <u>Exhibit 6</u>.

17. Bryant sent correspondence dated July 27, 2018 to W&P disputing the claimed debt evidenced by the Second Mortgage Loan explicitly stating that she believed the debt was "part of an identity theft" and a "scheme of fraud for profit". *See*, letter dated July 27, 2018 from Lisa A. Bryant, attached as <u>Exhibit 7</u>. In subsequent months, Bryant repeatedly sent correspondence and spoke with Madison and W&P (collectively "Defendants") to dispute the debt frequently requesting, but not receiving, a payment history for the Second Mortgage Loan to verify the amounts claimed due and owing. (Doc. 35, ¶¶ 19, 21); *see*, <u>Exhibit 5</u>, at p. 7-11, 19-21.

18. On or about August 20, 2018, it appears that First American Title Insurance Company filed a deed of reconveyance with the Clark County Recorder's Office releasing Bryant from the Second Mortgage Loan.

19. Despite Bryant's repeated attempts to clarify the fraudulent nature of the Second Mortgage Loan with Defendants, Defendants continued to claim that amounts evidenced by the Second Mortgage Loan were validly due and owing from Bryant. (Doc. 35, ¶ 21).

20.     Despite the reconveyance filed on August 20, 2018, Defendants issued a notice of default and election to sell the Home on or about September 3, 2019, and recorded the same on October 10, 2019 based upon the alleged default on the Second Mortgage Loan (the "Notice"). (Doc. 35, ¶¶ 21-22); *see also*, W&P's written discovery responses, attached as Exhibit 8 at p. 1.

21.     Per email correspondence from W&P, Defendants rescinded the Notice in order to correct the alleged "reconveyance error"[1] that Plaintiff presumes took place on August 20, 2018, but indicated that they would be further proceeding under a new notice of default.

22.     To date, the reconveyance has not been rescinded.

23.     Despite Bryant's repeated attempts to clarify the fraudulent nature of the Second Mortgage Loan with Defendants, Defendants continued to claim that Bryant was past due on the Second Mortgage Loan in amounts in excess of were past due on their obligations under the Loan in the amount of $41,438.41.

24.     Defendants have attempted and continue to attempt to collect upon the amounts evidenced by the Second Mortgage Loan. (Doc. 35, ¶ 26).

25.     Both Defendants admit that they are debt collectors in relation to the Second Mortgage Loan. *See*, a copy of a payoff statement from Madison dated April 21, 2020 advising of their status as a debt collector, attached as Exhibit 9 *see also*, a copy of correspondence from W&P dated April 29, 2020 advising of their status as a debt collector, attached as Exhibit 10.

26.     Upon receiving the notices from Defendants claiming that she owes amounts due upon the Second Mortgage Loan, which she did not execute and of which she had no prior

---

[1] Plaintiff presumes Defendants were referring to the deed of reconveyance filed on or about August 20, 2018 by First American Title Insurance Company.  There is a pending lawsuit: PVK Properties LLC vs. First American Title Insurance Company & Lisa Bryant et al. (CASE NO. A-21-835718-C) wherein PVK (the presumed current beneficiary of the Second Mortgage Loan) is attempting to undo the reconveyance.  This is being done presumable so that the Defendants can proceed with foreclosing on Lisa Bryant.

knowledge, Bryant was shocked, frustrated, anxious, embarrassed, and otherwise emotionally distraught that Defendants were attempting to collect on the debt.

27.     Defendants' willful and wrongful actions have caused Bryant to suffer emotional distress driven by fear, anxiety, and concern that Defendants will wrongfully seek to foreclose upon the Second Mortgage Loan and sell her Home unless she agrees to pay sums for which she is not obligated to even though she did not enter into the Second Mortgage Loan and received no funds from the same.

28.     Bryant tried numerous times to refinance her Home but was denied because of the fraudulent Second Mortgage.

**Nancy Garnett Depo**
- Notary only gets "half of what the agreed fee is" if a borrower refuses to sign (financial incentive) p. 17

**Madison Management Redacted Conversation Log**
- Shows Lisa was applying for relief with various programs but "the programs are not accepting her due to the credit reporting we are doing on her account" (written by Anasia Rivera at Madison)

**Mortgage Loan Documents – Part 1**
- Notice of assignment, sale or transfer of servicing rights mailed on 8/29/2017, effective on 9/18/2017
- Admits Madison is debt collector

**Part 2**
- Shows the debt was disputed along with response p.25-26; 58-62

**III. Legal Standard**

  **A. Summary Judgment**

Summary judgment is appropriate where the admissible evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material issue of fact is one that affects the outcome of the

litigation and requires a trial to resolve the differing versions of the truth. *Kuhn v. Account Control Technology, Inc.*, 865 F. Supp. 1443, 1447 (D. Nev. October 7, 1994). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, U.S. 398 U.S. 144 (1970). If the party seeking summary judgment meets this burden, the burden shifts to the nonmoving party, and summary judgment will be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Questions of reasonableness are "appropriate for determination on [a] motion for summary judgment when only one conclusion about the conduct's reasonableness is possible there is no issue for trial." *In re Software Toolworks Inc. v. Painewebber Inc.*, 50 F. 3d 615, 622 (9th Cir. 1995) (quoting *West v. State Farm Fire & Casualty Co.*, 868 F. 2d 348, 351 (9th Cir. 1989) (internal alterations omitted)).

**B. The Fair Debt Collection Practices Act**

Seeking to somewhat level the playing field between consumers and debt collectors, the FDCPA prohibits debt collectors "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz*, 514 U.S. at 292. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection 7 of any debt." 15 U.S.C. § 1692e. Specifically, making a "false representation of the character, amount, or legal status of any debt" is an FDCPA violation. 15 U.S.C. § 1692e(2)(A).

When analyzing Plaintiff's FDCPA claims, this Court must: (1) apply the least sophisticated consumer standard, and (2) remember that the FDCPA is a strict liability statute.

### 1. The Least Sophisticated Consumer Standard

In analyzing Plaintiffs' FDCPA claims, this Court must look at Plaintiffs' allegations from the perspective of the least sophisticated consumer. *E.g.*, *McCurdy v. Prof'l Credit Serv.*, No. 6:15-CV-01498-AA, 2015 U.S. Dist. LEXIS 151532, at *7 (D. Or. Oct. 30, 2015), *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061-62 (9th Cir. 2011) (The standard is designed to protect consumers of below average sophistication or intelligence, or those who are uninformed or naive, "The 'least sophisticated debtor' standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor."). Here, Plaintiffs are consumers that have brought their claims against Defendant under the FDCPA and the least sophisticated consumer standard applies.

### 2. The FDCPA is a strict liability statute

"The FDCPA is a strict liability statute." *E.g.*, *Irwin v. Mascott*, 112 F. Supp.2d 937, 963 (N.D. Cal. 2000), *Heintz*, 514 U.S. at 292 (A plaintiff need not prove either that defendants knew that their debt collection practices were illegal or that they intended to violate the law.), *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1004 (9th Cir. 2008) ("[T]he FDCPA is a strict liability statute in that a plaintiff need not prove an error was intentional.") (*citing Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006)), *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011) (the FDCPA does not require proof of intentional violation).

### C. Slander of Title

"The elements of a claim for slander of title are: (1) false and malicious communications, (2) which were disparaging to one's title in land, (3) that caused special damage." *Carranza v. U.S. Bank, N.A.*, No. 2:15-cv-1471-GMN-CWH, 2016 WL 1643797 at *4 (D. Nev. Apr. 25, 2016) (*citing Higgins v. Higgins*, 744 P.2d 530, 531 (Nev. 1987)).

**IV. Argument**

Summary judgment should be entered because no genuine issue of material fact exists that: (A) Defendants violated the FDCPA, and (B) Defendants are liable for slander of title.

**A. Defendants violated the FDCPA**

Defendants violated the FDCPA because: (1) the FDCPA applies, and (2) Defendants' conduct violated 15 U.S.C. § 1692e(2).

**1. The FDCPA applies**

The FDCPA applies since: (1) Defendants are each a "debt collector," (2) Plaintiff is a "consumer," and (3) the underlying loan was a consumer "debt."

First, "[t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Here, both Defendants admit that they are debt collectors in relation to the Second Mortgage Loan. *See*, a copy of a payoff statement from Madison dated April 21, 2020 advising of their status as a debt collector, attached as Exhibit 9; *see also*, a copy of correspondence from W&P dated April 29, 2020 advising of their status as a debt collector, attached as Exhibit 10 Moreover, the Loan was in default at the time Madison obtained servicing rights to the Loan. Exhibit 2, p. 2.

Second, "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Here, Bryant is a natural person whom Defendants allege is obligated to pay the debt evidenced by the Second Mortgage Loan.

Third, "[t]he term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are

the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Here, the Second Mortgage Loan is a debt allegedly secured by the home that has been Bryant's primary, principal residence since roughly 1985. Exhibit 1; Exhibit 3, 8:1-8:15.

**2. Defendants each violated 15 U.S.C. § 1692e(2)**

Defendants violated the FDCPA by making a "false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

Defendants violated 15 U.S.C. § 1692e(2) by misrepresenting to Bryant that the she was in default on obligations under the Second Mortgage Loan, which she had not obtained, owed sums which were not in fact due, and stating that they would foreclose upon her Home. As indicated in the testimony of Bryant and Garnett, Bryant did not execute the Second Mortgage Loan Documents in full and had no obligations in relation to the same. Exhibit 3 at 15:9-18:21, 21:12-22:18, 52:2-54:1; Exhibit 4 at 11:11-13:13, 18:23-21:6, 23:1-23:13; Exhibit 4-A. Bryant never received any funds from the Second Mortgage Loan either. Exhibit 3 at 21:5-21:8. Defendants knew, or should have had reason to know, that Bryant was not obligated to the Second Mortgage Loan as she had advised each of the Defendants that the Second Mortgage Loan was believed to be fraudulent. Exhibit 5 at p. 9, 12, *see also*, a copy of correspondence from Madison Management Services, LLC , attached as Exhibit 11. Moreover, despite demanding funds from Bryant, it is clear that Madison and W&P were unable to ascertain whether the amounts they claimed were due and owing were actually due. Bryant repeatedly requested a payment history for the Second Mortgage Loan to verify the amounts due, but Madison admitted that as of December 4, 2018 it did not have a payment history for the Second Mortgage Loan as Madison "does not back track

loan histories" and that such a history was "not readily available" to Madison. Exhibit 5 at p. 7-11, 19-21.

**B. Defendants Committed Slander of Title**

Defendants committed slander of title since: (1) Defendants released false and malicious communications, (2) which were disparaging to Plaintiff's title in land, (3) and caused special damages. *Executive Management, Ltd. v. Ticor Title Ins. Co.*, 962 P.2d 465, 478 (Nev. 1998), citing *Higgins v. Higgins*, 103 Nev. 443, 445, 744 P.2d 530, 531 (1987)

First, Defendants released false and malicious communications through, *inter alia*, the recordation of the Notice. Despite Bryant not having executed the Second Mortgage Loan, disputing the nature of the debt evidenced by the same, and alleging that the same was procured through fraudulent means, the Notice suggests that she could lose her home through non-payment of the amounts due under the Second Mortgage Loan.  Exhibit 3 at 15:9-18:21,21:12-22:18, 52:2-54:1; Exhibit 4 at 11:11-13:13, 18:23-21:6, 23:1-23:13; Exhibit 4-A; Exhibit 5 at p. 9, 12, *see also*, Exhibit11.

Second, this Notice was disparaging to Plaintiff's title in land, namely the Home, as it claimed there was a valid and subsisting lien on the Home through the Second Mortgage Loan.

Third, the actions of Defendants caused Plaintiff to suffer special damage as the issuance and recording of the Notice prevented Bryant from being able to refinance her First Mortgage Loan on multiple occasions. *See*, Declaration of Lisa Bryant, attached as Exhibit 12. Moreover, the fear of a wrongful foreclosure of her Home resulting from the issuance and recordation of the Notice caused Bryant to suffer from great emotional distress.

////

////

////

1

**V. Conclusion**

2

Plaintiff respectfully asks this Court to grant summary judgment in her favor. First,

3

Defendants have admitted that they are "debt collectors" as defined by the FDCPA.  Defendants

4

have also violated 15 U.S.C. § 1692e(2) by misrepresenting to Bryant that the she was in default

5

on obligations under the Second Mortgage Loan, which she had not obtained, owed sums which

6

were not in fact due, and stating that they would foreclose upon her Home. Defendants were also

7

unable to ascertain whether the amounts claimed to be due and owing by Bryant were correct.

8

Despite Defendants making numerous demands for payments, and despite Bryant repeatedly

9

requesting a payment history for the Second Mortgage Loan to verify the amounts due, Madison,

10

as of December 4, 2018 did not have a payment history for the Second Mortgage Loan as Madison

11

"does not back track loan histories" and that such a history was "not readily available" to Madison.

12

Second, Defendants committed slander of title since: (1) Defendants released false and

13

malicious communications, (2) which were disparaging to Plaintiff's title in land, (3) and caused

14

special damages. Plaintiff suffered special damages as the issuance and recording of the Notice

15

prevented Bryant from being able to refinance her First Mortgage Loan on multiple occasions.

16

////

17

////

18

////

19

////

20

////

21

////

22

////

23

////

24

////

25

////

26

27

1   Finally, summary judgment is proper because there are no genuine issues of material fact

2   as to whether Defendants violated the FDCPA by making false representations of the character,

3   amount, and legal status of the Second Mortgage Loan.  There is also no genuine issues of material

4   fact as to whether Defendants committed slander of title.  This Court should therefore enter

5   summary judgment in Plaintiff's favor and set a jury trial to determine Plaintiff's damages

6   Dated: March 17, 2022.

7

8   Respectfully submitted,

9

10   **FREEDOM LAW FIRM**

11    /s/ George Haines
    George Haines, Esq.

12   8985 South Eastern Ave., Suite 350
    Las Vegas, Nevada 89123

13   *Attorney for Lisa Bryant*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# EXHIBIT "1"

## NOTE

October 2, 2006                           HENDERSON                              NV
*Date*                                       *City*                             *State*

719 NORTH RACETRACK ROAD
HENDERSON, NV 89015
*Property Address*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $90,250.00                (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is
Accredited Home Lenders, Inc.
A California Corporation

. I understand that the Lender may transfer this Note  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2. INTEREST

I will pay interest at a yearly rate of                          10.500 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $ 825.56
I will make my payments on the 1st                         day of each month beginning on December 1
2006            . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on November 1, 2021
I still owe amounts under this Note, I will pay all those amounts, in full, on that date  See Balloon Rider attached hereto.
I will make my monthly payments at P.O. Box 502480 San Diego, CA 92150-2480
or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any of my monthly payments by the end of 10
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
6.000 % of my overdue payment, but not less than U.S. $ 1.00                and not more than
U.S. $ 49.53                . I will pay this late charge only once on any late payment.

(B) Notice From Note Holder
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

(C) Default
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated
October 2, 2006                , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

0609212450

| NEVADA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT |

Form 3929

Page 1 of 2

-75 (NV) (0204) 01                    VMP MORTGAGE FORMS - (800)521-7291

Initials



Bryant
2/8/22
**Exhibit 1**
Oasis Reporting Services

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - See Prepayment Charge Rider attached hereto.**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.



_____ (Seal)       _____ (Seal)
LISA A BRYANT                        -Borrower                                            -Borrower

_____ (Seal)       _____ (Seal)
                                     -Borrower                                            -Borrower

_____ (Seal)       _____ (Seal)
                                     -Borrower                                            -Borrower

_____ (Seal)       _____ (Seal)
                                     -Borrower                                            -Borrower

*[Sign Original Only]*

0609212450

# PREPAYMENT CHARGE RIDER TO NOTE

THIS PREPAYMENT CHARGE RIDER TO NOTE is made this 2nd day of October, 2006, and is incorporated into and shall be deemed to amend and supplement the Note or Adjustable Rate Note, as applicable (the "Note"), of the same date given by the undersigned Borrower(s) to Accredited Home Lenders, Inc., A California Corporation.

## NOTICE TO THE BORROWER

**DO NOT SIGN THIS PREPAYMENT CHARGE RIDER TO NOTE BEFORE YOU READ IT. THIS PREPAYMENT CHARGE RIDER TO NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.**

**The provisions of this Prepayment Charge Rider to Note are authorized by applicable state law or the federal Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801 et seq.**

PREPAYMENT CHARGE

I/we may make a full prepayment or partial prepayments  However, if the aggregate amount of the prepayment(s) made during any twelve (12) month period within (Sixty(60)) months of the date of the Note exceeds ten percent (10%) of the original principal amount of the Note, then as consideration for the acceptance of such prepayment(s), I/we agree to pay the holder of the Note a sum equal to five percent (5%) of the entire amount so prepaid. Any prepayments made after said initial (Sixty(60))month period shall not be subject to any prepayment charge

I/we confirm that, prior to the closing of this mortgage loan, I/we were offered the option of obtaining a mortgage loan that did not require payment of a prepayment charge and that I/we are agreeing to this prepayment charge in exchange for a monetary benefit, including but not limited to a rate or fee reduction.

| | | | |
|---|---|---|---|
| _Lisa A. Bryant_ | 10/26/06 | _____ | _____ |
| Borrower  LISA A BRYANT | Date | Borrower | Date |
| _____ | _____ | _____ | _____ |
| Borrower | Date | Borrower | Date |
| _____ | _____ | _____ | _____ |
| Borrower | Date | Borrower | Date |
| _____ | _____ | _____ | _____ |
| Borrower | Date | Borrower | Date |

5% - 5 yrs

MIN # 100176106092124503          BRYANT          Loan #  0609212450
AHL PPR-5 UFF                     Page 1 of 1

NOTICE TO BORROWER:  IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT
WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO
MAKE THE BALLOON PAYMENT.  IN THAT CASE,  YOU MAY AGAIN HAVE TO PAY
COMMISSIONS, FEES, AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN.  IN
ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON
PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE.
KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THIS LOAN.

## BALLOON RIDER TO NOTE

THIS BALLOON RIDER is made this 2nd day of October , 2006  and is incorporated
into and shall be deemed to amend and supplement the Note of the same date
given by the undersigned (the "Borrower") to secure Borrower's Note to
Accredited Home Lenders, Inc., A California Corporation (the "Lender") of the
same date and covering the property described in the Mortgage, Deed of Trust
or Security Deed (the "Security Instrument") and located at:

719 NORTH RACETRACK ROAD
HENDERSON, NV 89015

[Property Address]

This loan is payable in full at the end of   15   year(s).  You must repay
the entire principal balance of the loan and the unpaid interest then due.
The lender is under no obligation to refinance the loan at that time.  You
will therefore be required to make payment out of other assets you may own, or
you will have to find a lender willing to lend you the money at prevailing
market rates, which may be considerably higher or lower than the interest rate
on this loan.  If you refinance this loan at maturity, you may have to pay
some or all closing costs normally associated with a new loan, even if you
obtain refinancing from the same lender.

Witness The Hand(s) and Seal(s) Of The Undersigned

_____ (Seal)     _____ (Seal)
LISA A BRYANT                   Borrower                                   Borrower

_____ (Seal)     _____ (Seal)
                                Borrower                                   Borrower

_____ (Seal)     _____ (Seal)
                                Borrower                                   Borrower

_____ (Seal)     _____ (Seal)
                                Borrower                                   Borrower

BRYANT                          MIN# 100176106092124503          0609212450
4301.uff

Loan No:   0609212450

Mortgagee: LISA A BRYANT

Address:   719 NORTH RACETRACK ROAD
           HENDERSON, NV 89015

Loan Amount:$ 90,250.00

# ALLONGE TO NOTE

PAY TO THE ORDER OF:

Bayview Loan Servicing, LLC

WITHOUT RECOURSE

Cecilia Guizar-Rodriguez
Assistant Secretary
Accredited Home Lenders, Inc., A California Corporation

BV# 360884

## ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW

BORROWER  LISA BRYANT,

ORIGINAL PRINCIPAL BALANCE: $90,250.00

PROPERTY ADDRESS: 719 N. RACETRACK ROAD, HENDERSON, NV 890150000

PAY TO THE ORDER OF

**Newport Beach Holdings, LLC**

WITHOUT RECOURSE
**BAYVIEW LOAN SERVICING, LLC**

BY:

NAME: PEDRO L. SUAREZ
TITLE   Assistant Vice-President



## ALLONGE TO THE NOTE

**LOAN #:** 1000003489
**Previous Loan #:**
**Borrower:** LISA A BRYANT
**Date of Note:** 10/02/2006
**Loan Amount:** $90,250.00
**Property Address:** 719 NORTH RACETRACK ROAD, HENDERSON, NV  89015

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust /
Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: ___PVK Properties, LLC___ , Without
Recourse

### NEWPORT BEACH HOLDINGS, LLC

Signature: _Shawna Werner_

Printed Name: _Shawna Werner_

Title: _Assistant Vice President_

*609212450*

SCANNED *A1052C*

20061205-0002545

Assessor's Parcel Number:
179-04-506-001
~~Return To:~~
Accredited Home Lenders, Inc.
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

Prepared By:
Accredited Home Lenders, Inc.
A California Corporation
15090 Avenue of Science
San Diego, CA 92128
~~Recording Requested By:~~
Accredited Home Lenders, Inc.
A California Corporation
15090 Avenue of Science
San Diego, CA 92128

Fee  $22.00
N/C Fee.  $25.00

12/05/2006        12.30.10
T20060212997

Requestor:
  RECORD SEARCHING SERVICES

Charles Harvey          SOL
Clark County Recorder   Pgs. 9

---

## DEED OF TRUST

*41-00082830*

MIN 100176106092124503

THIS DEED OF TRUST is made this 2nd         day of October, 2006
among the Grantor, LISA A. BRYANT, A MARRIED WOMAN AS HER SOLE AND SEPARATE
PROPERTY

(herein "Borrower"),

LENDERS FIRST CHOICE

(herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter
defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS.
Accredited Home Lenders, Inc.
A California Corporation

, ("Lender") is organized and
existing under the laws of the State of California         , and has an address of
15090 Avenue of Science
San Diego, CA 92128

0609212450

NEVADA- SECOND MORTGAGE-1/80-FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

Form 3829    Amended 2/04
VMP-76N(NV) (0402).01
Page 1 of 8        Initials:
    VMP Mortgage Solutions
        (800)521-7291

Bryant
2/8/22
**Exhibit 2**
Oasis Reporting Services

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of CLARK , State of Nevada:
See Legal Description Addendum Page Attached

which has the address of 719 NORTH RACETRACK ROAD , HENDERSON ,
[Street] [City]
Nevada 89015 (herein "Property Address");
[ZIP Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property". Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated October 2, 2006 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $90,250.00 , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on November 1, 2021 ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and

Initials 0609212450
Form 3829

assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such a holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Initials: _____   0609212450

Form 3829

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the

Initials: _____   0609212450

-76N(NV) (0402).01          Page 4 of 8          Form 3829

provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.**

0609212450

Initials: _____

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of: (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if· (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees, and (d) Borrower takes such action as Lender may reasonably require to assume that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Waiver of Homestead.** Except to the extent prohibited by law, borrower waives all right of homestead exemption in the Property.

**23. Assumption Fee.** Lender may charge an assumption fee of U.S. $902.50

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender. at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

0609212450

Initials:

Form 3829

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ (Seal)        _____ (Seal)
LISA A BRYANT            -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

0609212450

VMP-76N(NV) (0402).01          Page 7 of 8                    Form 3829

**STATE OF NEVADA**
**COUNTY OF** *CLARK*

This instrument was acknowledged before me on *OCTOBER 26, 2006* by
LISA A BRYANT

NANCY GARNETT
Notary Public, State of Nevada
Appointment No. 03-85731-1
My Appt. Expires Jan 2 2008

*Nancy Garnett*
NANCY GARNETT

0609212450
Initials

-76N(NV) (0402).01          Page 8 of 8          **Form 3829**

EXHIBIT "A"


THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE CITY OF
HENDERSON COUNTY OF CLARK STATE OF NEVADA:

THAT PORTION OF THE NORTHWEST QUARTER (NW 1/4) OF THE NORTHEAST
QUARTER (NE 1/4) OF SECTION 4, TOWNSHIP 22 SOUTH, RANGE 63 EAST,
M.D.B. & M. DESCRIBED AS FOLLOWS:

LOT ONE (1) AS SHOWN BY MAP THEREOF ON FILE IN FILE 45 OF PARCEL
MAPS, PAGE 70, IN THE OFFICE OF THE COUNTY RECORDER.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 179-04-506-001; SOURCE OF TITLE IS DOCUMENT NO.
20010907-02387 (RECORDED 09/07/01)

# EXHIBIT "2"

Nicholas M. Porras, Esq.
Nevada Bar No.: 12849
Waldman & Porras, PLLC
201 West Liberty St. Suite 207
Reno, NV 89501
Telephone: (775)525-9246 | Fax: (888)688-4975
nick@dwaldmanlaw.com
service@dwaldmanlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LISA A. BRYANT,<br>PLAINTIFF,<br><br>vs.<br><br>MADISON MANAGEMENT SERVICES,<br>LLC, AND PORRAS, PLLC,<br>DEFENDANTS. | Case No.: 2:20-cv-00594-JAD-EJY<br><br>**RESPONSE TO PLAINTIFF LISA A.<br>BRYANT'S FIRST SET OF REQUESTS<br>FOR ADMISSION, WRITTEN<br>INTERROGATORIES, AND REQUESTS<br>FOR PRODUCTION OF DOCUMENTS<br>OF MADISON MANAGEMENT<br>SERVICES, LLC** |

**COMES NOW**, Defendant, Madison Management Services, LLC, by and through its

attorney of record, Nicholas M. Porras, Esq, of the law firm of Waldman & Porras, PLLC, hereby

files this Response to Plaintiff Lisa A. Bryant's First Set of Requests for Admission, Written

Interrogatories, and Requests for Production of Documents, and states as follows:

### DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS

1. Admit that Madison is the current servicer of the Loan.

   **Response**: ADMITTED.

2. Admit that Madison services the Loan on behalf of PVK Properties, LLC.

   **Response**: ADMITTED.

3. Admit that Madison filed and issued the Notice on or about October 10, 2019.

   **Response**: DENIED. The Notice was issued on or about September 3, 2019 and recorded on October 10, 2019 as Instrument Number 20191010-0002098.

4. Admit that the Loan was in default at the time Madison began to service the Loan.

   **Response**: ADMITTED.

5. Admit that Bryant informed Madison prior to October 10, 2019 that she disputed the debt and did not execute the Loan documents.

   **Response:** DENIED.

6. Admit that Madison never received a periodic payment on the Loan from Bryant.

   **Response:** DENIED.

7. Admit that Madison's violations of the Fair Debt Collection Practices Act as alleged in the Complaint did not result from any "bona fide error".'

   **Response:** DENIED.

**[This space intentionally left blank.]**

## **DEFENDANT'S RESPONSE TO PLAINTIFF'S INTERROGATORIES**

**GENERAL OBJECTIONS**

1. These interrogatory responses have been prepared from information obtained from expected and reasonably available sources by Defendant through reasonably diligent inquiry. The information provided in these responses is based upon such information as is reasonably available to Defendant, and Defendant expressly reserves the right, without assuming any duty of disclosure not required under Federal Law or Nevada Court Rules or order of this Court, to revise, amend, correct, add or clarify any of these responses if and when additional information or documentation comes to its attention. Defendant further objects to the Plaintiff's interrogatory requests to the extent they purport to impose duties on Defendant beyond those permitted under Federal Law or the Nevada Court Rules.

2. Whether responding to each request by answer, production of document or objection, Defendant does not concede the evidentiary relevance, materiality or admissibility of any of these interrogatory questions or answers, or the subject matter to which they relate. Defendant expressly reserves the right to supplement or amend these objections and responses upon, among other things: further investigation; discovery of additional facts; discovery of persons with knowledge of relevant information; and developments in this action or in any other proceedings. The word "Plaintiff" shall be taken to be singular or plural as the case may be.

3. Defendant objects to the Interrogatories to the extent they seek material or information protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable testimonial or other privilege. To the extent the Interrogatories can be construed to include such privileged matters, Defendant will provide only non-privileged materials or information.

4   Defendant objects to the Interrogatories to the extent they seek information protected by the work-product doctrine. Specifically, Defendant objects to these Interrogatories to the extent they seek: (i) information developed or documents prepared in anticipation of litigation; (ii) information discovered by Defendant pursuant to an investigation conducted in anticipation of litigation; and/or (iii) mental impressions of Defendant's undersigned counsel.

5.   Defendant objects to the Interrogatories to the extent they seek discovery or trade secrets, proprietary information, or confidential business information as defined by applicable law.

6.   Defendant objects to the Interrogatories to the extent they exceed the scope of discovery permitted under the Federal Rules of Evidence, the Nevada Court Rules, and/or other applicable procedural or substantive law.

7.   The preceding General Objections apply to each question or request set forth in the Interrogatories. No specific objection set forth in the responses to the Interrogatories shall constitute a waiver of any of these general Objections or of any other objection.

## SPECIFIC ANSWER AND OBJECTIONS

1.   Please identify each and every individual that assisted in answering these discovery requests and state each individual's full name, social security number, home address, business address, telephone number(s), occupation, employer, position with employer, duties for said employer, and birth date.

**Response**: Please see the individual identified below, who is the representative designated by Defendant to respond to these Interrogatories based upon his or her personal knowledge and access to Defendant's business records. Also, Defendant's counsel requests that no contact be made directly with Defendant or its representatives; all correspondence shall proceed through

Defendant's counsel: Waldman & Porras, PLLC, 201 West Liberty St., Suite 207, Reno, NV 89501.

**Name: Sadhna Bhardwaj**

**Title:** _____Coo_____

2. Please identify any and all individuals who assisted you in gathering information and/or documentation regarding the facts of this case, and identify the full name of each individual, the date that individual began assisting you, the home address of that individual, the business address of that individual, the telephone number for that individual, the type of information and/or documentation that individual provided to you, and that individual's telephone number.

**Response**: Defendant objects to this request as Plaintiff fails to limit the scope of the request asking for "any and all individuals." Defendant objects to this interrogatory on the basis it is vague and ambiguous. Defendant further objects to this interrogatory on the basis it is overbroad and seeks discovery of information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waving this objection, please see the individual identified below, who is the representative designated by Defendant to respond to these Interrogatories based upon his or her personal knowledge and access to Defendant's business records. Also, Defendant's counsel requests that no contact be made directly with Defendant or its representatives; all correspondence shall proceed through Defendant's counsel: Waldman & Porras, PLLC, 201 West Liberty St., Suite 207, Reno, NV 89501.

**Name: Sadhna Bhardwaj**

**Title:** _____Coo_____

3.  Please identify each and every lay witness whom you reserve the right to call at trial, along with a summary of that individual's anticipated testimony, full name, address, telephone number, and a copy of all documents provided by each witness to you or to such witness by you.

**Response**: Defendant objects to this interrogatory on the basis it is vague and ambiguous. Defendant further objects to this interrogatory on the basis it is overbroad and seeks discovery of information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Further, Defendant objects to this interrogatory as it requests a witness list prior to the required date set by the Court for submitting witness lists. Without waiving said objections, Defendant may rely upon a representative of any and all current or prior servicers of the subject loan. The name(s) of the representatives of prior servicers are currently unknown to Defendant. Such individuals may provide information regarding the prior servicing of the loan, including payments made or missed by borrowers. Defendant reserves the right to amend this list at any time prior to trial.

4.  Identify the mortgage servicing platform(s) used by Madison for all times relevant to the servicing of the Loan.

**Response**: Defendant objects to this request as being vague and overly board. Defendant further objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waving this objection, please see the individual identified below, who is the representative designated by Defendant to respond to these Interrogatories based upon his or her personal knowledge and

access to Defendant's business records. Also, Defendant's counsel requests that no contact be made directly with Defendant or its representatives; all correspondence shall proceed through Defendant's counsel: Waldman & Porras, PLLC, 201 West Liberty St., Suite 207, Reno, NV 89501.

**Name: Sadhna Bhardwaj**

**Title:** _Coo_

5. Describe all actions Madison took to validate the debt allegedly evidenced by the Loan.

   **Response**: Defendant objects to this request as being vague and overly board. Defendant further objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

6. Identify, with particularity, all lawsuits in a Court across the United States in which Madison has raised the _bona fide error_ defense pursuant to FDCPA. For purposes of this Interrogatory, please identify the cases by Case Caption, Court of Jurisdiction, and in reverse chronological order

   **Response**: Defendant objects to this request as being vague and overly board. Defendant further objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

7. Identify and describe with particularity all training that Madison provides or receives, in the area of debt collection activities, including but not limited to:

   a. The training content, timing, and duration;

   b. All documents and audio or visual materials used in such training; and,

c. Each person involved in providing such training.

**Response**: Defendant objects to this request as being vague and overly board. Defendant further objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

8. Identify and describe all documents, manuals, instructions, checklists, memorandum, restrictions or other documentation or instructions that Madison is given, reads, reviews, or otherwise utilizes, regarding the collection of debts.

**Response**: Defendant objects to this request as being vague and overly board. Defendant further objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

9. Identify whether Madison electronically records, or tape records, telephone calls by any means with any persons from whom they are collecting debts or alleged debts, and what steps are taken to preserve these recordings.

**Response**: Defendant objects to this request as being vague and overly board. Defendant further objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**[This space intentionally left blank.]**

## DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

**GENERAL OBJECTIONS**

1. Defendant makes the following general objections to Plaintiff's Request for Production of Documents. The general objections apply to all or so many of the requests that, for convenience, they are set forth immediately below and not repeated after each request objected to herein. The assertion of the same, similar, or additional objections or the provisions of partial answers or of documents in response to the individual requests does not waive any of Defendant's general objections as set forth as follows:

    a. Defendant objects to responding to any request requiring the production of documents containing information or identification of documents not relevant or material to the instant action or reasonably calculated to lead to the discovery of admissible evidence. Defendant specifically objects to responding to any request that is not related to any claims or defenses asserted in this matter. See Fed.R.Civ.P. 26(b)(2).

    b. Defendant objects to the production of any items protected by the attorney/client and/or work product privileges.

    c. Defendant objects to the production of any items not reasonably calculated to lead to the discovery of admissible evidence.

    d. Defendant objects to responding to any interrogatory that would require the disclosure of confidential and proprietary information and is protected under Fed.R.Civ.P. 26.

    e. Defendant objects to responding to any interrogatory requiring an answer or documents containing information or identification of documents not reasonably calculated to lead to the discovery of admissible evidence.

f.  Defendant has not completed its review of all documents related to the action, interviewed all witnesses in the action, completed discovery in this action, and has not completed its preparation for trial. Consequently, the responses herein are based upon information known or believed by Defendant at the time of answering this Request for Production and it specifically reserves the right to amend its responses set forth herein as discovery proceeds in this matter.

g.  Any statement by Defendant that will produce documents in response to a particular request shall not be construed as a determination that responsive documents in fact exist. It means only that Defendant has no objection to the particular request order other that these general objections, and that, if responsive documents exist, and are within Defendant's possession, custody, or control, they will be produced.

h.  These responses have been prepared from information obtained from expected and reasonably available sources by Defendant through reasonably diligent inquiry. The information provided in these responses is based upon such information as is reasonably available to Defendant, and Defendant expressly reserves the right, without assuming any duty of disclosure not required under Federal Law or Nevada Court Rules or order of this Court, to revise, amend, correct, add or clarify any of these responses if and when additional information or documentation comes to its attention.

i.  Whether responding to each request by production of document or objection, Defendant does not concede the evidentiary relevance, materiality or admissibility of any of these requests for production requests, or the subject matter to which they relate. Defendant expressly reserves the right to supplement or amend these objections and responses upon, among other things: further investigation; discovery of additional

facts; discovery of persons with knowledge of relevant information; and developments in this action or in any other proceedings. The word "Plaintiff" shall be taken to be singular or plural as the case may be.

## SPECIFIC RESPONSES AND OBJECTIONS

1.      Produce every document Madison intends to introduce at trial, in any deposition, or during any hearing in this case.

**Response**: Defendant objects to this Request for Production as it is premature. All documents in Defendant's possession, custody, or control will be provided with the witness list or as exhibits at or around the time of trial.

2.      Produce all documents identified or referred to in Madison's disclosures issued pursuant to Fed. R. Civ. P. 26(a)(1).

**Response:** Defendant has attached the requested documents currently in its possession, custody, and control.

3.      For all times relevant to the servicing of the Loan, produce a complete, specific, and itemized summary of all communications between Madison's customer service representatives or other individuals who spoke with Bryant, including, but not limited to, telephone conversations, emails, faxes, and letters, regarding the Loan.

**Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

2.	For all times relevant to the servicing of the Loan, produce a complete, specific, and itemized summary of all communications between Madison's customer service representatives or other individuals who spoke with third parties regarding the Loan, including, but not limited to, telephone conversations, emails, faxes, and letters..

**Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence

3.	Produce the complete servicing file maintained by Madison as such term is defined by 12 C.F.R. § 1024.38(c)(2) as consisting of or otherwise including, but not limited to:

a.	A copy of the security instrument that establishes the lien securing the Loan;

b.	All mortgage statements Madison sent to Plaintiff;

c.	Any notes created by Madison's personnel reflecting communications with Plaintiff about the Loan;

d.	To the extent possible a report of the data fields relating to the Loan created by Madison's electronic systems in connection with servicing practices including all P-309 Data Screens 1 through 6;

e.	To the extent possible a report of the data fields relating to the Loan created by Madison's electronic systems in connection with servicing practices including all P-309 Data Screens 1 through 6;

f.	A schedule of all transactions credited or debited to the Loan, including any escrow account as defined by 12 C.F.R. § 1024.17(b) and any suspense account; and

g.	Copies of any information or documents Madison provided to Plaintiff in accordance with the procedures set forth in 12 C.F.R. §§ 1024.35 and 1024.36.

**Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waving said objection, Defendant has attached the requested documents currently in its possession, custody, and control.

6.      Produce all servicing manuals, memoranda, policies, and training materials utilized by Madison in reviewing and determining all compliance with the FDCPA that were in effect for all times relevant to the servicing of the Loan.

**Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

7.      Please provide any and all documents summarizing, describing, instructing, detailing, or otherwise training any and all of Madison's employees in any and all of the following areas:

a.      Collection policies

b.      Collection procedures;

c.      Collection methods;

d.      Collection techniques;

e.      Collection tactics;

f.      Collection rules;

g.      Collection regulations; and,

h.      Compliance with local, state, or federal laws, codes, or regulations.

**Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

8.      Please provide any and all training, personnel, or other instruction manuals used by any and all collection personnel who are employed by or supervised by Madison.

**Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

9.      Please provide any and all collection software manuals and/or instruction guides for each and every computer system, software package, software system, telephone system, electronic device, or non-electronic device used in any manner by Madison in collecting debts.

**Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

10.     Please provide any and all documents recording, documenting, or otherwise tracking Madison's attempts to collect a debt from Bryant, including but not limited to:

a.      Records of all inbound or outbound telephone calls, to or from Bryant;

b.      Records of all inbound or outbound United States mail, to or from Bryant; and,

c.      Records of all other inbound or outbound communication of whatever kind, to or from Bryant.

**Response**: Defendant has attached the requested documents currently in its possession, custody, and control.

11.     Please provide a plain-English description or glossary for any and all lists, legends, codes, abbreviations, collector initials, or other non-obvious terms, words, or data contained in any of the documents produced above.

**Response:** Defendant objects to this request as it is overly broad. However, notwithstanding said objection, Defendant will provide the requested plain-English definition upon written request from Plaintiff.

## VERIFICATION

STATE OF ___NEVADA___ )

                      ) SS.

COUNTY OF ___WASHOE___ )

___Kevin J. Cordell___ , as corporate representative of ___Madison Management Services LLC___, being first duly cautioned and sworn, now deposes and states that he/she has reviewed the foregoing responses and objections to **PLAINTIFF LISA A. BRYANT'S FIRST SET OF REQUESTS FOR ADMISSION, WRITTEN INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED UPON DEFENDANT MADISON MANAGEMENT SERVICES, LLC**, and that they represent true and accurate answers to those requests as he/she verily believes.

Signature: _____

Name: ___Kevin J. Cordell___

Title: ___President___

Department/Division: _____


Sworn to and subscribed before me and in my presence this ___26th___ day of ___October___, 2020.

> CARRIE M. JOHNSON
> Notary Public-State of Nevada
> Appointment No. 16-3348-2
> My Appointment Expires 08-25-2024

_____
Notary Public

**REPLY TO PLAINTIFF LISA A.
BRYANT'S FIRST SET OF REQUESTS
FOR ADMISSION, WRITTEN
INTERROGATORIES, AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS OF MADISON
MANAGEMENT SERVICES, LLC**
Dated October 26, 2020

_____
Nicholas M. Porras, Esq.

# EXHIBIT "3"

Lisa A. Bryant                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 1

1                    UNITED STATES DISTRICT COURT

2                        DISTRICT OF NEVADA

3     LISA A. BRYANT,                )
                                     )
4                  Plaintiff,        ) CASE NO.:
      vs.                            ) 2:20-cv-00594-JAD-EJY
5                                    )
      MADISON MANAGEMENT             )
6     SERVICES, LLC, AND             )
      WALDMAN & PORRAS, PLLC,        )
7                                    )
                   Defendants.       )
8                                    )
                                     )
9

10

11               DEPOSITION OF LISA A. BRYANT

12           Taken on Tuesday, February 8, 2022

13               (Via Videoconference)

14                   At 3:20 p.m.

15           By a Certified Court Reporter

16                   Remotely in

17               Las Vegas, Nevada

18

19

20

21

22

23

24     Reported By:  Karen L. Jones, CCR NO. 694
       Job No. 48033, Firm No. 061F
25

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

---

**2**

```
 1   APPEARANCES:
 2   For the Plaintiff:
 3           FREEDOM LAW FIRM
             BY:  GEORGE HAINES, ESQ.
 4           8985 S. Eastern Avenue, Suite 350
             Las Vegas, Nevada  89123
 5           702.880.5554
             ghaines@freedomlegalteam.com
 6
 7   For the Defendants:
 8           WALDMAN & PORRAS, PLLC
             BY:  NICHOLAS M. PORRAS, ESQ.
 9           201 West Liberty Street, Suite 207
             Reno, Nevada  89501
10           775.525.9246
             nick@dwaldmanlaw.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

---

**3**

```
 1                    I N D E X
 2   WITNESS:  LISA A. BRYANT
 3   EXAMINATION                              PAGE
 4       BY:  Mr. Porras                         4
 5
 6
 7
                  E X H I B I T S
 8
     NUMBER           DESCRIPTION            PAGE
 9
     Exhibit 1    Note                         15
10
     Exhibit 2    Deed of Trust                17
11
     Exhibit 3    First Amended Complaint      54
12
     Exhibit 4    State of Nevada Complaint Form  54
13
     Exhibit 5    Madison Response to State    58
14                Complaint
15   Exhibit 6    Letter to L. Bryant from Madison  73
                  Management Services, LLC
16
     Exhibit 7    Call Log                     79
17
     Exhibit 8    June 7, 2021 Letter by N. Garnett 102
18
     Exhibit 9    Legal Aid Center Documents  102
19
     Exhibit 10   Garnett Depo Transcript     108
20
21
22
23
24
25
```

---

**4**

```
 1               P R O C E E D I N G S
 2                    * * * * *
 3   Whereupon,
 4          (Counsel agreed to the remote
 5   administration of the oath.)
 6
 7          LISA A. BRYANT,
 8   having been first duly sworn to testify to the
 9   truth, the whole truth, and nothing but the truth,
10   was examined and testified as follows:
11
12               EXAMINATION
13   BY MR. PORRAS:
14      Q.    Okay.  Good afternoon.  My name is
15   Nicholas Porras.  I represent the Defendants Madison
16   Management Services, LLC, and Waldman & Porras,
17   PLLC.  For ease, I'm going to call them the
18   defendants.  I'm going to take your deposition
19   today.
20          Ms. Bryant, have you ever had your
21   deposition taken before?
22      A.    No.
23      Q.    Okay.  Well, I'm going to go over a
24   couple of my ground rules or, you know, ground rules
25   that are pretty much typical to most depositions.
```

---

**5**

```
 1   The court reporter will take down both my questions
 2   and your answers.
 3          As to my questions, before you respond
 4   to any question, please let me complete the entire
 5   question before beginning your answer for the ease
 6   of the court reporter.  So when they're transcribing
 7   the deposition to paper, it will make it easier.
 8          I will attempt to make sure the question
 9   is as straightforward as possible.  If I ask a
10   question that is confusing or that you don't
11   understand, please let me know; I'll be happy to
12   explain it to you.
13          As to your answers, I also want to get
14   complete answers to all the questions I ask.  Please
15   clearly answer the questions.  If it is a yes or no
16   answer, please state "yes" or "no," rather than
17   "uh-huh" or "huh-uh" or shaking and nodding of your
18   head.
19          I want to let you complete your answer
20   before I move on to the next question.  If I begin
21   to ask a new question before you have completed your
22   answer to the previous question, please let me know.
23          Will you agree to ask me to explain any
24   questions that are confusing or that you don't
25   understand?
```

---

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

6

1    A.    Yes.
2    Q.    And if you don't ask me to explain,
3  clarify or otherwise, I will assume that you
4  understood the question. Is that okay?
5    A.    (Unintelligible.)
6         THE REPORTER: I'm sorry. I didn't
7  quite hear that or understand it. Could you repeat
8  your answer?
9         THE WITNESS: (Unintelligible.)
10        THE REPORTER: I'm sorry. I'm having
11  trouble understanding. Mr. Porras, did you hear
12  that answer or understand it?
13        MR. PORRAS: It's a little muffled. I
14  guess the question that was kind of muffled or the
15  answer -- so I'll state it again.
16  BY MR. PORRAS:
17    Q.    If you don't ask me to explain or
18  clarify or otherwise one of the questions, I will
19  assume that you understood the question. Is that
20  okay?
21    A.    Can I ask Mr. Haines to verify if that's
22  okay?
23        MR. HAINES: It's fine. All he's saying
24  is that if you don't understand the question that
25  he's asking, that you ask him for clarification.

7

1         THE WITNESS: Okay.
2  BY MR. PORRAS:
3    Q.    And if you don't ask for clarification,
4  the assumption will be that you understand the
5  question. Does that make sense?
6    A.    Okay.
7    Q.    Will you tell me if I begin to ask a new
8  question before you've completed your response to
9  the previous question?
10    A.    Yes.
11    Q.    And that just means if I ask you a
12  question, you're answering, and then before you're
13  done answering, I start asking a new question. So
14  just please let me know that you're not through
15  answering. Do you understand that?
16    A.    Yes.
17    Q.    Okay. Now, if during the course of the
18  proceeding you want to take a break, just let me
19  know; we'll do that. However, if there is a pending
20  question, you must fully answer the question before
21  we break. Is that understood?
22    A.    Yes.
23    Q.    Okay. Now, first, can you please state
24  your full name and the spelling of your last name?
25    A.    Lisa Anne Bryant, B-R-Y-A-N-T.

8

1    Q.    And what is your home address?
2    A.    719 North Racetrack Road, Henderson,
3  Nevada 89015.
4    Q.    How long have you been living at this
5  address?
6    A.    Since 1984.
7    Q.    Since, excuse me, 1984?
8         THE REPORTER: I'm sorry. Was that '84
9  or '94?
10        THE WITNESS: That was '85.
11        MR. HAINES: One point of clarification,
12  if you're estimating, Lisa, it's okay. Just say
13  approximately a certain date.
14        THE WITNESS: Approximately then.
15  BY MR. PORRAS:
16    Q.    What is your home telephone number and
17  cellular number?
18    A.    I don't have a home cell phone number
19  right now.
20    Q.    You don't have a phone; is that correct?
21    A.    (702) -- I do. (702) 379-3011.
22    Q.    Are you married?
23    A.    Sir, I do have a home phone that I don't
24  use, but it is (702) 565-7330.
25    Q.    And are you married?

9

1    A.    Yes.
2    Q.    How long have you been married?
3    A.    Forty-three years.
4    Q.    Okay. What's your spouse's name?
5    A.    Ronald Bryant.
6    Q.    Do you have any children?
7    A.    Yes.
8    Q.    How many and how old?
9    A.    Four.
10    Q.    Four?
11    A.    Yes.
12    Q.    Are they all adult children?
13    A.    One is deceased.
14    Q.    Excuse me?
15    A.    One is deceased.
16    Q.    One is deceased. Okay.
17        All over the age of majority, over 18?
18    A.    Yes.
19    Q.    Are you under the influence of any
20  medication or other forms of narcotics that may
21  affect your ability to answer the questions in this
22  deposition truthfully and fully?
23    A.    No.
24    Q.    Are you under the influence of alcohol?
25    A.    No.

Lisa A. Bryant        Lisa A. Bryant v. Madison Management Services, LLC, et al.

10

1  Q.  Have you had any recent surgeries?
2  A.  No.
3  Q.  Have you ever been declared legally
4  incompetent by a court?
5  A.  No.
6  Q.  Have you ever been convicted of a crime?
7  A.  No.
8  Q.  You said you lived at this current
9  address since 1985, which is a number of years.
10  Have you lived consecutively at
11  Racetrack Road since 1985 or thereabouts?
12  A.  Pretty much.
13  Q.  What's that?
14  A.  Yes, that's been my residence.
15  Q.  Was the residence ever rented out at
16  Racetrack Road?
17  A.  No.
18  Q.  What's your current mortgage payments at
19  the Racetrack Road address?
20  A.  $804.
21  Q.  Are you currently employed?
22  A.  No.
23  Q.  Did you say yes?  I'm sorry.
24  A.  No.
25  Q.  How long have you not been working?

11

1  A.  Approximately 2009.
2  Q.  Does your husband work?
3  A.  No.
4  Q.  What's your primary source of income?
5  A.  Social Security.
6  Q.  Approximately how much do you get from
7  Social Security?
8  A.  My husband does.  I do not.
9  Q.  Okay.  So you have essentially no
10  income; is that what you're stating?
11  A.  I don't.
12  Q.  Okay.  Let's talk about 719 Racetrack
13  Road in Henderson.  For ease, we're just going to
14  call the property "the residence."
15  So you own the residence located at this
16  address; is that correct?
17  A.  Correct.
18  Q.  Did you purchase it?
19  A.  We built it.
20  Q.  Excuse me?
21  A.  It was a vacant lot years ago.  We built
22  it.
23  Q.  Okay.  You built it.
24  And when was the house built?
25  A.  Approximately 1987.

12

1  Q.  Okay.  Did you live on a trailer before
2  the house was built on the lot --
3  A.  Yes.
4  Q.  -- or something along those lines?
5  A.  Yes, sir.
6  Q.  And what type of funds did you use to
7  build the house?  Was there a mortgage taken out?
8  A.  Eventually, yes.
9  Q.  I'm sorry?
10  A.  Eventually, yes.
11  Q.  But in 1987 -- or when the house was
12  completed in '87, what were the primary funds used
13  to construct the residence?
14  A.  I had some funds from Arizona.  My
15  daughter's death.
16  (Reporter clarification.)
17  Q.  So the funds came from Arizona.  Any
18  particular place in Arizona?
19  A.  My daughter's death.
20  Q.  "Gift"?
21  MR. HAINES:  No.  Her daughter passed
22  away.
23  MR. PORRAS:  Oh, okay.
24  BY MR. PORRAS:
25  Q.  So was there a lawsuit and then a

13

1  judgment or a settlement that was given that --
2  A.  Yes.
3  Q.  -- helped with that?  Okay.  Understood.
4  Okay.  And eventually there was a first
5  mortgage taken out for the property; is that
6  correct?
7  A.  Yes.
8  Q.  And do you recall when that was?
9  A.  No.
10  Q.  Was it in the 1980s?
11  A.  Approximate.
12  Q.  Okay.  Was that ever refinanced?
13  A.  I just did a modification in 2016.
14  Q.  Okay.  But -- and that was of your first
15  mortgage?
16  A.  Yes.
17  Q.  But you don't recall when that first
18  mortgage was first entered into?
19  MR. HAINES:  Objection.  Asked and
20  answered.  She said in the '80s approximately.
21  BY MR. PORRAS:
22  Q.  Okay.  And do you recall which bank that
23  mortgage note -- who was the underwriter or who the
24  mortgage was named at that time?
25  A.  I don't.

Lisa A. Bryant                     Lisa A. Bryant v. Madison Management Services, LLC, et al.

14

1    Q.    Who are your mortgage payments made out
2  to today?  So each month when you make a payment,
3  who do you make the check to or receive statements
4  from?
5    A.    Chase.
6    Q.    And you said that they recently adjusted
7  your mortgage payment; is that correct?
8    A.    Yes.
9    Q.    And did you -- was that as a result of a
10 modification or just a rate increase?
11   A.    Modification.
12   Q.    So it was modified in 2016 and then
13 modified again recently; is that correct?
14   A.    No.  Only 2016.
15   Q.    Only -- okay.
16         I'm sorry.  I misunderstood.  I thought
17 you said it recently went up.  So that's about six
18 years ago.
19         I'm going to be now looking at a
20 document I have labeled.  It's titled "Bryant Note
21 with Allonges."
22         MR. PORRAS:  George, do you have copies
23 for her or how are we going to do this?
24         MR. HAINES:  I have a copy, except there
25 were two larger documents.  I believe one was your

16

1  It's also on that first page.
2    A.    Accredited Home Lenders.
3    Q.    Did you borrow money from Accredited
4  Home Lenders?
5    A.    No.
6    Q.    In paragraph one of the note, can you
7  tell me what the loan amount is?
8    A.    $90,250.
9    Q.    Now, if we go to page 4 of the note --
10 sorry, page 3.
11         MR. HAINES:  Repayment Charge Rider to
12 Note?
13 BY MR. PORRAS:
14   Q.    Yes.  Are there signatures on this page?
15   A.    Yes.
16   Q.    Is that your signature?
17   A.    I don't know.
18   Q.    You don't know?
19   A.    How am I supposed to explain this?  I
20 didn't sign contracts with anybody.
21   Q.    Can you turn to page 4 of the note,
22 please.  Is there a signature on this page?
23   A.    It looks like it.
24   Q.    Is that your signature?
25   A.    No.

15

1  defendants' notes.  I didn't print out those yet.  I
2  was hoping we could get precise page numbers.  And
3  then there was another sizable document, but I do
4  have the note right here.
5         MR. PORRAS:  Okay.
6         MR. HAINES:  So I'll just hand you your
7  note with the allonge attached.
8  BY MR. PORRAS:
9    Q.    Ms. Bryant, you're looking at a document
10 that I'm going to be marking as Defendants'
11 Exhibit 1.  It's a copy of the note.
12         Just for clarification, you have that in
13 front of you, it looks like.  Can you tell me what
14 the title of the document is?
15   A.    Note.
16   Q.    We'll call this just the note.  Is that
17 okay with you?
18   A.    Yes.
19   Q.    Okay.  What is the date of this note?
20 It's on the first page.
21   A.    This one?
22         MR. HAINES:  Here's the note.
23         THE WITNESS:  Oh, October 2nd, 2006.
24 BY MR. PORRAS:
25   Q.    And who is the lender on this note?

17

1    Q.    It says, "Lisa A. Bryant"?
2    A.    (Unintelligible.)
3         THE REPORTER:  Was that "no"?
4         MR. HAINES:  She said no.
5  BY MR. PORRAS:
6    Q.    Okay.  Next, I'm going to direct you to
7  look at a document that is going to be marked as
8  Defendants' Exhibit 2, and that is the -- let's see
9  what it's titled -- "Deed of Trust," "Bryant Deed of
10 Trust."
11         Can you tell me what this document is?
12   A.    It says a deed of trust.
13   Q.    Okay.  We're going to refer to this
14 document as the deed of trust; is that okay?
15   A.    Yes.
16   Q.    Now, on the first page of the document,
17 there's a date on the deed of trust.  Can you tell
18 me what this date is?
19   A.    This one?  The recording date or the --
20   A.    The date of -- so it's -- the recording
21 date is up at the top right.  Below the title, which
22 as we agreed to is the deed of trust, below that,
23 there's a date?
24   A.    This one?
25         MR. HAINES:  Yes.

Lisa A. Bryant                     Lisa A. Bryant v. Madison Management Services, LLC, et al.

18

1        THE WITNESS:  October 2nd, 2006.
2  BY MR. PORRAS:
3     Q.     Now, you see also on that page there's
4  initials at the bottom of the page.  Can you see
5  that?
6     A.     Yes.
7     Q.     Are these your initials?
8     A.     Yes, these are my initials.  I think
9  they are.  I don't know.
10       MR. HAINES:  It's okay to say "I don't
11  know."
12       THE WITNESS:  I don't know.
13  BY MR. PORRAS:
14     Q.     I'd ask you to turn to page 7 of the
15  document.  I don't believe it has numbers at the --
16  actually, it does.  It says 7 of 8.
17     A.     Yes.
18     Q.     Do you see a signature on this document?
19     A.     I do.
20     Q.     Is that your signature?
21     A.     No.
22     Q.     I'll ask you to go to page 8, please.
23        Is there a signature on this document?
24     A.     Yes.
25     Q.     Is there a date on this page of this

19

1  document?
2     A.     Yes.
3     Q.     Is there a state named and a county
4  named on this document?
5     A.     Yes.
6     Q.     And what is the state and what is the
7  county?
8     A.     State of Nevada.  I can't read anything
9  else.
10     Q.     Below State of Nevada, what does it say?
11     A.     Are you talking the notary stamp?
12     Q.     Yes, the notary stamp.  Well, above the
13  notary stamp, it says "State of Nevada," and then it
14  says "County of."
15     A.     On the form itself?
16     Q.     It's on the page, on page 8 of the
17  document on the deed of trust.
18       MR. HAINES:  Yeah, I think she's a
19  little confused because there's a notary stamp on
20  the document, and then there is a -- I guess, some
21  print above that notary stamp which has that
22  information.
23  BY MR. PORRAS:
24     Q.     Okay.  So I'm going from the first line.
25  It says "State of Nevada."  The second line says

20

1  "County of --
2     A.     Clark.
3     Q.     -- Clark," do you see that?
4     A.     Yes.
5     Q.     And is Clark written out or typed out?
6     A.     Written.
7     Q.     Okay.  Now, you see the next line, it
8  says, "The instrument was acknowledged before me
9  on."  Do you see the date there?
10     A.     Yes.
11     Q.     And is that written or typed?
12     A.     Written.
13     Q.     Now, the next one, do you see the notary
14  stamp?
15     A.     Yes.
16     Q.     Can you tell me the name on the notary
17  stamp and the appointment number?
18     A.     Nancy Garnett.
19     Q.     Okay.  And then it says "Appointment
20  No."
21     A.     03-85731.
22     Q.     Is there a signature there?
23     A.     Yes.
24     Q.     And is there a name written underneath
25  the signature?

21

1     A.     Yes.
2     Q.     And those are both written out; is that
3  correct?
4     A.     Yes.
5     Q.     Now, do you have -- have you ever
6  borrowed money from a lender named First Franklin
7  Mortgage or First Franklin Financial Corporation?
8     A.     I don't know who they are.
9     Q.     Are you current with the payments on
10  your first mortgage?
11     A.     Yes.
12     Q.     Okay.  On the document that we just
13  looked at, the deed of trust, you stated that the --
14  you weren't certain if -- or that the initials may
15  or may not be yours and that the signature on the
16  deed of trust is not yours.
17        Why do you believe the signature is not
18  your signature?  You can reference the signature
19  again if you'd like to.
20     A.     Signature on?
21       MR. HAINES:  The deed of trust.
22       THE WITNESS:  That's the deed of trust.
23       MR. HAINES:  And this is the signature
24  on page 7 of 8, right?
25       MR. PORRAS:  Correct.

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

22

1         THE WITNESS:  Okay.  Why do I say this
2    isn't my signature?  Because I put these papers --
3    during -- during -- can I just tell him what
4    happened?  Am I supposed to tell you?
5         MR. HAINES:  He asked a question.
6         THE WITNESS:  Why is this not my
7    signature?
8    BY MR. PORRAS:
9    Q.    Correct.
10   A.    Because I refused to sign, and I took
11   the documents from the notary.
12   Q.    Okay.
13   A.    No way is my signature on these
14   documents.
15   Q.    Does this look like your signature?
16   A.    No.  All three of these are different
17   signatures on them.  Everything you've shown me
18   today has three signatures.
19   Q.    Why did you decide to refuse to sign the
20   loan documents?
21   A.    I got a phone call from the broker.
22   There's two of them.  I got a phone call from the
23   broker.  There's two of them.  They told me that I'd
24   already filled out -- they had already filled out
25   six hours worth of documents and that I would need

23

1    to do one more, but this one had to be notarized and
2    that they were sending them to Union Bank and
3    several other ones, and they already had five
4    prepared, but one needed to be notarized.  And it
5    was supposed to be a commercial line of credit on
6    Marco Street.
7    Q.    On what street?
8    A.    Marco.
9         (Reporter clarification.)
10   Q.    Okay.
11   A.    So they told me to have my I.D.
12   available, that the notary would be coming.  And I
13   said that was fine.
14   Q.    So are you saying that a different
15   notary came and you notarized some other documents?
16   A.    I had filled out a document, a lot of
17   different paperwork for the same mortgage broker.
18   And this one, they had asked that I need a notary,
19   and I said I'm going to be home.
20   Q.    This would be a second mortgage or a
21   second deed of trust?
22   A.    No.  It would be a first deed of trust
23   over on Marco Street; that was not a deed of trust.
24   It was to be a standby line of credit.
25   Q.    Now I'm confused.  Is Market (sic)

24

1    Street another property?
2    A.    Marco Street is a commercial property
3    that I owned at the time and I was completing
4    construction, and I was wanting to take a commercial
5    loan out for the standby line of credit on Marco
6    Street.
7         MR. HAINES:  And it's Marco, M-A-R-C-O.
8    BY MR. PORRAS:
9    Q.    Now, what happened when you refused to
10   sign the loan documents?
11   A.    I don't know or recall exactly.  A woman
12   came up to me.  I couldn't even tell you her face,
13   but I could say honestly that a woman approached me,
14   and I was in my yard pulling weeds.
15        So I'm in my yard pulling weeds.  She
16   asked me my name, and do I have an I.D. available.
17   I said yes.  She said, "I'm here from the lenders.
18   You need to have a document notarized."
19        I said, "Right.  They called me."
20        She opens up a folder with -- opens a
21   folder with legal-sized documents, and she says,
22   "Are you -- is this the correct stuff, so you know
23   what I'm doing?"
24        I said, "No, I've never seen this stuff
25   before."

25

1         She said, "Well, if you could initial so
2    we can get started."  Because it was getting dark.
3    She said, "If you can initial them so we can get
4    started, you can review them as you go."
5         So when she got to the part -- and I
6    said -- she said, "Well, you're going to need to sign
7    this document."
8         And I said, "Well, but none of this
9    looks like any of the other papers and it looks like
10   it's on my house."  And I said, "I can't do this.
11   This doesn't look right.  What is this?"
12        And she says that -- that these are
13   documents and I should have had a HUD-1, an
14   estimate.  "I'm asking her, What's an estimate for?"
15   I said, "None of this looks right to me."  And I
16   said, "How would I even know what this is?"
17        And she says, "Well, your lender should
18   have given you all this.  You've already received
19   this."
20        I said, "No, I haven't.  I said I filled
21   out a lot of documents, but they were all commercial
22   on Marco Street.  I've never seen anything with this
23   on it."
24        And she contacted the broker.  And the
25   first one didn't answer, the one that's in



Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

26

1  Las Vegas.  That woman's name is Hinda Hinden.  She
2  was an associate broker.  Gene Kirschman who lives
3  in San Diego.  And my bank, Nevada State Bank, told
4  me you cannot do a loan on -- they did a loan on one
5  property on Marco Street.  They told me they could
6  not do this loan on Marco Street as a standby line
7  of credit, because I was looking for a standby loan
8  of credit to do a project in Alaska.
9        So they asked me to use an outside
10  broker, and this is the one that got referred to me.
11  Gene Kirschman.  And he was out of San Diego.  And
12  the notary contacted them because I took the papers
13  from her, and I told her, "You can't -- you're not
14  notarizing these papers, they're not leaving my
15  sight."
16        And I took the papers.  We were writing
17  them on the hood.  We weren't in a house.  We
18  weren't sitting down.  So I took the papers.  And
19  she put them aside to have the notary available.  I
20  took the papers and they're all legal-sized, and I
21  stuffed them underneath my arm.  And I said, "You're
22  not taking anything away from here."
23        She contacted Gene Kirschman in
24  San Diego.  We somehow got Hinda on the phone.  So
25  the notary could speak to both of them.  She was

27

1  telling them that I'm refusing to sign the
2  documents, that I won't give them back and that I
3  said that I had not received any HUD-1, which is
4  estimate and that I was refusing to sign and she
5  didn't know what to do.
6        And she said she'd been arguing with me,
7  persuading me to give them back and I refused.
8        She spoke to both of them.  She had them
9  talk to me.  Gene and Hinda, they told me that this
10  particular lender was offering bonuses for loans
11  that they could submit.  And I said, "I don't really
12  care.  This isn't going to happen.  First of all,
13  it's not even a standby line of credit as I
14  expected.  That's what I was looking for."
15        And they told her that she needed to get
16  the papers back, that they gave her an envelope, and
17  that she needed to return the papers back to them
18  with a note attached that this was not completed and
19  that I refused.
20        And I told her over the phone that this
21  was never going to close because it was supposed to
22  be something called a HOEPA loan that required a
23  consumer certificate of completion for high interest
24  loans, and they were laughing.  And they said that
25  this was never going to close anyhow because without

28

1  that document that would be against statute.
2        And I asked her, I said, "I don't even
3  know what that is."  And she explained to me, she
4  said, "Do you know what this class is?"
5        I said, "What class?"  She said, "This
6  will not close because it's not completed, and
7  they're saying that it's a high interest HOEPA loan,
8  and that's why it needed a certificate."
9        So I said, "How did a commercial line of
10  credit ever turn out to be this mess?"
11        And she said -- Gene Kirschman, he said
12  that she needed to return it, that the documents
13  were private, privilege and belonged to them and
14  that they belonged to American Home Builders -- or
15  American home whoever, American Home Lenders and it
16  would not close.  There was no way it could close.
17        One, it wasn't completed, notarized.
18  And second, because I never completed any classes.
19        And so a commercial loan that I didn't
20  do and I didn't know about for many, many years, it
21  can't close.  I don't know where the money went.  I
22  want to see the closing documents.  I want to see
23  everything that this other person gave me that I
24  received is clearly for them.
25    Q.    Are you done answering the question?

29

1    A.    Yes.
2    Q.    Now, did the notary leave with the
3  documents or did you retain the documents and the
4  notary left?
5    A.    The notary said that she had an
6  envelope, she could not get paid without returning
7  them, that she was attaching a note that the
8  consumer refused.  And she said that she'd put in
9  the FedEx and send it to them.
10    Q.    She said she put it in a FedEx?
11    A.    Yeah.
12    Q.    And send -- so you gave her back the
13  documents?
14    A.    I did.
15    Q.    And was there a notary stamp and
16  signature on the documents when you handed them to
17  her?
18    A.    No.
19    Q.    So you handed her unsigned documents?
20    A.    I started to sign the one page, and I
21  stopped.  I never finished them.  She couldn't
22  notarize something she didn't have done.
23        MR. HAINES:  Sign or initial?
24        THE WITNESS:  Did I sign or initial?
25        MR. HAINES:  Yeah.

Lisa A. Bryant                              Lisa A. Bryant v. Madison Management Services, LLC, et al.

| 30 | 32 |
|---|---|
| 1      THE WITNESS: I was starting to initial | 1    A.   Yes. |

30

1        THE WITNESS: I was starting to initial
2 some pages. I don't even -- I don't know what these
3 are. I never got a copy, so how would I --
4 BY MR. PORRAS:
5     Q.    Now, what did you need the money for?
6 What was the purpose of taking out the loan?
7     A.    I was looking for a standby letter of
8 credit because I wanted to do a development that was
9 in Alaska, and it was over 800-and-something
10 thousand.
11    Q.    Okay. Now, did you receive a loan, a
12 commercial loan on the Marco property?
13    A.    I flew to Anchorage -- no.
14        (Reporter clarification.)
15        THE WITNESS: We could not come to
16 terms, so I did not pull the loan.
17 BY MR. PORRAS:
18    Q.    So you never received a loan on the
19 Marco property, commercial loan?
20    A.    No.
21    Q.    Did you ever state to the mortgage
22 broker or anyone else that you needed the funds to
23 do repairs to the Racetrack property?
24    A.    No.
25    Q.    Now, after -- you said that was

31

1 October 2nd, 2006. Did you ever receive any notices
2 from Accredited Home Lenders after that?
3     A.    No.
4     Q.    Did you ever receive any mortgage
5 statements?
6     A.    No.
7     Q.    Privacy notices?
8     A.    No.
9     Q.    Where and how to make payments?
10    A.    No.
11    Q.    Default notice?
12    A.    No.
13    Q.    When's the first time you've heard of
14 Accredited Home Lenders?
15    A.    August, September of 20- -- approximate
16 March 2018.
17    Q.    Did you send a payment for the
18 August 1st, 2014, payment or any subsequent
19 payments?
20    A.    Who would I send them to? No.
21    Q.    Did you make any payments to the deed of
22 trust?
23    A.    No.
24    Q.    Do you have any reinstatement letters
25 regarding the deed of trust?

32

1     A.    Yes.
2     Q.    Yes?
3        MR. HAINES: Yes.
4        THE WITNESS: Yes.
5 BY MR. PORRAS:
6     Q.    Did you make any payments to reinstate?
7     A.    No.
8     Q.    Okay. Next, I'm going to go to what I
9 have labeled as the "Complaint."
10        George, I don't know if you printed out
11 the complaint.
12        MR. HAINES: I have.
13        MR. PORRAS: If anyone needs to take a
14 break to use the restroom or anything else, let me
15 know.
16        THE WITNESS: Can I get some water?
17        MR. HAINES: I'm just going to grab a
18 water.
19        THE WITNESS: Are you going to ask me
20 questions, too?
21        MR. HAINES: He's going to ask you
22 questions.
23        THE WITNESS: Okay.
24        MR. HAINES: The First Amended
25 Complaint?

33

1        MR. PORRAS: Yes.
2        MR. HAINES: Got it.
3 BY MR. PORRAS:
4     Q.    I'm looking specifically at paragraph 39
5 of the complaint. It's number 39. I believe it's
6 page 8 of 11. Can you read that paragraph for me,
7 please.
8     A.    "Through communications with Bryant,
9 Defendants each knew or had reason to know that the
10 sums claimed by Defendants and PVK were not, in
11 fact, due and owing from Bryant as the second
12 mortgage loan was obtained through fraudulent means,
13 and that the foreclosure had been improperly
14 maintained for years."
15    Q.    Now, how would the defendants know that
16 the documents were fraudulent? Hypothetically, how
17 do you think the defendants would know that the
18 documents are fraudulent?
19    A.    Well, they wouldn't have the HUD-1 or
20 all those closing documents that go with it. And
21 I've spoken to them on a phone call sometime in 2009
22 at which time on a fax machine -- they didn't have
23 my home phone, they didn't have my business phone
24 number, they didn't have my cell phone number. They
25 called my home fax number. And this information was

Lisa A. Bryant         Lisa A. Bryant v. Madison Management Services, LLC, et al.

34

1  used by an individual who assumed my name and
2  identity.
3        When they could not reach the
4  individual, they started calling my fax number, and
5  they told me that there's a commercial loan on my
6  property. It was not a mortgage on my house,
7  because it was commercial. It was listed as
8  commercial.
9        And I was getting several phone calls
10  from several different bank cards also stating. And
11  they advised me to go get a police report, file a
12  police report and fax them over of the police
13  report.
14        So they knew that this was fraudulent.
15  They stated that this was a commercial loan.
16     Q.    Now, you said this was in 2009; is that
17  correct?
18     A.    Yes.
19     Q.    Now, in 2009, did the name Accredited
20  Home Lenders, was that a lender you recognized at
21  that time?
22     A.    The only lender I ever knew about was
23  not even a lender. It was Bayview.
24     Q.    Were you familiar with Bayview Loan
25  Servicing in 2009?

35

1     A.    No.
2     Q.    So you said you filed a police report in
3  2009. Who did you name as a fraudulent organization
4  in 2009?
5     A.    I named the individual that I thought
6  was doing this, and stated that I was getting
7  several credit card phone calls, that somebody
8  wasn't making their payments on my -- my fax machine
9  was nonstop. It was -- it was a fax machine at my
10  home. It was nonstop, continuously.
11        And I filed a police report as Bayview
12  said. Bayview just told me they were a collection
13  company. Bayview collections. They didn't mention
14  any mortgage. They didn't mention anything else.
15  It was Bayview collection.
16     Q.    And so that was in 2009 you heard of
17  Bayview collections?
18     A.    Yes. And they didn't send me notices.
19  They didn't send me any mail. All they asked is
20  that I fax them over a police report that, I filed a
21  police report, and I put on there that I was getting
22  numerous phone calls of credit cards I never opened.
23     Q.    Okay. I'm familiar. I saw the police
24  report. I didn't see any mention of Bayview Loan
25  Services or Accredited Home Investors on there, so

36

1  that's why I'm asking these questions.
2        Now, at that time, did you provide any
3  other documentation to what you're calling Bayview
4  collections regarding this matter?
5     A.    They never spoke to me again, and no.
6     Q.    Now, going back the complaint, you're
7  accusing the defendants of obtaining through
8  fraudulent means loan funds, and it's the title of
9  this Count One, Violations of the FDCPA.
10        Now, did you at any other time before
11  filing this lawsuit, a police report that named
12  either of the defendants as any evidence that they
13  were committing either intentional or unintentional
14  fraud?
15     A.    Could you please repeat that?
16     Q.    At any time before the filing of this
17  lawsuit, did you provide the defendants -- and
18  that's specifically Madison and Waldman & Porras --
19  did you provide proof or evidence of a fraudulent
20  activity?
21     A.    I asked them to give it to me. I asked
22  them to locate the payment history because the
23  payment history would have said who they were
24  talking to, and that was the person with an address.
25  But Madison or whoever, they should have the

37

1  information to give to me, because I have given
2  Bayview that police report.
3        MR. HAINES: Was the question whether or
4  not she ever told your client that she thought it
5  was a fraudulent note, was that the question?
6        MR. PORRAS: If she provided any
7  evidence regarding the fraud.
8        MR. HAINES: Here to your client?
9        MR. PORRAS: Correct.
10        THE WITNESS: I put them on notice when
11  I asked for -- something I never heard of, which is
12  a document that you type out to ask for information
13  on the loan or on the debt, and I sent that to Reno.
14        (Reporter clarification.)
15        THE WITNESS: Carson City. I sent it to
16  Waldman & Porras, and I sent it to Madison
17  Management.
18  BY MR. PORRAS:
19     Q.    When you learned that this mortgage was
20  in existence and the deed of trust and the note --
21  excuse me. I'll say that again.
22        When you learned that, the existence of
23  the deed of trust and this note with your purported
24  name on it and that it was for $90,000, did you
25  alert authorities and renew a police report or



Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

38

1  provide Waldman & Porras or defendant with a copy of
2  your driver's license to say, hey, this isn't me or
3  to say this is a fraudulent signature?
4      A.    You're asking me what took place prior
5  to the lawsuit, correct?
6      Q.    Correct.
7      A.    Did I hear that right?  Prior to the
8  lawsuit, I had sent a notice that this was part --
9  that this was a part of a fraudulent activity, and I
10 asked them for information, documents.  And I never
11 received that.
12     Q.    Did Waldman & Porras and/or Madison
13 Management Services, LLC, provide you with a copy of
14 the note and the deed of trust?
15     A.    They did.
16     Q.    Okay.  Did you respond to the documents?
17 Did you respond to either Waldman & Porras or
18 Madison when the request for verification of the
19 debt was sent to you?
20     A.    I did.  I asked them -- go ahead.
21     Q.    Go ahead.  You can go ahead.
22     A.    I asked them to provide the history of
23 the debt.  I asked them to forward me more history
24 on the debt.
25     Q.    Okay.  So you didn't provide them with,

39

1  either Waldman & Porras or Madison Management
2  Services, evidence of the fraud such as a renewed
3  police report after 2009 when you learned of the
4  existence of this or a copy of your driver's license
5  to compare to the loan documents?
6          MR. HAINES:  I'm going to object to that
7  question.  That's misstating what she said.
8  BY MR. PORRAS:
9      Q.    So just to clarify, the answer is no?
10     A.    If you --
11         (Reporter interruption.)
12         MR. HAINES:  Nick, can you restate the
13 question?
14 BY MR. PORRAS:
15     Q.    Okay.  Was there ever a police report
16 that directly names my client, Madison Management
17 Services, PVK or any other organizations in the
18 chain of title, was that ever provided to Waldman &
19 Porras or Madison?
20         MR. HAINES:  Do you understand the
21 question?  Did you file --
22         THE WITNESS:  The attorney general.
23         MR. HAINES:  Did you file a police
24 report naming your clients -- right?
25         MR. PORRAS:  Correct.

40

1          MR. HAINES:  -- as fraud, did you ever
2  do that?
3          THE WITNESS:  I went to the attorney
4  general.
5          MR. HAINES:  Did you file a police
6  report?
7          THE WITNESS:  I didn't file a police
8  report.  I took the police report I have and I made
9  a statement, and I did it through the attorney
10 general.  Because I'd already been to the police
11 department.
12 BY MR. PORRAS:
13     Q.    Did you provide a copy of your driver's
14 license at any point to either my client or Waldman
15 & Porras?
16     A.    No.
17     Q.    Now, when did you suspect that the loan
18 documents that we looked at earlier, specifically
19 the deed of trust, when did you first learn that
20 that deed of trust had been recorded?
21     A.    2018.
22     Q.    And what made you suspicious that this
23 had been recorded illegally or fraudulently?
24     A.    Excuse me.  Are you saying the recording
25 itself?

41

1      Q.    Correct.
2      A.    The one that was recorded in 2017?
3      Q.    2006.
4      A.    I never signed a loan document.  I never
5  signed, and the person who stole my identity, they
6  did a lot of things, a lot of things against me.
7      Q.    Now, this first mortgage on this
8  property, when you -- what was the date you modified
9  that, the first mortgage?
10     A.    The process started in July 2016,
11 completed, approved in the final first three months
12 was February 2017.
13     Q.    Now, was that a HAMP modification?
14     A.    I don't know what that is.
15     Q.    Home Affordable Modification --
16         MR. HAINES:  Program.
17         MR. PORRAS:  Program, that's right.
18         THE WITNESS:  I don't know.
19 BY MR. PORRAS:
20     Q.    Now, at the time when you were doing the
21 first -- the modification for the first loan, did
22 anyone make you aware of a second loan?
23     A.    I was told there was a lien on me.
24     Q.    Okay.  And did you inquire about the
25 lien?

Case 2:20-cv-00594-CDS-EJY   Document 62   Filed 03/17/22   Page 62 of 204

Lisa A. Bryant                                   Lisa A. Bryant v. Madison Management Services, LLC, et al.

42

1    A.    Well, the person helped with Chase was
2  filling out the documents.  She said that she did a
3  credit report on me, and she did a search, a title
4  search.  What she said was there was a lien in my
5  name.  She said, "Are you aware of anybody else you
6  owe money?"  And I said, "No."
7          She said, "Are you sure?"  I said,
8  "Yes."  I said there had been some identity theft
9  many, many years ago, but all those people are gone.
10         She said, "Okay."  She said, "Has
11 anybody contacted you?"  I said, "Yes, I just got a
12 text a couple months earlier, a month earlier out of
13 California."
14         She said, "What did that text say?"  I
15 said, "It says 'You owe me money.'  I said how much?
16 84,000."  And I was working in California fixing
17 houses about that same time.
18         So she said, "If they hadn't been
19 recorded any assignments, that I was fine."  She
20 said, "Do not answer or talk to anybody, because if
21 you apply for these programs, it goes on your credit
22 report, what we're doing, searching your credit."
23 She said, "Don't talk to anybody or do anything."
24         She said, "Let us handle this."  And she
25 said, "Unless somebody records something," which at

43

1  that time nothing was recorded.  This was in August
2  of 2016 when this conversation took place.
3          I never spoke to anybody or talked to
4  anybody since until I got notified.
5    Q.    Now, this person, did you ask who the
6  lien -- who had the lien?  Because that's quite a
7  bit of money.  So I would think that it would raise
8  concerns if they're claiming $84,000.
9          Did you ever find out any more details
10 about this in 2017 or 2016 when this process was
11 going on?
12   A.    The woman -- well, the woman assisted me
13 with the documents for the modification, she didn't
14 tell me the amount.  The person who texted me the
15 amount was I believe Howard.
16   Q.    Does the name Howard Katz ring a bell?
17   A.    Yes.
18   Q.    So he texted you; is that correct?
19   A.    Yes.
20   Q.    Do you have any idea how he got your
21 cell phone number?
22   A.    No.
23   Q.    Did you --
24   A.    Excuse me.
25   Q.    Did you have any further discussions

44

1  with him about this lien?
2    A.    Just that one day.  I asked him how much
3  I owe because he text me "You owe me money."  How
4  much?  And I said, "Who are you?"  He said, "Call
5  this number."  And he gave me Madison's phone
6  number.  He texted it to me.
7    Q.    Did you deny owing him money?
8    A.    I didn't know what I owed him money for.
9    Q.    And did you ask Howard for any more
10 information or just left it at that?
11   A.    He told me if I wanted information to
12 call Madison.  Madison told me -- I called Madison's
13 number.  It was -- it said it was a collection
14 company.  And Madison said they didn't know my name,
15 they didn't have my account, and I need to call the
16 person back who text me.
17         That's when I called Mr. Katz.  I did
18 not know who any of these people were.
19   Q.    Now, when you received that message,
20 were you thinking that this was fraud?
21   A.    That's what my bank told me.  That's
22 what Chase told me.
23   Q.    Chase told you that it was fraud?
24   A.    They told me be careful because when you
25 do these types of modifications, there's going to be

45

1  a lot of people coming out to assist you and they're
2  schemers and don't return their calls.
3    Q.    Okay.  Now -- I'm sorry.  Go ahead.
4    A.    She said a legal person would file an
5  assignment on you, and there's nothing there.  So I
6  told her I worked in California so I didn't know
7  these people.  I stopped working in California end
8  of 2015.
9    Q.    Now, when you were filling out the
10 documents for the modification of the first deed of
11 trust or mortgage, did it -- was there questions
12 that asked if you have a second lien on the property
13 or second deed of trust or mortgage on the property?
14   A.    I don't know.
15   Q.    Okay.  Do you have copies of the
16 paperwork that was submitted for the first deed of
17 trust?
18   A.    The woman who helped me fill those out,
19 she might.  I don't know.  I'm guessing.
20   Q.    You already said you didn't file a
21 police report.  Did you reach out to anybody else
22 regarding your concerns of fraud or --
23         MR. HAINES:  Object to that question
24 because she did say she filed a police report.
25 ///



Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

46

1   BY MR. PORRAS:
2      Q.    Okay.  When learning that Mr. Katz was
3   seeking to collect almost $90,000 from you, did you
4   speak to anybody else regarding your fears of a
5   fraudulent loan being taken out in your name?
6      A.    The State of Nevada.
7      Q.    And that was -- was that in 2017?
8      A.    Yes.  One of the -- one of the financial
9   institutions.
10     Q.    I have that dated 2019.  I didn't see
11  one from 2017.  So you're saying you filed it in
12  2017, a complaint with the state?
13     A.    Yes.
14           MR. PORRAS:  I didn't receive copies of
15  those, George.
16           MR. HAINES:  You filed a complaint with
17  the Mortgage Lending Division in 2017.
18           THE WITNESS:  Yes.
19  BY MR. PORRAS:
20     Q.    Now, in that 2017 filing, what was the
21  result of that complaint?
22     A.    Excuse me.  It's 2018.
23     Q.    It's 2018.
24     A.    2018.
25     Q.    So you found out about the alleged fraud

47

1   in 2017, and then in 2018 you filed a report with
2   the State of Nevada; is that correct?
3      A.    Yes.
4      Q.    So quite a period of time.  So in
5   between 2017 and 2018, there was no one else before
6   the State of Nevada that you --
7           MR. HAINES:  Object.  That's misstating
8   her answer, as well.  She never specifically
9   testified, I believe, to the fact that she knew that
10  this particular mortgage was a fraud at that point
11  in time or --
12           MR. PORRAS:  Okay.  Okay.
13           MR. HAINES:  You knew there was fraud,
14  but not what the specific fraud was.
15  BY MR. PORRAS:
16     Q.    So before the State of Nevada, there was
17  no other organization or person that you expressed
18  that Howard or Madison might be engaging in fraud
19  against you?
20     A.    I had gone to the financial institution,
21  the attorney general, and Consumer Fraud Protection
22  Bureau and consumer -- consumer -- an entity that
23  was through -- program that was through the State of
24  Nevada; they helped me fill out forms.
25     Q.    So essentially the allegations of the --

48

1   of the complaint were that Madison was unfairly or
2   illegally attempting to collect a debt; is that
3   correct?
4      A.    Correct.
5      Q.    Okay.  So --
6      A.    Excuse me.  A fraudulent debt.
7      Q.    Okay.
8      A.    Our complaint states a fraudulent debt.
9      Q.    Okay.  And at that time, did you consult
10  with an attorney and consider filing either a
11  lawsuit against Madison or Waldman & Porras?
12           MR. HAINES:  What time are we talking
13  about?
14           MR. PORRAS:  At or around the time she
15  filed the complaint with the State of Nevada.
16           THE WITNESS:  When I initially got -- I
17  don't know how to say this, but I had -- I had --
18  within 30 days after I got a notice in the mail from
19  Madison, I consulted an attorney.
20     Q.    I'm sorry, from who?
21     A.    A notice in the mail from Madison.
22     Q.    Oh, from Madison.  Okay.
23           Now, did any of these attorneys pull out
24  from the public records of the Clark County
25  Recorder's office either a list or details of the

49

1   liens on the property at Racetrack Road?
2      A.    No.  I told them what happened, and they
3   told me it would be very expensive to defend.
4      Q.    Okay.
5      A.    And I only had three choices:  pay them
6   the money that they want, try to make a settlement
7   first, or file bankruptcy.
8           MR. PORRAS:  Okay.  I'm going to refer
9   you to the Bryant Nevada State Complaint, George.
10          MR. HAINES:  This is the one that's
11  Bates stamped Lisa Bryant 000403.
12  BY MR. PORRAS:
13     Q.    Do you recognize this form, Ms. Bryant?
14     A.    Yes.
15     Q.    And what's the date on this form?
16     A.    It's stamped on the upper left of the
17  form June 28.
18     Q.    What year?
19     A.    2018.
20     Q.    Now, there's some handwriting on the
21  next page, which the bottom of that page it has the
22  numbers 000404.  Do you see handwriting on that
23  page?
24     A.    Yes.
25     Q.    Can you read the handwriting to me,



Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

50

1  please?
2      A.    My handwriting?
3      Q.    Yes. Where it starts with "Identify
4  your attempts" -- this is in print. It says,
5  "Identify your attempts to resolve the issue with
6  the company, corporation or organization."
7          There's handwriting that begins with
8  "I." Can you read that for me, please.
9          MR. HAINES: We're looking at Bates
10 stamp 000404.
11         MR. PORRAS: 405.
12         MR. HAINES: Oh, 5, okay.
13 BY MR. PORRAS:
14     Q.    I'll first ask you is that your
15 handwriting that says "I requested proof of"?
16     A.    Yes.
17     Q.    Okay. If you could read that
18 handwriting for me, please. It starts with "I
19 requested proof of."
20     A.    "I requested proof of debt and type of
21 loan. They wanted fees and payment to do a
22 forbearance. I asked for the HOEPA verification and
23 credit for the other payments made and an educated
24 person to review the offer. They said that they
25 wouldn't stop reporting to allow for a refinance

51

1  unless I dared to do so without third party
2  participation or any proof of payments."
3          And it says, "Have you contacted another
4  agency? Yes. Nevada Hardest Hit, Legal Aid of
5  Nevada, HUD, U.S. Treasury."
6          It says, "Have you contacted an
7  attorney? Yes. Do you have one? No. I have no
8  money to pay."
9      Q.    Do you make any allegations of fraud on
10 this page?
11     A.    No.
12     Q.    Is there a reason you didn't allege any
13 fraud on this page?
14     A.    Yes.
15     Q.    Why was that?
16     A.    Because -- because, okay, every single
17 one of these requests were listed on a receipt.
18     Q.    Now, the next page, it's Bates stamped,
19 and by Bates, I mean the numbers at the bottom of
20 the page, start 0000406. Do you see that?
21     A.    Yes.
22     Q.    Okay. Is there a signature on that
23 page?
24     A.    Yes.
25     Q.    Is that your signature?

52

1      A.    I would think so. Yes.
2      Q.    You stated that was your handwriting
3  above. So I'm -- is it "yes" or "no," is that your
4  signature?
5      A.    Yes.
6      Q.    Okay. Now I'd ask you to look again at
7  the deed of trust, the signature page of the deed of
8  trust. I'd like you to compare it to -- the
9  signature there on this complaint.
10         MR. HAINES: Okay. So I'm referring her
11 to page 7 of 8 of the deed of trust?
12         MR. PORRAS: Yes, please.
13 BY MS. PORRAS:
14     Q.    Do those signatures look similar?
15     A.    No.
16     Q.    Why do you not think they're similar?
17         Does the L look different that looks
18 fraudulent?
19     A.    The B is different. The L is more
20 narrow. And on this the L and the B is wide.
21     Q.    Is your signature more or less always
22 the same?
23     A.    I think so. I hope so.
24     Q.    Can you please look at the note and
25 specifically page 2 of the note. Does that

53

1  signature resemble the signature on the complaint to
2  the State of Nevada?
3      A.    No. No.
4      Q.    Do you have any idea or speculation as
5  to how the documents that were taken by the notary
6  ended up with the notary's stamp and signature and
7  your signature on them?
8          MR. HAINES: We're objecting. She
9  testified that's not her signature.
10         MR. PORRAS: What now?
11         MR. HAINES: Her purported signature.
12         MR. PORRAS: No, no. The documents that
13 were taken by the notary on that day that she
14 refused to give the document -- or refused to give
15 the documents and then gave them back to the notary.
16 We're looking at the deed of trust here with two
17 signatures on it, the notary and an alleged
18 fraudulent person that did this signature.
19 BY MR. PORRAS:
20     Q.    Do you have any ideas or thoughts of how
21 that happened?
22     A.    Other than the person who had all my
23 information, the credit file, signature,
24 identification. They even had me put my closest
25 relative on there in their computer at their office

Lisa A. Bryant                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

54

1  to fill out these documents that they had me do.
2      Q.    Okay.
3      A.    This is something they do on a -- on
4  a -- the broker and signing agent.
5      Q.    Okay.  Now, I just have to pause for a
6  second.  I haven't been labeling these, and I don't
7  know if I'm going start losing -- it's --
8          George, do you mind if I just label
9  these just so I --
10          MR. HAINES:  Go ahead.
11          MR. PORRAS:  So I guess Exhibit 1 would
12  be the note.
13          Exhibit 2 would be the deed of trust.
14          Exhibit 3 would be the amended
15  complaint.
16          Exhibit 4 would be the state complaint.
17          And that's where we're at.
18  BY MR. PORRAS:
19      Q.    Okay.  Next, do you recall what the
20  result was of this state complaint?
21      A.    The result was whether it was ongoing
22  litigation -- actually, which complaint?
23  BY MR. PORRAS:
24      Q.    The first complaint.
25      A.    With which agency?

55

1      Q.    With the state, with the State of
2  Nevada.
3      A.    Financial institutions.
4          MR. HAINES:  Is that one beginning with
5  Bates stamp 000403?
6          MR. PORRAS:  Yes.
7          MR. HAINES:  Do you remember the
8  question?
9          MR. PORRAS:  I can ask again if you'd
10  like?
11          MR. HAINES:  Yeah, please.
12  BY MR. PORRAS:
13      Q.    Do you recall what the result of this
14  complaint was?  Did the state close the
15  investigation or continue with it?
16      A.    I believe the state forwarded it to the
17  agency of Mortgage and Lending Division.  Can I
18  clarify that is the complaint we're talking about?
19      Q.    Yeah, this is the complaint I'm talking
20  about.
21      A.    Okay.  So the complaint, you're asking
22  the outcome?
23      Q.    Yes.
24      A.    Okay.  The outcome was that that was for
25  one year, because -- there was nothing done on the

56

1  complaint for one year.  Either way, I notified them
2  that there was a -- I really don't know what to call
3  it, the lien was released.  And as such, the State
4  of Nevada decided that since the lien was released,
5  my home was no longer in a position of foreclosure,
6  and after one year they closed the complaint.
7      Q.    Did they conclude that there was fraud?
8      A.    They said they closed the complaint
9  because it was now reconveyed back, the debt, it was
10  no longer an issue and Waldman & Porras was no
11  longer seeking to foreclose my home.
12      Q.    I'm asking for an answer to the
13  question.  Did they conclude that there was fraud?
14  Did the State of Nevada conclude that there was
15  fraud?
16          MR. HAINES:  Objection.  Asked and
17  answered.
18          THE WITNESS:  They never --
19          MR. PORRAS:  She didn't answer.  She
20  didn't give me a "yes" or "no."  I'm looking for a
21  "yes" or "no" answer, not a roundabout answer.  I'm
22  looking for a "yes" or "no" answer.  The question
23  was did the State of Nevada conclude that there was
24  fraud.
25          MR. HAINES:  They never had to get to

57

1  that conclusion because the case was closed.
2          MR. PORRAS:  Well, that's still -- it's
3  still either a "yes" or "no" answer.
4          MR. HAINES:  Go ahead.
5  BY MR. PORRAS:
6      Q.    Can I insinuate if they didn't get to
7  it, that they didn't conclude that there was fraud?
8      A.    They did not complete there was or was
9  not either way because they said because of
10  reconveyance and without any action for one year,
11  they're forced to close the complaint.
12      Q.    I didn't see a document that says that.
13  So if you could provide that, I'd be curious to see
14  that document.
15          Now, you allege that Madison did not
16  have a servicing license in that complaint.  Was
17  there a resolution to that allegation?
18      A.    Madison does not have enough customers
19  in Nevada to require them.
20      Q.    To your recollection, did the State of
21  Nevada address that allegation in your complaint?
22      A.    Yes.
23      Q.    And how did they address that
24  allegation?  What was the result?
25      A.    That Madison Management does not have

Lisa A. Bryant                      Lisa A. Bryant v. Madison Management Services, LLC, et al.

58

1  enough accounts in the State of Nevada for them to
2  be under their jurisdiction.
3      Q.     Okay.  Now, do you recall, did -- was
4  there another complaint with the state that was
5  filed?
6      A.     Yes.
7      Q.     Okay.  And do you recall what the
8  allegations in your complaint at that time were?
9      A.     I don't recall.
10     Q.     You don't recall?
11     A.     No.
12     Q.     Okay.  Give me one second.  I'm going to
13  go next to the document, which we'll mark as Exhibit
14  Number 5, the response to the State complaint.
15     MR. HAINES:  Nick, I don't have that.
16  Do you want to give me a minute and I'll go --
17     MR. PORRAS:  I'm going to run to the
18  restroom, too.  This would be a good time for a
19  restroom break.
20     (A recess is taken.)
21     MR. PORRAS:  This will be Exhibit
22  Number 5.  This is a letter that's PDF entitled
23  "Madison Response to State Complaint."
24     MR. HAINES:  And it begins with Bate
25  stamp Lisa Bryant 000469?

59

1      MR. PORRAS:  Yes.
2  BY MR. PORRAS:
3      Q.     Ms. Bryant, do you have that document in
4  front of you right now?
5      A.     Yes.
6      Q.     And there's a date on the upper
7  right-hand corner.  Can you tell me the date of this
8  document, please?
9      A.     Wednesday, November 28th, 2018.
10     Q.     And to the left, there's an address and
11  a person's name listed.  Can you tell me the
12  person's name?
13     A.     Monica Hedrick.
14     Q.     And the agency that it's addressed to?
15     A.     Financial Institutions Division.
16     Q.     And the address, please?
17     A.     Pardon?
18     Q.     The address, please.
19     A.     3300 West Sahara Avenue, Suite 250,
20  Las Vegas, Nevada 89102.
21     Q.     What's the subject of this document?
22     A.     Complaint from --
23     (Technical difficulties.)
24     MR. PORRAS:  We only heard "complaint
25  from."

60

1      THE WITNESS:  I thought you asked for
2  the subject.
3  BY MR. PORRAS:
4      Q.     Yeah, we just heard "complaint" --
5      A.     Complaint from Lisa Bryant.
6      Q.     Yeah.  Ms. Bryant, have you seen this
7  document before?
8      A.     Yes.  Yes.
9      Q.     This was provided by your counsel as
10  discovery, and it's in reference to the complaint
11  that we discussed earlier filed by the state.
12     Now, when you received this response,
13  did you file another response?
14     A.     Later.  Yes, I did later.
15     Q.     Now, if you can just read for the record
16  that second paragraph begins with "Madison began
17  servicing this loan in August of 2014."
18     A.     You want me to read that?
19     Q.     If you don't mind, please?
20     A.     "Madison began servicing this loan in
21  August 2014."
22     Q.     Keep going.
23     A.     "This loan was transferred to Madison
24  from Laguna Capital, LLC.  When the loan was brought
25  over, the borrower was delinquent.  Madison first

61

1  spoke to borrower on September 8, 2014.  Mrs. Bryant
2  stated that she was working on a loan modification
3  with her first mortgage and was interested in
4  working something out on the second lien.  Madison
5  had mailed out a financial application to the
6  borrower on 9/15/2014.  After that, Madison could
7  not get in contact with the borrower from 9/29/2014
8  through January 18th, 2016, at which time, this loan
9  was transferred to PVK Properties, LLC, effective
10  January 18th, 2016.
11     The borrower then contacted our office
12  8/23/2016 inquiring about her loan.  Since the loan
13  had been transferred to PVK Properties, LLC, we
14  provided the contact information for them.  From
15  August 14th through January 2016, there were no
16  payments made by this borrower."
17     Q.     Okay.  Thank you for reading that.
18     Now, is there any truth, in your
19  opinion, to the statements made in that paragraph?
20     A.     Absolutely not.
21     Q.     Okay.  So you never contacted Madison
22  during those days?
23     A.     I contacted Madison on probably
24  8/23/2016 asking them about what Mr. Katz -- at the
25  time I didn't know who he was -- had told me if I

Lisa A. Bryant                           Lisa A. Bryant v. Madison Management Services, LLC, et al.

---

62

1  wanted information on a debt, I needed to call them.
2        They said they did not have my contract.
3  They didn't know my name. They didn't know why I
4  was calling and I should contact the person back who
5  sent me a text, because it was not their account.
6      Q.     So there is some truth to it. So you
7  did contact them around 8/23/2016?
8      A.     Yes.
9      Q.     Now, the next paragraph, it states
10 that -- if you'd just like to read that. Maybe that
11 would be easier than having to read everything. If
12 you could please just read that second paragraph.
13     A.     "Madison began servicing" --
14     Q.     You can just read it to yourself if
15 you'd like.
16         MR. HAINES: Just review and read it,
17 and let us know when you're ready.
18         THE WITNESS: Okay.
19 BY MR. PORRAS:
20     Q.     Now, do you recall Madison reaching out
21 to you around that time in 2017?
22     A.     Madison sent me a letter.
23     Q.     Okay. Would that be the homeowner
24 options letter, perhaps, referred to in that
25 paragraph?

---

63

1      A.     It was an initial introduction letter.
2      Q.     Okay. It says "Along with copies of the
3  collateral file."
4          Are you familiar with that term
5  "collateral file"?
6      A.     No, not really.
7      Q.     Okay. Collateral file typically refers
8  to the loan documents such as a note in mortgage or
9  deed of trust in the State of Nevada.
10         Do you recall receiving any documents
11 like that on or about 9/25/2017?
12     A.     No.
13     Q.     And the next paragraph, if you could
14 read that, please.
15     A.     Are you talking about the one "On
16 10/2/2017"?
17     Q.     Yeah. Just read it to yourself, you
18 don't need to read it out loud. If you could review
19 that to refresh any recollection you may have,
20 please.
21     A.     Okay.
22     Q.     Now, are you familiar with Hardest Hit
23 Fund, HHF?
24     A.     Yes.
25     Q.     Did you ever apply for that?

---

64

1      A.     Yes.
2      Q.     Okay. And was your application denied?
3      A.     Yes.
4      Q.     Okay. And did you inform Madison of
5  your application being denied?
6      A.     Yes.
7      Q.     Okay. At that time, did you inform
8  Madison that this is perhaps a fraudulent loan?
9      A.     I asked Madison to find the service
10 history so they would know it was fraudulent.
11     Q.     Okay. So at this time, you made
12 allegations of fraudulent loan?
13     A.     I was talking to her, yes, about that.
14     Q.     Yet --
15     A.     Anasia.
16     Q.     Now, did you allege it was fraudulent
17 because they couldn't produce the payment history?
18     A.     No. I said they needed the payment
19 history so that we could discuss the history of this
20 debt.
21     Q.     Now, did you apply for the HARP program,
22 H-A-R-P?
23     A.     I don't know what it was called. I did
24 apply for a program that they had.
25     Q.     Okay. Now, if you could just to

---

65

1  yourself read the next paragraph, "On 2/20/2018."
2      A.     Okay. I am done reading it.
3      Q.     Do you ever recall a discussion of a
4  forbearance agreement?
5      A.     Yes.
6      Q.     Okay. And did you negotiate with either
7  Mr. Katz at PVK or Madison details of a forbearance
8  agreement at any point?
9      A.     No.
10     Q.     I'd like to you read the next paragraph,
11 please.
12     A.     Okay.
13     Q.     Do you recall any time on or about
14 3/13/2018 saying that you could afford $300 a month
15 payment towards this debt?
16     A.     I do recall. It's out of context. The
17 statement, all four of them, are out of context.
18     Q.     Okay. If you could provide context,
19 please.
20     A.     Anasia contacted me and asked me, she
21 said that Mr. Katz was getting restless and that she
22 needed to make some agreement and could I afford 300
23 a month, what kind of terms could I meet.
24         I said, "I could afford 300 a month, but
25 you'd have to give me the payment history. You'd

---

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

---

66

1  have to give me all the documents I'm requesting
2  because that will show the history of the debt which
3  would go into the police record, the police report."
4      Q.     Which police report are we referring to?
5  The one in 2009?
6      A.     Two. I have one from 2009 and one from
7  the individual handwritten 2010 when I found them.
8      Q.     2010 police report. This is the first
9  mention I've heard of that police report. Does that
10  mention Madison or PVK or any other person
11  associated with this loan?
12      A.     I did not know Madison or PVK until
13  2017, late 2017. Anasia was asking me, she was
14  asking me and informing me that she would make an
15  offer, if I could afford that, and in return she
16  would remove all negative credit history, and I
17  would then need to refinance this debt and pay
18  Mr. Katz out. And I said, "No."
19      Q.     Okay. Did you have any hesitation
20  entering into an agreement of a debt that you allege
21  is completely fraudulent?
22      A.     I told her I can't agree to the terms
23  because it's not mine.
24      Q.     Okay. Was there any time that -- and
25  I'm referring to that paragraph -- that Mr. Katz or

---

67

1  Madison offered $550 a month and you came back with
2  a counteroffer of $300 a month?
3      A.     No. She asked me if I could afford
4  certain sums and if I would -- and if they would
5  agree to remove it, and I said, "Whatever you're
6  offering, you need to put it in writing, because
7  everything you're saying is verbal." I said, "I
8  have nothing in writing at all from you. This is
9  nothing but verbal. You don't have my payment
10  history I asked for. You don't seem to have the
11  documents I request." I said, "This isn't mine."
12          And I never got all of the documents
13  until much later on. I did not get to see all these
14  documents immediately.
15      Q.     Okay. I'm just asking in a verbal
16  manner. If they made an offer of 550 a month, did
17  you give a verbal counteroffer of $300 a month or
18  any other offer at any point --
19      A.     No.
20      Q.     -- when she offered monthly payments?
21      A.     No, no, no. I can say it again. She
22  made an offer to me, and in return, she would remove
23  all the negative credit reporting. She said, "Can
24  you afford 300? You need to pay $300 as a fee and
25  you need to pay that fee."

---

68

1          A HOEPA loan does not require a fee for
2  any type of debt to be refinanced. So I asked her
3  to find these documents so we could review the
4  history of the loan.
5      Q.     Okay. The next paragraph, please. It's
6  the next page, which is Bates number -- and by Bates
7  number, I mean the number at the bottom of the
8  page -- 000470.
9      A.     Okay.
10      Q.     Now, is there any truth to that
11  paragraph? Were you advised by someone to file
12  bankruptcy or contact the attorney general?
13      A.     Immediately -- there was two times I was
14  told that. No, one time I was told to do that. And
15  that was the initial letter I received from Madison,
16  I took and had initial meetings with two law
17  firms -- one law firm.
18      Q.     One law firm. Did they advise you to
19  file bankruptcy or contact the attorney general?
20      A.     They said to do one of three things:
21  pay them, attempt a settlement that would have paid
22  the attorney, or file bankruptcy.
23      Q.     Did the attorney or anyone you met with
24  at that time advise you that if you're alleging it's
25  a fraudulent debt, to go to the police department or

---

69

1  to the attorney general?
2      A.     I said I'd already done that and this
3  was a commercial debt.
4      Q.     Okay. But you'd done that. Can you
5  clarify what "that" is? I said two things, the
6  attorney general or police department.
7      A.     I had -- I had previously filed these
8  police reports. And the police reports in 2009,
9  2010, and at the time that Madison approached me,
10  the individual that had done this was still alive
11  and being interviewed or investigated with the FBI.
12      Q.     So do you know who this individual is?
13      A.     It was -- it was the broker.
14      Q.     So you're alleging the that broker is
15  the one that forged your signature?
16          MR. HAINES: More of a specific person,
17  right? It was the employee of the broker?
18          THE WITNESS: It was -- okay, the broker
19  Gene Kirschman in San Diego, and his assistant,
20  Hinda Hinden was in Las Vegas.
21  BY MR. PORRAS:
22      Q.     Okay. I'm just curious as to why, if
23  you know who these individuals are and you know
24  they're alive and still possibly perpetuating fraud,
25  were they never named in a police report?

---



Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

70

1        MR. HAINES:  Objection.  She did name
2  them in a police report.
3        THE WITNESS:  I took the police report
4  to Metro when I found the individual, and they
5  prepared a notarized affidavit.  And I filed that
6  with Metro.  And several years later, they were
7  apprehended.  And I received a phone call that the
8  district attorney was working on it.
9        Then later, when I got a letter from
10 Madison, I contacted the individual, and they were
11 being interviewed with the FBI under various
12 allegations of similar activities.  They then
13 quickly died.
14 BY MR. PORRAS:
15     Q.    Was this the 2009 police report or 2010
16 police report?
17     A.    The police report that was in 2010 sat
18 dormant for several years, and then I received a
19 phone call from a district attorney telling me that
20 they had apprehended the individual, that there's
21 several identifications, checks, credit cards and
22 that individual was in custody, and they were
23 working on it.
24     Q.    Okay.  And I saw the police report --
25 sorry.  Go ahead.

71

1      A.    That affidavit was provided to the Metro
2  police department, and in 2017 when I had received a
3  letter from Madison, I went back to the individual
4  that stole my identity.  I tried calling Metro and
5  the district attorney, and they had some --
6  something going on.  I couldn't find out how they
7  took care of them, but she told me not to talk to
8  her anymore at that point because she was dealing
9  with the FBI on various other allegations, and she
10 had cancer, Stage 4.  She said there would be more
11 to come, but I needed to leave her alone.
12     Q.    And I saw the police report and there's
13 mention of credit cards.  I've seen the 2009 police
14 report, there's a mention of credit cards.
15        What I'm trying to determine if there's
16 any police report that names either mortgage fraud
17 or fraud against the property here at -- on
18 Racetrack Road or a complaint or report with the
19 Nevada attorney general naming, not credit card
20 fraud, mortgage fraud?
21     A.    In 2009, I was getting the phone calls
22 on a fax machine, which at the time, anybody who
23 really wanted to contact me would have known how to
24 contact me through my business licenses and
25 addresses associated.  And to have my fax machine

72

1  continue to ring and ring days in and days out, and
2  I answered them, and upon that, I received a phone
3  call from Bayview.  They call themselves Bayview
4  collections.  It was called Bayview collections.
5  And they said that they were looking for me for
6  nonpayment.
7        That was a commercial debt.  The
8  individual that did this always told me that this
9  was a commercial debt, and since I never saw any
10 reference that would say anything else.  So in 2010,
11 they wrote the memo, and it says specifically in
12 there that while reviewing all of Lisa Bryant's
13 credit histories, I saw which ones I could use and I
14 even opened up new ones.  This was believed to be a
15 commercial debt.  Bayview's documentation refers to
16 it as a commercial debt.  Commercial debt is not
17 recorded against my personal residence.
18        I asked the Bayview -- I asked Bayview
19 if this was a home loan, and they said no.  I
20 continued to ask Bayview, continued, and they always
21 said no.
22     Q.    Okay.  So as I said, this is a "yes" or
23 "no" question.  Was there any -- I didn't see the
24 2010 police report.  Was there any specific mention,
25 not to credit cards, but to mortgage fraud or a

73

1  mortgage company illegally trying to collect?
2  That's a "yes" or "no" question or "I don't know."
3      A.    I don't know.
4      Q.    Okay.  The response is Exhibit Number 5.
5        Going to the next one.  This is entitled
6  "Bryant Options Madison 2017."  I'll be marking this
7  as Exhibit Number 6.  Okay?
8        MR. HAINES:  Okay.  So --
9        MR. PORRAS:  It's one page.
10       MR. HAINES:  From Madison Management?
11       MR. PORRAS:  Yes.  George, it has some
12 handwriting on the upper right.
13       MR. HAINES:  We've got it.
14 BY MR. PORRAS:
15     Q.    Do you recognize the handwriting on this
16 page?
17     A.    Yes.
18     Q.    Is it yours?
19     A.    Yes.
20     Q.    It says, "Met with lawyer."  Do you
21 recall the lawyer who you met with was?
22     A.    No.
23     Q.    Did you pay this lawyer or was it a free
24 consultation?
25     A.    Free consultation.



Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

---

74

1    Q.    Now, there's four options there.  Can
2  you tell me what those options are?  It says number
3  1, number 2, Number 3, number 4?
4    A.    Pay the lawyer $30,000.  He said that
5  was to start.
6    Q.    Okay.
7    A.    He said it would be smarter to
8  negotiate.  File bankruptcy or Chapter 7.  Or move.
9    Q.    Okay.  Now, did you tell this attorney
10  that this is a completely fraudulent loan?
11    A.    Yes.
12    Q.    Did he advise you as to any steps to
13  take if this is a completely fraudulent loan?
14    A.    He asked me if I ever filed a police
15  report.  I said yes.  And I told him that the person
16  who stole my identity told me numerous things that
17  she did and she wasn't alone.  She was with Gene
18  Kirschman.  And she told me "fraud deciates (sic) a
19  contract."  And this is a commercial loan.  It was
20  HOEPA, and without that certificate, that -- she
21  said that's why we wrote it up commercial to avoid
22  requirements.
23        So she said that's fraud.  She already
24  put in her letter with me that she was working on --
25  on -- that she had access to all my credit, was

---

75

1  working on these loan documents, and because the
2  credit file was done in her office, she saw stuff
3  and she got -- she did what she did.
4    Q.    Now, did you -- when you met with this
5  attorney, you seemed very confident that this person
6  that stole your identity is Gene -- is it Kirschman?
7    A.    Kirschman.
8    Q.    Okay.  Did you -- when you met with this
9  attorney, did you say, I know who stole my identity
10  and is that an option, going after that person?  I
11  don't see that as one of the options here?
12    A.    They're dead.  Deceased.
13    Q.    Okay.  When did she die?
14    A.    Hinda Hinden died sometime in, I
15  believe, in 2018.
16    Q.    Who's Hinda Hinden?
17    A.    She's the one who -- she -- she told me
18  that she had copies of my passport, I.D.s, driver's
19  license and that she practiced my signature 2000
20  times a day and I would never know the difference.
21  And she's the one that I referred to to the lawyer,
22  and he said that if I'd already filed the police
23  report, it wouldn't matter.
24    Q.    Okay.  I didn't see these names in a
25  police report.  Again, I didn't see the 2010 police

---

76

1  report, or I didn't see these names in the complaint
2  to the state or mentioned here.  Is there a reason
3  you didn't mention those to the state, those names
4  to the state?
5    A.    They are in there.  And Hinden told me
6  she was talking to all these agencies.  She also had
7  cancer.  And if she was talking to all the agencies
8  and talking to any debtors and Madison or anybody
9  else would have sent a certified letter to her,
10  anybody, and it says in both these documents, any
11  notification or letters must be sent by certified
12  mail.  Though --
13    Q.    I --
14    A.    So they would have on record her address
15  her phone number.
16    Q.    So -- go ahead.
17    A.    So she told me she was talking to
18  everybody that -- that was looking to any debt that
19  she had and owed, and she was calling every one of
20  them every month and making agreements or paying
21  what she could afford until she ran out of money.
22        Then when I re-located her, 2017 in
23  early 2018, she stated that she had cancer.  She was
24  still communicating with everybody and the FBI.  And
25  if she was talking to anybody, they would know.

---

77

1    Q.    So I heard you say you're alleging that
2  my client was talking to this Hinda Hinden, my
3  client Madison Management Services was talking with
4  her and sending her documents; is that correct?
5      MR. HAINES:  Objection.  You're
6  testifying to Ms. Bryant.
7      THE WITNESS:  No.
8      MR. HAINES:  She didn't say your client.
9  Do you want to clarify your response?  I believe you
10  said that she was contacting these creditors, but do
11  you know who she was contacting specifically?
12      THE WITNESS:  Hinda said that she was
13  contacting the creditors that had record of, and
14  she was not talking to Madison nor PVK.
15  BY MR. PORRAS:
16    Q.    I'm sorry.  I'm just a little confused.
17        So you continued to have conversations
18  with her as she was fraudulently using your
19  identity?
20    A.    I contacted --
21      MR. HAINES:  Objection.  Is that a
22  question?
23      MR. PORRAS:  Yes, that's a question.
24  It's -- it seems to me that she's saying she's
25  having a conversation -- conversations with Hinden

---

Lisa A. Bryant                        Lisa A. Bryant v. Madison Management Services, LLC, et al.

78

1   as Hinden is stealing her identity?  Is that the
2   connection I'm making here?  I'm not quite sure I
3   understand.
4           THE WITNESS:  No.
5           MR. HAINES:  You started speaking to
6   Hinden after she was already admitting the fraud,
7   apprehended?
8           THE WITNESS:  Many years later.  Ten
9   years, 15 years later, I re-located her to ask her
10  to do another letter for me or who she was
11  communicating to.
12  BY MR. PORRAS:
13      Q.    What kind of letter is that?
14      A.    I wanted her -- she said she had cancer
15  and was dying and was being interviewed with the
16  FBI.  And as such, any information I wanted, I
17  needed to get from them, and she would be providing
18  further information on how she used my identity.
19      Q.    Okay.  And then -- and I'm still missing
20  the connection.  Is Hinden an employee or was she an
21  employee of Kirschman?
22      A.    Yes.
23      Q.    And Kirschman was already dead?
24      A.    At this point, I was still looking for
25  him.

79

1       Q.    Okay.  It's a man.
2           Now, going back to this letter that has
3   Number 1, Number 2, Number 3, Number 4, there's a
4   star and it says "Fraud deciates" -- or I'm not sure
5   what that second word is?
6       A.    This is her statement to me, Hinden.
7   "Fraud deciates a contract."  And it was started
8   from fraud, it's still fraud, it's a commercial loan
9   on a house, it's a HOEPA loan, and all this --
10          MR. HAINES:  Try to just answer the
11  question.
12          MR. HAINES:  What was the question,
13  Nick?
14          MR. PORRAS:  She said fraud deciates a
15  contract, so.
16  BY MR. PORRAS:
17      Q.    The next one, it says "Note:"  And,
18  again, it talks bankruptcy number 7 and refi.
19          Why is this repeated twice, number 3 and
20  after note?
21      A.    I was insulted.  I was very insulted and
22  angry and I went down to Legal Aid.
23      Q.    Okay.  Next I'm going to -- and I'm
24  going to be marking this as Exhibit Number 7, the
25  Bryant Call Log.

80

1           MR. HAINES:  Okay.  It's in front of
2   her.
3   BY MR. PORRAS:
4       Q.    And I'm going to go with the last page,
5   which is page 44.  It's our --
6           MR. HAINES:  The last page.
7           THE WITNESS:  The last page?
8           MR. HAINES:  Yeah, I think he said the
9   last page.
10          MR. PORRAS:  The number has 68 at the
11  bottom, Lisa Bryant 000068.
12          MR. HAINES:  She's there.
13  BY MR. PORRAS:
14      Q.    And then up one more, so we're going to
15  be going backwards because the last page is the
16  oldest and the first page is the newest.
17          So number 67, this is an e-mail from
18  Ms. Rivera to Mr. Katz saying they've done a skip
19  trace, and it looks like Ms. Bryant does not live in
20  the property.
21          Did you live at the Racetrack property
22  on or about September 5th, 2017?
23      A.    No.  I lived on Racetrack?
24      Q.    This is the property we're talking
25  about, Racetrack.

81

1       A.    Right.
2           MR. HAINES:  Were you living there?
3           THE WITNESS:  I am living at Racetrack.
4   BY MR. PORRAS:
5       Q.    At this date in 2017?
6       A.    Absolutely.
7       Q.    At the bottom, it says 000066 is the
8   Bates number.
9       A.    Okay.
10      Q.    Now, on this page partway up, there's an
11  address where it says that there was a contact
12  letter sent to an address, 738 Nectarine Court,
13  Henderson, Nevada via regular mail.
14          Are you familiar with that address?
15      A.    I received two letters the same day.
16  One had a white sticker over it addressed to my
17  daughter's address at Nectarine Court.
18      Q.    That's your daughter's address,
19  Nectarine Court?
20      A.    Yeah.  And I had some utilities going
21  there.
22      Q.    Is there a reason you had utilities sent
23  to Nectarine Court?
24      A.    Yeah, my daughter and my grandson.
25          MR. HAINES:  Were you paying utilities

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

82

1   there?
2        THE WITNESS: I forwarded my mail and
3   stuff to her so she could get it for me, but I did
4   pay a -- a fax phone number there briefly. So I
5   received two letters on the same day, one to
6   Racetrack and one to Nectarine Court. But I had to
7   wait for Nectarine Court until my daughter gave it
8   to me.
9   BY MR. PORRAS:
10   Q.    Moving up to Bates number 000065. Now,
11   there's a phone number given on this page (702)
12   379-3011. Is that your cell phone number?
13   A.    Yes.
14   Q.    Do you recall a Howard contacting you
15   and offering you a discount on satisfying the loan?
16   A.    Yes.
17   Q.    Did you tell Mr. Katz or anyone else at
18   Madison or PVK that your roof needs repair, shingles
19   are missing on one side and there's a foundation
20   issue?
21   A.    When I spoke to Chase and I spoke to --
22   Mr. Katz didn't tell me what the debt was due on.
23   He just said he was going to file a lien on me.
24   Q.    When you received these letters at both
25   Nectarine Court and Racetrack, didn't that -- did

83

1   you draw the connection that Mr. Katz and Madison
2   are perhaps the same entity?
3   A.    No. I did at that point, but the
4   initial contact with Mr. Katz -- I actually had a
5   developer that wasn't paying his workers in
6   California, a builder and they were contacting me.
7        So I didn't know -- I did not know what
8   Mr. Katz was after. And when I contacted Madison,
9   they didn't have my account and they didn't talk to
10   me, and they did not give me Mr. Katz name. They
11   told me to contact the person who had sent the text
12   to me and ask them questions.
13   Q.    And as we read in the letter earlier, as
14   you read in that paragraph earlier that stated there
15   was a period of time where Madison was not servicing
16   the loan and they directed you to call Mr. Katz.
17   You read that into the record earlier. Okay.
18       Next. Now, was there a period of time
19   where you started placing phone calls to Madison,
20   not to Mr. Katz?
21   A.    Excuse me. When you ask me to look at
22   this document, it's referencing a conversation that
23   was months prior, and those months prior, there was
24   nothing assigned or recorded of any assignment,
25   period. So why would I think anything different.

84

1   Q.    I'm sorry. Assignment? I'm sorry.
2   Assignment? I'm not sure what you mean by
3   assignment.
4   A.    When Mr. Katz text me -- he did not call
5   me, he texted me, and he was texting me that I owe
6   him money and he did not state why.
7   Q.    Okay.
8   A.    And then he said, "If you have any
9   questions, call this number."
10       Madison didn't know who he was, didn't
11   have an account, they put me on hold, and they just
12   simply told me to contact the person who text me.
13       I finally did call Mr. Katz that day,
14   and he did not tell me where the debt was coming
15   from. What he says is he's going to file a lien and
16   enjoy that low hanging fruit.
17       I said, "Well, good luck with that.
18   Because it needs a lot of work."
19       And there's nothing recorded on that
20   date.
21   Q.    Now, you mentioned earlier, you received
22   a letter at Nectarine Court and at Racetrack. Who
23   is this letter from?
24   A.    Madison Management.
25   Q.    Okay. So after you received those

85

1   letters, did you begin having conversations with
2   Madison?
3   A.    Yes.
4   Q.    And what kind of conversations did you
5   have with Madison after receiving those letters?
6   A.    That I just -- that I just was doing a
7   modification on my home, that this did not show up.
8   Q.    Did you inquire as to what Madison was
9   attempting to collect on.
10   A.    I told Chase Morgan -- Chase Bank, I
11   told Chase Bank that I had this show up, and it was
12   probably the phone call, and I asked them how to
13   address it.
14   Q.    Okay. I'm asking did you ask Madison
15   what this was about, the letter, not Chase. I'm
16   asking did you ask Madison.
17   A.    Yes.
18   Q.    Okay. And did they tell you what it was
19   about?
20   A.    Yes. That they were the servicer for a
21   debt, and that I needed to start some documentation
22   and fill out some financials.
23   Q.    Okay. Did you give any other response
24   when they said it was a debt to Madison such as this
25   is fraud?



Lisa A. Bryant                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

---

86

1    A.    No. I would not give them any type of
2 documentation, and I wouldn't fill anything out for
3 anybody with Madison. I went to -- back to Chase
4 and to some program that was out there for Nevada.
5    Q.    Just to be clear, this is a "yes" or
6 "no" question. I asked did you allege fraud at or
7 near the time you received these letters both at
8 Nectarine Court and Racetrack, did you allege fraud
9 to Madison? It's a "yes" or "no" answer.
10   A.    No.
11   Q.    Up to Bates number 64, that's 00064 at
12 the bottom of the page.
13   A.    Yes.
14   Q.    Now, towards the top of that page, it
15 says a phone call coming in from (702) 379-3011,
16 which you said was your cell phone. It says, "She
17 had a conference meeting with the HHF," which is --
18 I forget who that stands for, but they sent her to a
19 department that handles second liens, they're in the
20 process of filling out paperwork.
21          Do you recall ever talking to a
22 department to handle second liens and having a
23 meeting with them?
24   A.    Chase and this company, this HHF, said
25 that they would verify a debt and handle it, but I

---

87

1 had to fill out an application, and that seemed the
2 easiest way to get to the fraud.
3    Q.    To fill out an application to modify a
4 second mortgage?
5    A.    Well, they had a second -- I just --
6          MR. HAINES: HHF is the Hardest Hit
7 Fund?
8          THE WITNESS: Yes. So they had a
9 program and they said they would investigate the
10 debt for me as part of their application process.
11 BY MR. PORRAS:
12   Q.    Okay. And up above, the next page on
13 00063, it says you had a second appointment with
14 HHF. What was the results of that second
15 appointment?
16   A.    Which one? The second?
17   Q.    It's on 00063. It says there's a second
18 appointment with an HHF agent.
19   A.    Right.
20   Q.    Do you recall how things ended up with
21 HHF?
22   A.    They made me -- I don't recall.
23   Q.    Okay. Let's see. Now, on the page that
24 has 61 at the bottom, there is a number that was
25 alleged as you calling in saying you're going back

---

88

1 and forth with an underwriter regarding old and new
2 leases.
3          You said earlier Racetrack was never
4 leased out; is that correct?
5    A.    Correct.
6    Q.    Do you know what that statement is? Do
7 you recall ever having a discussion with Madison
8 about leases or an underwriter about leases?
9    A.    Yes.
10   Q.    What was the nature of that discussion?
11   A.    My husband has a property and it was
12 leased out, and they wanted to know the income on
13 it. Oh, it was on my income tax return and they
14 wanted information.
15   Q.    Now, you're having a discussion with the
16 underwriters. The underwriter, who's that exactly?
17 Is that someone -- were you looking to refinance or
18 who's the underwriting that was asking about these
19 leases and about the income on these leases?
20   A.    That was somebody with Hardest Hit Fund.
21   Q.    And Hardest Hit was telling you you need
22 to try to refinance in order to get --
23   A.    Help. They did not tell me to try to
24 refinance. I said that is what Anasia told me.
25   Q.    Okay. The page that has 00058 at the

---

89

1 bottom.
2    A.    Okay.
3    Q.    It says -- and this was an incoming
4 phone call. It says that HHF was denied.
5          So this HHF application was denied?
6    A.    Yes.
7    Q.    And did you alert Madison that you were
8 applying for other programs?
9    A.    I did. But they all -- they told me
10 that because Madison reported me to the credit
11 bureau --
12   Q.    Okay. And it says, it's alleging on
13 this page that you would like to be put on an
14 agreement. Did you ever tell Madison that?
15   A.    I asked Madison could they create an
16 agreement while they look for the documents, the
17 payment history and the history of the debt.
18   Q.    I'm just curious because it seems that
19 these conversations were happening, but we're going
20 through many months here and there's no mention of
21 fraud to Madison. Is there a reason why?
22   A.    Well, I told her that I needed the
23 payment history because I didn't make the payments
24 so I needed the payment history.
25   Q.    Okay. Now, I'm just asking this

---

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

90

1  because, as you see on the timeline, there comes a
2  point where all you mention is fraud. I'm just
3  trying to get an idea here why the allegations
4  started so late. We're at 2017, 2018 and there has
5  been no mention of fraud yet.
6       I'm going to -- now, was there ever any
7  mention of -- during this time period, of the
8  payment being too expensive or that you needed a
9  lower payment?
10     A.    She was asking me how much money -- she
11  said -- she wanted me to make a payment to him, and
12  in return, she would remove the credit. And
13  according to Hardest Hit Fund and, I guess, it would
14  be a legal aid or something, they told me that a
15  forbearance -- a forbearance is not acceptable
16  unless it's in writing. And that's where the
17  conversation was going back and forth. I finally
18  got her to send one.
19     Q.    Do you ever recall being offered a $450
20  monthly forbearance agreement?
21     A.    Something that she offered me.
22     Q.    Did you decline that?
23          MR. HAINES: Was that on a specific
24  page?
25  ///

91

1  BY MR. PORRAS:
2       Q.    Sorry about that. Page number 52,
3  00052.
4       A.    Sorry. What are you asking me?
5       Q.    I'm showing here in the notes there was
6  a $450 forbearance agreement offered and that it was
7  accepted by Ms. Bryant. She stated, "She doesn't
8  get paid until the 5th so she's requesting her due
9  date be switched to the 10th."
10      Do you recall having any conversations
11  like this or agreeing to a forbearance agreement?
12      A.    She was asking me what I could afford to
13  pay if I expected Mr. Katz -- she said she had to
14  talk to Mr. Katz; I had to offer something. And I
15  said, "Well, I still need the payment history, and
16  I'm not paying anything until I get the payment
17  history." I said, "I want the payment history and a
18  history of the debt." And I did tell her it will
19  show the payments came from somebody else because
20  somebody stole my identity.
21      Q.    Okay. Now, do you think maybe the
22  person taking these calls was intentionally leaving
23  that information off of the call log?
24      A.    Yes.
25      Q.    Do you -- did you -- during this period

92

1  of time, were you getting paid on the 5th of each
2  month?
3       A.    No.
4       Q.    No. Where were you working on or about
5  March 22, 2018?
6       A.    I wasn't.
7       Q.    Okay. Were you receiving disability at
8  that time?
9       A.    My husband gets Social Security on the
10  2nd.
11      Q.    So you were unemployed in March of 2018?
12      A.    Yes.
13      Q.    Now on page 50, 00050, partway up, on
14  March 30th, 2018, at 1:27 p.m., it says Lisa "called
15  in, the agreement fee will be paid by the 3rd over
16  the phone. Her husband is on Social Security and
17  she has seasonal income."
18      Are those correct or incorrect
19  statements?
20      A.    They're correct.
21      Q.    Okay. So what was your seasonal income?
22      A.    I informed her -- and you'll see in the
23  documents -- these are not accurate. But you'll see
24  in the documents that I informed her that I could
25  pay if she would get the payment history and all the

93

1  documents I need. But I would not pay until I
2  received those.
3       Q.    You just stated --
4       A.    And I told her --
5       Q.    Go on. Sorry.
6          MR. HAINES: Your question is seasonal
7  income, right?
8          THE WITNESS: Okay.
9  BY MR. PORRAS:
10      Q.    Correct. You said you had seasonal
11  income. I'm inquiring as to what was the seasonal
12  income?
13      A.    My sister said that she would help me
14  with some money.
15      Q.    So that's seasonal income?
16      A.    She works at a store, and they're only
17  open in the summertime, late spring, summer.
18      Q.    Okay. Were you helping her or she was
19  just going to give you money?
20      A.    She was going to give me money.
21      Q.    Going up to page 00046, there's a -- an
22  e-mail partway up on the page. It says, Lisa
23  L-I-S-A, Bryant, B-R-Y-A-N-T, IV at yahoo.com.
24      Was that your e-mail address and/or is
25  it still your e-mail address?

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

94

1    A.    Yeah.
2          MR. HAINES:  Yes to both questions?
3          THE WITNESS:  Yes.
4    BY MR. PORRAS:
5    Q.    Do you recall getting e-mails from
6    Madison at or about this time.  The date --
7    A.    Excuse me.  It's incorrect.  It's -- it
8    looks like my address, but it's -- it's -- the end
9    of it's wrong.  So it was sent back.
10         MR. HAINES:  The e-mail address is
11   wrong?
12         THE WITNESS:  Uh-huh.
13   BY MR. PORRAS:
14   Q.    What was the correct e-mail address?
15   A.    I want to say B-R-Y-A-N-T-I-Z.
16         MR. HAINES:  So what is your correct
17   e-mail address?
18         THE WITNESS:  That is the correct e-mail
19   is I-Z.
20         MR. HAINES:  I-Z.  This has I-V, V as in
21   Victor, instead of Z, zebra.
22         THE WITNESS:  Uh-huh, yes.
23   BY MR. PORRAS:
24   Q.    Wait.  So B-R-Y-A-N-T-I-Z, as in zebra?
25   A.    Yes.

95

1    Q.    Oh, there it is right above it.  This
2    user does not have a Yahoo account.  Sorry about
3    that.
4    A.    Okay.
5    Q.    Up to page 44.  Now, I think this is
6    your correct e-mail address L-I-S-A-B-R-Y-A-N-T-I-Z
7    at yahoo.com; is that correct?
8    A.    Yes.
9    Q.    And in this e-mail, the sender Anasia
10   Riviera says, "Please see the attached ACH form for
11   your completion."
12         Do you recall receiving this e-mail?
13   A.    I didn't see it at the time it happened.
14   Q.    Okay.  A couple e-mails up.  This
15   e-mail's from Lisa Bryant, again, it's
16   L-I-S-A-B-R-Y-A-N-T-I-Z at yahoo.com dated May 3rd,
17   2018.  Do you see that e-mail?
18   A.    Yes.
19   Q.    Can you read that e-mail to me below the
20   subject?  It starts with "Thank you."
21   A.    "I want to use a card for a one payment
22   as a new one is coming!  I also am desperate to
23   locate my payment history!!  Any other input to
24   assist would greatly help so we can get this
25   business forward positively!!  I am also assuming I

96

1    need to set aside these funds each month!!  Thank
2    you.  I'm on the phone driving through a remote area
3    to get to work!!  Thank you very much.
4          "I am also going to put up my contact so
5    you can handle this for me to that program I applied
6    for, as you're more experienced and will have the
7    information they need.  And Howard to be informed.
8    Is Madison registered with any HUD or government
9    service programs?  I want to get him fixed anyhow I
10   can by assistance programs and a job."
11   Q.    What does that statement -- did you
12   write this e-mail?  Does this look like your e-mail?
13   A.    Yes.
14   Q.    What do you mean by "I want to get him
15   fixed anyway"?  What does that statement mean?
16   A.    If they can get me the payment history
17   and a history of the debt and I can get one of these
18   programs that said that they would help with
19   verifying the debt, he'd be done.
20   Q.    Okay.  Didn't he send a verification of
21   debt when we first started this, 2018?
22   A.    His verification of debt -- his
23   verification of debt when I look at it, is not a
24   verification of a debt.
25   Q.    What is it?

97

1    A.    It's not a verification of the debt.
2    Q.    Okay.  How so?
3    A.    Well, because it's missing a lot of
4    things.
5    Q.    Okay.  Such as?
6    A.    Well, for one thing, he should have
7    recorded it before he ever contacted me.  Laguna
8    debt, or whoever they claimed did.  Madison didn't.
9    Any one of these documents could have been created
10   after the fact.  The notary doesn't have a notary
11   log for Bayview.  And it's not required in Florida.
12   Q.    In Florida?
13   A.    Any of these documents --
14   Q.    I'm just curious what does Florida have
15   to do with the notary in Nevada?
16   A.    Because the notary that you used on the
17   debt that was transferred to Newport or whoever you
18   claim, there's no record of it.
19   Q.    Okay.  Now --
20   A.    So you have a debt --
21         MR. HAINES:  Go ahead, Nick.
22   BY MR. PORRAS:
23   Q.    By sending this e-mail, did you question
24   to yourself that it may be strange to enter into a
25   repayment agreement on a debt you felt that is

Lisa A. Bryant                      Lisa A. Bryant v. Madison Management Services, LLC, et al.

---

98

1   fraudulent?
2         MR. HAINES:  Objection.  Asked and
3   answered.  She already answered that she wanted the
4   documentation validating the debt.
5         Do you want her to answer it again?
6         MR. PORRAS:  Well, I just -- I didn't
7   get kind of the -- at this time the present sense
8   impression of how she wanted to fix Howard if he was
9   attempting to collect a fraudulent debt.  Just -- I
10  don't know what she means by "fix."
11        THE WITNESS:  If Howard didn't
12  understand that this was a fraudulent debt, then he
13  was a victim just as I was.  So he needed to see the
14  same documentation that I knew existed and I was
15  looking for it.
16  BY MR. PORRAS:
17     Q.     But you said earlier Howard directed you
18  to talk to Madison from now on?
19     A.     Madison got the debt from Howard.
20  Madison told me many times they have no payment
21  history.
22     Q.     Well, I do have the payment history.  If
23  we want to go back to the documents here, we can go
24  back to them and I can direct you to the payment
25  history that was provided by Madison, but we'll

---

99

1   continue with this for now.
2         MR. HAINES:  Nick, do you have any idea
3   how much longer this is going to go?
4         MR. PORRAS:  Not much longer.  I just
5   have a couple more documents.
6   BY MR. PORRAS:  Now, the last question on this page
7   is on this document at 000039.
8         MR. HAINES:  39.
9         THE WITNESS:  Oh, 39.
10  BY MR. PORRAS:
11     Q.     Now, there's an e-mail dated May 11th,
12  2018 at 12:47 p.m.  do you see it?
13  It says, "Please accept a payment for
14  fee for forbearance agreement for 24 months and we
15  can discuss the need for your assistance to answer
16  questions on the programs available to get my
17  lender/investor some money."
18        Do you see that?
19     MR. HAINES:  00038?
20  BY MR. PORRAS:
21     Q.     39.  Do you think you wrote that e-mail?
22     A.     It's kind of weird because somebody
23  spelt my name wrong.
24     MR. HAINES:  Where?
25        THE WITNESS:  I needed her to call me

---

100

1   back immediately because my mother-in-law went into
2   hospice.
3   BY MR. PORRAS:
4      Q.     Okay.  Does it look like an e-mail you
5   wrote?
6      A.     It is and it isn't because my name's
7   spelt wrong.
8      Q.     Where is your name spelt wrong?
9      A.     Original message "Lisa Byrant."
10     Q.     Did you apply for -- did you have a tax
11  preparer that was helping you out?
12     A.     I did.
13     Q.     Did you have an iPhone?
14     A.     And they needed -- pardon?
15     Q.     Did you have an iPhone?
16     A.     Excuse me.  I do.
17     Q.     It may be different because it says sent
18  from my iPhone.
19        Now, in these documents that we just
20  reviewed, we saw some e-mails and some phone calls,
21  and you got to read a big portion of it.
22        Does it seem like you're conveying that
23  Madison is intentionally engaging in fraudulent
24  activity against you or are you alleging that
25  they're collecting on a fraudulent debt?

---

101

1      A.     Both.
2      Q.     Are there any e-mails -- we requested
3   discovery.  Are there any e-mails that show or
4   allege that Madison or -- during this time period
5   that Madison or Waldman & Porras are attempting to
6   collect a fraudulent debt?
7      A.     Yes.
8      Q.     I'm talking this time period before
9   2018.
10        MR. HAINES:  Are we talking about a time
11  period prior to 2018?
12        MR. PORRAS:  Prior to May -- prior to
13  May 20th, 2018, May 21, 2018.  I've combed through
14  all the documents, and I don't see any allegations
15  of fraud that Waldman & Porras or Madison is
16  intentionally engaging or recklessly engaging in
17  fraudulent collection activities as alleged in the
18  complaint that we read earlier in paragraph 39.
19        MR. HAINES:  And these notes as they
20  have been recorded by your clients?
21        MR. PORRAS:  Recorded by our clients and
22  gone through and noted on the question-and-answer
23  format by Ms. Bryant.
24        MR. HAINES:  Lisa testified that these
25  notes are not complete.

---

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

---

102

1      MR. PORRAS: Okay. And I'm just --
2  because I didn't see in the discovery any e-mails --
3  I see e-mail chains here that she's said is her
4  e-mail, and during these e-mails, I didn't see any
5  notations of fraud.
6      So if you have e-mails around this time,
7  stating she was alleging fraud, I would be grateful
8  if you can provide those to us, please.
9      MR. HAINES: Okay.
10 BY MR. PORRAS:
11 Q.    Okay. That was number 7.
12     Next document -- and we're almost done,
13 guys. "Garnett Notary Letter," we'll call this 8.
14     MR. HAINES: June 7, 2021?
15     MR. PORRAS: Yes.
16     MR. HAINES: Got it.
17     MR. PORRAS: I don't have anything from
18 this one, actually. Madam Court Reporter, we can
19 just note it as 8 just to have it there, that we
20 looked at it.
21     Okay. Number 9 is the "Bryant
22 Application for Assistance."
23     MR. HAINES: To the Legal Aid Center?
24     MR. PORRAS: Yes.
25     MR. HAINES: She's got it.

---

103

1  BY MR. PORRAS:
2  Q.    Okay. Now, if you could just take a
3  quick look at this document. Does this look like it
4  was completed by you, Ms. Bryant?
5  A.    Yes.
6  Q.    And on the first page, you checked off
7  items listed. State photo I.D. is checked. Bank
8  statements is checked. Most recent mortgage
9  statement is checked. Loan document agreement for
10 all loans checked.
11     Did you make those checkmarks?
12 A.    Yes.
13 Q.    So presumably you attached those
14 documents to this questionnaire or this statement?
15 A.    Yes.
16 Q.    And you have the first mortgage, number
17 7, it says, I receive monthly mortgage statements
18 from JP Chase as your first mortgage. You receive
19 monthly mortgage payments from -- second mortgage is
20 handwritten in there, Madison Management Services,
21 LLC, with an address of 400 Morris Avenue, Denville
22 New Jersey; is that correct?
23 A.    Yes.
24 Q.    And you have written in here last
25 mortgage payment you made for the first 4/16/2018,

---

104

1  right below the second 4/9/2009; is that correct?
2  A.    Did I write that? Oh, okay.
3  Q.    So are you stating there the last
4  payment you made was 4/9/2009 on your second
5  mortgage?
6  A.    That's when the -- Hinden, that's when
7  she last made it.
8  Q.    So you're saying Hinden made a payment
9  on 4/9/2009?
10 A.    Hinden was making payments for nearly
11 three years.
12 Q.    And she told you the last time she made
13 a payment?
14 A.    I actually got a copy of that. Nevada's
15 Hardest Hit had a woman there go through my credit
16 files and saw Bayview, and I told them the last I
17 remember is Bayview collections. So she was able to
18 use that to send them a letter, and that's also what
19 they showed, that Hinda Hinden last made a payment
20 on --
21     MR. HAINES: That date.
22     THE WITNESS: -- that date.
23 BY MR. PORRAS:
24 Q.    Now, is there any mention of fraud in
25 this document here or Hinden?

---

105

1  A.    Well, this is just basically a
2  questionnaire, so. The application.
3  Q.    I noticed that on documents after this
4  date that you put fraud. I'm just asking for this
5  particular document, is there any allegation of
6  fraud in this document?
7  A.    No.
8  Q.    You say -- please indicate -- it says
9  "Second mortgage went through bankruptcy two times,
10 an investor has now come to want my house. It was
11 modified with second on the application, but Chase
12 took off forbearance, offered to write without
13 payment history."
14     I'm not sure what that means. Do you
15 recall or can you just clarify that a little bit?
16 A.    It says "Second mortgage went through
17 bankruptcy two times and investor."
18     I started doing research trying to
19 locate the entity and I could not locate them. Then
20 come to find out they filed bankruptcy. And then it
21 forwarded something else and bankruptcy.
22     So it's very difficult to defend
23 something that wasn't there to defend. There was no
24 contact. No way to contact anybody. And Chase told
25 me -- they didn't say there was a mortgage, they

---

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

---

106

1  said they saw a lien.  But if nothing was recorded
2  on it, it was probably part of the identity theft
3  and at such time, they didn't take it serious.
4      Q.     In number 11 here, 11 (b), it says, "My
5  mortgage loan is delinquent."  Can you tell me what
6  is circled there?
7      A.     If you're not delinquent, they won't
8  help you.
9      Q.     So what is your answer to "(b) My
10  mortgage loan is delinquent," what does it say?
11     A.     Where does it say that?
12     Q.     On 11 (b).
13     A.     Oh.  I put yes, the second.
14     Q.     It's Bates number 347, next page.  It
15  says, "Briefly describe your legal problem."
16     A.     Okay.
17     Q.     Can you just read what that says?
18     A.     It says, "My first had modified HAMP,
19  but took second off stating it would not need to do
20  a second as long as I stayed current on my first."
21         They said two things, as long as I'm
22  current on my first and there's a lien on my
23  property, but they didn't tell me anything more.
24  And I told them about the identity theft, and they
25  said don't talk to anybody because right now I --

---

107

1  because of credit issue.
2         They said that's like a red flag, I'm
3  going to get all these phone calls and nobody's
4  filed or recorded anything.  After that modification
5  took place, exactly right after, along comes
6  Madison.
7      Q.     So the federal agency HAMP advised you
8  not to say anything about fraud?
9      A.     They told me not to deal with it until
10  it was recorded because of the credit issues.
11     Q.     And number 2, what does number 2 say
12  there?  1 says, "My 1st had modified HAMP, took
13  second off stating it would not need to do 2nd as
14  long as I stayed current on 1st."
15         And then number 2.  She was just reading
16  it and then she went off talking about --
17     MR. HAINES:  Number 2.
18     THE WITNESS:  The person who did this
19  for Chase, she said two things, the reason she told
20  me I shouldn't deal with it -- well, a couple
21  things.  She said don't deal with it, don't talk to
22  any of these people because they haven't recorded an
23  assignment, and your credit is an issue.  And she
24  also said also don't worry about it because as long
25  as you're current on the first, the second one can't

---

108

1  do anything anyhow.
2  BY MR. PORRAS:
3      Q.     I'll just read the second one.  It says,
4  "Wants my house and/or full original loan plus fees.
5  Investor bought loan, house is not underwater.  Only
6  me."  Okay.  That's it for this document.
7         And final document -- that was number 9.
8  Number 10 -- and I just have one question regarding
9  this.  This is the Garnett depo transcript.
10     A.     I had to text my husband.
11     MR. HAINES:  That's fine.
12     MR. PORRAS:  Okay.  I'm not going to ask
13  any questions regarding that.  I don't think
14  Ms. Bryant has any knowledge, but I'd like to go
15  back to what I labeled as number 8, just the notary
16  letter.  I just have a question regarding this one.
17  BY MR. PORRAS:
18     Q.     In paragraph 2, it says "After I located
19  at the journal, I copied the page where she signed
20  and provided a copy of that journal entry."
21         I didn't get a copy of that journal
22  entry.
23     MR. HAINES:  This is -- do you recall
24  receiving this from the notary?
25     THE WITNESS:  I know she sent me an

---

109

1  e-mail, but I don't remember.
2     MR. HAINES:  Do you want us to look for
3  that one, Nick?
4     MR. PORRAS:  Yeah, I think this is
5  pretty important, if she signed in a notary book
6  then something was signed.
7     THE WITNESS:  Pardon?
8     MR. PORRAS:  Typically the notary book,
9  that's the driver's license number and signature and
10  name of the document and she says she sent it to
11  Ms. Bryant.
12     MR. HAINES:  Okay.  So, Lisa, you can
13  try to look for that, see if you can find it.
14     THE WITNESS:  Uh-huh.
15     MR. PORRAS:  And, guys, I appreciate it.
16  Also if you don't mind if I can get a copy of her
17  driver's license.
18     THE WITNESS:  I don't have it on me.
19     MR. HAINES:  Yeah, we can get you a
20  copy.
21     MR. PORRAS:  Okay.  And that's it.  I
22  appreciate everyone's time.
23     Madam Court Reporter, I appreciate it --
24     THE WITNESS:  My passport?
25     MR. PORRAS:  Driver's license is fine or

---

Lisa A. Bryant                           Lisa A. Bryant v. Madison Management Services, LLC, et al.

110

1    whatever you want to make a copy of.
2            We can go off the record now.
3            George, do you have anything?
4            MR. HAINES:  No, I'm good.
5            THE REPORTER:  Mr. Haines, do you need a
6    copy of today's transcript?
7            MR. HAINES: Yes, please.
8            (Exhibits 1 through 10 marked.)
9
10          (The deposition concluded at 7:03 p.m.)
11                      -oOo-
12
13
14
15
16
17
18
19
20
21
22
23
24
25

111

1               CERTIFICATE OF DEPONENT
2    PAGE   LINE   CHANGE            REASON
3    _____
4    _____
5    _____
6    _____
7    _____
8    _____
9    _____
10   _____
11   _____
12   _____
13   _____
14          *    *    *    *    *
15       I, LISA A. BRYANT, deponent herein, do hereby
     certify and declare the within and foregoing
16   transcription to be my deposition in said action;
     that I have read, corrected and do hereby affix my
17   signature to said deposition under penalty of
     perjury.
18          _____
            LISA A. BRYANT, Deponent
19
20
21
22
23
24
25

112

1               CERTIFICATE OF REPORTER
2    STATE OF NEVADA  )
                      )SS:
3    COUNTY OF CLARK  )
4
5        I, Karen L. Jones, a duly commissioned and
     licensed Court Reporter, Clark County, State of
6    Nevada, do hereby certify:  That I reported the
     taking of the deposition of the witness, LISA A.
7    BRYANT, commencing on Tuesday, February 8, 2022 at
     3:20 p.m.
8
9        That prior to being examined, the witness was,
     by me, duly sworn to testify to the truth.  That I
10   thereafter transcribed my said shorthand notes into
     typewriting and that the typewritten transcript of
11   said deposition is a complete, true and accurate
     transcription of said shorthand notes.
12
13       I further certify that (1) I am not a relative
     or employee of an attorney or counsel of any of the
14   parties, nor a relative or employee of an attorney
     or counsel involved in said action, nor a person
15   financially interested in the action; nor do I have
     any other relationship with any of the parties or
16   with counsel of any of the parties involved in the
     action that may reasonably cause my impartiality to
17   be questioned; and (2) that transcript review
     pursuant to FRCP 30(e) was not requested.
18
19
20       IN WITNESS HEREOF, I have hereunto set my
     hand, in my office, in the County of Clark, State of
21   Nevada, this 22nd day of February 2022.
22
23       _____
             KAREN L. JONES, CCR NO. 694
24
25

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

---

**$**

**$30,000**
74:4

**$300**
65:14 67:2,17,24

**$450**
90:19 91:6

**$550**
67:1

**$804**
10:20

**$84,000**
43:8

**$90,000**
37:24 46:3

**$90,250**
16:8

---

**(**

**(702)**
8:21 82:11

**(b)**
106:4,9,12

---

**-**

**-ooo-**
110:11

---

**0**

**000039**
99:7

**0000406**
51:20

**000065**
82:10

**000066**
81:7

**000068**
80:11

**00038**
99:19

**000403**
49:11 55:5

**000404**
49:22 50:10

**00046**
93:21

**000469**
58:25

**000470**
68:8

**00050**
92:13

**00052**
91:3

**00058**
88:25

**00063**
87:13,17

**00064**
86:11

**03-85731**
20:21

---

**1**

**1**
15:11 54:11 74:3 79:3
107:12 110:8

**10**
108:8 110:8

**10/2/2017**
63:16

**10th**
91:9

**11**
33:6 106:4,12

**11th**
99:11

**12:47**
99:12

**14th**
61:15

**15**
78:9

**18**
9:17

**18th**
61:8,10

**1980s**

13:10

**1984**
8:6,7

**1985**
10:9,11

**1987**
11:25 12:11

**1:27**
92:14

**1st**
31:18 107:12,14

---

**2**

**2**
17:8 52:25 54:13 74:3 79:3
107:11,15,17 108:18

**2/20/2018**
65:1

**20-**
31:15

**2000**
75:19

**2006**
15:23 18:1 31:1 41:3

**2009**
11:1 33:21 34:16,19,25 35:3,
4,16 39:3 66:5,6 69:8 70:15
71:13,21

**2010**
66:7,8 69:9 70:15,17 72:10,
24 75:25

**2014**
31:18 60:17,21 61:1

**2015**
45:8

**2016**
13:13 14:12,14 41:10 43:2,
10 61:8,10,15

**2017**
41:2,12 43:10 46:7,11,12,17,
20 47:1,5 62:21 66:13 71:2
73:6 76:22 80:22 81:5 90:4

**2018**
31:16 40:21 46:22,23,24
47:1,5 49:19 59:9 75:15
76:23 90:4 92:5,11,14 95:17
96:21 99:12 101:9,11,13

**2019**
46:10

**2021**
102:14

**20th**
101:13

**21**
101:13

**22**
92:5

**24**
99:14

**250**
59:19

**28**
49:17

**28th**
59:9

**2nd**
15:23 18:1 31:1 92:10
107:13

---

**3**

**3**
16:10 54:14 74:3 79:3,19

**3/13/2018**
65:14

**30**
48:18

**300**
65:22,24 67:24

**30th**
92:14

**3300**
59:19

**347**
106:14

**379-3011**
82:12

**39**
33:4,5 99:8,9,21 101:18

**3rd**
92:15 95:16

---



Case 2:20-cv-00594-CDS-EJY   Document 62   Filed 03/17/22   Page 81 of 204

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

**4**

**4**
16:9,21 54:16 71:10 74:3
79:3

**4/16/2018**
103:25

**4/9/2009**
104:1,4,9

**400**
103:21

**405**
50:11

**44**
80:5 95:5

**5**

**5**
50:12 58:14,22 73:4

**50**
92:13

**52**
91:2

**550**
67:16

**5th**
80:22 91:8 92:1

**6**

**6**
73:7

**61**
87:24

**64**
86:11

**67**
80:17

**68**
80:10

**7**

**7**
18:14,16 21:24 52:11 74:8
79:18,24 102:11,14 103:17

**702 379-3011**
8:21 86:15

**702 565-7330**
8:24

**719**
8:2 11:12

**738**
81:12

**7:03**
110:10

**8**

**8**
18:16,22 19:16 21:24 33:6
52:11 61:1 102:13,19 108:15

**8/23/2016**
61:12,24 62:7

**800-and-something**
30:9

**80s**
13:20

**84**
8:8

**84,000**
42:16

**85**
8:10

**87**
12:12

**89015**
8:3

**89102**
59:20

**9**

**9**
102:21 108:7

**9/15/2014**
61:6

**9/25/2017**
63:11

**9/29/2014**
61:7

**94**
8:9

**A**

**ability**
9:21

**Absolutely**
61:20 81:6

**accept**
99:13

**acceptable**
90:15

**accepted**
91:7

**access**
74:25

**account**
44:15 62:5 83:9 84:11 95:2

**accounts**
58:1

**Accredited**
16:2,3 31:2,14 34:19 35:25

**accurate**
92:23

**accusing**
36:7

**ACH**
95:10

**acknowledged**
20:8

**action**
57:10

**activities**
70:12 101:17

**activity**
36:20 38:9 100:24

**address**
8:1,5 10:9,19 11:16 36:24
57:21,23 59:10,16,18 76:14
81:11,12,14,17,18 85:13
93:24,25 94:8,10,14,17 95:6
103:21

**addressed**
59:14 81:16

**addresses**
71:25

**adjusted**
14:6

**admitting**
78:6

**adult**
9:12

**advise**
68:18,24 74:12

**advised**
34:11 68:11 107:7

**affect**
9:21

**affidavit**
70:5 71:1

**afford**
65:14,22,24 66:15 67:3,21
76:21 91:12

**Affordable**
41:15

**afternoon**
4:14

**age**
9:17

**agencies**
76:6,7

**agency**
51:4 54:25 55:17 59:14
107:7

**agent**
54:4 87:18

**agree**
5:23 66:22 67:5

**agreed**
17:22

**agreeing**
91:11

**agreement**
65:4,8,22 66:20 89:14,16
90:20 91:6,11 92:15 97:25
99:14 103:9

**agreements**
76:20

**ahead**
38:20,21 45:3 54:10 57:4
70:25 76:16 97:21

**aid**
51:4 79:22 90:14 102:23

**Alaska**
26:8 30:9



Lisa A. Bryant

Lisa A. Bryant v. Madison Management Services, LLC, et al.

**alcohol**
9:24

**alert**
37:25 89:7

**alive**
69:10,24

**allegation**
57:17,21,24 105:5

**allegations**
47:25 51:9 58:8 64:12 70:12
71:9 90:3 101:14

**allege**
51:12 57:15 64:16 66:20
86:6,8 101:4

**alleged**
46:25 53:17 87:25 101:17

**alleging**
68:24 69:14 77:1 89:12
100:24 102:7

**allonge**
15:7

**Allonges**
14:21

**amended**
32:24 54:14

**American**
28:14,15

**amount**
16:7 43:14,15

**Anasia**
64:15 65:20 66:13 88:24
95:9

**Anchorage**
30:13

**and/or**
38:12 93:24 108:4

**angry**
79:22

**Anne**
7:25

**answering**
7:12,13,15 28:25

**answers**
5:2,13,14

**anymore**
71:8

**application**
61:5 64:2,5 87:1,3,10 89:5

102:22 105:2,11

**applied**
96:5

**apply**
42:21 63:25 64:21,24 100:10

**applying**
89:8

**appointment**
20:17,19 87:13,15,18

**apprehended**
70:7,20 78:7

**approached**
24:13 69:9

**approved**
41:11

**approximate**
13:11 31:15

**approximately**
8:13,14 11:1,6,25 13:20

**area**
96:2

**arguing**
27:6

**Arizona**
12:14,17,18

**arm**
26:21

**assigned**
83:24

**assignment**
45:5 83:24 84:1,2,3 107:23

**assignments**
42:19

**assist**
45:1 95:24

**assistance**
96:10 99:15 102:22

**assistant**
69:19

**assisted**
43:12

**associate**
26:2

**assume**
6:3,19

**assumed**
34:1

**assuming**
95:25

**assumption**
7:4

**attached**
15:7 27:18 95:10 103:13

**attaching**
29:7

**attempt**
5:8 68:21

**attempting**
48:2 85:9 98:9 101:5

**attempts**
50:4,5

**attorney**
39:22 40:3,9 47:21 48:10,19
51:7 68:12,19,22,23 69:1,6
70:8,19 71:5,19 74:9 75:5,9

**attorneys**
48:23

**August**
31:15,18 43:1 60:17,21
61:15

**authorities**
37:25

**Avenue**
59:19 103:21

**avoid**
74:21

**aware**
41:22 42:5

———————————————

**B**

**B-R-Y-A-N-T**
7:25 93:23

**B-R-Y-A-N-T-I-Z**
94:15,24

**back**
27:2,7,16,17 29:12 36:6
44:16 53:15 56:9 62:4 67:1
71:3 79:2 86:3 87:25 90:17
94:9 98:23,24 100:1 108:15

**backwards**
80:15

**bank**
13:22 23:2 26:3 34:10 44:21
85:10,11 103:7

**bankruptcy**
49:7 68:12,19,22 74:8 79:18
105:9,17,20,21

**basically**
105:1

**Bate**
58:24

**Bates**
49:11 50:9 51:18,19 55:5
68:6 81:8 82:10 86:11
106:14

**Bayview**
34:23,24 35:11,12,13,15,17,
24 36:3 37:2 72:3,4,18,20
97:11 104:16,17

**Bayview's**
72:15

**began**
60:16,20 62:13

**begin**
5:20 7:7 85:1

**beginning**
5:5 55:4

**begins**
50:7 58:24 60:16

**believed**
72:14

**bell**
43:16

**belonged**
28:13,14

**big**
100:21

**bit**
43:7 105:15

**bonuses**
27:10

**book**
109:5,8

**borrow**
16:3

**borrowed**
21:6

**borrower**
60:25 61:1,6,7,11,16

**bottom**
18:4 49:21 51:19 68:7 80:11
81:7 86:12 87:24 89:1



Lisa A. Bryant                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

**bought**
108:5

**break**
7:18,21 32:14 58:19

**briefly**
82:4 106:15

**broker**
22:21,23 23:17 25:24 26:2,
10 30:22 54:4 69:13,14,17,
18

**brought**
60:24

**Bryant**
4:7,20 7:25 9:5 14:20 15:9
17:1,9 33:8,11 49:9,11,13
58:25 59:3 60:5,6 61:1 73:6
77:6 79:25 80:11,19 91:7
93:23 95:15 101:23 102:21
103:4 108:14 109:11

**Bryant's**
72:12

**build**
12:7

**builder**
83:6

**Builders**
28:14

**built**
11:19,21,23,24 12:2

**bureau**
47:22 89:11

**business**
33:23 71:24 95:25

**Bryant**
100:9

---

**C**

**California**
42:13,16 45:6,7 83:6

**call**
4:17 11:14 15:16 22:21,22
33:21 44:4,12,15 56:2 62:1
70:7,19 72:3 79:25 83:16
84:4,9,13 85:12 86:15 89:4
91:23 99:25 102:13

**called**
24:19 27:22 33:25 44:12,17
64:23 72:4 92:14

**calling**
34:4 36:3 62:4 71:4 76:19
87:25

**calls**
34:9 35:7,22 45:2 71:21
83:19 91:22 100:20 107:3

**cancer**
71:10 76:7,23 78:14

**Capital**
60:24

**card**
35:7 71:19 95:21

**cards**
34:10 35:22 70:21 71:13,14
72:25

**care**
27:12 71:7

**careful**
44:24

**Carson**
37:15

**case**
57:1

**cell**
8:18 33:24 43:21 82:12
86:16

**cellular**
8:17

**Center**
102:23

**certificate**
27:23 28:8 74:20

**certified**
76:9,11

**chain**
39:18

**chains**
102:3

**Chapter**
74:8

**Charge**
16:11

**Chase**
14:5 42:1 44:22,23 82:21
85:10,11,15 86:3,24 103:18
105:11,24 107:19

**check**
14:3

**checked**
103:6,7,8,9,10

**checkmarks**
103:11

**checks**
70:21

**children**
9:6,12

**choices**
49:5

**circled**
106:6

**City**
37:15

**claim**
97:18

**claimed**
33:10 97:8

**claiming**
43:8

**clarification**
6:25 7:3 8:11 12:16 15:12
23:9 30:14 37:14

**clarify**
6:3,18 39:9 55:18 69:5 77:9
105:15

**Clark**
20:2,3,5 48:24

**class**
28:4,5

**classes**
28:18

**clear**
86:5

**client**
37:4,8 39:16 40:14 77:2,3,8

**clients**
39:24 101:20,21

**close**
27:21,25 28:6,16,21 55:14
57:11

**closed**
56:6,8 57:1

**closest**
53:24

**closing**
28:22 33:20

**collateral**
63:3,5,7

**collect**
46:3 48:2 73:1 85:9 98:9
101:6

**collecting**
100:25

**collection**
35:12,15 44:13 101:17

**collections**
35:13,17 36:4 72:4 104:17

**combed**
101:13

**commercial**
23:5 24:2,4 25:21 28:9,19
30:12,19 34:5,7,8,15 69:3
72:7,9,15,16 74:19,21 79:8

**committing**
36:13

**communicating**
76:24 78:11

**communications**
33:8

**company**
35:13 44:14 50:6 73:1 86:24

**compare**
39:5 52:8

**complaint**
32:9,11,25 33:5 36:6 46:12,
16,21 48:1,8,15 49:9 52:9
53:1 54:15,16,20,22,24
55:14,18,19,21 56:1,6,8
57:11,16,21 58:4,8,14,23
59:22,24 60:4,5,10 71:18
76:1 101:18

**complete**
5:4,14,19 57:8 101:25

**completed**
5:21 7:8 12:12 27:18 28:6,
17,18 41:11 103:4

**completely**
66:21 74:10,13

**completing**
24:3

**completion**
27:23 95:11

**computer**
53:25

Lisa A. Bryant                                  Lisa A. Bryant v. Madison Management Services, LLC, et al.

**concerns**
43:8 45:22

**conclude**
56:7,13,14,23 57:7

**concluded**
110:10

**conclusion**
57:1

**conference**
86:17

**confident**
75:5

**confused**
19:19 23:25 77:16

**confusing**
5:10,24

**connection**
78:2,20 83:1

**consecutively**
10:10

**construct**
12:13

**construction**
24:4

**consult**
48:9

**consultation**
73:24,25

**consulted**
48:19

**consumer**
27:23 29:8 47:21,22

**contact**
61:7,14 62:4,7 68:12,19
71:23,24 81:11 83:4,11
84:12 96:4 105:24

**contacted**
25:24 26:12,23 42:11 51:3,6
61:11,21,23 65:20 70:10
77:20 83:8 97:7

**contacting**
77:10,11,13 82:14 83:6

**context**
65:16,17,18

**continue**
55:15 72:1 99:1

**continued**
72:20 77:17

**continuously**
35:10

**contract**
62:2 74:19 79:7,15

**contracts**
16:20

**conversation**
43:2 77:25 83:22 90:17

**conversations**
77:17,25 85:1,4 89:19 91:10

**conveying**
100:22

**convicted**
10:6

**copied**
108:19

**copies**
14:22 45:15 46:14 63:2
75:18

**copy**
14:24 15:11 30:3 38:1,13
39:4 40:13 104:14 108:20,21
109:16,20 110:1,6

**corner**
59:7

**corporation**
21:7 50:6

**correct**
8:20 11:16,17 13:6 14:7,13
21:3,25 22:9 24:22 34:17
37:9 38:5,6 39:25 41:1 43:18
47:2 48:3,4 77:4 88:4,5
92:18,20 93:10 94:14,16,18
95:6,7 103:22 104:1

**counsel**
60:9

**Count**
36:9

**counteroffer**
67:2,17

**county**
19:3,7,14 20:1 48:24

**couple**
4:24 42:12 95:14 99:5
107:20

**court**
5:1,6 10:4 81:12,17,19,23
82:6,7,25 84:22 86:8 102:18
109:23

**create**
89:15

**created**
97:9

**credit**
23:5,24 24:5 26:7,8 27:13
28:10 30:8 35:7,22 42:3,21,
22 50:23 53:23 66:16 67:23
70:21 71:13,14,19 72:13,25
74:25 75:2 89:10 90:12
104:15 107:1,10,23

**creditors**
77:10,13

**crime**
10:6

**curious**
57:13 69:22 89:18 97:14

**current**
10:8,18 21:9 106:20,22
107:14,25

**custody**
70:22

**customers**
57:18

---

**D**

**dared**
51:1

**dark**
25:2

**date**
8:13 15:19 17:17,18,19,20,
21,23 18:25 20:9 41:8 49:15
59:6,7 81:5 84:20 91:9 94:6
104:21,22 105:4

**dated**
46:10 95:16 99:11

**daughter**
12:21 81:24 82:7

**daughter's**
12:15,19 81:17,18

**day**
44:2 53:13 75:20 81:15 82:5
84:13

**days**
48:18 61:22 72:1

**dead**
75:12 78:23

**deal**
107:9,20,21

**dealing**
71:8

**death**
12:15,19

**debt**
37:13 38:19,23,24 48:2,6,8
50:20 56:9 62:1 64:20 65:15
66:2,17,20 68:2,25 69:3
72:7,9,15,16 76:18 82:22
84:14 85:21,24 86:25 87:10
89:17 91:18 96:17,19,21,22,
23,24 97:1,8,17,20,25 98:4,
9,12,19 100:25 101:6

**debtors**
76:8

**deceased**
9:13,15,16 75:12

**deciates**
74:18 79:4,7,14

**decide**
22:19

**decided**
56:4

**declared**
10:3

**decline**
90:22

**deed**
17:9,12,14,17,22 19:17
21:13,16,21,22 23:21,22,23
31:21,25 37:20,23 38:14
40:19,20 45:10,13,16 52:7,
11 53:16 54:13 63:9

**Default**
31:11

**defend**
49:3 105:22,23

**defendant**
38:1

**defendants**
4:15,18 33:9,10,15,17 36:7,
12,17

**defendants'**
15:1,10 17:8

**delinquent**
60:25 106:5,7,10

**denied**
64:2,5 89:4,5

Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

**Denville**
103:21

**deny**
44:7

**department**
40:11 68:25 69:6 71:2 86:19,
22

**depo**
108:9

**deposition**
4:18,21 5:7 9:22 110:10

**depositions**
4:25

**describe**
106:15

**desperate**
95:22

**details**
43:9 48:25 65:7

**determine**
71:15

**developer**
83:5

**development**
30:8

**die**
75:13

**died**
70:13 75:14

**Diego**
26:3,11,24 69:19

**difference**
75:20

**difficult**
105:22

**difficulties**
59:23

**direct**
17:6 98:24

**directed**
83:16 98:17

**directly**
39:16

**disability**
92:7

**discount**
82:15

**discovery**
60:10 101:3 102:2

**discuss**
64:19 99:15

**discussed**
60:11

**discussion**
65:3 88:7,10,15

**discussions**
43:25

**district**
70:8,19 71:5

**Division**
46:17 55:17 59:15

**document**
14:20 15:3,9,14 17:7,11,14,
16 18:15,18,23 19:1,4,17,20
21:12 23:16 24:18 25:7 28:1
37:12 41:4 53:14 57:12,14
58:13 59:3,8,21 60:7 83:22
99:7 102:12 103:3,9 104:25
105:5,6 108:6,7 109:10

**documentation**
36:3 72:15 85:21 86:2 98:4,
14

**documents**
14:25 22:11,14,20,25 23:15
24:10,21 25:13,21 27:2
28:12,22 29:3,13,16,19
33:16,18,20 38:10,16 39:5
40:18 42:2 43:13 45:10 53:5,
12,15 54:1 63:8,10 66:1
67:11,12,14 68:3 75:1 76:10
77:4 89:16 92:23,24 93:1
97:9,13 98:23 99:5 100:19
101:14 103:14 105:3

**dormant**
70:18

**draw**
83:1

**driver's**
38:2 39:4 40:13 75:18 109:9,
17,25

**driving**
96:2

**due**
33:11 82:22 91:8

**duly**
4:8

**dying**
78:15

**E**

**e-mail**
80:17 93:22,24,25 94:10,14,
17,18 95:6,9,12,17,19 96:12
97:23 99:11,21 100:4 102:3,
4 109:1

**e-mail's**
95:15

**e-mails**
94:5 95:14 100:20 101:2,3
102:2,4,6

**earlier**
40:18 42:12 60:11 83:13,14,
17 84:21 88:3 98:17 101:18

**early**
76:23

**ease**
4:17 5:5 11:13

**easier**
5:7 62:11

**easiest**
87:2

**educated**
50:23

**effective**
61:9

**employed**
10:21

**employee**
69:17 78:20,21

**end**
45:7 94:8

**ended**
53:6 87:20

**engaging**
47:18 100:23 101:16

**enjoy**
84:16

**enter**
97:24

**entered**
13:18

**entering**
66:20

**entire**
5:4

**entitled**
58:22 73:5

**entity**
47:22 83:2 105:19

**entry**
108:20,22

**envelope**
27:16 29:6

**essentially**
11:9 47:25

**estimate**
25:14 27:4

**estimating**
8:12

**eventually**
12:8,10 13:4

**everyone's**
109:22

**evidence**
36:12,19 37:7 39:2

**EXAMINATION**
4:12

**examined**
4:10

**excuse**
8:7 9:14 11:20 37:21 40:24
43:24 46:22 48:6 83:21 94:7
100:16

**Exhibit**
15:11 17:8 54:11,13,14,16
58:13,21 73:4,7 79:24

**exhibits**
110:8

**existed**
98:14

**existence**
37:20,22 39:4

**expected**
27:14 91:13

**expensive**
49:3 90:8

**experienced**
96:6

**explain**
5:12,23 6:2,17 16:19

**explained**
28:3



Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

**expressed**
47:17

---

**F**

**face**
24:12

**fact**
33:11 47:9 97:10

**familiar**
34:24 35:23 63:4,22 81:14

**fax**
33:22,25 34:4,12 35:8,9,20
71:22,25 82:4

**FBI**
69:11 70:11 71:9 76:24
78:16

**FDCPA**
36:9

**fears**
46:4

**February**
41:12

**federal**
107:7

**Fedex**
29:9,10

**fee**
67:24,25 68:1 92:15 99:14

**fees**
50:21 108:4

**felt**
97:25

**file**
34:11 39:21,23 40:5,7 45:4,
20 49:7 53:23 60:13 63:3,5,7
68:11,19,22 74:8 75:2 82:23
84:15

**filed**
35:2,11,20 45:24 46:11,16
47:1 48:15 58:5 60:11 69:7
70:5 74:14 75:22 105:20
107:4

**files**
104:16

**filing**
36:11,16 46:20 48:10

**fill**
45:18 47:24 54:1 85:22 86:2

**filled**
22:24 23:16 25:20

**filling**
42:2 45:9 86:20

**final**
41:11 108:7

**finally**
84:13 90:17

**financial**
21:7 46:8 47:20 55:3 59:15
61:5

**financials**
85:22

**find**
43:9 64:9 68:3 71:6 105:20
109:13

**fine**
6:23 23:13 42:19 108:11
109:25

**finished**
29:21

**firm**
68:17,18

**firms**
68:17

**fix**
98:8,10

**fixed**
96:9,15

**fixing**
42:16

**flag**
107:2

**flew**
30:13

**Florida**
97:11,12,14

**folder**
24:20,21

**forbearance**
50:22 65:4,7 90:15,20 91:6,
11 99:14 105:12

**forced**
57:11

**foreclose**
56:11

**foreclosure**
33:13 56:5

**forged**
69:15

**forget**
86:18

**form**
19:15 49:13,15,17 95:10

**format**
101:23

**forms**
9:20 47:24

**Forty-three**
9:3

**forward**
38:23 95:25

**forwarded**
55:16 82:2 105:21

**found**
46:25 66:7 70:4

**foundation**
82:19

**Franklin**
21:6,7

**fraud**
36:14 37:7 39:2 40:1 44:20,
23 45:22 46:25 47:10,13,14,
18,21 51:9,13 56:7,13,15,24
57:7 69:24 71:16,17,20
72:25 74:18,23 78:6 79:4,7,
8,14 85:25 86:6,8 87:2 89:21
90:2,5 101:15 102:5,7
104:24 105:4,6 107:8

**fraudulent**
33:12,16,18 34:14 35:3 36:8,
19 37:5 38:3,9 46:5 48:6,8
52:18 53:18 64:8,10,12,16
66:21 68:25 74:10,13 98:1,9,
12 100:23,25 101:6,17

**fraudulently**
40:23 77:18

**free**
73:23,25

**front**
15:13 59:4 80:1

**fruit**
84:16

**full**
7:24 108:4

**fully**
7:20 9:22

**Fund**
63:23 87:7 88:20 90:13

**funds**
12:6,12,14,17 30:22 36:8
96:1

---

**G**

**Garnett**
20:18 102:13 108:9

**gave**
27:16 28:23 29:12 44:5
53:15 82:7

**Gene**
26:2,11,23 27:9 28:11 69:19
74:17 75:6

**general**
39:22 40:4,10 47:21 68:12,
19 69:1,6 71:19

**George**
14:22 32:10 46:15 49:9 54:8
73:11 110:3

**get all**
107:3

**Gift**
12:20

**give**
27:2,7 36:21 37:1 53:14
56:20 58:12,16 65:25 66:1
67:17 83:10 85:23 86:1
93:19,20

**good**
4:14 58:18 84:17 110:4

**government**
96:8

**grab**
32:17

**grandson**
81:24

**grateful**
102:7

**greatly**
95:24

**ground**
4:24

**guess**
6:14 19:20 54:11 90:13

Lisa A. Bryant        Lisa A. Bryant v. Madison Management Services, LLC, et al.

**guessing**
45:19

**guys**
102:13 109:15

---

**H**

**H-A-R-P**
64:22

**Haines**
6:21,23 8:11 12:21 13:19
14:24 15:6,22 16:11 17:4,25
18:10 19:18 21:21,23 22:5
24:7 29:23,25 32:3,12,17,21,
24 33:2 37:3,8 39:6,12,20,23
40:1,5 41:16 45:23 46:16
47:7,13 48:12 49:10 50:9,12
52:10 53:8,11 54:10 55:4,7,
11 56:16,25 57:4 58:15,24
62:16 69:16 70:1 73:8,10,13
77:5,8,21 78:5 79:10,12
80:1,6,8,12 81:2,25 87:6
90:23 93:6 94:2,10,16,20
97:21 98:2 99:2,8,19,24
101:10,19,24 102:9,14,16,
23,25 104:21 107:17 108:11,
23 109:2,12,19 110:4,5,7

**HAMP**
41:13 106:18 107:7,12

**hand**
15:6

**handed**
29:16,19

**handle**
42:24 86:22,25 96:5

**handles**
86:19

**handwriting**
49:20,22,25 50:2,7,15,18
52:2 73:12,15

**handwritten**
66:7 103:20

**hanging**
84:16

**happen**
27:12

**happened**
22:4 24:9 49:2 53:21 95:13

**happening**
89:19

**happy**
5:11

**Hardest**
51:4 63:22 87:6 88:20,21
90:13 104:15

**HARP**
64:21

**head**
5:18

**hear**
6:7,11 38:7

**heard**
31:13 35:16 37:11 59:24
60:4 66:9 77:1

**Hedrick**
59:13

**helped**
13:3 42:1 45:18 47:24

**helping**
93:18 100:11

**Henderson**
8:2 11:13 81:13

**hesitation**
66:19

**hey**
38:2

**HHF**
63:23 86:17,24 87:6,14,18,
21 89:4,5

**high**
27:23 28:7

**Hinda**
26:1,24 27:9 69:20 75:14,16
77:2,12 104:19

**Hinden**
26:1 69:20 75:14,16 76:5
77:2,25 78:1,6,20 79:6
104:6,8,10,19,25

**histories**
72:13

**history**
36:22,23 38:22,23 64:10,17,
19 65:25 66:2,16 67:10 68:4
89:17,23,24 91:15,17,18
92:25 95:23 96:16,17 98:21,
22,25 105:13

**Hit**
51:4 63:22 87:6 88:20,21
90:13 104:15

**HOEPA**
27:22 28:7 50:22 68:1 74:20
79:9

**hold**
84:11

**home**
8:1,16,18,23 16:2,4 23:19
28:14,15 31:2,14 33:23,25
34:20 35:10,25 41:15 56:5,
11 72:19 85:7

**homeowner**
62:23

**honestly**
24:13

**hood**
26:17

**hope**
52:23

**hoping**
15:2

**hospice**
100:2

**hours**
22:25

**house**
11:24 12:2,7,11 25:10 26:17
34:6 79:9 105:10 108:4,5

**houses**
42:17

**Howard**
43:15,16 44:9 47:18 82:14
96:7 98:8,11,17,19

**HUD**
51:5 96:8

**HUD-1**
25:13 27:3 33:19

**huh-uh**
5:17

**husband**
11:2,8 88:11 92:9,16 108:10

**Hypothetically**
33:16

---

**I**

**I-V**
94:20

**I-Z**
94:19,20

**I.D.**
23:11 24:16 103:7

**I.d.s**
75:18

**idea**
43:20 53:4 90:3 99:2

**ideas**
53:20

**identification**
53:24

**identifications**
70:21

**Identify**
50:3,5

**identity**
34:2 41:5 42:8 71:4 74:16
75:6,9 77:19 78:1,18 91:20
106:2,24

**illegally**
40:23 48:2 73:1

**immediately**
67:14 68:13 100:1

**important**
109:5

**impression**
98:8

**improperly**
33:13

**income**
11:4,10 88:12,13,19 92:17,
21 93:7,11,12,15

**incoming**
89:3

**incompetent**
10:4

**incorrect**
92:18 94:7

**increase**
14:10

**individual**
34:1,4 35:5 66:7 69:10,12
70:4,10,20,22 71:3 72:8

**individuals**
69:23

**influence**
9:19,24



Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

inform
64:4,7

information
19:22 33:25 37:1,12 38:10
44:10,11 53:23 61:14 62:1
78:16,18 88:14 91:23 96:7

informed
92:22,24 96:7

informing
66:14

initial
25:1,3 29:23,24 30:1 63:1
68:15,16 83:4

initially
48:16

initials
18:4,7,8 21:14

input
95:23

inquire
41:24 85:8

inquiring
61:12 93:11

insinuate
57:6

institution
47:20

institutions
46:9 55:3 59:15

instrument
20:8

insulted
79:21

intentional
36:13

intentionally
91:22 100:23 101:16

interest
27:23 28:7

interested
61:3

interruption
39:11

interviewed
69:11 70:11 78:15

introduction
63:1

investigate
87:9

investigated
69:11

investigation
55:15

investor
105:10,17 108:5

Investors
35:25

iphone
100:13,15,18

issue
50:5 56:10 82:20 107:1,23

issues
107:10

items
103:7

IV
93:23

---

**J**

January
61:8,10,15

Jersey
103:22

job
96:10

journal
108:19,20,21

JP
103:18

judgment
13:1

July
41:10

June
49:17 102:14

jurisdiction
58:2

---

**K**

Katz
43:16 44:17 46:2 61:24 65:7,
21 66:18,25 80:18 82:17,22
83:1,4,8,10,16,20 84:4,13

91:13,14

kind
6:14 65:23 78:13 85:4 98:7
99:22

Kirschman
26:2,11,23 28:11 69:19
74:18 75:6,7 78:21,23

knew
33:9 34:14,22 47:9,13 98:14

knowledge
108:14

---

**L**

L-I-S-A
93:23

L-I-S-A-B-R-Y-A-N-T-I-
Z
95:6,16

label
54:8

labeled
14:20 32:9 108:15

labeling
54:6

Laguna
60:24 97:7

larger
14:25

Las
26:1 59:20 69:20

late
66:13 90:4 93:17

laughing
27:24

law
68:16,17,18

lawsuit
12:25 36:11,17 38:5,8 48:11

lawyer
73:20,21,23 74:4 75:21

learn
40:19

learned
37:19,22 39:3

learning
46:2

leased
88:4,12

leases
88:2,8,19

leave
29:2 71:11

leaving
26:14 91:22

left
29:4 44:10 49:16 59:10

legal
45:4 51:4 79:22 90:14
102:23 106:15

legal-sized
24:21 26:20

legally
10:3

lender
15:25 21:6 25:17 27:10
34:20,22,23

lender/investor
99:17

lenders
16:2,4 24:17 28:15 31:2,14
34:20

Lending
46:17 55:17

letter
30:7 58:22 62:22,24 63:1
68:15 70:9 71:3 74:24 76:9
78:10,13 79:2 81:12 83:13
84:22,23 85:15 102:13
104:18 108:16

letters
31:24 76:11 81:15 82:5,24
85:1,5 86:7

license
38:2 39:4 40:14 57:16 75:19
109:9,17,25

licenses
71:24

lien
41:23,25 42:4 43:6 44:1
45:12 56:3,4 61:4 82:23
84:15 106:1,22

liens
49:1 86:19,22

lines
12:4



Lisa A. Bryant

Lisa A. Bryant v. Madison Management Services, LLC, et al.

**Lisa**
4:7 7:25 8:12 17:1 49:11
58:25 60:5 72:12 80:11
92:14 93:22 95:15 100:9
101:24 109:12

**list**
48:25

**listed**
34:7 51:17 59:11 103:7

**litigation**
54:22

**live**
12:1 80:19,21

**lived**
10:8,10 80:23

**lives**
26:2

**living**
8:4 81:2,3

**LLC**
4:16 38:13 60:24 61:9,13
103:21

**loan**
16:7 22:20 24:5,10 26:4,6,7
27:22 28:7,19 30:6,11,12,16,
18,19 33:12 34:5,15,24
35:24 36:8 37:13 39:5 40:17
41:4,21,22 46:5 50:21 60:17,
20,23,24 61:2,8,12 63:8
64:8,12 66:11 68:1,4 72:19
74:10,13,19 75:1 79:8,9
82:15 83:16 103:9 106:5,10
108:4,5

**loans**
27:10,24 103:10

**locate**
36:22 95:23 105:19

**located**
11:15 108:18

**log**
79:25 91:23 97:11

**long**
8:4 9:2 10:25 106:20,21
107:14,24

**longer**
56:5,10,11 99:3,4

**looked**
21:13 40:18 102:20

**losing**
54:7

**lot**
11:21 12:2 23:16 25:21 41:6
45:1 84:18 97:3

**loud**
63:18

**low**
84:16

**lower**
90:9

**luck**
84:17

---

**M**

**M-A-R-C-O**
24:7

**machine**
33:22 35:8,9 71:22,25

**Madam**
102:18 109:23

**made**
14:1 40:8,22 50:23 61:16,19
64:11 67:16,22 87:22 103:25
104:4,7,8,12,19

**Madison**
4:15 36:18,25 37:16 38:12,
18 39:1,16,19 44:12,14
47:18 48:1,11,19,21,22
57:15,18,25 58:23 60:16,20,
23,25 61:4,6,21,23 62:13,20,
22 64:4,8,9 65:7 66:10,12
67:1 68:15 69:9 70:10 71:3
73:6,10 76:8 77:3,14 82:18
83:1,8,15,19 84:10,24 85:2,
5,8,14,16,24 86:3,9 88:7
89:7,10,14,15,21 94:6 96:8
97:8 98:18,19,20,25 100:23
101:4,5,15 103:20 107:6

**Madison's**
44:5,12

**mail**
35:19 48:18,21 76:12 81:13
82:2

**mailed**
61:5

**maintained**
33:14

**majority**
9:17

**make**
5:7,8 7:5 14:2,3 31:9,21 32:6

41:22 49:6 51:9 65:22 66:14
89:23 90:11 103:11 110:1

**making**
35:8 76:20 78:2 104:10

**man**
79:1

**Management**
4:16 37:17 38:13 39:1,16
57:25 73:10 77:3 84:24
103:20

**manner**
67:16

**March**
31:16 92:5,11,14

**Marco**
23:6,8,23 24:2,5,7 25:22
26:5,6 30:12,19

**mark**
58:13

**marked**
17:7 110:8

**Market**
23:25

**marking**
15:10 73:6 79:24

**married**
8:22,25 9:2

**matter**
36:4 75:23

**means**
7:11 33:12 36:8 98:10
105:14

**medication**
9:20

**meet**
65:23

**meeting**
86:17,23

**meetings**
68:16

**memo**
72:11

**mention**
35:13,14,24 66:9,10 71:13,
14 72:24 76:3 89:20 90:2,5,7
104:24

**mentioned**
76:2 84:21

**mess**
28:10

**message**
44:19 100:9

**met**
68:23 73:20,21 75:4,8

**Metro**
70:4,6 71:1,4

**mind**
54:8 60:19 109:16

**mine**
66:23 67:11

**minute**
58:16

**missing**
78:19 82:19 97:3

**misstating**
39:7 47:7

**misunderstood**
14:16

**modification**
13:13 14:10,11 41:13,15,21
43:13 45:10 61:2 85:7 107:4

**modifications**
44:25

**modified**
14:12,13 41:8 105:11 106:18
107:12

**modify**
87:3

**money**
16:3 21:6 28:21 30:5 42:6,15
43:7 44:3,7,8 49:6 51:8
76:21 84:6 90:10 93:14,19,
20 99:17

**Monica**
59:13

**month**
14:2 42:12 65:14,23,24 67:1,
2,16,17 76:20 92:2 96:1

**monthly**
67:20 90:20 103:17,19

**months**
41:11 42:12 83:23 89:20
99:14

**Morgan**
85:10

**Morris**



Lisa A. Bryant

Lisa A. Bryant v. Madison Management Services, LLC, et al.

103:21

**mortgage**
10:18 12:7 13:5,15,18,23,24
14:1,7 21:7,10 23:17,20
30:21 31:4 33:12 34:6 35:14
37:19 41:7,9 45:11,13 46:17
47:10 55:17 61:3 63:8 71:16,
20 72:25 73:1 87:4 103:8,16,
17,18,19,25 104:5 105:9,16,
25 106:5,10

**mother-in-law**
100:1

**move**
5:20 74:8

**Moving**
82:10

**muffled**
6:13,14

---

**N**

---

**name's**
100:6

**named**
13:24 19:3,4 21:6 35:5 36:11
69:25

**names**
39:16 71:16 75:24 76:1,3

**naming**
39:24 71:19

**Nancy**
20:18

**narcotics**
9:20

**narrow**
52:20

**nature**
88:10

**Nectarine**
81:12,17,19,23 82:6,7,25
84:22 86:8

**needed**
23:4 27:15,17 28:8,12 30:22
62:1 64:18 65:22 71:11
78:17 85:21 89:22,24 90:8
98:13 99:25 100:14

**negative**
66:16 67:23

**negotiate**
65:6 74:8

**Nevada**
8:3 19:8,10,13,25 26:3 46:6
47:2,6,16,24 48:15 49:9
51:4,5 53:2 55:2 56:4,14,23
57:19,21 58:1 59:20 63:9
71:19 81:13 86:4 97:15

**Nevada's**
104:14

**newest**
80:16

**Newport**
97:17

**Nicholas**
4:15

**Nick**
39:12 58:15 79:13 97:21
99:2 109:3

**nobody's**
107:3

**nodding**
5:17

**nonpayment**
72:6

**nonstop**
35:9,10

**North**
8:2

**notarize**
29:22

**notarized**
23:1,4,15 24:18 28:17 70:5

**notarizing**
26:14

**notary**
19:11,12,13,19,21 20:13,16
22:11 23:12,15,18 26:12,19,
25 29:2,4,5,15 53:5,13,15,17
97:10,15,16 102:13 108:15,
24 109:5,8

**notary's**
53:6

**notations**
102:5

**note**
13:23 14:20 15:4,7,11,15,16,
19,22,25 16:6,9,12,21 27:18
29:7 37:5,20,23 38:14 52:24,
25 54:12 63:8 79:17,20
102:19

**noted**
101:22

**notes**
15:1 91:5 101:19,25

**notice**
31:11 37:10 38:8 48:18,21

**noticed**
105:3

**notices**
31:1,7 35:18

**notification**
76:11

**notified**
43:4 56:1

**November**
59:9

**number**
8:16,17,18 10:9 20:17 33:5,
24,25 34:4 43:21 44:5,6,13
58:14,22 68:6,7 73:4,7 74:2,
3 76:15 79:3,18,19,24 80:10,
17 81:8 82:4,10,11,12 84:9
86:11 87:24 91:2 102:11,21
103:16 106:4,14 107:11,15,
17 108:7,8,15 109:9

**numbers**
15:2 18:15 49:22 51:19

**numerous**
35:22 74:16

---

**O**

---

**object**
39:6 45:23 47:7

**objecting**
53:8

**Objection**
13:19 56:16 70:1 77:5,21
98:2

**obtained**
33:12

**obtaining**
36:7

**October**
15:23 18:1 31:1

**offer**
50:24 66:15 67:16,18,22
91:14

**offered**
67:1,20 90:19,21 91:6
105:12

**offering**
27:10 67:6 82:15

**office**
48:25 53:25 61:11 75:2

**oldest**
80:16

**ongoing**
54:21

**open**
93:17

**opened**
35:22 72:14

**opens**
24:20

**opinion**
61:19

**option**
75:10

**options**
62:24 73:6 74:1,2 75:11

**order**
88:22

**organization**
35:3 47:17 50:6

**organizations**
39:17

**original**
100:9 108:4

**outcome**
55:22,24

**owe**
42:6,15 44:3 84:5

**owed**
44:8 76:19

**owing**
33:11 44:7

**owned**
24:3

---

**P**

---

**p.m.**
92:14 99:12 110:10

**pages**



Lisa A. Bryant

Lisa A. Bryant v. Madison Management Services, LLC, et al.

30:2

**paid**
29:6 68:21 91:8 92:1,15

**paper**
5:7

**papers**
22:2 25:9 26:12,14,16,18,20
27:16,17

**paperwork**
23:17 45:16 86:20

**paragraph**
16:6 33:4,6 60:16 61:19
62:9,12,25 63:13 65:1,10
66:25 68:5,11 83:14 101:18
108:18

**pardon**
59:17 100:14 109:7

**part**
25:5 38:8,9 87:10 106:2

**participation**
51:2

**partway**
81:10 92:13 93:22

**party**
51:1

**passed**
12:21

**passport**
75:18 109:24

**pause**
54:5

**pay**
49:5 51:8 66:17 67:24,25
68:21 73:23 74:4 82:4 91:13
92:25 93:1

**paying**
76:20 81:25 83:5 91:16

**payment**
14:2,7 31:17,18 36:22,23
50:21 64:17,18 65:15,25
67:9 89:17,23,24 90:8,9,11
91:15,16,17 92:25 95:21,23
96:16 98:20,22,24 99:13
103:25 104:4,8,13,19 105:13

**payments**
10:18 14:1 21:9 31:9,19,21
32:6 35:8 50:23 51:2 61:16
67:20 89:23 91:19 103:19
104:10

**PDF**
58:22

**pending**
7:19

**people**
42:9 44:18 45:1,7 107:22

**period**
47:4 83:15,18,25 90:7 91:25
101:4,8,11

**perpetuating**
69:24

**person**
28:23 36:24 41:5 42:1 43:5,
14 44:16 45:4 47:17 50:24
53:18,22 62:4 66:10 69:16
74:15 75:5,10 83:11 84:12
91:22 107:18

**person's**
59:11,12

**personal**
72:17

**persuading**
27:7

**phone**
8:18,20,23 22:21,22 26:24
27:20 33:21,23,24 34:9 35:7,
22 43:21 44:5 70:7,19 71:21
72:2 76:15 82:4,11,12 83:19
85:12 86:15,16 89:4 92:16
96:2 100:20 107:3

**photo**
103:7

**place**
12:18 38:4 43:2 107:5

**placing**
83:19

**PLLC**
4:17

**point**
8:11 40:14 47:10 65:8 67:18
71:8 78:24 83:3 90:2

**police**
34:11,12 35:2,11,20,21,23
36:11 37:2,25 39:3,15,23
40:5,7,8,10 45:21,24 66:3,4,
8,9 68:25 69:6,8,25 70:2,3,
15,16,17,24 71:2,12,13,16
72:24 74:14 75:22,25

**Porras**
4:13,15,16 6:11,13,16 7:2
8:15 12:23,24 13:21 14:22

15:5,8,24 16:13 17:5 18:2,13
19:23 21:25 22:8 24:8 30:4,
17 32:5,13 33:1,3 36:18
37:6,9,16,18 38:1,12,17
39:1,8,14,19,25 40:12,15
41:17,19 46:1,14,19 47:12,
15 48:11,14 49:8,12 50:11,
13 52:12,13 53:10,12,19
54:11,18,23 55:6,9,16 56:10,
19 57:2,5 58:17,21 59:1,2,24
60:3 62:19 69:21 70:14 73:9,
11,14 77:15,23 78:12 79:14,
16 80:3,10,13 81:4 82:9
87:11 91:1 93:9 94:4,13,23
97:22 98:6,16 99:4,6,10,20
100:3 101:5,12,15,21 102:1,
10,15,17,24 103:1 104:23
108:2,12,17 109:4,8,15,21,
25

**portion**
100:21

**position**
56:5

**positively**
95:25

**possibly**
69:24

**practiced**
75:19

**precise**
15:2

**prepared**
23:4 70:5

**preparer**
100:11

**present**
98:7

**pretty**
4:25 10:12 109:5

**previous**
5:22 7:9

**previously**
69:7

**primary**
11:4 12:12

**print**
15:1 19:21 50:4

**printed**
32:10

**prior**
38:4,7 83:23 101:11,12

**Privacy**
31:7

**private**
28:13

**privilege**
28:13

**problem**
106:15

**proceeding**
7:18

**process**
41:10 43:10 86:20 87:10

**produce**
64:17

**program**
41:16,17 47:23 64:21,24
86:4 87:9 96:5

**programs**
42:21 89:8 96:9,10,18 99:16

**project**
26:8

**proof**
36:19 50:15,19,20 51:2

**Properties**
61:9,13

**property**
11:14 13:5 24:1,2 26:5
30:12,19,23 34:6 41:8 45:12,
13 49:1 71:17 80:20,21,24
88:11 106:23

**Protection**
47:21

**provide**
36:2,17,19 38:1,13,22,25
40:13 57:13 65:18 102:8

**provided**
37:6 39:18 60:9 61:14 71:1
98:25 108:20

**providing**
78:17

**public**
48:24

**pull**
30:16 48:23

**pulling**
24:14,15

**purchase**
11:18



Lisa A. Bryant                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

**purported**
37:23 53:11

**purpose**
30:6

**put**
22:2 26:19 29:8,10 35:21
37:10 53:24 67:6 74:24
84:11 89:13 96:4 105:4
106:13

**PVK**
33:10 39:17 61:9,13 65:7
66:10,12 77:14 82:18

---

**Q**

**question**
5:4,5,8,10,20,21,22 6:4,14,
19,24 7:5,8,9,12,13,20 22:5
28:25 37:3,5 39:7,13,21
45:23 55:8 56:13,22 72:23
73:2 77:22,23 79:11,12 86:6
93:6 97:23 99:6 108:8,16

**question-and-answer**
101:22

**questionnaire**
103:14 105:2

**questions**
5:1,3,14,15,24 6:18 9:21
32:20,22 36:1 45:11 83:12
84:9 94:2 99:16 108:13

**quick**
103:3

**quickly**
70:13

---

**R**

**Racetrack**
8:2 10:11,16,19 11:12 30:23
49:1 71:18 80:21,23,25 81:3
82:6,25 84:22 86:8 88:3

**raise**
43:7

**ran**
76:21

**rate**
14:10

**re-located**
76:22 78:9

**reach**

**34:3 45:21**

**reaching**
62:20

**read**
19:8 33:6 49:25 50:8,17
60:15,18 62:10,11,12,14,16
63:14,17,18 65:1,10 83:13,
14,17 95:19 100:21 101:18
106:17 108:3

**reading**
61:17 65:2 107:15

**ready**
62:17

**reason**
33:9 51:12 76:2 81:22 89:21
107:19

**recall**
13:8,17,22 24:11 54:19
55:13 58:3,7,9,10 62:20
63:10 65:3,13,16 73:21
82:14 86:21 87:20,22 88:7
90:19 91:10 94:5 95:12
105:15 108:23

**receipt**
51:17

**receive**
14:3 30:11 31:1,4 46:14
103:17,18

**received**
25:18 27:3 28:24 30:18
38:11 44:19 60:12 68:15
70:7,18 71:2 72:2 81:15
82:5,24 84:21,25 86:7 93:2

**receiving**
63:10 85:5 92:7 95:12
108:24

**recent**
10:1 103:8

**recently**
14:6,13,17

**recess**
58:20

**recklessly**
101:16

**recognize**
49:13 73:15

**recognized**
34:20

**recollection**
57:20 63:19

**reconveyance**
57:10

**reconveyed**
56:9

**record**
60:15 66:3 76:14 77:13
83:17 97:18 110:2

**recorded**
40:20,23 41:2 42:19 43:1
72:17 83:24 84:19 97:7
101:20,21 106:1 107:4,10,22

**Recorder's**
48:25

**recording**
17:19,20 40:24

**records**
42:25 48:24

**red**
107:2

**refer**
17:13 49:8

**reference**
21:18 60:10 72:10

**referencing**
83:22

**referred**
26:10 62:24 75:21

**referring**
52:10 66:4,25

**refers**
63:7 72:15

**refi**
79:18

**refinance**
50:25 66:17 88:17,22,24

**refinanced**
13:12 68:2

**refresh**
63:19

**refuse**
22:19

**refused**
22:10 24:9 27:7,19 29:8
53:14

**refusing**
27:1,4

**registered**
96:8

**regular**
81:13

**reinstate**
32:6

**reinstatement**
31:24

**relative**
53:25

**released**
56:3,4

**remember**
55:7 104:17 109:1

**remote**
96:2

**remove**
66:16 67:5,22 90:12

**renew**
37:25

**renewed**
39:2

**Reno**
37:13

**rented**
10:15

**repair**
82:18

**repairs**
30:23

**repayment**
16:11 97:25

**repeat**
6:7 36:15

**repeated**
79:19

**report**
34:11,12,13 35:2,11,20,21,
24 36:11 37:2,25 39:3,15,24
40:6,8 42:3,22 45:21,24 47:1
66:3,4,8,9 69:25 70:2,3,15,
16,17,24 71:12,14,16,18
72:24 74:15 75:23,25 76:1

**reported**
89:10

**reporter**
5:1,6 6:6,10 8:8 12:16 17:3
23:9 30:14 37:14 39:11
102:18 109:23 110:5

**reporting**

Lisa A. Bryant                                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

| | | | |
|---|---|---|---|
| 50:25 67:23 | 29:3 | 45:2 | 91:5 |
| **reports**<br>69:8 | **return**<br>27:17 28:12 45:2 66:15<br>67:22 88:13 90:12 | **search**<br>42:3,4 | **shown**<br>22:17 |
| **represent**<br>4:15 | **returning**<br>29:6 | **searching**<br>42:22 | **sic**<br>23:25 74:18 |
| **request**<br>38:18 67:11 | **review**<br>25:4 50:24 62:16 63:18 68:3 | **seasonal**<br>92:17,21 93:6,10,11,15 | **side**<br>82:19 |
| **requested**<br>50:15,19,20 101:2 | **reviewed**<br>100:20 | **Security**<br>11:5,7 92:9,16 | **sight**<br>26:15 |
| **requesting**<br>66:1 91:8 | **reviewing**<br>72:12 | **seeking**<br>46:3 56:11 | **sign**<br>16:20 22:10,19 24:10 25:6<br>27:1,4 29:20,23,24 |
| **requests**<br>51:17 | **Rider**<br>16:11 | **send**<br>29:9,12 31:17,20 35:18,19<br>90:18 96:20 104:18 | **signature**<br>16:16,22,24 18:18,20,23<br>20:22,25 21:15,17,18,20,23<br>22:2,7,13,15 29:16 38:3<br>51:22,25 52:4,7,9,21 53:1,6,<br>7,9,11,18,23 69:15 75:19<br>109:9 |
| **require**<br>57:19 68:1 | **right-hand**<br>59:7 | **sender**<br>95:9 | |
| **required**<br>27:22 97:11 | **ring**<br>43:16 72:1 | **sending**<br>23:2 77:4 97:23 | |
| **requirements**<br>74:22 | **Rivera**<br>80:18 | **sense**<br>7:5 98:7 | **signatures**<br>16:14 22:17,18 52:14 53:17 |
| **research**<br>105:18 | **Riviera**<br>95:10 | **September**<br>31:15 61:1 80:22 | **signed**<br>41:4,5 108:19 109:5,6 |
| **resemble**<br>53:1 | **Road**<br>8:2 10:11,16,19 11:13 49:1<br>71:18 | **service**<br>64:9 96:9 | **signing**<br>54:4 |
| **residence**<br>10:14,15 11:14,15 12:13<br>72:17 | **Ronald**<br>9:5 | **servicer**<br>85:20 | **similar**<br>52:14,16 70:12 |
| **resolution**<br>57:17 | **roof**<br>82:18 | **Services**<br>4:16 35:25 38:13 39:2,17<br>77:3 103:20 | **simply**<br>84:12 |
| **resolve**<br>50:5 | **roundabout**<br>56:21 | **servicing**<br>34:25 57:16 60:17,20 62:13<br>83:15 | **single**<br>51:16 |
| **respond**<br>5:3 38:16,17 | **rules**<br>4:24 | **set**<br>96:1 | **sir**<br>8:23 12:5 |
| **response**<br>7:8 58:14,23 60:12,13 73:4<br>77:9 85:23 | **run**<br>58:17 | **settlement**<br>13:1 49:6 68:21 | **sister**<br>93:13 |
| **restate**<br>39:12 | | **shaking**<br>5:17 | **sitting**<br>26:18 |
| **restless**<br>65:21 | **S** | **she'd**<br>27:6 29:8 | **sizable**<br>15:3 |
| **restroom**<br>32:14 58:18,19 | **Sahara**<br>59:19 | **shingles**<br>82:18 | **skip**<br>80:18 |
| **result**<br>14:9 46:21 54:20,21 55:13<br>57:24 | **San**<br>26:3,11,24 69:19 | **show**<br>66:2 85:7,11 91:19 101:3 | **smarter**<br>74:7 |
| **results**<br>87:14 | **sat**<br>70:17 | **showed**<br>104:19 | **Social**<br>11:5,7 92:9,16 |
| **retain** | **satisfying**<br>82:15 | **showing** | **source**<br>11:4 |
| | **schemers** | | |

Lisa A. Bryant                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

**speak**
26:25 46:4

**speaking**
78:5

**specific**
47:14 69:16 72:24 90:23

**specifically**
33:4 36:18 40:18 47:8 52:25
72:11 77:11

**speculation**
53:4

**spelling**
7:24

**spelt**
99:23 100:7,8

**spoke**
27:8 36:5 43:3 61:1 82:21

**spoken**
33:21

**spouse's**
9:4

**spring**
93:17

**Stage**
71:10

**stamp**
19:11,12,13,19,21 20:14,17
29:15 50:10 53:6 55:5 58:25

**stamped**
49:11,16 51:18

**standby**
23:24 24:5 26:6,7 27:13 30:7

**stands**
86:18

**star**
79:4

**start**
7:13 51:20 54:7 74:5 85:21

**started**
25:2,4 29:20 34:4 41:10 78:5
79:7 83:19 90:4 96:21
105:18

**starting**
30:1

**starts**
50:3,18 95:20

**state**
5:16 6:15 7:23 19:3,6,8,10,

13,25 26:3 30:21 46:6,12
47:2,6,16,23 48:15 49:9 53:2
54:16,20 55:1,14,16 56:3,14,
23 57:20 58:1,4,14,23 60:11
63:9 76:2,3,4 84:6 103:7

**stated**
21:13 34:15 35:6 52:2 61:2
76:23 83:14 91:7 93:3

**statement**
40:9 65:17 79:6 88:6 96:11,
15 103:9,14

**statements**
14:3 31:5 61:19 92:19 103:8,
17

**states**
48:8 62:9

**stating**
11:10 34:10 102:7 104:3
106:19 107:13

**statute**
28:1

**stayed**
106:20 107:14

**stealing**
78:1

**steps**
74:12

**sticker**
81:16

**stole**
41:5 71:4 74:16 75:6,9 91:20

**stop**
50:25

**stopped**
29:21 45:7

**store**
93:16

**straightforward**
5:9

**strange**
97:24

**street**
23:6,7,23 24:1,2,6 25:22
26:5,6

**stuff**
24:22,24 75:2 82:3

**stuffed**
26:21

**subject**
59:21 60:2 95:20

**submit**
27:11

**submitted**
45:16

**subsequent**
31:18

**Suite**
59:19

**summer**
93:17

**summertime**
93:17

**sums**
33:10 67:4

**supposed**
16:19 22:4 23:5 27:21

**surgeries**
10:1

**suspect**
40:17

**suspicious**
40:22

**switched**
91:9

**sworn**
4:8

---

**T**

**taking**
26:22 30:6 91:22

**talk**
11:12 27:9 42:20,23 71:7
83:9 91:14 98:18 106:25
107:21

**talked**
43:3

**talking**
19:11 36:24 48:12 55:18,19
63:15 64:13 76:6,7,8,17,25
77:2,3,14 80:24 86:21 101:8,
10 107:16

**talks**
79:18

**tax**
88:13 100:10

**technical**
59:23

**telephone**
8:16

**telling**
27:1 70:19 88:21

**Ten**
78:8

**term**
63:4

**terms**
30:16 65:23 66:22

**testified**
4:10 47:9 53:9 101:24

**testify**
4:8

**testifying**
77:6

**text**
42:12,14 44:3,16 62:5 83:11
84:4,12 108:10

**texted**
43:14,18 44:6 84:5

**texting**
84:5

**theft**
42:8 106:2,24

**thereabouts**
10:11

**thing**
97:6

**things**
41:6 68:20 69:5 74:16 87:20
97:4 106:21 107:19,21

**thinking**
44:20

**thought**
14:16 35:5 37:4 60:1

**thoughts**
53:20

**thousand**
30:10

**time**
13:24 24:3 31:13 33:22
34:21 36:2,10,16 41:20
42:17 43:1 47:4,11 48:9,12,
14 58:8,18 61:8,25 62:21
64:7,11 65:13 66:24 68:14,

OASIS
REPORTING SERVICES

Lisa A. Bryant                                      Lisa A. Bryant v. Madison Management Services, LLC, et al.

24 69:9 71:22 83:15,18 86:7
90:7 92:1,8 94:6 95:13 98:7
101:4,8,10 102:6 104:12
106:3 109:22

**timeline**
90:1

**times**
68:13 75:20 98:20 105:9,17

**title**
15:14 17:21 36:8 39:18 42:3

**titled**
14:20 17:9

**today**
4:19 14:2 22:18

**today's**
110:6

**told**
22:23 23:11 26:3,5,13 27:9,
15,20 34:5 35:12 37:4 41:23
44:11,12,21,22,23,24 45:6
49:2,3 61:25 66:22 68:14
71:7 72:8 74:15,16,18 75:17
76:5,17 83:11 84:12 85:10,
11 88:24 89:9,22 90:14 93:4
98:20 104:12,16 105:24
106:24 107:9,19

**top**
17:21 86:14

**trace**
80:19

**trailer**
12:1

**transcribing**
5:6

**transcript**
108:9 110:6

**transferred**
60:23 61:9,13 97:17

**Treasury**
51:5

**trouble**
6:11

**trust**
17:9,10,12,14,17,22 19:17
21:13,16,21,22 23:21,22,23
31:22,25 37:20,23 38:14
40:19,20 45:11,13,17 52:7,8,
11 53:16 54:13 63:9

**truth**
4:9 61:18 62:6 68:10

**truthfully**
9:22

**turn**
16:21 18:14 28:10

**type**
12:6 37:12 50:20 68:2 86:1

**typed**
20:5,11

**types**
44:25

**typical**
4:25

**typically**
63:7 109:8

———————

**U**

**U.S.**
51:5

**uh-huh**
5:17 94:12,22 109:14

**underneath**
20:24 26:21

**understand**
5:11,25 6:7,12,24 7:4,15
39:20 78:3 98:12

**understanding**
6:11

**understood**
6:4,19 7:21 13:3

**underwater**
108:5

**underwriter**
13:23 88:1,8,16

**underwriters**
88:16

**underwriting**
88:18

**unemployed**
92:11

**unfairly**
48:1

**Unintelligible**
6:5,9 17:2

**unintentional**
36:13

**Union**

23:2

**unsigned**
29:19

**upper**
49:16 59:6 73:12

**user**
95:2

**utilities**
81:20,22,25

———————

**V**

**vacant**
11:21

**validating**
98:4

**Vegas**
26:1 59:20 69:20

**verbal**
67:7,9,15,17

**verification**
38:18 50:22 96:20,22,23,24
97:1

**verify**
6:21 86:25

**verifying**
96:19

**victim**
98:13

**Victor**
94:21

**Violations**
36:9

———————

**W**

**wait**
82:7 94:24

**Waldman**
4:16 36:18 37:16 38:1,12,17
39:1,18 40:14 48:11 56:10
101:5,15

**wanted**
30:8 44:11 50:21 62:1 71:23
78:14,16 88:12,14 90:11
98:3,8

**wanting**
24:4

**water**
32:16,18

**Wednesday**
59:9

**weeds**
24:14,15

**weird**
99:22

**West**
59:19

**When's**
31:13

**white**
81:16

**wide**
52:20

**woman**
24:11,13 43:12 45:18 104:15

**woman's**
26:1

**word**
79:5

**work**
11:2 84:18 96:3

**worked**
45:6

**workers**
83:5

**working**
10:25 42:16 45:7 61:2,4
70:8,23 74:24 75:1 92:4

**works**
93:16

**worry**
107:24

**worth**
22:25

**write**
96:12 104:2 105:12

**writing**
26:16 67:6,8 90:16

**written**
20:5,6,11,12,24 21:2 103:24

**wrong**
94:9,11 99:23 100:7,8

**wrote**
72:11 74:21 99:21 100:5

Lisa A. Bryant                                   Lisa A. Bryant v. Madison Management Services, LLC, et al.

**Y**

**Yahoo**
  95:2
**yahoo.com**
  95:7,16
**yahoo.com.**
  93:23
**yard**
  24:14,15
**year**
  49:18 55:25 56:1,6 57:10
**years**
  9:3 10:9 11:21 14:18 28:20
  33:14 42:9 70:6,18 78:8,9
  104:11

**Z**

**zebra**
  94:21,24

# EXHIBIT "4"

Nancy Garnett                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 1

1                    UNITED STATES DISTRICT COURT

2                        DISTRICT OF NEVADA

3

4    LISA A. BRYANT,                    )      ORIGINAL
                                        )
5              Plaintiff,               )
                                        )
6         vs.                           )   Case No.:
                                        )   2:20-cv-00594-JAD-EJY
7                                       )
     MADISON MANAGEMENT SERVICES, LLC,  )
8    and WALDMAN & PORRAS, PLLC,        )
                                        )
9              Defendants.              )
     _____)

10

11

12

13    VIDEOTAPED, VIDEOCONFERENCED DEPOSITION OF NANCY GARNETT

14

15

16

17               On Friday, July 30, 2021
                     At 1:36 p.m.

18

19

20

21

22

23

24
     Reported by:  Sarah M. Winn-Boddie, RPR, CCR No. 868
25   Job No. 45705



Nancy Garnett                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 2

```
 1    APPEARANCES:

 2       For the Plaintiff:          GEORGE HAINES, ESQ.
                                     Freedom Law Firm
 3                                   8985 South Eastern Avenue
                                     Suite 350
 4                                   Las Vegas, Nevada 89123
                                     (702) 880-5554
 5
                                     AND
 6
                                     MARC E. DANN, ESQ.
 7                                   Dann Law Firm
                                     2828 Euclid Avenue
 8                                   Suite 300
                                     Cleveland, Ohio 44115
 9                                   (216) 373-0539

10       For the Defendant:         No appearance.

11

12       Also Present:             Scott Beck, Videographer
                                    Lisa Bryant
13

14                                    * * * * *

15

16

17

18

19

20

21

22

23

24

25
```

Nancy Garnett                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 3

```
 1
 2                          I N D E X
 3   WITNESS                                        PAGE
 4     NANCY GARNETT
 5   Examination by Mr. Dann                           5
 6
 7
 8
 9
10   EXHIBITS                                       MARKED
11     A        7/7/21 Letter                          25
12     B        Deed of Trust                           25
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Nancy Garnett                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page  4

1                   FRIDAY, JULY 30, 2021; LAS VEGAS, NEVADA

2                               1:36 p.m.

3                                 -oOo-

4           THE VIDEOGRAPHER:   Good afternoon.   Today is

5     July 30th, 2021.   The time is approximately 1:36 Pacific

6     Standard Time.   This is the remote deposition of Nancy Garnett

7     in the case Lisa A. Bryant versus Madison Management Services,

8     LLC, et al.   I'm Scott Beck with Oasis Reporting Services.

9     I'll be monitoring the proceedings and recording both video

10    and audio today.

11          At this time I'll ask counsel to identify

12    themselves, state whom they represent, and agree on the record

13    that there is no objection to the court reporter administering

14    a binding oath to the witness through remote

15    videoconferencing.   If no objection is stated, we will proceed

16    forward with the agreement of all counsel.   We'll begin

17    appearances with the noticing attorneys, please.

18          MR. HAINES:   George Haines from Freedom Law Firm on

19    behalf of the plaintiff, Lisa Bryant.

20          MR. DANN:   And Marc Dann from Dann Law, also for the

21    plaintiff, Lisa Bryant.

22          THE VIDEOGRAPHER:   Thank you.

23          Our court reporter today is Sarah Winn-Boddie with

24    Oasis Reporting Services, and the reporter may now swear in

25    the witness, please.

Nancy Garnett                         Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 5

1   Whereupon,

2                         NANCY GARNETT,

3   having been first duly sworn to testify to the truth, the

4   whole truth, and nothing but the truth, was examined and

5   testified as follows:

6           MR. DANN:  George, if you wouldn't mind putting on

7   the record your -- your conversation with opposing counsel.

8           MR. HAINES:  Sure.  I just had a conversation just

9   prior to this recording with Nick Porras.  He's counsel for

10  the defendant in this case -- for the defendants in this case.

11  He had indicated that he will not be attending this

12  deposition.  He is, I believe, about to jump on a train to go

13  somewhere, but we had filed a notice of deposition with the

14  court.  I had -- so he received the notice through electronic

15  service.  We had also mailed him the notice.  I believe I had

16  emailed him the notice of the subpoena as well.

17          In addition, I emailed him the instructions on how

18  to appear at today's deposition yesterday -- or I believe it

19  was yesterday morning, as soon as I received the instructions.

20  He is not appearing at this deposition.

21          MR. DANN:  Thank you.

22                         EXAMINATION

23  BY MR. DANN:

24      Q.   May I call you Nancy or Ms. Garrett [sic]?

25  Mrs. Garrett?  What do you prefer?

Nancy Garnett                                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 6

```
 1      A.    Nancy's fine.

 2      Q.    Nancy's fine, because I just butchered your last

 3  name, so I'm sorry --

 4      A.    That's okay.  Everybody does the same thing, so it's

 5  okay.

 6      Q.    Nancy, my name is Marc Dann, and I'm a lawyer.  I

 7  represent Lisa Bryant, who is the plaintiff in this lawsuit.

 8            Have you ever had your deposition taken before?

 9      A.    Long time ago.

10      Q.    Okay.  How -- how -- like 10 years?  20 --

11      A.    Oh, years.  Probably 20.

12      Q.    What kind of case were you -- was your deposition

13  taken in?

14      A.    It had to do with tires, faulty tires on a car that

15  was sold to us through a car dealership.

16      Q.    Yes.

17      A.    Yeah.

18      Q.    All right.  So I'm going to remind you, since it's

19  been a while, kind of what the rules are in a deposition.

20      A.    Mm-hmm.

21      Q.    I'm going to ask you questions, and you will -- you

22  have whatever time you need to respond to those questions.  If

23  for some reason you don't understand a question that I'm

24  asking, then I'm happy to rephrase it, and -- so that -- until

25  I get to a question that you can understand and confidently
```

Nancy Garnett                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

1    answer.

2            And is it -- and -- and if you don't -- if you

3    answer without asking me to correct the question, is it fair

4    for me to understand -- to -- to conclude that you understood

5    the question and you're answering the question I'm asking?

6        A.    Yes.

7        Q.    Are you under -- on any medication or anything else

8    that would impair your memory or -- or ability to testify or

9    reason today?

10       A.    No.

11       Q.    Okay.  Do you suffer from any -- any physical

12   conditions that might impact your ability to testify

13   truthfully today?

14       A.    No.

15       Q.    Okay.  You -- are you -- you're here as a result of

16   a subpoena; is that correct?

17       A.    That's correct.

18       Q.    Did you get a chance to review the subpoena that was

19   sent to you?

20       A.    I did.

21       Q.    Okay.  And I appreciate you appearing.

22            What did you do, if anything, to prepare for today's

23   deposition.

24       A.    I just had some emails that Lisa and I had exchanged

25   and a letter that I had written her prior to her court date

Nancy Garnett                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 8

1    with the -- it was, I don't know, several pages long, just

2    explaining my notary required -- what I'm required to do as a

3    notary, and my signing a -- an agreement with the agency that

4    dispatches me on the jobs to follow their direction on what to

5    do if the client decides not to sign the paperwork.

6          Q.   Okay.  Anything else besides those things?

7          A.   No.

8          Q.   Okay.  Nancy, what is your -- where are you employed

9    now?

10         A.   I am self-employed.  I'm a mobile notary, and I do

11   work with people who are signing mortgages, all kinds, reverse

12   mortgages, business mortgages, conventional mortgages, jumbo

13   loans, all of that.  My primary task is the notarization

14   process and to show the documents that are being signed so

15   that people understand what they're signing.

16         Q.   Could you venture or could you tell me how many

17   documents you've notarized in your career?

18         A.   Thousands.  I started in 2003, and I've been doing

19   it -- it's the only job I have.  That's what I've been doing

20   since 2003.

21         Q.   And did you have any training to become a notary?

22         A.   Yes.

23         Q.   (Indiscernible.)

24                        (Reporter interjection.)

25   ///



Nancy Garnett                               Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 9

1    BY MR. DANN:

2        Q.   Did you have any training to become a notary?  Now

3    you may answer.

4        A.   Oh.  Yes.  I started my career and got my training

5    through the National Notary Association, and every two years

6    I'm required to have that same training.  Again it doesn't

7    change very much, because the process is pretty much the same,

8    but I -- let's see.  This is my -- one, two -- I think this is

9    my third or fourth time renewing as a notary.  That's every

10   four years, so however that calculates out.

11          The -- when I first started the notary, the State of

12   Nevada, they still do, actually, had a in- -- in one of the

13   big ballrooms at the hotels, they would have all of the

14   notaries come and do a training, and then that's supposed

15   to -- each time you get your commission renewed, that is

16   continuing, so I just renewed my commission like a year and a

17   half ago and went through there.  It's now online, so I did

18   that training plus the Notary Association as well.

19       Q.   I just want to go back to your preparation.  Did you

20   email with anybody else in preparation for this?  Did you

21   share Lisa's emails or your emails to Lisa?

22       A.   No.  No.

23       Q.   Did you reach out at all to the agency that had

24   hired you to notarize Lisa's documents?

25       A.   I don't even know what that is.  That's

Nancy Garnett                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

1    been 16 years ago or 15, however long.  It's been a long time.

2    2006 is when all this happened, and I just -- the information

3    I provided to her through that letter, conversations on the

4    phone has not changed.  It's always been the same, and that

5    is -- I don't know if you want me to go that far now or you

6    want to wait and ask me the question --

7         Q.    Oh, sure --

8         A.    -- the process.

9         Q.    That was my next question, so go right ahead.

10        A.    Okay.  So the process is I'm a contracted employee

11   with multiple loan signing agencies, and I don't remember and

12   I don't have any record of the agency that actually sent me

13   out.  However, the process is the same across the agencies

14   that I do work with when a borrower refuses to sign the

15   paperwork, and I even called the agency when she was there

16   because she refused to sign.  She said the terms were not what

17   she wanted, and that's perfectly fine.  It's not up to me to

18   make that decision.  So while I was there, I called the agency

19   that dispatched me on that job and asked what they wanted me

20   to do with the paperwork that she refused to sign.  I already

21   knew the answer, but I wanted her to hear it from them, and

22   that is to return the paperwork to them unsigned.

23             I sent with that a note back saying, Borrower

24   refused to sign.  They also knew because when I called them, I

25   told them that she was refusing to sign, what should I do, and

Nancy Garnett                              Lisa A. Bryant v. Madison Management Services, LLC, et al.

1   that's what they told me to do.

2         Q.    What -- what is the process that you use -- and I --

3   first of all, is the process of notarizing a document the same

4   now as it was 16 years ago?

5         A.    Yes.

6         Q.    Can you describe for me and walk us through the

7   process of notarizing a document, what happens and when?

8         A.    Okay.  What I do, and it is slightly different,

9   because of my past experience with people who don't sign in

10  the middle -- we've gone all the way through it halfway and

11  found out the terms are not what they expected, so what I do

12  is I take their ID and I copy it into my journal and I have

13  them sign on the space that says "sign."  So then I start to

14  explain the documents to them one by one, and at that point

15  they either go forward based on the information that's in the

16  documents so that they know that the terms are what they

17  agreed to or they don't.  So if they change -- if they don't

18  change their mind and decide not to sign and we go forward, I

19  notarize them as we go.  We didn't get that far in Lisa's case

20  because she declined to sign.

21        Q.    So she never signed anything and you never notarized

22  anything; is that correct?

23        A.    That's correct.  The only thing she signed was my

24  journal.

25        Q.    And tell me about the journal.  What -- what -- what

www.oasisreporting.com                    OASIS
                                          REPORTING SERVICES            702-476-4500

Nancy Garnett                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 12

1   is the journal?  How -- why did she sign it?  What's -- what's

2   the process there?

3       A.   Well, we're supposed to take -- through the

4   National -- or with the notary commission, the instructions

5   are to copy down the information from their license, name,

6   address, license number, date of birth, issue date, and

7   expiration date, and it's a one-entry line for the journal

8   that I have.

9            My journal is set up for mortgage documents, because

10  they have little checkboxes that show deed of trust,

11  compliance agreement, all those things that need to be

12  notarized, there's just a checkbox there, and without her

13  signing anything, I wouldn't have recorded anything in the

14  journal, other than the fact that she gave me her ID.

15      Q.   And did you check your journal when -- when Lisa

16  reached out to you?

17      A.   Did I check it?  Yes.  I gave her a copy of the

18  page.

19      Q.   Okay.  And what did you find?

20      A.   There were -- no checkboxes were checked and no

21  document names were written down on the entry where her

22  signature was.

23      Q.   Is there any chance that she could have signed

24  documents and you notarized them --

25      A.   No.



Nancy Garnett                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 13

```
 1        Q.    -- that -- that weren't -- and there wouldn't -- and
 2   you might have forgotten to put a check on the checkbox?
 3        A.    No.
 4        Q.    Why -- why --
 5        A.    I wouldn't --
 6        Q.    Why --
 7        A.    Go ahead.
 8        Q.    No, I just want to know why you're so sure about
 9   that.
10        A.    Because that's not my process.  I only write down
11   the documents that I notarize with her in front of me, so we
12   didn't even get to the point where we came to a document that
13   needed to be notarized.  The document -- notarized documents
14   are dispersed within the package that we have, and the package
15   could exceed 250 pages.  Again, I don't know in her case, but
16   unless I actually put my stamp and notarized a document with
17   her signature on it, it would not go into my journal, and
18   that -- that's what I'm required to do by the State and that's
19   my process for all these years.
20        Q.    All right.  I'm going to -- oh.  The other thing I
21   didn't tell you is if you need to take a break at any time,
22   you can tell me, as long as --
23        A.    Okay.
24        Q.    -- there's not a question pending, and I'm happy to
25   accommodate you.
```



Nancy Garnett                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 14

1       A.    No problem.

2       Q.    Okay.  Let me just -- I'm going to share my screen,

3    so if this works, and I'm going to share with you a document.

4    Can you see it?

5       A.    Yes.

6             MR. DANN:  Okay.  And Madam Reporter, this would be

7    our Exhibit A to the deposition.  We have not marked it as

8    such, but I -- we've provided you with a copy, and I would ask

9    that you marked it as Exhibit A, if that's acceptable to you.

10   BY MR. DANN:

11      Q.    Okay.  So I'm going to ask you some questions about

12   this document.

13      A.    Yes.

14      Q.    First of all, it's dated June 7th, 2021.  Can you

15   tell me whether you've seen this document before?

16      A.    Yes.  That's the document that I put together for

17   Lisa prior to her court date, the last court date.  I don't

18   know how many court dates she's had, but this was the most

19   recent one.

20      Q.    So this is an authentic copy of the letter that you

21   sent to Lisa?

22      A.    Yes, it is.

23      Q.    Okay.  And did you indeed send it on June 7th,

24   2021?

25      A.    Yes, I did.

Nancy Garnett                         Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 15

1        Q.    Okay.  And in this letter it indicates that

2   somewhere during the process, she decided she did not want the

3   loan.  Let me try to find that.

4              Do you recall writing that to her?

5        A.    Yes.

6        Q.    Okay.  And is that what actually happened?

7        A.    Yes.

8        Q.    Okay.  Was there any condition that she had on that

9   or any -- any conversation with anybody else other than you --

10  and then you put her on the phone with -- with whoever sent

11  you there?

12       A.    No.  It was just she and I together.  There was

13  no -- I don't recall any family members there, any children.

14  As far as I remember, it was just she and I.

15       Q.    And you don't recall which signing agency it was

16  that you --

17       A.    No.  I worked for a whole bunch of them, yeah.

18       Q.    Okay.  And did you -- you said that you returned the

19  package, then, to the signing agency?

20       A.    Correct.

21       Q.    And when you --

22       A.    They provide me with a FedEx label going back

23  directly to the -- actually, to the title company, but the

24  signing agency works directly with the title company, and so

25  my instruction was to return it back to the title company,



Nancy Garnett                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

                                                                    Page 16

1    which was on a FedEx or UPS label that was provided to me when

2    I printed out the documents.

3         Q.   Do you remember who the title company is?

4         A.   I do not.

5         Q.   Okay.  And it was only 16 years ago.  I can't

6    imagine you can't remember.

7         A.   Yeah, I know.  I'm lucky to remember what I did last

8    week.

9         Q.   Understood.

10        Did you have any communication with the originator

11   of the loan, and -- first of all, did you have any direct

12   communication with the title company other than mailing them

13   back the documents?

14        A.   No.  Once the borrower decides not to sign, I know

15   from what I've always supposed to do is return them.

16        Q.   Mm-hmm.

17        A.   I don't even know what made me call the people in

18   front of them, but I think because she was so adamant about

19   taking the documents back, that I said -- because I told her,

20   I have to return them.  That generates an invoice for me as my

21   payment to show up, and then it also keeps them in the loop

22   that I'm returning them.  And so once I left there, the very

23   next day, I put the whole package with the note on there

24   stating that she had refused to sign and put it into the --

25   the return label, either FedEx or UPS, and again, I don't



Nancy Garnett                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 17

1    remember, and dropped it into the box or UPS or FedEx

2    directly.

3        Q.   Nancy, are you paid based -- the same if somebody

4    signs or if somebody doesn't sign?

5        A.   No.  I get half of what the agreed fee is.  Back

6    then, the fee was around $75 for a full signed and executed

7    package, so -- every now and then at that time I would get a

8    hundred dollars, but I would only get 50 percent of that if

9    they chose not to sign, so basically it's a print fee and a

10   show-up fee.

11       Q.   Mm-hmm.  And did -- I'm sorry.  What's -- and what's

12   the fee currently for -- for that -- for that work?

13       A.   Now they're -- it depends on the type of loan.

14   Reverse mortgages are anywhere from a hundred to 150, and then

15   the regular loans are 75 to a hundred.  Reverse mortgages

16   have -- they're like almost 300 pages, and that's why we get

17   paid a little bit more, but typically on a -- let's say an

18   average of a 150-page document, I would get paid a hundred,

19   and that includes the printing fee.

20       Q.   Do you worry that that would give you or somebody

21   else an incentive to try to get documents signed, even if

22   somebody like -- like Lisa Bryant said they didn't want to

23   sign them, because you had a financial incentive?

24       A.   No.  I would not do that.  I'm not -- that's not me.

25   That's not who I am.  I'm very honest.  I built a good



Nancy Garnett                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 18

1    reputation.  I have no reason for anything like that to

2    happen.

3         Q.   All right.  You've never been disciplined as a

4    notary or had any -- any action by the State regarding your

5    work as a notary?

6         A.   I did once when somebody questioned the number of

7    appointments that I had, and I proved what I had and I was

8    disciplined and that's never happened again.

9         Q.   What -- what year was that?  Do you recall?

10        A.   Oh, gosh.  I would say it's at least ten years ago.

11        Q.   And what was the nature of the discipline that --

12   that -- that was decided for you?

13        A.   That particular one, I had a loan officer that I was

14   working with and she asked me to notarize these and I was late

15   getting there, I didn't get there, so she watched them sign

16   and then I verified their signature against their driver's

17   licenses she gave me a copy of, and so that's something I know

18   that is not -- it's not legal.  I apologized for it.  It's

19   something I would never do again, and I paid the price for it.

20        Q.   And since that time, have you ever done anything

21   like that again?

22        A.   No.

23        Q.   Okay.  And -- all right.  Let me show you another

24   document.

25             Can you see this one?



Nancy Garnett                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 19

```
 1      A.    Yes.

 2      Q.    Okay.  And at the top it says here "Deed of trust."

 3            Do you see that?

 4      A.    Yes.

 5      Q.    Okay.  And can you see here --

 6            MR. DANN:  And Madam Reporter, I'd like to have this

 7      marked as Exhibit B, and this is the deed of trust.

 8   BY MR. DANN:

 9      Q.    The name Lisa Bryant, do you see that?

10      A.    I see it.

11      Q.    Okay.  Have you ever seen this document before?

12      A.    I can't -- I mean, I -- I see deeds every day, so I

13      couldn't say specifically unless I see my signature at the

14      bottom, and whether that is my signature or not.

15      Q.    Well, let's take a look at the bottom.

16      A.    That is my signature.

17      Q.    Okay.

18      A.    Go down to the very bottom of that page.

19      Q.    Mm-hmm.

20      A.    Back up.

21      Q.    Back up?

22      A.    Okay.  No, you're good.

23            No.  I don't know.  That's -- that's my writing,

24      that's my signature, I always print my name under it --

25      Q.    Mm-hmm.
```

Nancy Garnett                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 20

1     A.    -- but I don't know how she got that since she
2  declined to sign it.
3     Q.    When you say "how she got that," who do you mean by
4  "she"?
5     A.    Lisa.  I don't know -- I don't know who provided you
6  that information.  I don't know how that happened.
7     Q.    Okay.  But you -- to your recollection, Lisa never
8  signed anything in front of you?
9     A.    Not to my knowledge.
10    Q.    Right.  And your journal reflects that as well?
11    A.    Yes.
12    Q.    Okay.  Was the date of the journal that you checked
13 October 26th of 2006?
14    A.    I sent her a copy of it.  Yes, it was.  Oh, and
15 the -- on the journal, it shows $95.
16    Q.    Okay.  Does the journal indicate that this deed of
17 trust was signed --
18    A.    It does.
19    Q.    It does?
20    A.    It does.  Yes, it does.  I'm sorry.  My memory is
21 not so good.  I should have looked at this.
22    Q.    Okay.  Okay.  So the -- if the deed of trust -- so
23 when you recalled that she didn't sign documents, was it --
24 was it the deed of trust or something else that she didn't
25 agree to sign?

Nancy Garnett                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 21

1    A.   You know, I really don't remember.  I honestly

2    don't.  According to this, and I have to go by what the

3    journal says, we must have gotten at least partway through,

4    because the compliance agreement is checked off, the deed of

5    trust is checked off, and the signature affidavit is checked

6    off.

7        Q.   All right.  Did you -- did you know Lisa Bryant

8    personally?

9        A.   I did not.

10       Q.   Okay.  How did you identify her?

11       A.   With her driver's license.

12       Q.   Had you ever notarized documents that she signed

13   before or after?

14       A.   Not that I recall.

15       Q.   Has anybody else other than Lisa and now today me

16   talked to you about this particular signing and this

17   particular deed?

18       A.   No.

19       Q.   When you did the signings in 2006, if you can -- can

20   you tell me what the order was of documents that you had

21   signed?  Did you go in a certain order?

22       A.   Typically I go right from the first page to the

23   last, based on the way it was sent to me.

24       Q.   Okay.

25       A.   It's usually a PDF format.  It could be multiple

Nancy Garnett                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 22

1   attachments, and so I just put them all together, but usually

2   it's one document that I print out.

3        Q.   Like one big, long document, and then you go in

4   order?

5        A.   Yeah.

6        Q.   Do you know where the deed of trust --

7        A.   Correct.

8        Q.   -- usually falls in that order or is it different

9   with each -- with each signing?

10       A.   It's different with each signing.

11       Q.   Do you --

12       A.   A lot of times the title company has a big stack of

13  documents that I do first, because that's who it goes back to,

14  and then the loan documents start after all of the escrow

15  documents, so it could have been in -- from the first page of

16  the loan documents to where the deed was, it could have been

17  anywhere from, let's say, the 10th page to the 50th page.

18  They're just all in different order, basically.

19       Q.   But the -- as you said, the escrow documents, the

20  land title documents get signed first and then -- and then the

21  non-escrow documents afterward?

22       A.   Right.  And there's no hard-and-fast rule.  I could

23  have done the loan documents first and then the escrow

24  documents after, but typically I just always do the escrow

25  documents first and then the loan documents afterwards.



Nancy Garnett                     Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 23

1      Q.   And so it's -- is it -- is it reasonable to infer

2   that -- that -- that Lisa Bryant could have signed the deed of

3   trust without having ultimately signed the note?

4      A.   Yes, because the note is not notarized, so it

5   wouldn't go into the journal.

6      Q.   Right.  And you don't have any recollection of

7   whether she signed the note or not, correct?

8      A.   I do not.

9      Q.   But you do know that the process was interrupted at

10  a certain point?

11     A.   Yes.

12     Q.   And you know that for certain, correct?

13     A.   Yes, I do.  Right.

14     Q.   All right.  Have you ever heard from

15  Waldman & Porras or anybody else about this particular matter?

16     A.   No.

17     Q.   Anything from a company called PVK?

18     A.   No.

19          MR. DANN:  I -- let me just take a moment.  I'm

20  going to go off -- off screen for a second and see if --

21          THE WITNESS:  Okay.

22          MR. DANN:  -- and think about whether I have another

23  question to ask.

24          THE WITNESS:  Okay.

25          MR. DANN:  And I'd ask George to call me on my cell

Nancy Garnett                           Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 24

1   phone, if he could, so we'll go off the record now.

2              THE VIDEOGRAPHER:  We're off record at 2:04 p.m.

3              (Recess taken from 2:04 p.m. to 2:07 p.m.)

4              THE VIDEOGRAPHER:  We are back on the record, and

5   the time is 2:07 p.m.

6   BY MR. DANN:

7       Q.   Nancy, I just have, I believe, one more question.

8       A.   Sure.

9       Q.   Was anybody else present at the time you and -- and

10  Lisa Bryant were together for this signing?

11      A.   Not that I recall.

12             MR. DANN:  No further questions.  I really

13  appreciate your conscientious participation in this, and you

14  are obviously a good -- a good, honorable citizen, so thank

15  you for participating in this.

16             THE WITNESS:  Thank you.  I hope it comes through,

17  because I'm very -- I'm a Christian woman, so I don't want to

18  do anything that would make my God angry with me.

19             MR. DANN:  Thank you.

20             THE WITNESS:  Thank you.

21             MR. DANN:  You have the right to read this to make

22  sure the court reporter got it down correctly --

23             THE WITNESS:  Okay.

24             MR. DANN:  -- or you can waive that right and she

25  can just go ahead and produce the -- the transcript to me.

Nancy Garnett                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 25

1           THE WITNESS:  She can -- yeah.  I don't -- I mean,

2    I've given you all that I had.  I apologize for not reviewing

3    what I had prior to, and she can go ahead.

4           MR. DANN:  Okay.  All right.  That's it.  With that,

5    no further -- I think we're done.  Thank you very much.

6           THE WITNESS:  Thank you.

7           THE VIDEOGRAPHER:  This will conclude the video

8    deposition of Nancy Garnett, and we are off record at

9    2:09 p.m.

10          (Exhibits A and B marked for identification.)

11             (The deposition concluded at 2:09 p.m.)

12                            -oOo-

13

14

15

16

17

18

19

20

21

22

23

24

25

Nancy Garnett                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 26

1                    REPORTER'S CERTIFICATE

2

   STATE OF NEVADA    )
3                     )    ss:
   COUNTY OF CLARK    )

4

5          I, Sarah M. Winn-Boddie, a Certified Court Reporter
   licensed by the State of Nevada, do hereby certify:  That I
6  reported the videotaped, videoconferenced deposition of NANCY
   GARNETT, commencing on Friday, July 30, 2021 at 1:36 p.m.

7          That prior to being deposed, the witness was duly
   sworn by me to testify to the truth.  That I thereafter
8  transcribed my said shorthand notes into typewriting and that
   the typewritten transcript is a complete, true and accurate
9  transcription of my said shorthand notes, and that review of
   the transcript has been waived.

10

11         I further certify that I am not a relative, employee
   or independent contractor of counsel, of any of the parties,
12 nor a relative, employee or independent contractor of the
   parties involved in said action, nor a person financially
13 interested in the action, nor do I have any other relationship
   with any of the parties or with counsel of any of the parties
14 involved in the action that may reasonably cause my
   impartiality to be questioned.

15         IN WITNESS WHEREOF, I have set my hand in my office
   in the County of Clark, State of Nevada, this 7th day of
16 August, 2021.

17                    _____

18                    Sarah M. Winn-Boddie, RPR, CCR No. 868

19

20

21

22

23

24

25

# EXHIBIT "5"

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

## Redacted A/C Privilege

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by CJOHNSON on |
| Date: | Tuesday, March 31, 2020 6:46 PM | Last changed by   on |
| Type: | Incoming | No follow up requested |
| Contact: | Borrower | |
| Subject: | New QWR | |

Received letter dated 3/17/20 by Certified Mail from borrower. Similar to previous letters.
Mailed confirmation of receipt and response letter to borrower's new QWR (duplicative requests) via regular mail on 3/20/20 .

## Redacted A/C Privilege

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

# Redacted A/C Privilege

| Account: | 0002003191-Lisa Bryant | Created by CJOHNSON on |
|---|---|---|
| Date: | Friday, January 10, 2020 7:34 PM | Last changed by  on |
| Type: | Incoming | No follow up requested |
| Contact: | Borrower | |
| Subject: | QWR response | |

Mailed response letter to 1-4-20 QWR from borrower (duplicative) via regular mail.

| Account: | 0002003191-Lisa Bryant | Created by CJOHNSON on |
|---|---|---|
| Date: | Thursday, January 9, 2020 6:27 PM | Last changed by  on |
| Type: | Incoming | No follow up requested |
| Contact: | Borrower | |
| Subject: | Letter received 1/9/20 - new QWR | |

Received letter dated 1/4/20 by Certified Mail from borrower. Letter indicates sent by fax on 1/4/20

---

New Fax

A fax of 2 pages has been received on 2020/01/06 13:55:53 at your fax number (+18775634161) and has been attached to this email.

Tracking Number:        ct18775634161-20200106105553103-234-25
Received from (CSID):  +15102565594
Received from (Caller ID):        15102565594
Number of Pages:        2 pages
Time Received: 2020/01/06 13:55:53

---

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on |
|---|---|---|
| Date: | Tuesday, December 17, 2019 2:30 PM | Last changed by  on |
| Type: | Incoming | No follow up requested |
| Contact: | Email from Support Team | |
| Subject: | Email from Support Team | |

From: Support@HLP.org [mailto:Support@HLP.org]
Sent: Tuesday, December 10, 2019 10:17 AM
To: Damian Hernandez
Subject: Re: MMS | Unable to Register {329473}

## Reply ABOVE THIS LINE to add a note to this request ##
Request Update          View the complete request history


Damian,

We are looking into this and any updates, you will be notified ASAP!

Appreciate your patience.
Regards,
The Support Team

| Account: | 0002003191-Lisa Bryant | Created by CJOHNSON on |
|---|---|---|
| Date: | Wednesday, December 11, 2019 7:37 PM | Last changed by  on |
| Type: | Incoming | No follow up requested |
| Contact: | Borrower | |
| Subject: | QWR | |

Mailed MMS 12/10/19 letter (QWR) to borrower via regular mail.

| Account: | 0002003191-Lisa Bryant | Created by SBHARDWAJ on |
|---|---|---|
| Date: | Wednesday, December 11, 2019 7:30 PM | Last changed by  on |
| Type: | Incoming | No follow up requested |
| Contact: | Email to borrower | |
| Subject: | Response to QWR received 12/6/19 | |

Emailed a copy of the response to QWR to borrower as requested by her.

| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on |
|---|---|---|
| Date: | Tuesday, December 10, 2019 5:15 PM | Last changed by  on |
| Type: | Incoming | No follow up requested |
| Contact: | Email from Support Team | |
| Subject: | Email from Support Team | |

From: Support@HLP.org [mailto:Support@HLP.org]
Sent: Monday, December 09, 2019 5:57 PM
To: Damian Hernandez
Subject: Re: MMS | Unable to Register {329473}

## Reply ABOVE THIS LINE to add a note to this request ##
Request Update          View the complete request history


Hello Damian,
We have received your request for support. An agent will be assigned to your request and will respond to you shortly.
Your request has been assigned ticket #: 329473.
Thank you,
The Support Team

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by CJOHNSON on |
| Date: | Friday, December 6, 2019 6:43 PM | Last changed by  on |
| Type: | Incoming | No follow up requested |
| Contact: | Borrower | |
| Subject: | Letter dated 12/02/2019 for QWR | |

Received letter dated 12/02/2019 by Certified Mail from borrower on 12/6/19. Letter indicates sent by fax on 12/02/2019 - did not notice any faxes received by borrower on that date or thereafter. Scanned to network.

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by CJOHNSON on |
| Date: | Monday, December 2, 2019 6:14 PM | Last changed by  on |
| Type: | Incoming | No follow up requested |
| Contact: | Home Means Nevada Inc | |
| Subject: | Foreclosure Mediation | |

Received 11-21-19 letter from Home Means Nevada Inc with copy of Petition for Foreclosure Mediation Assistance filed by borrower om 11/19/19.
Saved to network.

# Redacted A/C Privilege

CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)

Madison Management Services, LLC

Tuesday, April 14, 2020

# Redacted A/C Privilege

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | | Created by DHERNANDEZ on |
| Date: | Monday, July 22, 2019 2:08 PM | | Last changed by  on |
| Type: | Incoming | | No follow up requested |
| Contact: | Email to FC Attorney | | |
| Subject: | | | |

From: Damian Hernandez
Sent: Monday, July 22, 2019 2:08 PM
To: 'damian@dwaldmanlaw.com'; nick@dwaldmanlaw.com
Cc: marty@dwaldmanlaw.com; caleb@dwaldmanlaw.com; Foreclosure
Subject: RE: Re[2]: RE: PVK RE: MMS - Lisa Bryant - 0002003191 - 719 N. Racetrack Road, Henderson, NV 89015 - RE: Lisa Bryant Current Reinstatement and Payment History

Hi,

The Servicing License for Nevada is now active.

Account can proceed.

Thank you,

Damian Hernandez
Madison Management Services, LLC
4600 Kietzke Lane,
Suite B119,
Reno, NV 89502
Tel: 877-563-4164 Ext. 108
Fax:  877-563-4161
Email:dhernandez@madisonmanagement.net

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | | Created by DHERNANDEZ on |
| Date: | Tuesday, July 9, 2019 10:43 AM | | Last changed by  on |
| Type: | Incoming | | No follow up requested |
| Contact: | Note | | |
| Subject: | | | |

https://nmlsconsumeraccess.org/EntityDetails.aspx/COMPANY/185724

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | | Created by DHERNANDEZ on |
| Date: | Tuesday, July 9, 2019 10:41 AM | | Last changed by  on |
| Type: | Incoming | | No follow up requested |
| Contact: | Changing Follow Up Date | | |
| Subject: | | | |

Changing Follow Up Date

# Redacted A/C Privilege

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

The investor for the above account has been notified of the payment history being needed.

It is not readily available.

Thank you,

Damian Hernandez
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Tel: 877-563-4164 Ext. 108
Fax:  877-563-4161
Email:dhernandez@madisonmanagement.net

Please allow 24-48 hrs for email response.

| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Tuesday, December 4, 2018 5:23 PM |
|---|---|---|
| Date: | Tuesday, December 4, 2018 5:23 PM | Last changed by kcordell on Tuesday, December 4, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email to Investor | |
| Subject: | | |

-----Original Message-----
From: Damian Hernandez
Sent: Tuesday, December 04, 2018 9:05 AM
To: 'Howard Katz'
Cc: pwrply@pacbell.net; Foreclosure
Subject: RE: MMS - Lisa Bryant - 0002003191 - 719 N. Racetrack Road, Henderson, NV 89015

Howard,

That is not how it works unfortunately.

Damian Hernandez
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Tel: 877-563-4164 Ext. 108
Fax:  877-563-4161
Email:dhernandez@madisonmanagement.net

Please allow 24-48 hrs for email response.

| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Tuesday, December 4, 2018 5:23 PM |
|---|---|---|
| Date: | Tuesday, December 4, 2018 5:23 PM | Last changed by kcordell on Tuesday, December 4, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email from Investor | |
| Subject: | | |

-----Original Message-----
From: Howard Katz [mailto:howard.ggdoor@gmail.com]
Sent: Monday, December 03, 2018 10:36 AM
To: Damian Hernandez
Cc: pwrply@pacbell.net; Foreclosure
Subject: Re: MMS - Lisa Bryant - 0002003191 - 719 N. Racetrack Road, Henderson, NV 89015

She should prove she made payments

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

Sent from my iPhone

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Tuesday, December 4, 2018 5:23 PM |
| Date: | Tuesday, December 4, 2018 5:23 PM | Last changed by kcordell on Tuesday, December 4, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email to Investor | |
| Subject: | | |

-----Original Message-----
From: Damian Hernandez
Sent: Monday, December 03, 2018 10:37 AM
To: 'Howard Katz'
Cc: pwrply@pacbell.net; Foreclosure
Subject: RE: MMS - Lisa Bryant - 0002003191 - 719 N. Racetrack Road, Henderson, NV 89015

Howard,

The seller of the loan will need to be contacted or previous servicer(s).

Madison does not back track loan histories.

Damian Hernandez
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Tel: 877-563-4164 Ext. 108
Fax: 877-563-4161
Email:dhernandez@madisonmanagement.net

Please allow 24-48 hrs for email response.

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Tuesday, December 4, 2018 5:22 PM |
| Date: | Tuesday, December 4, 2018 5:22 PM | Last changed by kcordell on Tuesday, December 4, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email from Investor | |
| Subject: | | |

-----Original Message-----
From: Howard Katz [mailto:howard.ggdoor@gmail.com]
Sent: Monday, December 03, 2018 10:36 AM
To: Damian Hernandez
Cc: pwrply@pacbell.net; Foreclosure
Subject: Re: MMS - Lisa Bryant - 0002003191 - 719 N. Racetrack Road, Henderson, NV 89015

How do we do it?

Sent from my iPhone

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Tuesday, December 4, 2018 5:22 PM |
| Date: | Tuesday, December 4, 2018 5:22 PM | Last changed by kcordell on Tuesday, December 4, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email to Investor | |
| Subject: | | |

-----Original Message-----
From: Damian Hernandez
Sent: Monday, December 03, 2018 9:31 AM
To: 'Howard Katz'

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

Cc: pwrply@pacbell.net; Foreclosure
Subject: RE: MMS - Lisa Bryant - 0002003191 - 719 N. Racetrack Road, Henderson, NV 89015

Hi,

It is needed from origination, not just from PVK's ownership.

Thank you,

Damian Hernandez
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Tel: 877-563-4164 Ext. 108
Fax:  877-563-4161
Email:dhernandez@madisonmanagement.net

Please allow 24-48 hrs for email response.

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Tuesday, December 4, 2018 5:22 PM | |
| Date: | Tuesday, December 4, 2018 5:22 PM | Last changed by kcordell on Tuesday, December 4, 2018 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Email from Investor | | |
| Subject: | | | |

-----Original Message-----
From: Howard Katz [mailto:howard.ggdoor@gmail.com]
Sent: Friday, November 30, 2018 6:16 PM
To: Damian Hernandez
Cc: pwrply@pacbell.net; Foreclosure
Subject: Re: MMS - Lisa Bryant - 0002003191 - 719 N. Racetrack Road, Henderson, NV 89015

It's easy she's never made one payment to me ever. Thank you

Sent from my iPhone

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Friday, November 30, 2018 1:52 PM | |
| Date: | Friday, November 30, 2018 1:52 PM | Last changed by kcordell on Friday, November 30, 2018 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Email to Investor | | |
| Subject: | | | |

-----Original Message-----
From: Damian Hernandez
Sent: Friday, November 30, 2018 1:52 PM
To: 'Howard Katz'; pwrply@pacbell.net
Cc: Foreclosure
Subject: MMS - Lisa Bryant - 0002003191 - 719 N. Racetrack Road, Henderson, NV 89015

Hi,

Counsel is requesting a full payment history from loan origination.

Borrower is raising litigation on verifying payment status it seems.

Thank you,

Damian Hernandez
Madison Management Services, LLC

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Friday, November 30, 2018 1:50 PM |
| Date: | Friday, November 30, 2018 1:50 PM | Last changed by kcordell on Friday, November 30, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email from Investor | |
| Subject: | | |

-----Original Message-----
From: Howard Katz [mailto:howard.ggdoor@gmail.com]
Sent: Thursday, November 29, 2018 2:32 PM
To: Damian Hernandez; pwrply@pacbell.net
Subject: Bryant

Please update me on this file. Thank you

Sent from my iPhone

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by DSUTULA on Thursday, November 29, 2018 2:02 PM |
| Date: | Thursday, November 29, 2018 2:02 PM | Last changed by kcordell on Thursday, November 29, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | | |
| Subject: | | |

Response to Complaint Letter sent via regular mail to:

Financial Institutions Division
Department of Business & Industry

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Wednesday, November 21, 2018 2:39 PM |
| Date: | Wednesday, November 21, 2018 2:39 PM | Last changed by kcordell on Wednesday, November 21, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Follow-up Date Change | |
| Subject: | | |

Follow-up Date Change

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Monday, November 19, 2018 10:39 AM |
| Date: | Monday, November 19, 2018 10:39 AM | Last changed by kcordell on Monday, November 19, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Follow-up Date Change | |
| Subject: | | |

Follow-up Date Change

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

# Redacted A/C Privilege

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | | Created by ARIVERA on Tuesday, August 28, 2018 6:29 PM |
| Date: | Tuesday, August 28, 2018 6:29 PM | | Last changed by kcordell on Tuesday, August 28, 2018 7:00 PM |
| Type: | Incoming | | No follow up requested |
| Contact: | Email to Lender | | |
| Subject: | | | |

From: Anasia Rivera
Sent: Tuesday, August 28, 2018 1:45 PM
To: 'Howard Katz'
Cc: 'john vach'; Howard Katz
Subject: RE: Bryant

Hi Howard,

Lisa is requesting the payment history for the loan. Please see attached. We do not have one on file for this property.

Respectfully,

Anasia Rivera
Asset Manager
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 117
*Please note my extension has changed to 117*
Please allow 24-48 hrs for email response.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

# Redacted A/C Privilege

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by DHERNANDEZ on Wednesday, June 27, 2018 10:11 AM |
| Date: Wednesday, June 27, 2018 10:11 AM | Last changed by kcordell on Wednesday, June 27, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

She received a letter from the attorney stating the servicer is willing to work with her. I asked her if it said that exactly or said if it said that the servicer may be willing to work her. I detailed that she does not qualify for any programs and only a fully reinstatement. She began to say what she is doing. I informed her that we do not need to know what step she is in. Providing us with steps is immatieral and we only need to know when she has received the assistance and provides us with documentation on the assistance. Lisa furthered on that she thinks this is fraud and wants her loan documents with her signature. I told her she can contact the county recorder directly and obtain copies. I would not go into detail on what fraud and victimization was being made. I advised her to contact an attorney to investigate her allegations since fraud is not something to be taken lightly.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by DHERNANDEZ on Wednesday, June 20, 2018 4:44 PM |
| Date: Wednesday, June 20, 2018 4:44 PM | Last changed by kcordell on Wednesday, June 20, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

Said she received a statement, I explained every loan receives a statement for most cases. Asked that the notes be noted that she is apply for a program on principal reduction.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by KCORDELL on Friday, June 22, 2018 12:07 PM |
| Date: Tuesday, June 12, 2018 3:31 PM | Last changed by kcordell on Friday, June 22, 2018 12:07 PM |
| Type: Incoming | No follow up requested |
| Contact: sbhardwaj | |
| Subject: Privacy Policy | |

Mailed Privacy Policy with monthly statement

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, June 7, 2018 2:53 PM |
| Date: Thursday, June 7, 2018 2:53 PM | Last changed by kcordell on Thursday, June 7, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: | |
| Subject: | |

Default Notice expires 6/25/18

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

From: Anasia Rivera
Sent: Tuesday, May 22, 2018 11:22 AM
To: 'Howard Katz'; john vach
Subject: RE: Bryant

Thank you. I have contact the attorney to begin the foreclosure. Thank you.


Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax: 877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.


From: Howard Katz [mailto:howard.ggdoor@gmail.com]
Sent: Monday, May 21, 2018 3:20 PM
To: Anasia Rivera; john vach
Subject: Re: Bryant

Approved

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Friday, May 18, 2018 11:48 AM |
|---|---|---|
| Date: | Friday, May 18, 2018 11:48 AM | Last changed by kcordell on Friday, May 18, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email to Lender | |
| Subject: | | |


From: Anasia Rivera
Sent: Friday, May 18, 2018 11:48 AM
To: Howard Katz
Cc: pwrply@pacbell.net
Subject: RE: Bryant

Hi,

Please review the attached Fee Schedule for approval. Thank you.


Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax: 877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, May 17, 2018 9:22 AM |
| Date: Thursday, May 17, 2018 9:22 AM | Last changed by kcordell on Thursday, May 17, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email Log w/ Lender | |
| Subject: | |

From: Anasia Rivera
Sent: Thursday, May 17, 2018 9:22 AM
To: Howard Katz
Cc: pwrply@pacbell.net; Juan Vazquez
Subject: RE: Bryant

Good Morning,

Will do. Thank you.

Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

From: Howard Katz [mailto:topkat95@aol.com]
Sent: Monday, May 14, 2018 4:12 PM
To: Anasia Rivera
Cc: pwrply@pacbell.net; Juan Vazquez
Subject: Re: Bryant

yes withdraw $200.00 for FC

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, May 14, 2018 1:48 PM |
| Date: Monday, May 14, 2018 1:48 PM | Last changed by kcordell on Monday, May 14, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

called in, we discussed the account. I let her know the full RI is due at this time and the lender is going to take legal action at this time. She will try to come up with money to reinstate

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, May 14, 2018 11:07 AM |
| Date: Monday, May 14, 2018 11:07 AM | Last changed by kcordell on Monday, May 14, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email Log w/ Borrower | |
| Subject: | |

-----Original Message-----
From: Anasia Rivera
Sent: Monday, May 14, 2018 11:06 AM

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

To: 'lisa byrant'
Subject: RE: Forebearance fee

Hi,

I apologize but we are no longer accepting payments less than the full reinstatement. Thank you.


Respectfully,

 Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.




-----Original Message-----
From: lisa byrant [mailto:verdelw@gmail.com]
Sent: Friday, May 11, 2018 12:47 PM
To: Anasia Rivera
Subject: Forebearance fee


Please accept a payment for fee for forebearance agreement for 24 months and we can discuss the need for your assistance to
 answer questions on programs available to get my lender/investor some money !!

We ( us) are presently applied to an available program as they use private and federally funded programs!!

Please assist to allow this to happen by contacting me this morning!!
Pacific time !!
My phone is what ( all ) I have to work as a computer!!
My tax preparer is also a realtor and was on vacation for docs this agency required!! He had them and I did not have any copies
 and it created a hardship!!
I did not expect him to disappear and created appointments that were very far to get to and then be told to come back !!
I would ask that you take the payment information for a one time fee and simply hold the funds so we may speak or complete th
e agreement!!
In the meantime I anxiously await your call and a conference call additionally to the worker !
Thankyou,
Lisa Bryant
7023793011
Sent from my iPhone

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, May 14, 2018 11:01 AM |
|---|---|---|
| Date: | Monday, May 14, 2018 11:01 AM | Last changed by kcordell on Monday, May 14, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email Log w/ Lender | |
| Subject: | | |


-----Original Message-----
From: Anasia Rivera
Sent: Monday, May 14, 2018 11:01 AM
To: Howard Katz

## CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)

Madison Management Services, LLC

Tuesday, April 14, 2020

Cc: pwrply@pacbell.net; Juan Vazquez
Subject: RE: Bryant

Good Morning,

Please confirm our accounting department can withdraw $200 via ach for our FC Referral Fee. Thank you.


Respectfully,

 Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.



-----Original Message-----
From: Howard [mailto:topkat95@aol.com]
Sent: Thursday, May 10, 2018 4:55 PM
To: Anasia Rivera
Cc: pwrply@pacbell.net
Subject: Re: Bryant

I've never done that before maybe you can either walk me through it or do it for me thank you Howard

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Friday, May 11, 2018 2:14 PM |
| Date: | Friday, May 11, 2018 2:14 PM | Last changed by kcordell on Friday, May 11, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

She called to process a $400.00 Forbearance Payment, I explained the hold on account to only accept full reinstatement and proceeding with Legal. No more extensions or allotments would be granted. She became trivial. I ended the conversation explaining only a full reinstatement will be allowed, no more extension or allotments, the account will be proceeding to our legal department and during that time she can find assistance else where and she can communicate with whomever she'd like and to communicate with us. We will express the same options to them.

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by SDUFFY on Friday, May 11, 2018 2:01 PM |
| Date: | Friday, May 11, 2018 2:01 PM | Last changed by kcordell on Friday, May 11, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa - 702-379-3011 | |
| Subject: | | |

Lisa Bryant called in and wanted to discuss her loan.  I let her know that her lender has initiated the legal process for this loan and has rescinded any and all agreements discussed with the borrower.  Lisa was not happy with this and stated that she wanted to pay the $400.00 but that she has been trying to work with the Community Services of Nevada to get mortgage assistance.  I let her know that her only option is to make a full reinstatment payment.  She stated that she may have to contact the attorney general and that she wanted to speak with ehr lender directly.  I let her know that this message will be relayed to the borrower.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by SDUFFY on Friday, May 11, 2018 1:58 PM |
| Date: Friday, May 11, 2018 1:58 PM | Last changed by kcordell on Friday, May 11, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: ONLY ACCEPT FULL REINSTATEMENT PAYMENT | |
| Subject: | |

ONLY ACCEPT FULL REINSTATEMENT PAYMENT

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by SDUFFY on Friday, May 11, 2018 1:44 PM |
| Date: Friday, May 11, 2018 1:44 PM | Last changed by kcordell on Friday, May 11, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lender | |
| Subject: | |

Lender called in and stated that we are not to accept any payments from this borrower outside of the full reinstatement

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, May 10, 2018 4:17 PM |
| Date: Thursday, May 10, 2018 4:17 PM | Last changed by kcordell on Thursday, May 10, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email Log w/ Lender | |
| Subject: | |

From: Anasia Rivera
Sent: Thursday, May 10, 2018 4:17 PM
To: Howard Katz
Cc: pwrply@pacbell.net
Subject: RE: Bryant

Good Afternoon,

Will do. Please submit your FC Referral Request on our website. Thank you.


Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.



From: Howard Katz [mailto:topkat95@aol.com]
Sent: Wednesday, May 09, 2018 12:35 PM
To: Anasia Rivera
Cc: pwrply@pacbell.net
Subject: Re: Bryant

Please foreclose rescind any and all agreements with her.
Thanks,
Howard

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, May 10, 2018 2:43 PM |
| Date: Thursday, May 10, 2018 2:43 PM | Last changed by kcordell on Thursday, May 10, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email Log w/ Borrower | |
| Subject: | |

-----Original Message-----
From: Anasia Rivera
Sent: Thursday, May 10, 2018 2:43 PM
To: 'LISA BRYANT'
Subject: RE: Getting back from Az

Good Afternoon,

Unfortunately due to the delay in executing an agreement, the lender has decided to rescind the forbearance agreement and turn this file over to legal. Thank you.

Respectfully,

 Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, May 8, 2018 12:17 PM |
| Date: Tuesday, May 8, 2018 12:17 PM | Last changed by kcordell on Thursday, May 10, 2018 10:54 AM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

called in, she will give me a call back to process her payment.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, May 8, 2018 12:16 PM |
| Date: Tuesday, May 8, 2018 12:16 PM | Last changed by kcordell on Thursday, May 10, 2018 10:54 AM |
| Type: Incoming | No follow up requested |
| Contact: Email to Lender | |
| Subject: | |

-----Original Message-----
From: Anasia Rivera
Sent: Tuesday, May 08, 2018 12:16 PM
To: Howard Katz
Cc: pwrply@pacbell.net
Subject: RE: Bryant

Hi,

Just so you are aware, Lisa would like a copy of her payment history before entering an agreement. She has called the past two servicers and they don't have her loan activity on file.

Respectfully,

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, May 8, 2018 12:14 PM |
| Date: Tuesday, May 8, 2018 12:14 PM | Last changed by kcordell on Thursday, May 10, 2018 10:54 AM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 - Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, May 7, 2018 1:51 PM |
| Date: Monday, May 7, 2018 1:51 PM | Last changed by kcordell on Monday, May 7, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

(702) 379-3011 - we discussed the account. She wants to verify the amount owed is correct before entering an agreement. She wants the history of the loan first.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, May 7, 2018 9:13 AM |
| Date: Monday, May 7, 2018 9:13 AM | Last changed by kcordell on Monday, May 7, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email from Lender | |
| Subject: | |

From: LISA BRYANT [mailto:lisabryantiz@yahoo.com]
Sent: Friday, May 04, 2018 11:00 AM
To: Anasia Rivera
Subject: Re: Lisa Bryant - 3191

I am serious I have set aside the money to pay !! tell Howard we both need your help !!
Sent from my iPhone

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, May 3, 2018 4:05 PM |
| Date: Thursday, May 3, 2018 4:05 PM | Last changed by kcordell on Thursday, May 3, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 - Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, May 3, 2018 4:05 PM |
| Date: Thursday, May 3, 2018 4:05 PM | Last changed by kcordell on Thursday, May 3, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email from Borrower | |
| Subject: | |

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

From: LISA BRYANT [mailto:lisabryantiz@yahoo.com]
Sent: Thursday, May 03, 2018 1:55 PM
To: Anasia Rivera
Subject: Re: Lisa Bryant - 3191

Thankyou !
I want to use a card for one payment as a new one is coming !

I also am desperate to locate my payment history!!
Any other input to assist would greatly help so we may get this business forward positively !!

I am also assuming I need to set aside these funds to be prepared each month!!

Thankyou
I'm on phone driving through the remote area to get to the work !!
I thank you very much

I am going to also put u on to be my contact so you can handle this for me to that program I applied for,
as you're more experienced and will have the information they need . And Howard to be informed.
Is Madison registered with any hud or gov servicing programs ?

I want to get him fixed anyway I can by assistance programs and a job !!

Thanks
Lisa B

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, April 30, 2018 1:39 PM |
|---|---|---|
| Date: | Monday, April 30, 2018 1:39 PM | Last changed by kcordell on Monday, April 30, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lender | |
| Subject: | | |

called in, we discussed the forbearance agreement. He approves of an agreement for 2 years.

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, April 30, 2018 1:37 PM |
|---|---|---|
| Date: | Monday, April 30, 2018 1:37 PM | Last changed by kcordell on Monday, April 30, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email to Borrower | |
| Subject: | | |

From: Anasia Rivera
Sent: Monday, April 30, 2018 1:37 PM
To: 'lisabryantiz@yahoo.com'
Subject: RE: Lisa Bryant - 3191
Importance: High

Hi,

Please see the attached ACH form for your completion. Thank you.

Respectfully,

Anasia Rivera
Madison Management Services, LLC

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

400 Morris Ave Suite 222
Denville, NJ 07834
Fax: 877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, April 30, 2018 1:36 PM |
| Date: | Monday, April 30, 2018 1:36 PM | Last changed by kcordell on Monday, April 30, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

called in, she would like for the agreement extended for 2 years. In order for her to be approved for refinance, they told her she needs to have a clean payment history and credit report for 1 year. She requested an ACH form to complete.

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, April 30, 2018 11:39 AM |
| Date: | Monday, April 30, 2018 11:39 AM | Last changed by kcordell on Monday, April 30, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Voicemail Note | |
| Subject: | | |

Borrower left me a voicemail to pay the $400 forbearance agreement fee.

She cannot find her payment history from any servicing company since they are no longer handling the account.

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, April 24, 2018 12:33 PM |
| Date: | Tuesday, April 24, 2018 12:33 PM | Last changed by kcordell on Tuesday, April 24, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

(702) 379-3011 - I asked on her new email address, lisabryantiz@yahoo.com.

She is inquiring about her payment history with the previous servicer. I suggested she contact them for information.

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, April 24, 2018 9:00 AM |
| Date: | Tuesday, April 24, 2018 9:00 AM | Last changed by kcordell on Tuesday, April 24, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Bounced Email to Borrower | |
| Subject: | | |

Invalid Email Address

From: Microsoft Exchange
Sent: Tuesday, April 24, 2018 9:00 AM
To: Anasia Rivera
Subject: Undeliverable: Lisa Bryant - 3191

mta4077.mail.bf1.yahoo.com rejected your message to the following email addresses:
'lisabryantiv@yahoo.com' (lisabryantiv@yahoo.com)
A problem occurred while delivering this message to this email address. Try sending this message again. If the problem continues, please contact your helpdesk.
mta4077.mail.bf1.yahoo.com gave this error:
delivery error: dd This user doesn't have a yahoo.com account (lisabryantiv@yahoo.com) [0] - mta4077.mail.bf1.yahoo.com

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

Diagnostic information for administrators:
Generating server: MMSMB.mmsserver.local
lisabryantiv@yahoo.com
mta4077.mail.bf1.yahoo.com
Remote Server returned '554 delivery error: dd This user doesn't have a yahoo.com account (lisabryantiv@yahoo.com) [0] -
mta4077.mail.bf1.yahoo.com'


From: Anasia Rivera
Sent: Tuesday, April 24, 2018 9:00 AM
To: 'lisabryantiv@yahoo.com'
Subject: Lisa Bryant - 3191

Good Morning,

Per your request, I am outlining the forbearance agreement terms below.

First payment due will be the $400 for the agreement fee. Payments of $500 will start on the 10th of the following month for
12ms -- your interest rate of 10.5% does not change in this agreement. After the 12th month you would need to refinance.
In this agreement there will be no grace period or late payments accepted. After 3 months of consecutive payments we will
delete your credit report to help with the refinance.

Please confirm you agree to the above terms. Thank you.

Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

---

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, April 18, 2018 2:35 PM |
|---|---|---|
| Date: | Wednesday, April 18, 2018 2:35 PM | Last changed by kcordell on Wednesday, April 18, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 - Lisa on vm. Left message to return my call

---

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, April 18, 2018 2:34 PM |
|---|---|---|
| Date: | Wednesday, April 18, 2018 2:34 PM | Last changed by kcordell on Wednesday, April 18, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lender | |
| Subject: | | |

called in, we discussed the account. He is going to accept her payments and is fine with putting her on an agreement.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, April 17, 2018 4:05 PM |
| Date: Tuesday, April 17, 2018 4:05 PM | Last changed by kcordell on Tuesday, April 17, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lender | |
| Subject: | |

818-521-9939 - we discussed my conversation with the borrower. He is going to speak with his partner and get back to me.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, April 17, 2018 3:52 PM |
| Date: Tuesday, April 17, 2018 3:52 PM | Last changed by kcordell on Tuesday, April 17, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

called in, she still wants to work out an agreement with the lender. I let her know he decided to proceed with legal due to all the delays. She is saying she is going to contact the attorney general.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, April 17, 2018 1:29 PM |
| Date: Tuesday, April 17, 2018 1:29 PM | Last changed by kcordell on Tuesday, April 17, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email Log w/ Lender | |
| Subject: | |

From: Anasia Rivera
Sent: Tuesday, April 17, 2018 1:29 PM
To: 'Howard Katz'; john vach
Cc: Foreclosure
Subject: RE: Bryant

Thank you. I am going to send you the payoff and reinstatement figures for approval within the next 24 business hours. Thanks.

Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax: 877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

From: Howard Katz [mailto:howard.ggdoor@gmail.com]
Sent: Tuesday, April 17, 2018 10:33 AM
To: Anasia Rivera; john vach
Subject: Re: Bryant

Per our conversation this morning I approve of the fee and the ACH of $200 to Madison.
Howard

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, April 17, 2018 8:51 AM |
| Date: Tuesday, April 17, 2018 8:51 AM | Last changed by kcordell on Tuesday, April 17, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email to Lender | |
| Subject: | |

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

From: Anasia Rivera
Sent: Tuesday, April 17, 2018 8:51 AM
To: Howard Katz; pwrply@pacbell.net; Howard :)
Cc: Foreclosure
Subject: RE: Bryant

Good Morning,

Please review the attached fee schedule for approval. Also, please confirm our accounting department can withdraw $200 via a ch for the FC Referral. Thank you.


Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, April 16, 2018 1:48 PM | |
| Date: | Monday, April 16, 2018 1:48 PM | Last changed by kcordell on Monday, April 16, 2018 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Email Log w/ Lender | | |
| Subject: | | | |


From: Anasia Rivera
Sent: Monday, April 16, 2018 1:48 PM
To: Howard Katz; pwrply@pacbell.net
Cc: Foreclosure
Subject: RE: Bryant

Good Afternoon,

No not as of yet. Please review the attached fee schedule for approval. Also, please confirm our accounting department can wit hdraw $200 via ach for the FC Referral. Thank you.


Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.


From: Howard Katz [mailto:topkat95@aol.com]
Sent: Monday, April 16, 2018 9:52 AM
To: Anasia Rivera; pwrply@pacbell.net

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

Subject: Bryant

Have we started foreclosure on Lisa Bryant?
Thanks,
Howard

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, April 16, 2018 1:45 PM |
|---|---|---|
| Date: | Monday, April 16, 2018 1:45 PM | Last changed by kcordell on Monday, April 16, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lender | |
| Subject: | | |

818-521-9939 - we discussed my conversation with Lisa. We are going to proceed with foreclosure

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, April 16, 2018 1:40 PM |
|---|---|---|
| Date: | Monday, April 16, 2018 1:40 PM | Last changed by kcordell on Monday, April 16, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

called in, she would like for me to get on a conference call with a woman who is supposed to be in her corner giving her support. I let her know I can't prolong this to discuss the account with someone else, we need an agreement in place. She then asked if the Lender is hiring to preserve other properties in NV.

I let her know the lender may proceed with foreclosure at this time since she continues to prolongs things.

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Friday, April 13, 2018 2:28 PM |
|---|---|---|
| Date: | Friday, April 13, 2018 2:28 PM | Last changed by kcordell on Friday, April 13, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 - Straight to vm. Lisa on vm. Called

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, April 11, 2018 3:45 PM |
|---|---|---|
| Date: | Wednesday, April 11, 2018 3:45 PM | Last changed by kcordell on Wednesday, April 11, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 - Lisa on vm. Left message to return my call

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, April 9, 2018 1:04 PM |
|---|---|---|
| Date: | Monday, April 9, 2018 1:04 PM | Last changed by kcordell on Monday, April 9, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

(702) 379-3011 - the fee will be paid this week. She would like for us to have a phone conference with a program.

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, April 5, 2018 12:08 PM |
|---|---|---|
| Date: | Thursday, April 5, 2018 12:08 PM | Last changed by kcordell on Thursday, April 5, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 - Lisa on vm. Left message to return my call

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, April 3, 2018 2:46 PM |
| Date: Tuesday, April 3, 2018 2:46 PM | Last changed by kcordell on Tuesday, April 3, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 - Lisa on vm. Left message to return my call for the forbearance agreement fee

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Friday, March 30, 2018 1:27 PM |
| Date: Friday, March 30, 2018 1:27 PM | Last changed by kcordell on Friday, March 30, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

called in, the agreement fee will be paid by the 3rd over the phone.

Her husband is on SS and she has seasonal income

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Friday, March 30, 2018 12:31 PM |
| Date: Friday, March 30, 2018 12:31 PM | Last changed by kcordell on Friday, March 30, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 - Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, March 28, 2018 1:55 PM |
| Date: Wednesday, March 28, 2018 1:55 PM | Last changed by kcordell on Wednesday, March 28, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 - Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, March 26, 2018 11:37 AM |
| Date: Monday, March 26, 2018 11:37 AM | Last changed by kcordell on Monday, March 26, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 - Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, March 26, 2018 11:36 AM |
| Date: Monday, March 26, 2018 11:36 AM | Last changed by kcordell on Monday, March 26, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email Log w/ Lender | |
| Subject: | |

-----Original Message-----
From: Anasia Rivera
Sent: Friday, March 23, 2018 3:45 PM
To: Howard Katz
Cc: pwrply@pacbell.net
Subject: RE: Bryant

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

Thank you.

Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax: 877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

-----Original Message-----
From: Howard [mailto:topkat95@aol.com]
Sent: Friday, March 23, 2018 3:05 PM
To: Anasia Rivera
Cc: pwrply@pacbell.net
Subject: Re: Bryant

Yes

Sent from my iPhone

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Friday, March 23, 2018 1:35 PM | |
| Date: | Friday, March 23, 2018 1:35 PM | Last changed by kcordell on Friday, March 23, 2018 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Email to Lender | | |
| Subject: | | | |

From: Anasia Rivera
Sent: Friday, March 23, 2018 1:35 PM
To: Howard Katz
Cc: pwrply@pacbell.net
Subject: RE: Bryant

Hi,

Per our conversation, please confirm that we are allowed to switch the above borrowers due date to the 10th. Thank you.

Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax: 877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Friday, March 23, 2018 1:35 PM |
| Date: Friday, March 23, 2018 1:35 PM | Last changed by kcordell on Friday, March 23, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lender | |
| Subject: | |

called in, we discussed the loan terms.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, March 22, 2018 12:32 PM |
| Date: Thursday, March 22, 2018 12:32 PM | Last changed by kcordell on Thursday, March 22, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

called in,  she agrees to the forbearance agreement terms. She doesnt get paid till the 5th of each month so shes requesting for her due date to be switched to the 10th without the grace period.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, March 22, 2018 12:28 PM |
| Date: Thursday, March 22, 2018 12:28 PM | Last changed by kcordell on Thursday, March 22, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 - Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, March 20, 2018 2:13 PM |
| Date: Tuesday, March 20, 2018 2:13 PM | Last changed by kcordell on Tuesday, March 20, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lenders | |
| Subject: | |

818-521-9939 - we discussed my conversation with the borrower.

$500 for 12 months - after 12 months she needs to refinance
No Grace Period - No Lates
No lump sum payment is needed.
After 3 months - credit report can be deleted.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, March 20, 2018 1:48 PM |
| Date: Tuesday, March 20, 2018 1:48 PM | Last changed by kcordell on Tuesday, March 20, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

(702) 379-3011 - we discussed the lenders terms. She is not able to put down a lump sum payment for an agreement.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, March 14, 2018 12:07 PM |
| Date: Wednesday, March 14, 2018 12:07 PM | Last changed by kcordell on Wednesday, March 14, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lender | |
| Subject: | |

called in,

$450 monthly on a forbearance agreement for 18 months. Lump sum payment needs to be made up front.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, March 14, 2018 11:01 AM | |
| Date: | Wednesday, March 14, 2018 11:01 AM | Last changed by kcordell on Wednesday, March 14, 2018 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | | | |
| Subject: | | | |

Email: lisabryantiv@yahoo.com

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, March 14, 2018 10:55 AM | |
| Date: | Wednesday, March 14, 2018 10:55 AM | Last changed by kcordell on Wednesday, March 14, 2018 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Lisa | | |
| Subject: | | | |

(702) 379-3011 - She can afford $450 monthly.

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, March 14, 2018 10:54 AM | |
| Date: | Wednesday, March 14, 2018 10:54 AM | Last changed by kcordell on Wednesday, March 14, 2018 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Email Log w/Lender | | |
| Subject: | | | |

From: Anasia Rivera
Sent: Wednesday, March 14, 2018 10:54 AM
To: Howard Katz
Cc: pwrply@pacbell.net
Subject: RE: Bryant

Please give me a call today to discuss this loan. The phone lines are going in and out so if I don't respond, please send me an email. Thanks.


Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.


From: Howard Katz [mailto:topkat95@aol.com]
Sent: Tuesday, March 13, 2018 2:37 PM
To: Anasia Rivera
Cc: pwrply@pacbell.net
Subject: Re: Bryant

Foreclose

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, March 13, 2018 2:30 PM | |
| Date: | Tuesday, March 13, 2018 2:30 PM | Last changed by kcordell on Tuesday, March 13, 2018 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Email Log w/ Lender | | |
| Subject: | | | |

-----Original Message-----
From: Anasia Rivera
Sent: Tuesday, March 13, 2018 2:30 PM
To: Howard Katz
Cc: pwrply@pacbell.net
Subject: RE: Bryant

She cannot afford $550 at this time but would like to work something out. Just so that you are aware, someone advised her to contact the attorney general to file a stay on the home and then file for BK if you decided to foreclose.


Respectfully,

 Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

-----Original Message-----
From: Howard [mailto:topkat95@aol.com]
Sent: Tuesday, March 13, 2018 1:25 PM
To: Anasia Rivera
Cc: pwrply@pacbell.net
Subject: Re: Bryant


$550 or we foreclose

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, March 13, 2018 2:27 PM | |
| Date: | Tuesday, March 13, 2018 2:27 PM | Last changed by kcordell on Tuesday, March 13, 2018 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Lisa | | |
| Subject: | | | |

(702) 379-3011 - I let her know the lender is willing to accept $550 but she cannot afford it at this time.

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, March 13, 2018 1:12 PM | |
| Date: | Tuesday, March 13, 2018 1:12 PM | Last changed by kcordell on Tuesday, March 13, 2018 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Email to Lender | | |
| Subject: | | | |


From: Anasia Rivera
Sent: Tuesday, March 13, 2018 1:12 PM
To: Howard Katz; pwrply@pacbell.net
Subject: RE: Bryant

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

Hi,

Lisa can afford $300 monthly. Are you open to doing a Mod so she can refinance within the next 18 months?


Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax: 877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, March 13, 2018 1:11 PM |
| Date: | Tuesday, March 13, 2018 1:11 PM | Last changed by kcordell on Tuesday, March 13, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

(702) 379-3011 – she completed the application for NVHHF. We discussed making payments while waiting to be approved for an agreement. She is currently getting cancer tests done and is sick with 2 illnesses.

She can afford $300 monthly and would prefer to refinance within the next year or so. If we file for foreclosure, she was advised to go to the Attorney General to file a stay on the home since she has a right to work with the programs. She will file BK if we try to FC.

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, March 12, 2018 3:21 PM |
| Date: | Monday, March 12, 2018 3:21 PM | Last changed by kcordell on Monday, March 12, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 – Lisa on vm. Left message to return my call

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, March 6, 2018 3:52 PM |
| Date: | Tuesday, March 6, 2018 3:52 PM | Last changed by kcordell on Tuesday, March 6, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email Log w/ Lender | |
| Subject: | | |


From: Anasia Rivera
Sent: Tuesday, March 06, 2018 3:52 PM
To: Howard Katz; pwrply@pacbell.net
Subject: RE: Bryant

Okay, I left her another message to return my call.


Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.


From: Howard Katz [mailto:topkat95@aol.com]
Sent: Tuesday, March 06, 2018 12:15 PM
To: Anasia Rivera; pwrply@pacbell.net
Subject: Bryant

I've tried to reach you by phone but was unable.  Lisa Bryant needs to make a full payment by 3/15/2018 and agree to ongoing payments or we start foreclosure.
Howard

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, March 6, 2018 3:49 PM |
| Date: | Tuesday, March 6, 2018 3:49 PM | Last changed by kcordell on Tuesday, March 6, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 -  Lisa on vm. Left message to return my call

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, March 6, 2018 10:35 AM |
| Date: | Tuesday, March 6, 2018 10:35 AM | Last changed by kcordell on Tuesday, March 6, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Email Log w/ Lenders | |
| Subject: | | |


From: Anasia Rivera
Sent: Tuesday, March 06, 2018 10:35 AM
To: 'JOHN VACH'; Howard Katz
Subject: RE: Lisa Bryant

Good Morning,

So you are not interested in working out an agreement with the borrower?


Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.


From: JOHN VACH [mailto:pwrply@pacbell.net]
Sent: Monday, March 05, 2018 11:29 AM
To: Howard Katz; Anasia Rivera
Subject: Re: Lisa Bryant

I agree

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

From: Howard Katz <topkat95@aol.com>
To: arivera@madisonmanagement.net; pwrply@pacbell.net
Sent: Monday, March 5, 2018 8:24 AM
Subject: Lisa Bryant

We have given her enough time let's restart the foreclosure.
Thanks,
Howard

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, February 27, 2018 4:12 PM |
|---|---|---|
| Date: | Tuesday, February 27, 2018 4:12 PM | Last changed by kcordell on Tuesday, February 27, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 -  Lisa on vm. Mailbox full

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, February 26, 2018 12:53 PM |
|---|---|---|
| Date: | Monday, February 26, 2018 12:53 PM | Last changed by kcordell on Monday, February 26, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 -  Lisa on vm. Called

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, February 22, 2018 12:37 PM |
|---|---|---|
| Date: | Thursday, February 22, 2018 12:37 PM | Last changed by kcordell on Thursday, February 22, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 -  Lisa on vm. Left message to return my call

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, February 22, 2018 12:35 PM |
|---|---|---|
| Date: | Thursday, February 22, 2018 12:35 PM | Last changed by kcordell on Thursday, February 22, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lender | |
| Subject: | | |

We discussed my conversation with the borrower. He does not want to delete credit reporting until she starts making payments. He is wanting the original payment amount - if not, we may proceed with legal. He will give her until 3/15/18 to start making payments.

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, February 20, 2018 1:40 PM |
|---|---|---|
| Date: | Tuesday, February 20, 2018 1:40 PM | Last changed by kcordell on Tuesday, February 20, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

called in,

2 Programs told her she can qualify for a refinance within the next 8 months - she does not want this 2nd mortgage. We discussed the forberance agreement terms - she kindly declined. She would like a cheaper payment temporarily so she can get approved for the assistance program.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, February 20, 2018 1:27 PM |
| Date: Tuesday, February 20, 2018 1:27 PM | Last changed by kcordell on Tuesday, February 20, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: ERROR | |
| Subject: | |

Conversation below was with the Lender

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, February 14, 2018 9:59 AM |
| Date: Wednesday, February 14, 2018 9:59 AM | Last changed by kcordell on Wednesday, February 14, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

called in, we discussed my conversation with the borrower.

Forbearance agreement for 1 year - borrower has to pay the  fees up front/partial reinstatement. Interest only payments - starting at $825.56 lowest he will go is $700.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, February 14, 2018 8:54 AM |
| Date: Wednesday, February 14, 2018 8:54 AM | Last changed by kcordell on Wednesday, February 14, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email to Lender | |
| Subject: | |

From: Anasia Rivera
Sent: Wednesday, February 14, 2018 8:54 AM
To: Howard Katz
Subject: MMS - Lisa Bryant - 3191

Good Morning,

Please give me a call at your earliest convenience to discuss this account. Thank you.

Respectfully,

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, February 13, 2018 2:54 PM |
| Date: Tuesday, February 13, 2018 2:54 PM | Last changed by kcordell on Tuesday, February 13, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

called in, the HHF denied her because the house is not underwater. She is currently working on apply for other programs in the area. The programs are not accepting her due to the credit reporting we are doing on her account.

She qualifies for HAARP besides the pay history. She would like to be put on an agreement.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, February 12, 2018 3:11 PM |
| Date: Monday, February 12, 2018 3:11 PM | Last changed by kcordell on Monday, February 12, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 -  Lisa on vm. Mailbox full

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by DHERNANDEZ on Friday, February 9, 2018 4:31 PM |
| Date: Friday, February 9, 2018 4:31 PM | Last changed by kcordell on Friday, February 9, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

Asked to speak with Anasia, I explained she was at lunch.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, February 6, 2018 12:46 PM |
| Date: Tuesday, February 6, 2018 12:46 PM | Last changed by kcordell on Tuesday, February 6, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 -  Lisa on vm. Mailbox full

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, January 29, 2018 12:43 PM |
| Date: Monday, January 29, 2018 12:43 PM | Last changed by kcordell on Monday, January 29, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 -  Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, January 29, 2018 12:43 PM |
| Date: Monday, January 29, 2018 12:43 PM | Last changed by kcordell on Monday, January 29, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Nevada HHF (Juana) | |
| Subject: | |

(888) 320-6526 - Lisa did not send in the 3rd party authorization form. She is going to email Lisa the form for her to sign.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, January 22, 2018 2:42 PM |
| Date: Monday, January 22, 2018 2:42 PM | Last changed by kcordell on Monday, January 22, 2018 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Email Log w/ Lender | |
| Subject: | |

From: Anasia Rivera
Sent: Monday, January 22, 2018 2:42 PM
To: Howard Katz; pwrply@pacbell.net
Subject: RE: Lisa Bryant

She is currently working with the NHHF. I confirmed with them that they are reviewing her application.

Respectfully,

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
Please allow 24-48 hrs for email response.

From: Howard Katz [mailto:topkat95@aol.com]
Sent: Monday, January 22, 2018 2:31 PM
To: Anasia Rivera; pwrply@pacbell.net
Subject: Lisa Bryant

Anasia what's happening on this?
Howard

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, January 18, 2018 11:48 AM |
|---|---|---|
| Date: | Thursday, January 18, 2018 11:48 AM | Last changed by kcordell on Thursday, January 18, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

(702) 379-3011 -  she spoke with NHHF - they are currently working on her application. I requested she send them a 3rd party authorization form, she will give the agent a call today to do so.

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, January 8, 2018 12:36 PM |
|---|---|---|
| Date: | Monday, January 8, 2018 12:36 PM | Last changed by kcordell on Monday, January 8, 2018 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Nevada HHF (Juana) | |
| Subject: | | |

(888) 320-6526 - nothing has been determined yet whether she has been approved or denied - all the information is being reviewed at this time.

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, December 27, 2017 2:03 PM |
|---|---|---|
| Date: | Wednesday, December 27, 2017 2:03 PM | Last changed by kcordell on Wednesday, December 27, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | | |
| Subject: | | |

follow up change

| Account: | 0002003191-Lisa Bryant | Created by SDUFFY on Tuesday, December 26, 2017 2:28 PM |
|---|---|---|
| Date: | Tuesday, December 26, 2017 2:28 PM | Last changed by kcordell on Tuesday, December 26, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa Bryant | |
| Subject: | | |

Lisa Bryant called in and stated that she is waiting on an update from the underwriter to see what the next step is from here. She just wanted to provide us with the update.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Friday, December 22, 2017 11:59 AM |
| Date: Friday, December 22, 2017 11:59 AM | Last changed by kcordell on Friday, December 22, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 -  Straight to vm. Lisa on vm. Called

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, December 18, 2017 10:38 AM |
| Date: Monday, December 18, 2017 10:38 AM | Last changed by kcordell on Monday, December 18, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 -  Straight to vm. Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, December 12, 2017 3:47 PM |
| Date: Tuesday, December 12, 2017 3:47 PM | Last changed by kcordell on Tuesday, December 12, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Voicemail Note | |
| Subject: | |

She is currently waiting for an update from the underwriter. They have all the information needed to move forward.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, December 6, 2017 3:42 PM |
| Date: Wednesday, December 6, 2017 3:42 PM | Last changed by kcordell on Wednesday, December 6, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 -  Straight to vm. Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, December 4, 2017 12:19 PM |
| Date: Monday, December 4, 2017 12:19 PM | Last changed by kcordell on Monday, December 4, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: | |
| Subject: | |

follow up change

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, November 28, 2017 4:00 PM |
| Date: Tuesday, November 28, 2017 4:00 PM | Last changed by kcordell on Tuesday, November 28, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Nevada HHF (Felicita) | |
| Subject: | |

(888) 320-6526 - The application has been established.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, November 28, 2017 2:43 PM |
| Date: Tuesday, November 28, 2017 2:43 PM | Last changed by kcordell on Tuesday, November 28, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

called in, she is going back and forth with the underwriter regarding the old and new leases.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, November 28, 2017 12:47 PM |
| Date: Tuesday, November 28, 2017 12:47 PM | Last changed by kcordell on Tuesday, November 28, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 -  Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, November 21, 2017 1:12 PM |
| Date: Tuesday, November 21, 2017 1:12 PM | Last changed by kcordell on Tuesday, November 21, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 -  Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, November 16, 2017 2:34 PM |
| Date: Thursday, November 16, 2017 2:34 PM | Last changed by kcordell on Thursday, November 16, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

called in, she is currently in AZ .

The underwriter called her and told her that they will have a phone conference on Tuesday at 2 pm but she hasnt received a call as of yet.

I requested proof that she is working with the HHF - she will send it out to me as soon as she's assigned to a counselor.

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, November 15, 2017 11:36 AM |
| Date: Wednesday, November 15, 2017 11:36 AM | Last changed by kcordell on Wednesday, November 15, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 - Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, November 13, 2017 2:15 PM |
| Date: Monday, November 13, 2017 2:15 PM | Last changed by kcordell on Monday, November 13, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Call Log | |
| Subject: | |

(702) 379-3011 - Straight to vm. Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: 0002003191-Lisa Bryant | Created by ARIVERA on Monday, November 6, 2017 12:44 PM |
| Date: Monday, November 6, 2017 12:44 PM | Last changed by kcordell on Monday, November 6, 2017 7:00 PM |
| Type: Incoming | No follow up requested |
| Contact: Lisa | |
| Subject: | |

called in, her account rep forwarded her information to underwriting. The underwriter left her a message requesting documents. She is waiting for them to return her call.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Friday, November 3, 2017 2:01 PM |
|---|---|---|
| Date: | Friday, November 3, 2017 2:01 PM | Last changed by kcordell on Friday, November 3, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 - Lisa on vm. Left message to return my call

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, October 30, 2017 1:49 PM |
|---|---|---|
| Date: | Monday, October 30, 2017 1:49 PM | Last changed by kcordell on Monday, October 30, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

called in, she is going to call the agent at the HHF tomorrow to confirm her appointment for wednesday.

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Friday, October 27, 2017 3:34 PM |
|---|---|---|
| Date: | Friday, October 27, 2017 3:34 PM | Last changed by kcordell on Friday, October 27, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Call Log | |
| Subject: | | |

(702) 379-3011 - Lisa on vm. Left message to return my call

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Monday, October 23, 2017 2:09 PM |
|---|---|---|
| Date: | Monday, October 23, 2017 2:09 PM | Last changed by kcordell on Tuesday, October 24, 2017 6:34 AM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

called in, she has a second appointment with the HHF this week.

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Wednesday, October 18, 2017 2:19 PM |
|---|---|---|
| Date: | Wednesday, October 18, 2017 2:19 PM | Last changed by kcordell on Wednesday, October 18, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

(702) 379-3011 - Someone applied to the HHF previously using her social. Her agent assigned to her case is looking into this - she believes its a computer glitch.

The agent provided her with a list of the additonal information that is needed.

| Account: | 0002003191-Lisa Bryant | Created by DHERNANDEZ on Tuesday, October 17, 2017 2:42 PM |
|---|---|---|
| Date: | Tuesday, October 17, 2017 2:42 PM | Last changed by kcordell on Tuesday, October 17, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

She met with HHF agent las week and is waiting on her 2nd appointment. She got her taxes and is waiting on the agent to call her back today or tomorrow.

| Account: | 0002003191-Lisa Bryant | Created by GPERETZMAN on Friday, October 13, 2017 4:23 PM |
|---|---|---|
| Date: | Friday, October 13, 2017 4:23 PM | Last changed by kcordell on Friday, October 13, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa called | |
| Subject: | | |

## CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)

Madison Management Services, LLC
Tuesday, April 14, 2020

Lisa called in (702-379-3011) to speak with Anasia

| | |
|---|---|
| Account:  0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, October 10, 2017 2:56 PM |
| Date:  Tuesday, October 10, 2017 2:56 PM | Last changed by kcordell on Tuesday, October 10, 2017 7:00 PM |
| Type:  Incoming | No follow up requested |
| Contact:  Lisa | |
| Subject: | |

702-379-3011 - She had a conference meeting with the HHF, they sent her to a department that handles 2nd liens. They are in the process of filling out paperwork.

She has a phone call meeting with the woman assigned to her case.

| | |
|---|---|
| Account:  0002003191-Lisa Bryant | Created by ARIVERA on Monday, October 9, 2017 11:09 AM |
| Date:  Monday, October 9, 2017 11:09 AM | Last changed by kcordell on Monday, October 9, 2017 7:00 PM |
| Type:  Incoming | No follow up requested |
| Contact:  Lisa | |
| Subject: | |

702-379-3011 - She is currently at the doctor but will give me a call back to discuss the HHF - she has applied and already been in contact w/ someone there.

| | |
|---|---|
| Account:  0002003191-Lisa Bryant | Created by ARIVERA on Monday, October 2, 2017 2:14 PM |
| Date:  Monday, October 2, 2017 2:14 PM | Last changed by kcordell on Monday, October 2, 2017 7:00 PM |
| Type:  Incoming | No follow up requested |
| Contact:  Lisa | |
| Subject: | |

702-379-3011 - She received our shock package this saturday. She is going to apply for the HHF this week and provide them with the full amount owed on this loan. I requested all correspondence regarding the HHF including approval/denial letter.

| | |
|---|---|
| Account:  0002003191-Lisa Bryant | Created by ARIVERA on Monday, October 2, 2017 2:05 PM |
| Date:  Monday, October 2, 2017 2:05 PM | Last changed by kcordell on Monday, October 2, 2017 7:00 PM |
| Type:  Incoming | No follow up requested |
| Contact:  Voicemail Note | |
| Subject: | |

Borrower left me a voicemail over the weekend asking to return her call

| | |
|---|---|
| Account:  0002003191-Lisa Bryant | Created by ARIVERA on Friday, September 29, 2017 12:48 PM |
| Date:  Friday, September 29, 2017 12:48 PM | Last changed by kcordell on Friday, September 29, 2017 7:00 PM |
| Type:  Incoming | No follow up requested |
| Contact:  Call Log | |
| Subject: | |

702-379-3011 - Left message to return my call

| | |
|---|---|
| Account:  0002003191-Lisa Bryant | Created by SDUFFY on Monday, September 25, 2017 9:55 AM |
| Date:  Monday, September 25, 2017 9:55 AM | Last changed by kcordell on Monday, September 25, 2017 7:00 PM |
| Type:  Incoming | No follow up requested |
| Contact:  HO Options Letter & Copy of Collateral File | |
| Subject: | |

Sent HO Options Letter & Copy of Collateral File to borrower via regular mail.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC

Tuesday, April 14, 2020

| Account: | 0002003191-Lisa Bryant | Created by SDUFFY on Monday, September 25, 2017 7:53 AM |
|---|---|---|
| Date: | Monday, September 25, 2017 7:53 AM | Last changed by kcordell on Monday, September 25, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Financial Application | |
| Subject: | | |

Sent Financial Application to borrower via regular mail

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, September 21, 2017 2:48 PM |
|---|---|---|
| Date: | Thursday, September 21, 2017 2:48 PM | Last changed by kcordell on Thursday, September 21, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | HHF Info | |
| Subject: | | |

http://www.homeownership.org/hhf/nv/

Homeowner Hotline: (800) 294-3896

www.nevadahardesthitfund.nv.gov

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, September 21, 2017 2:47 PM |
|---|---|---|
| Date: | Thursday, September 21, 2017 2:47 PM | Last changed by kcordell on Thursday, September 21, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

She would like for him to reduce her UPB to 95K so we can get her on an agreement.

She requested a copy of her COL. - she is going to contact the HHF

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Thursday, September 21, 2017 12:35 PM |
|---|---|---|
| Date: | Thursday, September 21, 2017 12:35 PM | Last changed by kcordell on Thursday, September 21, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | | |
| Subject: | | |

Drafted & Printed Homeowner Option Letter

| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, September 19, 2017 12:55 PM |
|---|---|---|
| Date: | Tuesday, September 19, 2017 12:55 PM | Last changed by kcordell on Tuesday, September 19, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Lisa | |
| Subject: | | |

702-379-3011 - Howard told her that he would lower her balance due to him purchasing this note at a major discount. She has severe medical issues and needs help with monthly payments. She is trying to get disability at the moment and her husband is collecting social security.

Chase did a hardship with her within the past 2 years.
Her roof needs repairs, the shingles are missing on one side. There is a foundation issue as well.

She would like for her loan balance to be reduced before we discuss an agreement.

We went over loan options/remedies.

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

| | |
|---|---|
| Account: | 0002003191-Lisa Bryant |
| Date: | Friday, September 15, 2017 12:46 PM |
| Type: | Incoming |
| Contact: | Call Log |
| Subject: | |

Created by ARIVERA on Friday, September 15, 2017 12:46 PM
Last changed by kcordell on Friday, September 15, 2017 7:00 PM
No follow up requested

702-379-3011 - Lisa on vm. Left message to return my call

| | |
|---|---|
| Account: | 0002003191-Lisa Bryant |
| Date: | Tuesday, September 12, 2017 7:43 AM |
| Type: | Incoming |
| Contact: | Contact Letter |
| Subject: | |

Created by SDUFFY on Tuesday, September 12, 2017 7:43 AM
Last changed by kcordell on Tuesday, September 12, 2017 7:00 PM
No follow up requested

Sent Contact Letter to borrower at property address and to 728 Nectarine Ct. Henderson, NV 89014 via regular mail.

| | |
|---|---|
| Account: | 0002003191-Lisa Bryant |
| Date: | Monday, September 11, 2017 4:16 PM |
| Type: | Incoming |
| Contact: | Call Log |
| Subject: | |

Created by ARIVERA on Monday, September 11, 2017 4:16 PM
Last changed by kcordell on Monday, September 11, 2017 7:00 PM
No follow up requested

702-379-3011 - Called, Lisa on vm. Mailbox full

| | |
|---|---|
| Account: | 0002003191-Lisa Bryant |
| Date: | Monday, September 11, 2017 4:15 PM |
| Type: | Incoming |
| Contact: | |
| Subject: | |

Created by ARIVERA on Monday, September 11, 2017 4:15 PM
Last changed by kcordell on Monday, September 11, 2017 7:00 PM
No follow up requested

Requested Fee Schedule from Damian Waldman to Initiate FC

| | |
|---|---|
| Account: | 0002003191-Lisa Bryant |
| Date: | Monday, September 11, 2017 9:20 AM |
| Type: | Incoming |
| Contact: | |
| Subject: | |

Created by ARIVERA on Monday, September 11, 2017 9:20 AM
Last changed by kcordell on Monday, September 11, 2017 7:00 PM
No follow up requested

Drafted & Printed Contact Letter (2) - 1 for address and the second for address on TLO

| | |
|---|---|
| Account: | 0002003191-Lisa Bryant |
| Date: | Thursday, September 7, 2017 2:27 PM |
| Type: | Incoming |
| Contact: | Call Log |
| Subject: | |

Created by ARIVERA on Thursday, September 7, 2017 2:27 PM
Last changed by kcordell on Thursday, September 7, 2017 7:00 PM
No follow up requested

702-379-3011 - Called, Woman on vm. Mailbox full

| | |
|---|---|
| Account: | 0002003191-Lisa Bryant |
| Date: | Tuesday, September 5, 2017 1:32 PM |
| Type: | Incoming |
| Contact: | |
| Subject: | |

Created by ARIVERA on Tuesday, September 5, 2017 1:32 PM
Last changed by kcordell on Tuesday, September 5, 2017 7:00 PM
No follow up requested

Howard provided me with the following number: 702-379-3011

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, September 5, 2017 11:25 AM | |
| Date: | Tuesday, September 5, 2017 11:25 AM | Last changed by kcordell on Tuesday, September 5, 2017 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Email Log w/ Lender | | |
| Subject: | | | |

-----Original Message-----
From: Anasia Rivera
Sent: Tuesday, September 05, 2017 11:25 AM
To: Howard Katz
Subject: RE: MMS - Lisa Bryant - 3191

I did a skip trace so I have a few numbers to sort through.


Respectfully,

 Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
https://www.linkedin.com/in/hazel-rivera-146121127/
Please allow 24-48 hrs for email response.
-----Original Message-----
From: Howard [mailto:topkat95@aol.com]
Sent: Tuesday, September 05, 2017 11:01 AM
To: Anasia Rivera
Subject: Re: MMS - Lisa Bryant - 3191

You have her phone number

Sent from my iPhone

| | | | |
|---|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, September 5, 2017 10:49 AM | |
| Date: | Tuesday, September 5, 2017 10:49 AM | Last changed by kcordell on Tuesday, September 5, 2017 7:00 PM | |
| Type: | Incoming | No follow up requested | |
| Contact: | Email to Lender | | |
| Subject: | | | |

From: Anasia Rivera
Sent: Tuesday, September 05, 2017 10:49 AM
To: Howard Katz
Cc: pwrply@pacbell.net
Subject: MMS - Lisa Bryant - 3191

Good Morning,

I did a skip trace for the above borrower today and it looks like Ms. Bryant does not live in the property. Would you like for me to reach out to her and see if we can do a DIL or possibly work something out before initiating FC?


Respectfully,

**CONVERSATION LOG FOR: 0002003191-Lisa Bryant (ALL)**

Madison Management Services, LLC
Tuesday, April 14, 2020

Anasia Rivera
Madison Management Services, LLC
400 Morris Ave Suite 222
Denville, NJ 07834
Fax:  877-563-4161
Tel: 877-563-4164 Ext. 17
https://www.linkedin.com/in/hazel-rivera-146121127/
Please allow 24-48 hrs for email response.

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, September 5, 2017 10:45 AM |
| Date: | Tuesday, September 5, 2017 10:45 AM | Last changed by kcordell on Tuesday, September 5, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Pacer BK Scrub | |
| Subject: | | |

No Records Found

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by ARIVERA on Tuesday, September 5, 2017 10:45 AM |
| Date: | Tuesday, September 5, 2017 10:45 AM | Last changed by kcordell on Tuesday, September 5, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | Skip Trace | |
| Subject: | | |

Current address according to TLO:

728 NECTARINE CT
HENDERSON, NV 89014-4034
(CLARK COUNTY)

(702) 565-7330 (PT) (L) (100%) [Feedback]
(702) 379-3011 (PT) (M) (99%) [Feedback]
(702) 644-5442 (PT) (88%) [Feedback]
(702) 379-3012 (PT) (68%) [Feedback]
(702) 565-0592 (PT) (L) (66%) [Feedback]
(775) 823-6200 (PT) (66%) [Feedback]
(702) 413-0517 (PT) (3%) [Feedback]
(702) 812-6823 (PT) (3%) [Feedback]

| | | |
|---|---|---|
| Account: | 0002003191-Lisa Bryant | Created by SDUFFY on Tuesday, August 29, 2017 11:31 AM |
| Date: | Tuesday, August 29, 2017 11:31 AM | Last changed by kcordell on Tuesday, August 29, 2017 7:00 PM |
| Type: | Incoming | No follow up requested |
| Contact: | RESPA Hello Letter | |
| Subject: | | |

RESPA Hello Letter printed and mailed.

# EXHIBIT "6"

· Damian Waldman, Esq. *#
· Nicholas Porras, Esq. *+

\* Licensed in Florida
\+ Licensed in Nevada
\# Certified Circuit Civil Mediator

 **WALDMAN & PORRAS, PLLC**

**Attorneys and Counselors at Law**

**201 West Liberty, Suite 207**
**Reno, NV 89501**
Mailing Address: P.O. Box 5162, Largo, FL 33779
Primary Telephone: (844) 899-4162 Facsimile: (844) 882-4703
Secondary Telephone: (775) 525-9246 Facsimile: (888) 688-4975
Email: info@dwaldmanlaw.com Email 2: nevadafc@dwaldmanlaw.com

May 25, 2018

Lisa Bryant
719 North Racetrack Road
Henderson, NV 89015

<u>**VIA FIRST CLASS AND CERTIFIED MAIL**</u>
<u>**RETURN RECEIPT REQUESTED**</u>

RE:      **Property located at: 719 North Racetrack Road**
         **Henderson, NV 89015**
         **Your Loan Number: 0002003191**
         **Lender: PVK Properties, LLC**
         **Servicer: Madison Management Services, LLC**

<u>**NOTICE OF DEFAULT AND INTENT TO ACCELERATE**</u>
<u>**AND ENFORCE THE POWER OF SALE**</u>

To Whom It May Concern:

Waldman and Porras, PLLC represents PVK Properties, LLC, the owner and holder of the deed of trust and note on the above-referenced property. Madison Management Services, LLC is the servicer of the deed of trust and note on the above-referenced property. The originator of the subject loan was Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Accredited Home Lenders, Inc.; the loan is now owned by PVK Properties, LLC.

This letter serves our **Formal Notice of Acceleration.** Your loan is in default because you failed to make the payment due for **August 1, 2014** and all subsequent payments thereafter. The amount required to cure the default and reinstate your loan is **$41,438.41** to be paid on or before **June 29, 2018** in certified funds. If payment is received by Lender after **June 29, 2018**, please contact the Law Firm at the toll-free number above to obtain any additional amounts owed.

Offices:      Reno, Nevada                Waldman & Porras, PLLC
Affiliated Offices:  Florida   New York   New Jersey   Texas   Pennsylvania   Tennessee

Please remember to reference your loan number and make payments to the following address:

**Madison Management Services, LLC**
**400 Morris Avenue, Suite 222**
**Denville, NJ 07834**

Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the subject Deed of Trust, and sale of the Property. Immediate payment in full may be required without further notice or demand, and Lender, at its option, may invoke the POWER OF SALE in accordance with Paragraph 17 of the Deed of Trust.

If Lender invokes the POWER OF SALE, Trustee, its successors or assigns, on demand by Lender, shall sell the Property, or such part thereof in its discretion that shall be necessary to sell, in order to accomplish the objects of these trusts, and in the manner required by Applicable Law.

Trustee shall first give notice of the time and place of such sale, in the manner provided by Applicable Law, for the sale of real property under execution, and may from time to time postpone such sale by advertisement as it may deem reasonable, and without further advertisement, by proclamation made to the persons assembled at the time and placer previously appointed and advertised for such sale, and on the day of sale so advertised. As to any such sale that may have been postponed, Trustee may sell the Property so advertised, or any portion thereof, at public auction at the time and place specified in the notice, either in the county in which the Property, or any portion thereof, is situated, or at the office of the Trustee, in its discretion, to the highest cash bidder. Lender may bid and purchase the Property at any such sale. Lender may, after recording the notice of breach and election, waive or withdraw the same or any proceedings thereunder, and shall thereupon be restored to its former position and have and enjoy the same rights as though such notice had not been recorded.

Trustee, upon such sale, shall make (without warranty), execute and, after due payment made, deliver to the purchaser a deed or deeds of the Property so sold which shall convey to the purchaser all the title of the Borrower in the trust premises. The proceeds of the sale shall be applied in the following order: (a) to the expenses of the sale, together with the reasonable attorneys' fees which shall become due upon any default made by Borrower in any of the payments aforesaid; (b) to any expenses incurred by Lender or trustee for procuring a search of the title to the premises, or any part thereof, subsequent to the execution of the Security Instrument; (c) to all sums secured, and interest thereon then remaining unpaid, and the amount of all other moneys with interest thereon agreed or provided to be paid by Borrower; and (d) the balance or any surplus of such proceeds to the person or persons legally entitled thereof.

In the event of a sale of the Property conveyed or transferred in trust, or any part thereof, and the execution of the deed or deeds therefore under such trust, the recital therein of default, and of recording notice of breach and election and of sale, and of a demand by Lender that such should be made, shall be conclusive proof of such default, recording, election, elapsing of time, and of the due giving of such notice, and that the sale was regularly and validly made on due and proper demand by Lender. Any such deed or deeds with such

---

recitals therein shall be effectual and conclusive against Borrower, and the receipt of the purchase money recited or contained in any deed executed to the purchaser as aforesaid shall be sufficient discharge to the purchaser from all obligations to see the proper application of the purchase money, according to the trusts aforesaid.

Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in Paragraphs 7, 8, 17, 19 and 22 of the Deed of Trust, including, but not limited to reasonable attorney's fees, court costs, costs of documenting evidence, abstracts, and title reports, and any other related costs in connection with the borrower's default.

Pursuant to the Paragraph 19 of the Mortgage, you gave Lender the right to the assignments of leases and rents if you are in default. Upon notice of default, Lender or its agents are entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including past due rents.

Your Lender understands your situation and is willing to work with you. Please contact your Servicer, Madison Management Services, LLC, with a mailing address of 400 Morris Avenue, Suite 222, Denville, NJ 07834 to discuss any loss mitigation options that may be available to you. A representative from Madison Management Services, LLC is available for you to contact them toll free at 877-563-4164 between the hours of 8:00 am to 6:00 pm PST. However, if payment is not made in full by the date specified in this letter, then your Lender has no other options but to exercise its rights and pursue foreclosure and/or seek a deficiency judgment against you for the balance owed.

Additionally, you have the right to bring a court action to assert the non-existence of the default, or any other defense you may have to acceleration and sale.

In addition, you have the right to reinstate your loan even after acceleration if you pay, prior to entry of judgment or the fifth day before the foreclosure sale, whichever occurs earlier:

(1)     all sums due and owing;
(2)     cure all breaches of the Note and Deed of Trust;
(3)     pay all reasonable costs incurred under the foreclosure proceedings;
(4)     execute a reinstatement agreement; and
(5)     provide adequate assurance that the Servicer's interest in the property and your obligation to pay shall remain unimpaired.

The total amount to cure the default:

| | |
|---|---|
| Unpaid Installments | $38,801.32 |
| Unpaid Late Charges | $2,278.38 |
| Attorney's Fees and Costs | $358.71 |
| **TOTAL TO REINSTATE** | **$41,438.41** |

Pursuant to Section 106 of the Housing and Urban Development Act of 1968, you may have the right to receive counseling or may qualify for other loan counseling regarding the

retention of your home from various local agencies. You may secure a list of the agencies by contacting the Department of Housing and Urban Development at (800) 569-4287, or please visit the following website to see a list of available HUD Counselors in your area: http://www.hud.gov. Please also see attached HUD Counseling list in your area.

Under the Tax Reform Act of 1984, should your loan be foreclosed upon, the Servicer is required to report said foreclosure to the Internal Revenue Service. Any liability resulting from said foreclosure will be determined by the Internal Revenue Service.

If any statement contained in this letter is not true and correct, please advise immediately. All communications and payments concerning this delinquent obligation should be directed to the undersigned at this law firm.

If your personal liability to repay this debt was discharged through Bankruptcy, or if you are under the protection of the Bankruptcy Code, then this notice is not an attempt to collect, recover or offset the debt as a personal liability. The Lender is exercising its *in Rem* rights.

This law firm may be deemed a "debt collector" under the Fair Debt Collection Practices Act. Any information obtained will be used for the purposes of collecting that debt.

### THIS IS A COMMUNICATION FROM A DEBT COLLECTOR

UNLESS YOU NOTIFY THIS OFFICE WITHIN THIRTY DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL YOU A COPY OF SUCH VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR. "THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

Sincerely,

Waldman & Porras, PLLC

---

# EXHIBIT "7"

Mrs. Lisa A. Bryant          702 379-3011

719 N. Racetrack Rd.         verdelw@gmail.com

Henderson, NV. 89015         July 27, 2018

WALDMAN & PORRAS, PLLC. Email :info@Waldmanlaw.com

201 W. Liberty, Suite 207

Reno, NV. 89501

Mailing Address P.O. Box 5162, Largo, FL. 33779

Primary Telephone (844)889-4162          Fascimile(844)882-4703

RE: Property located at: 719 N. Racetrack Rd.

Henderson, NV. 89015

LoanNumber: 0002003191

Lender: PVK Properties, LLC.

Servicer: Madison Management Services,LLC.  Fascimile(877)563-4161

400 Morris Ave., Suite 222

Denville, NJ. 07834

Via first class, Fascimile and Certified Return Reciept

TO Whom It May Concern;

I have received your documents absent Information Necessary for a debt to wit your Clients Demand payment of.

The Origination was perpetrated by the same criminal(s) that stole my identity, the alleged Debtor has requested this information both verbally and written to Madison Management Services, LLC.

I request information as to the sums of past due payments to wit your clients demand payment.

I repeat time is of the essence and shall continue to be diligent in resolving any concerns with your client. Please forward the requested documents within (30) days of Receipt of this Letter.

Sincerely,

Lisa A. Bryant

# EXHIBIT "8"

Nicholas M. Porras, Esq.
Nevada Bar No.: 12849
Waldman & Porras, PLLC
201 West Liberty St. Suite 207
Reno, NV 89501
Telephone: (775)525-9246 | Fax: (888)688-4975
nick@dwaldmanlaw.com
service@dwaldmanlaw.com

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| **LISA A. BRYANT,**<br>**PLAINTIFF,**<br><br>**vs.**<br><br>**MADISON MANAGEMENT SERVICES,**<br>**LLC, AND PORRAS, PLLC,**<br>**DEFENDANTS.** | Case No.: 2:20-cv-00594-JAD-EJY<br><br>**RESPONSE TO PLAINTIFF LISA A.**<br>**BRYANT'S FIRST SET OF REQUESTS**<br>**FOR ADMISSION, WRITTEN**<br>**INTERROGATORIES, AND REQUESTS**<br>**FOR PRODUCTION OF DOCUMENTS** |

COMES NOW, Defendants, by and through its attorney of record, Nicholas M. Porras, Esq, of the law firm of Waldman & Porras, PLLC, hereby files this Response to Plaintiff Lisa A. Bryant's First Set of Requests for Admission, Written Interrogatories, and Requests for Production of Documents, and states as follows:

### DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS

1. Admit that Porras filed and issued the Notice on or about October 10, 2019.

   **Response**: DENIED. The Notice was issued on or about September 3, 2019 and recorded on October 10, 2019 as Instrument Number 20191010-0002098.

2. Admit that the Loan was in default at the time Porras was retained by Madison and/or PVK in relation to the Loan.

   **Response**: ADMITTED.

3. Admit that Bryant informed Porras prior to October 10, 2019 that she disputed the debt and did not execute the Loan documents.

   **Response**: DENIED.

4. Admit that Porras's violations of the Fair Debt Collection Practices Act as alleged in the Complaint did not result from any "bona fide error".'

   **Response**: DENIED.

**[This space intentionally left blank.]**

## DEFENDANT'S RESPONSE TO PLAINTIFF'S INTERROGATORIES

**GENERAL OBJECTIONS**

1. These interrogatory responses have been prepared from information obtained from expected and reasonably available sources by Defendant through reasonably diligent inquiry.   The information provided in these responses is based upon such information as is reasonably available to Defendant, and Defendant expressly reserves the right, without assuming any duty of disclosure not required under Federal Law or Nevada Court Rules or order of this Court, to revise, amend, correct, add or clarify any of these responses if and when additional information or documentation comes to its attention. Defendant further objects to the Plaintiff's interrogatory requests to the extent they purport to impose duties on Defendant beyond those permitted under Federal Law or the Nevada Court Rules.

2. Whether responding to each request by answer, production of document or objection, Defendant does not concede the evidentiary relevance, materiality or admissibility of any of these interrogatory questions or answers, or the subject matter to which they relate. Defendant expressly reserves the right to supplement or amend these objections and responses upon, among other things: further investigation; discovery of additional facts; discovery of persons with knowledge of relevant information; and developments in this action or in any other proceedings.  The word "Plaintiff" shall be taken to be singular or plural as the case may be.

3. Defendant objects to the Interrogatories to the extent they seek material or information projected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable testimonial or other privilege. To the extent the Interrogatories can be construed to

include such privileged matters, Defendant will provide only non-privileged materials or information.

4. Defendant objects to the Interrogatories to the extent they seek information protected by the work-product doctrine. Specifically, Defendant objects to these Interrogatories to the extent they seek: (i) information developed or documents prepared in anticipation of litigation; (ii) information discovered by Defendant pursuant to an investigation conducted in anticipation of litigation; and/or (iii) mental impressions of Defendant's undersigned counsel.

5. Defendant objects to the Interrogatories to the extent they seek discovery or trade secrets, proprietary information, or confidential business information as defined by applicable law.

6. Defendant objects to the Interrogatories to the extent they exceed the scope of discovery permitted under the Federal Rules of Evidence, the Nevada Court Rules, and/or other applicable procedural or substantive law.

7. The preceding General Objections apply to each question or request set forth in the Interrogatories. No specific objection set forth in the responses to the Interrogatories shall constitute a waiver of any of these general Objections or of any other objection.

**SPECIFIC ANSWER AND OBJECTIONS**

1. Please identify each and every individual that assisted in answering these discovery requests and state each individual's full name, social security number, home address, business address, telephone number(s), occupation, employer, position with employer, duties for said employer, and birth date.

**Response**: Please see the individual identified below, who is the representative designated by Defendant to respond to these Interrogatories based upon his or her personal knowledge and

access to Defendant's business records. Also, Defendant's counsel requests that no contact be made directly with Defendant or its representatives; all correspondence shall proceed through Defendant's counsel: Waldman & Porras, PLLC, 201 West Liberty St., Suite 207, Reno, NV 89501.

**Name:** Nicholas M. Porras, Esq.

**Title:** Partner

2. Please identify any and all individuals who assisted you in gathering information and/or documentation regarding the facts of this case, and identify the full name of each individual, the date that individual began assisting you, the home address of that individual, the business address of that individual, the telephone number for that individual, the type of information and/or documentation that individual provided to you, and that individual's telephone number.

**Response**: Defendant objects to this request as Plaintiff fails to limit the scope of the request asking for "any and all individuals." Defendant objects to this interrogatory on the basis it is vague and ambiguous. Defendant further objects to this interrogatory on the basis it is overbroad and seeks discovery of information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waving this objection, please see the individual identified below, who is the representative designated by Defendant to respond to these Interrogatories based upon his or her personal knowledge and access to Defendant's business records. Also, Defendant's counsel requests that no contact be made directly with Defendant or its representatives; all correspondence shall proceed through Defendant's counsel: Waldman & Porras, PLLC, 201 West Liberty St., Suite 207, Reno, NV 89501.

**Name:** Nicholas M. Porras, Esq.

**Title:** Partner

3. Please identify each and every lay witness whom you reserve the right to call at trial, along with a summary of that individual's anticipated testimony, full name, address, telephone number, and a copy of all documents provided by each witness to you or to such witness by you.

**Response**: Defendant objects to this interrogatory on the basis it is vague and ambiguous. Defendant further objects to this interrogatory on the basis it is overbroad and seeks discovery of information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Further, Defendant objects to this interrogatory as it requests a witness list prior to the required date set by the Court for submitting witness lists. Without waiving said objections, Defendant may rely upon a representative of any and all current or prior servicers of the subject loan. The name(s) of the representatives of prior servicers are currently unknown to Defendant. Such individuals may provide information regarding the prior servicing of the loan, including payments made or missed by borrowers. Defendant reserves the right to amend this list at any time prior to trial.

4. Describe all actions Porras took to validate the debt allegedly evidenced by the Loan.

**Response**: Defendant objects to this request as being vague and overly board. Without waiving this objection, please see the attached Formal Response to Plaintiff's Verification of Debt request. In the letter, Waldman & Porras, PLLC described and explained the debt and ownership thereof, clarified the amount owed and provided supporting documentation validating the loan.

5. Identify, with particularity, all lawsuits in a Court across the United States in which Porras has raised the *bona fide error* defense pursuant to FDCPA. For purposes of this Interrogatory, please identify the cases by Case Caption, Court of Jurisdiction, and in reverse chronological order

**Response**: Defendant objects to this request as being vague and overly board. Defendant further objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

6. Identify and describe with particularity all training that Porras provides or receives, in the area of debt collection activities, including but not limited to:

a.    The training content, timing, and duration;

b.    All documents and audio or visual materials used in such training; and,

c.    Each person involved in providing such training.

**Response**: Defendant objects to this request as being vague and overly board. Defendant further objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

7. Identify and describe all documents, manuals, instructions, checklists, memorandum, restrictions or other documentation or instructions that Porras is given, reads, reviews, or otherwise       utilizes,       regarding       the       collection       of       debts.

**Response**: Defendant objects to this request as being vague and overly board. Defendant further objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

8. Identify whether Porras electronically records, or tape records, telephone calls by any means with any persons from whom they are collecting debts or alleged debts, and what steps are taken to preserve these recordings.

**Response**: Defendant objects to this request as being vague and overly board. Defendant further objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**[This space intentionally left blank.]**

## <u>DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS</u>

### GENERAL OBJECTIONS

1. Defendant makes the following general objections to Plaintiff's Request for Production of Documents. The general objections apply to all or so many of the requests that, for convenience, they are set forth immediately below and not repeated after each request objected to herein. The assertion of the same, similar, or additional objections or the provisions of partial answers or of documents in response to the individual requests does not waive any of Defendant's general objections as set forth as follows:

    a. Defendant objects to responding to any request requiring the production of documents containing information or identification of documents not relevant or material to the instant action or reasonably calculated to lead to the discovery of admissible evidence. Defendant specifically objects to responding to any request that is not related to any claims or defenses asserted in this matter. <u>See</u> Fed.R.Civ.P. 26(b)(2).

    b. Defendant objects to the production of any items protected by the attorney/client and/or work product privileges.

    c. Defendant objects to the production of any items not reasonably calculated to lead to the discovery of admissible evidence.

    d. Defendant objects to responding to any interrogatory that would require the disclosure of confidential and proprietary information and is protected under Fed.R.Civ.P. 26.

    e. Defendant objects to responding to any interrogatory requiring an answer or documents containing information or identification of documents not reasonably calculated to lead to the discovery of admissible evidence.

f. Defendant has not completed its review of all documents related to the action, interviewed all witnesses in the action, completed discovery int his action, and has not completed its preparation for trial. Consequently, the responses herein are based upon information known or believed by Defendant at the time of answering this Request for Production and it specifically reserves the right to amend its responses set forth herein as discovery proceeds in this matter.

g. Any statement by Defendant that will produce documents in response to a particular request shall not be construed as a determination that responsive documents in fact exist. It means only that Defendant has no objection to the particular request order other that these general objections, and that, if responsive documents exist, and are within Defendant's possession, custody, or control, they will be produced.

h. These responses have been prepared from information obtained from expected and reasonably available sources by Defendant through reasonably diligent inquiry. The information provided in these responses is based upon such information as is reasonably available to Defendant, and Defendant expressly reserves the right, without assuming any duty of disclosure not required under Federal Law or Nevada Court Rules or order of this Court, to revise, amend, correct, add or clarify any of these responses if and when additional information or documentation comes to its attention.

i. Whether responding to each request by production of document or objection, Defendant does not concede the evidentiary relevance, materiality or admissibility of any of these requests for production requests, or the subject matter to which they relate. Defendant expressly reserves the right to supplement or amend these objections and responses upon, among other things: further investigation; discovery of additional

facts; discovery of persons with knowledge of relevant information; and developments in this action or in any other proceedings. The word "Plaintiff" shall be taken to be singular or plural as the case may be.

## SPECIFIC RESPONSES AND OBJECTIONS

1. Produce every document Porras intends to introduce at trial, in any deposition, or during any hearing in this case.

   **Response**: Defendant objects to this Request for Production as it is premature. All documents in Defendant's possession, custody, or control will be provided with the witness list or as exhibits at or around the time of trial.

2. Produce all documents identified or referred to in Porras's disclosures issued pursuant to Fed. R. Civ. P. 26(a)(1).

   **Response**: Defendant has attached the requested documents currently in its possession, custody, and control.

3. For all times relevant to the servicing of the Loan, produce a complete, specific, and itemized summary of all communications between Porras's representatives or other individuals who spoke with Bryant, including, but not limited to, telephone conversations, emails, faxes, and letters, regarding the Loan.

   **Response**: Defendant objects to the extent that it calls for documents protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege.

4.      For all times relevant to the servicing of the Loan, produce a complete, specific, and itemized summary of all communications between Porras's representatives or other individuals who spoke with third parties regarding the Loan, including, but not limited to, telephone conversations, emails, faxes, and letters.

   **Response**: Defendant objects to the extent that it calls for documents protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege.

5.      Produce all servicing manuals, memoranda, policies, and training materials utilized by Porras in reviewing and determining all compliance with the FDCPA that were in effect for all times relevant to the servicing of the Loan.

   **Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Please provide any and all documents summarizing, describing, instructing, detailing, or otherwise training any and all of Porras's employees in any and all of the following areas:

a.      Collection policies

b.      Collection procedures;

c.      Collection methods;

d.      Collection techniques;

e.      Collection tactics;

f.      Collection rules;

g.      Collection regulations; and,

h.    Compliance with local, state, or federal laws, codes, or regulations.

**Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

7.    Please provide any and all training, personnel, or other instruction manuals used by any and all collection personnel who are employed by or supervised by Porras.

**Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

8.    Please provide any and all collection software manuals and/or instruction guides for each and every computer system, software package, software system, telephone system, electronic device, or non-electronic device used in any manner by Porras in collecting debts.

**Response**: Defendant objects to this request on the basis that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

9.    Please provide any and all documents recording, documenting, or otherwise tracking Porras's attempts to collect a debt from Bryant, including but not limited to:

a.    Records of all inbound or outbound telephone calls, to or from Bryant;

b.    Records of all inbound or outbound United States mail, to or from Bryant; and,

c.    Records of all other inbound or outbound communication of whatever kind, to or from Bryant.

**Response**: Defendant has attached the requested documents currently in its possession, custody, and control.

10.    Please provide a plain-English description or glossary for any and all lists, legends, codes, abbreviations, collector initials, or other non-obvious terms, words, or data contained in any of the documents produced above.

**Response**: Defendant objects to this request as it is overly broad. However, notwithstanding said objection, Defendant will provide the requested plain-English definition upon written request from Plaintiff.

## VERIFICATION

STATE OF _Nevada_                                   )

COUNTY OF _Washoe_                              )        SS.
                                                       )

_Nicholas M. Porras_                    , as corporate representative of _Woodburn & Porras PLLC_

being first duly cautioned and sworn, now deposes and states that he/she has reviewed the foregoing responses and objections to **PLAINTIFF LISA A. BRYANT'S FIRST SET OF REQUESTS FOR ADMISSION, WRITTEN INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED UPON DEFENDANT MADISON MANAGEMENT SERVICES, LLC,** and that they represent true and accurate answers to those requests as he/she verily believes.

Signature: _____

Name: _Nicholas M. Porras_

Title: _Partner_

Department/Division: _____

Sworn to and subscribed before me and in my presence this _____4 th_____

day of __N o v e m b e r__, 2020.


THADDEUS PAUL MORALES
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 20-1090-02 - Expires May 17, 2024

_____
Notary Public

**REPLY TO PLAINTIFF LISA A.
BRYANT'S FIRST SET OF REQUESTS
FOR ADMISSION, WRITTEN
INTERROGATORIES, AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS**
Dated November 4, 2020

_____
Nicholas M. Porras, Esq.

# EXHIBIT "9"



Tel: 877-563-4164
Fax: 877-563-4161
Email: info@madisonmanagement.net
Web: www.madisonmanagement.net

4/21/2020

Lisa Bryant
719 N. Racetrack Road
Henderson, NV 89015
Account: 0002003191

## PAYOFF STATEMENT

Dear Lisa Bryant

You are authorized to use the following amounts to payoff the above-mentioned loan.  All necessary legal documents will be forwarded to the trustee or County Recorder for Full Reconveyance or Satisfaction upon receipt of payment in full.

| Payoff Date | 4/30/2020 |
|---|---|
| Maturity Date | 11/1/2021 |
| Next Payment Due | 8/1/2014 |
| Interest Rate | 10.500% |
| Interest Paid-To Date | 7/1/2014 |
| Principal Balance | $90,250.00 |
| Unpaid Interest | $0.00 |
| Accrued Interest From 7/1/2014 To 4/30/2020 | $55,325.72 |
| Unpaid Late Charges | $0.00 |
| Accrued Late Charges | $3,417.57 |
| Unpaid Charges   *For additional details see itemization attached | $5,498.27 |
| Prepayment Penalty | $0.00 |
| Other Fees *For additional details see itemization attached | $165.00 |
| Trust Balance | $0.00 |
| **Payoff Amount** | **$154,656.56** |

Please add **$27.30** for each additional day past **4/30/2020**.

**PLEASE CALL TO VERIFY PAYOFF AMOUNT AND FEES DUE, PRIOR TO ISSUING PAYMENTS.**

This payoff statement will be of no force and effect, and the above figures may not be relied upon, after the Payoff Quote Expiration Date. We reserve the right to amend this statement should any changes occur that would increase the total amount for payoff.   **Please note that this payoff statement expires on 5/21/2020,** at which time you are instructed to contact this office for additional instructions (FORWARDING FEES ARE DUE EVEN UPON CANCELLATION OF YOUR ESCROW).

All payoffs made pursuant to a payoff statement expiring on a date which is a Saturday, Sunday or federal holiday must be made on or before the business day immediately preceding such expiration date in order to be credited timely.  Delivery of funds on a subsequent business day will not be accepted and may cause a shortage in the payoff amount.

For amortized loans, all monthly interest calculations must be made using a thirty (30) day calendar month and a three hundred sixty (365) day calendar year. For Interest only loans, Interest calculations for any one (1) month must be based on the actual days and a three hundred sixty-five (365) day year.  Interest must be remitted THROUGH the date such funds are received by **Madison Management Services, LLC**

Make disbursement check payable to: **Madison Management Services, LLC**

**(ONLY CERTIFIED FUNDS, WIRE TRANSFER OR A TITLE COMPANY CHECK WILL BE ACCEPTED)**

4600 Kietzke Lane, Ste B119, Reno, NV 89502

This communication is from a debt collector but does not imply that Madison Management Services is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment. North Carolina Collection Agency Permit # 109073. Madison Management Services is licensed by the Collection Service Board of the Tennessee Department of Commerce and Insurance.

**PAYOF REMITTANCE INFORMATION**

Your payoff remittance must be in the form of a wire title company check or cerrified funds.  You must reference the payoff remittance and include the borrower's name(s), subject property complete address and loan number as set forth above.

**WIRE TO:**

C/O Madison Management Services, LLC
Wells Fargo Bank, N.A.
106 Route 10
Succasunna, NJ 07876
ABA: 121000248
Account #:  1922750904
Loan Number:  0002003191
Property Address: 719 N. Racetrack Road Henderson, NV 89015

We reserve the right to correct any portion of this Payoff Statement at any time.  All balances are subject to change if any transactions occur after the above-written payoff statement date.  If, and prior to the application of payoff funds received, Madison Management Services, LLC has received any payment on this account within the prior thirty (30) days and applied such payment to the borrower's account for the purpose of issuing this Payoff Statement and if, for any reason whatsoever, such funds are reversed including, without limitation, insufficient funds or a stop payment being placed on a check, this Payoff Statement shall be deemed invalid, null and void and of no force or effect and a new Payoff Statement must be obtained from Madison Management Services, LLC in order to reflect the correct amount due and owing.

Upon receipt of your payoff remittance, Madison Management Services, LLC will verify all the amounts due and in the event that the payoff amount received is less than the total amount necessary to satisfy the loan, Madison Management Services, LLC will return the funds with a new Payoff Statement and continue to accrue interest on the loan.

Within thirty (30) calendar days after payoff, any overpaid amount and/or remaining escrow funds will be remitted to the borrower of record, contingent upon clearance of all funds remitted.  Unless an address is provided where such refund should be sent, the refund will be sent to the last known address of the borrower of record.

**RELEASE OF LIEN**

Please provide book, page and/or instrument number, legal description and original lender of record for processing release of lien upon receipt of funds sufficient to pay off the loan in full.

Issuance of this Payoff Statement does not suspend the contractual requirement to make loan payments when due in accordance with the terms and conditions of the note and security instrument.  Please note that Madison Management Services, LLCdoes *NOT* accept any payments remitted via any type of "Auto-Draft", "Auto-Payment", or ACH draft without prior written agreement therefore specifically with Madison Management Services, LLC.

Issuance of this Payoff Statement will not future escrow disbursements, if applicable.  Property taxes or insurance premiums will still be made by Madison Management Services, LLC even after this Payoff Statement is issued, if required under any agreements with respect to escrow accounts.  If such disbursement create escrow advances and change the amount due to satisfy the loan in full, such advances must be paid prior to the application of any payoff funds and satisfaction of the Mortgage/Deed of Trust.  If, due to the borrower's failure to provide proof of coverage, Madison Management Services, LLC has exercised the right to obtain a property insurance policy on borrower's behalf, SUCH POLICY SHALL BE CANCELLED EFFECTIVE ON THE DATE THE LOAN IS PAID IN FULL.

If account is past due, collection expenses and legal fees may be accruing.

Please direct all questions to accounting at 877-563-4164 ext 801.

Sincerely   **Madison Management Services, LLC**

4600 Kietzke Lane, Ste B119, Reno, NV 89502

This communication is from a debt collector but does not imply that Madison Management Services is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment. North Carolina Collection Agency Permit # 109073. Madison Management Services is licensed by the Collection Service Board of the Tennessee Department of Commerce and Insurance.



Tel: 877-563-416
Fax: 877-563-416
Email: info@madisonmanagement.ne
Web: www.madisonmanagement.ne

## ITEMIZATION OF UNPAID CHARGES

| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
|------|-------------|---------------|----------------|------------------|-----------|
| 07/05/2018 | Attorney Fees Inv 899018953 | 10.500% | $3,939.50 | $692.43 | $4,631.93 |
| 08/08/2018 | Attorney Fees Invoice 899019165 | 10.500% | $736.83 | $129.51 | $866.34 |
| | | | | Total | $5,498.27 |

## ITEMIZATION OF OTHER FEES

| Description | Amount |
|------------|--------|
| Reconveyance Fee | $150.00 |
| Wire Fee | $15.00 |
| Recording Fee | $0.00 |
| Forwarding Fee | $0.00 |
| Total | $165.00 |

400 Morris Avenue, Suite 222, Denville, NJ 07834

This communication is from a debt collector but does not imply that Madison Management Services is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment. North Carolina Collection Agency Permit # 109073. Madison Management Services is licensed by the Collection Service Board of the Tennessee Department of Commerce and Insurance.

# EXHIBIT "10"

Damian Waldman, Esq. *#
Nicholas Porras, Esq. *+

+   Licensed in Florida
+   Licensed in Nevada
#   Certified Circuit Civil Mediator



# WALDMAN & PORRAS, PLLC

## Attorneys and Counselors at Law

### 201 West Liberty, Suite 207
### Reno, NV 89501
Primary Telephone: (844) 899-4162 Facsimile: (844) 882-4703
Secondary Telephone: (775) 525-9246 Facsimile: (888) 688-4975
Email: info@dwaldmanlaw.com Email 2: nevadafc@dwaldmanlaw.com

---

April 29, 2020

Dann Law
PO Box 6031040
Cleveland, OH  44103
Notices@DannLaw.com

**VIA EMail**

RE:   **Lisa Bryant
719 Racetrack Road
Henderson, NV 89015
Acct #: 0002003191**

## RESPONSE TO LETTER DATED 3/31/2020

Dear Ms. Kastner:

Waldman and Porras, PLLC represents Madison Management Services, LLC, the current servicer for the Deed of Trust on the above-referenced property. Please be advised that responses are delayed due to office closures and shelter in-place/quarantine issues.

We have received the attached letter and were able to obtain the information detailed below.  The numbers in the responses correlate to the request numbers in the attached letter.:

1.   We have requested the payment history from the previous servicer,  they have not yet produced it. We are requesting an additional 30 days do to Covid -19 Pandemic and potential increase in time to respond due to same.

2.   See attached file called "Bryant Servicing Notes".

3.   Our client does not have any BPO's in their file.

---

4.  See attached file called "Bryant Collateral Docs."

5.  There is no escrow analysis, the borrower was not setup for an impound account.

6.  Reinstatement and Reinstatement calculation attached.

7.  No loss mitigation application received.

8.  N/A

9.  None.

10. Verbal discussion about a forbearance agreement but the borrower never agreed to pay the fee or move forward with the terms.

11. None received hence N/A.

12. N/A

13. N/A

Sincerely,

Nicholas Porras, Esq
Waldman & Porras, PLLC

THIS LAW FIRM MAY BE DEEMED A "DEBT COLLECTOR" UNDER THE FAIR DEBT COLLECTION PRACTICES ACT. ANY AND ALL INFORMATION OBTAINED MAY BE USED FOR THE PURPOSE OF COLLECTING A DEBT.

Lisa Bryant000070

# EXHIBIT "11"



Tel: 877-563-4164
Fax: 877-563-4161
Email: info@madisonmanagement.net
Web: www.madisonmanagement.net

Ms. Bryant also let Madison know that she was advised by someone to file bankruptcy and contact the attorney general. On 3/20/2018 Forbearance Agreement terms were discussed with the borrower, which included a lump sum down payment and a $450.00 monthly payment for the next 18 months.

Another Forbearance Agreement option was presented to the borrower in which the borrower would pay $500.00 per month for 12 months with no lump sum down payment. The agreement also stipulated that if the borrower paid for three consecutive months, the lender would agree to update credit reporting. On 3/22/2018 the borrower agreed to a forbearance agreement and requested that her payment due date be on the 10th of each month. After all the discussions and accommodations made to help Ms. Bryant, she refused to execute the agreement or make payments. She stated that she wanted to obtain a payment history from the previous servicer before she would agree to signing any agreements or making payments.

On 5/11/2018 the lender began the process of foreclosure. On 6/27/2018 the borrower called in and stated that she believes that her loan is a fraudulent loan.

Attached to this notice are copies of the following:

- Recorded Deed of Trust
- Note
- Prepayment Charge Rider to Note
- Balloon Rider to Note
- Allonge to Note: Pay to the order of Bayview Loan Servicing, LLC
- Allonge to Note: Pay to the order of Newport Beach Holdings, LLC
- Allonge to Note: Pay to the order of PVK Properties, LLC
- Corporate Assignment of Deed of Trust:  MERS as nominee for Accredited Home Lenders, Inc transfers to/ Assigns to PVK Properties, LLC
- Statement of Account

If you have any questions, please do not hesitate to give us a call at 877-563-4164.

Sincerely,

Customer Service
Madison Management Services, LLC

400 Morris Avenue, Suite 222, Denville, NJ 07834

This communication is from a debt collector but does not imply that Madison Management Services is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment. North Carolina Collection Agency Permit # 109073. Madison Management Services is licensed by the Collection Service Board of the Tennessee Department of Commerce and Insurance.

# EXHIBIT "11"

1   George Haines, Esq.
    Nevada Bar No. 9411
2   Gerardo Avalos, Esq.
    NV Bar No. 15171
3
    **FREEDOM LAW FIRM**
4   8985 South Eastern Ave., Suite 350
    Las Vegas, NV 89123
5
    Phone: (702) 880-5554
6   FAX: (702) 385-5518
    Email: info@freedomlegalteam.com
7

8                    **UNITED STATES DISTRICT COURT**
9                        **DISTRICT OF NEVADA**

10

11  | Lisa Bryant,                          | Case No.: 2:20-cv-00594-JAD-EJY     |
    |                                        |                                     |
12  |                          Plaintiff,    | **Declaration of Lisa Bryant**      |
13  |                                        |                                     |
    | v.                                     |                                     |
14  |                                        |                                     |
    | Madison Management Services, LLC, and  |                                     |
15  | Waldman & Porras, PLLC,                |                                     |
16  |                                        |                                     |
17  |                                        |                                     |
    |                          Defendants    |                                     |
18

19
    I, Lisa Bryant, being duly sworn, depose and say:
20

21          1.      I am the plaintiff in the above captioned matter.

22          2.      If called as a witness, I would competently testify to the matters herein from my

23  own personal knowledge.

24

25

26

27

DECLARATION OF LISA BRYANT          - 1 -

DocuSign Envelope ID: 8EE0FC91-FDDE-4C90-B5CD-C70BD7EB8835

3.  I am the owner of real property and improvements thereupon located at and commonly known as 719 North Racetrack Road, Henderson, NV 89015, Parcel No. 179-04-506-001 (the "Home").

4.  Unbeknownst to me, a second note was procured through Accredited Home Lenders, Inc. in the amount of $90,250.00 which was then allegedly secured by a deed of trust on the Home (collectively, the "Second Mortgage Loan").

5.  The Second Mortgage Loan was procured without my knowledge, through fraudulent means and I received no funds from this loan.

6.  I repeatedly told Madison that I had no prior knowledge of the Second Mortgage Loan after I began receiving notices from Madison and informed I Madison that the Second Mortgage Loan was procured through fraudulent means.

7.  Upon receiving the notices from Defendants claiming that I owed amounts due upon the Second Mortgage Loan, which I did not execute and of which I had no prior knowledge, I was shocked, frustrated, anxious, embarrassed, and otherwise emotionally distraught that Defendants were knowingly attempting to collect on this fraudulent debt.

8.  Defendants' willful and wrongful actions have caused me to suffer emotional distress driven by fear, anxiety, and concern that Defendants will wrongfully seek to foreclose upon the Second Mortgage Loan and sell my Home unless I agree to pay sums for which I not not obligated to despite the fact that she did not enter into the Second Mortgage Loan and received no funds from the same.

9.  I have tried numerous times to refinance my Home, but was denied because of the fraudulent Second Mortgage.

DECLARATION OF LISA BRYANT        - 2 -

1

10.     Madison has told me that it will only remove all its negative reporting if I agree to

2

pay Madison for this fraudulent debt.  Madison has told me this despite it taking numerous attempts

3

on my part to obtain documents from Madison pertaining to the fraudulent Second Mortgage Loan.

4

11.     I declare under penalty of perjury under the laws of the State of Nevada that the

5

foregoing is true and correct

6

7

8

Dated: March 16, 2022

9

By:     _____

10

Lisa Bryant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF LISA BRYANT          - 3 -