**Nicholas M. Porras, Esq.**
**Nevada Bar No.: 12849**
**Waldman & Porras, PLLC**
**201 West Liberty St. Suite 207**
**Reno, NV 89501**
**Telephone: (775)525-9246 | Fax: (888)688-4975**
**nick@dwaldmanlaw.com**
**service@dwaldmanlaw.com**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **LISA A. BRYANT,**<br>**Plaintiff,**<br><br>**vs.**<br><br>**MADISON MANAGEMENT SERVICES,**<br>**LLC and Waldman & PORRAS, PLLC,**<br>**Defendants.** | Case No.: 2:20-cv-00594-JAD-EJY<br><br>**DEFENDANTS' RESPONSE IN**<br>**OPPOSITION TO PLAINTIFF'S**<br>**MOTION FOR SUMMARY JUDGMENT** |

Defendants, Madison Management Services, LLC, and Waldman & Porras, PLLC, by and through the undersigned counsel and files this Response in Opposition to Plaintiff's Motion for Summary Judgment, and says:

**STATEMENTS OF DEFENDANTS UNDISPUTED FACTS**

On or about October 2, 2006, the Plaintiff, Lisa A. Bryant, executed and delivered a Note as well as a Deed of Trust securing payment of the Note to Accredited Home Lenders, Inc. The property described in the Deed of Trust was and is now owned by, and in possession of, the Plaintiff. The Deed of Trust was recorded in the Clark County Recorder's Office on or about December 5, 2006, as Instrument Number 20061205-0002545. See a copy of the Deed of

Trust and Note with allonge chain, and Assignment attached hereto, and incorporated herein as composite Exhibit "A."

The Deed of Trust secures the property more commonly known as 719 North Racetrack Road, Henderson, NV 89015, Parcel No. 179-04-506-001 (the "Property").

PVK Properties, LLC is the owner and holder of the Deed of Trust by virtue of an Assignment of Mortgage executed on May 29, 2013 and that was recorded on September 21, 2017, as Instrument Number 201709210002298, and Madison Management Services, LLC is the servicer of the subject loan. According to the books and records of the servicer, Plaintiff failed to make her payment due for August 1, 2014, and all subsequent payments thereafter.

On or about May 25, 2018, Defendants sent Plaintiff a Notice of Default and Intent to Accelerate and Enforce the Power of Sale, which included all disclosures required by the Federal Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA"). See a copy of the Notice of Default attached hereto, and incorporated herein as composite Exhibit "B."

On or about August 20, 2018, First American Title Insurance Company, erroneously recorded a Deed of Reconveyance for this loan, which it did not own at the time, purportedly releasing Plaintiff from her obligations under the subject mortgage. The erroneous and invalid reconveyance was recorded as Instrument Number 201808200002705, which is five (5) years after PVK Properties, LLC purchased the Note and Deed of Trust and almost one (1) year after the Assignment of Mortgage was recorded, giving proper notice that PVK Properties, LLC owned the loan. Due to this fraudulent and erroneous reconveyance, PVK Properties, LLC has filed a separate action against First American Title Insurance Company in case number A-21-835718-C, to challenge this reconveyance.

On or about September 19, 2017, Plaintiff called Defendant Madison Management Services, LLC, asking for loan balance to be reduced. During that call, the parties discussed loan options and remedies. Plaintiff then called Defendant again on or about September 21, 2017, asking for unpaid principal balance to be reduced to $95,000.00.

Per Plaintiff's request, on or about September 25, 2017, Defendant sent a Financial Application, HO Options Letter and copy of Collateral File to Plaintiff.

Plaintiff then informed Defendant that she was going to apply for Hardest-Hit Fund, and so, over the course of the coming weeks, Plaintiff began the application process. Her application with the Nevada Hardest-Hit Fund was established on November 28, 2017.

On or about February 13, 2018, Nevada HHF denied her application.

Over the course of the next five (5) months, Plaintiff tried negotiating many times with Defendant to enter into a Forbearance Agreement, but each time failed to finalize any agreement. Eventually, Defendant was unable to prolong the matter any further and advised Plaintiff, in a call on May 11, 2018, that only the full reinstatement amount would be accepted. Please see attached call logs incorporated herein as "Exhibit C."

After exhausting all her options, in a last-ditch effort to avoid her obligations under the Note and Deed of Trust, Plaintiff asserted that the mortgage was fraudulent and that the signature on the documents was not hers. The instant matter was filed on or about March 27, 2020.

## **LEGAL STANDARD**

Under Rule 56(c), Federal Rules of Civil Procedure, a moving party is entitled to summary judgment if all pleadings, discovery, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal citations omitted). All reasonable doubts and justifiable interests must be resolved in the non-movant's favor. *Ibid.* (internal citations omitted).

A court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Ibid.* Only once the moving party has established the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and demonstrate specific facts showing that there is a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

**LEGAL ARGUMENT**

**A. Evidence Shows Genuine Issues of Material Fact.**

Plaintiff has failed to show that there are no genuine issues of material fact that would entitle her to judgment as a matter of law.

First, Defendant has presented several affirmative defenses and exhibits in support of its defenses to preclude the entry of summary judgment. The defenses asserted by Defendant include statute of limitations, bona fide error, valid contract, and laches.

For the **First Affirmative Defense**, statute of limitations, there is a one-year statute of limitations on Fair Debt Collection Practices Act claims. The Statute of Limitations accrues when the alleged violation occurs, not when it is discovered. *Oliver v. United States Bancorp*, 215 U.S. Dist. LEXIS 88713 (SDNY 2015). The communication at issue was sent on May 23, 2018, more

than a year prior to Plaintiff filing her Complaint. This action was filed outside of the statute of limitations.

For the **Second Affirmative Defense**, bona fide error, the FDCPA sets forth a complete defense from liability under the FDCPA if the alleged violation was the product of a bona fide error. 15 U.S.C. §1692(k). Any and all claimed violations of the FDCPA are the result of a bona fide error that occurred despite adequate procedures being in place to prevent those errors.

For the **Third Affirmative Defense**, Defendants assert there was a valid contract. A Deed of Trust executed by Plaintiff and notarized was recorded in the Clark County Recorder's Office on or about December 5, 2006 as Document T20060212997. It is long-standing law in the State of Nevada that signatures are presumed valid, especially if witnessed and notarized. The Deed of Trust complies with the statute of frauds and all aspects of Nevada Law. The Deed of Trust contract is valid and remains enforceable until paid off. The Document purporting to be a Deed of Reconveyance has no legal effect on the loan as the filer was not the owner of the loan, had no interest in the loan, and had no authority to record said Deed of Reconveyance. Plaintiff has not presented any facts or evidence other than lack of recollection to rebut the presumption of validity.

For the **Fourth Affirmative Defense**, laches, Defendants argue that Plaintiff's Complaint is outside of the Statute of Limitations for FDCPA actions. Plaintiffs had ample opportunity to raise their claims at any time after May 25, 2018, when the demand letter was sent. Plaintiff's delay in raising the causes of actions averred in the Amended Complaint was unreasonable and severely prejudices Defendants.

Additionally, the documents and evidence submitted via discovery clearly show that Plaintiff was well aware of the subject loan and was continuously discussing forbearance with Defendant Madison Management Services, LLC. Please see attached call logs attached hereto

and incorporated herein as "Exbibit A." The deposition of the Notary shows that the Deed of Trust was executed by Plaintiff. See Pages 20-21 of her deposition attached hereto and incorporated herein as "Exhibit D." The subject Note and Mortgage were and are valid, and Plaintiff has provided no evidence, other than her self-serving testimony, that they were procured fraudulently. Other than her self-serving testimony, there is no evidence that Plaintiff did not execute the Note. The Note is not notarized, so the Notary could not testify to whether or not the Note was executed. The Notary acknowledges this in her deposition. Please see Page 23 of her deposition attached hereto and incorporated herein as "Exhibit D."  Defendants properly and legally attempted to collect on the defaulted loan.

The Call Logs specifically show that Plaintiff not only had knowledge of the loan but was seeking a modification of the loan. Below is a list of all communications between Plaintiff and Defendant Madison Management Services, LLC regarding a possible loan modification.

**Call Logs:**

1. Plaintiff called Defendant Madison Management Services, LLC on or about September 19, 2017 asking for loan balance to be reduced. During that call, the parties discussed loan options and remedies.

2. Plaintiff called Defendant Madison Management Services, LLC on or about September 21, 2017, asking for unpaid principal balance to be reduced to $95,000.00.

3. On or about September 25, 2017, at Plaintiff's request, Madison Management Services, LLC sent a Financial Application, HO Options Letter and copy of Collateral File to Plaintiff.

4. On or about October 2, 2017, Plaintiff called Defendant Madison Management Services, LLC and stated she is going to apply for the Hardest-Hit Fund (HHF).

5. On or about October 9, 2017, Plaintiff informed Defendant Madison Management Services, LLC that she applied for the HHF.

6. On or about October 10, 2017, Plaintiff informed Defendant Madison Management Services, LLC that she had a phone call with someone at HHF assigned to her case.

7. On or about October 17, 2017, Plaintiff informed Defendant Madison Management Services, LLC that she is waiting for her second appointment with HHF.

8. On or about October 23, 2017, Plaintiff informed Defendant Madison Management Services, LLC that she is has an appointment with HHF this week.

9. On or about October 30, 2017, Plaintiff informed Defendant Madison Management Services, LLC to state that she is going to confirm her appointment with HHF.

10. On or about November 6, 2017, Plaintiff stated to Defendant Madison Management Services, LLC that the underwriter left her a message requesting documents.

11. On or about November 16, 2017, Plaintiff stated to Defendant Madison Management Services, LLC that she was to have a called with the underwriter. Defendant requested proof that she is working with HHF, and Plaintiff said she would send it soon.

12. On or about November 28, 2017, Plaintiff's application with the Nevada HHF was established.

13. On or about January 18, 2018, Plaintiff informed Defendant Madison Management Services, LLC that Nevada HHF was currently working on her application.

14. In or about February 13, 2018, Nevada HHF denied Plaintiff's application.

15. On or about February 14, 2018, Plaintiff and Lender discussed a forbearance agreement for one (1) year.

16. On or about February 20, 2018, Plaintiff called Defendant Madison Management Services, LLC to decline the forbearance agreement.

17. On or about March 13, 2018, Plaintiff called Defendant Madison Management Services, LLC and stated that she can afford to pay $300 monthly and would prefer to refinance within the next year. She also stated that she will file bankruptcy and go to Attorney General if Defendant tries to file foreclosure.

18. On or about March 20, 2018, Defendant Madison Management Services, LLC discussed Lender's forbearance terms, which included $450 monthly payments for 18 months and a lump sum payment to be made up front. Plaintiff informed Defendant that she is not able to put down a lump sum payment.

19. On or about March 22, 2018, Plaintiff called Defendant Madison Management Services, LLC and agreed to new forbearance terms, which included but were not limited to $500 monthly payments for 12 months and no lump sum payments, with due dates on 10th of each month since Plaintiff did not get paid until 5th of each month.

20. On or about March 30, 2018, Plaintiff called Defendant Madison Management Services, LLC to inform Defendant that the agreement fee will be paid by April 3, 2018, over the phone.

21. On or about April 9, 2018, Plaintiff called Defendant Madison Management Services, LLC to inform them that the agreement fee will be paid this week.

22. On or about April 16, 2018, Plaintiff called Defendant Madison Management Services, LLC asking for a conference call with a woman who is supporting her. Defendant informed her that Lender may proceed with foreclosure if she continues to prolong this matter.

23. On or about April 17, 2018, Plaintiff called Defendant Madison Management Services, LLC and stated that she will wants to work out an agreement with the Lender. Defendant informed her that Lender has decided to proceed with foreclosure. Plaintiff informed Defendant that she is going to contact the Attorney General.

24. On or about April 24, 2018, Plaintiff called Defendant Madison Management Services, LLC to inquire about her payment history with previous servicer. Defendant suggested that she contact the previous servicer for information.

25. On or about April 30, 2019, Plaintiff called Defendant Madison Management Services, LLC and asked for the agreement to be extended for 2 years.

26. On or about May 3, 2018, Plaintiff sent the following email to Defendant Madison Management Services, LLC:

> **From: LISA BRYANT [mailto:lisabryantiz@yahoo.com]**
> **Sent: Thursday, May 03, 2018 1:55 PM**
> **To: Anasia Rivera**
> **Subject: Re: Lisa Bryant - 3191**
> **Thankyou !**
> **I want to use a card for one payment as a new one is coming !**
> **I also am desperate to locate my payment history!!**
> **Any other input to assist would greatly help so we may get this business forward positively !!**
> **I am also assuming I need to set aside these funds to be prepared each month!!**
> **Thankyou**
> **I'm on phone driving through the remote area to get to the work !!**
> **I thank you very much**
> **I am going to also put u on to be my contact so you can handle this for me to that program I applied for,**
> **as you're more experienced and will have the information they need . And Howard to be informed.**
> **Is Madison registered with any hud or gov servicing programs ?**
> **I want to get him fixed anyway I can by assistance programs and a job !!**

27. On or about May 7, 2018, Plaintiff sent the following email to Defendant Madison Management Services, LLC:

> **From: LISA BRYANT [mailto:lisabryantiz@yahoo.com]**
> **Sent: Friday, May 04, 2018 11:00 AM**
> **To: Anasia Rivera**

**Subject: Re: Lisa Bryant - 3191**
**I am serious I have set aside the money to pay !! tell Howard we both need your help !!**
**Sent from my iPhone**

28. On or about May 7, 2018, Plaintiff called and discussed the account with Defendant Madison Management Services, LLC. Plaintiff stated that she wants to verify the amount owed before entering into an agreement and wants payment history as well.

29. On or about May 10, 2018, Plaintiff received the following email from Defendant Madison Management Services, LLC:

> **From: Anasia Rivera**
> **Sent: Thursday, May 10, 2018 2:43 PM**
> **To: 'LISA BRYANT'**
> **Subject: RE: Getting back from Az**
> **Good Afternoon,**
> **Unfortunately due to the delay in executing an agreement, the lender has decided to rescind the forbearance agreement and turn this file over to legal. Thank you.**
> **Respectfully,**
> **Anasia Rivera**
> **Madison Management Services, LLC**
> **400 Morris Ave Suite 222**
> **Denville, NJ 07834**
> **Fax: 877-563-4161**
> **Tel: 877-563-4164 Ext. 17**
> **Please allow 24-48 hrs for email response.**

30. On or about May 11, 2018, Plaintiff called Defendant Madison Management Services, LLC and wanted to discuss her loan. Plaintiff was informed that Lender has initiated the legal process. Plaintiff stated that she wanted to pay the $400 forbearance agreement fee, and that she has been trying to work with Community Servicers of Nevada to get mortgage assistance. Plaintiff was informed that her only option now was to make a full reinstatement payment. Plaintiff threatened to contact the Attorney General.

31. On or about May 11, 2018, Plaintiff made a second call to Defendant Madison Management Services, LLC and asked to process the $400 forbearance fee payment. Again, Defendant informed her that only full reinstatement would be accepted.

32. On or about May 11, 2018, Plaintiff sent the following email to Defendant Madison Management Services, LLC:

> **From: lisa byrant [mailto:verdelw@gmail.com]**
> **Sent: Friday, May 11, 2018 12:47 PM**
> **To: Anasia Rivera**
> **Subject: Forebearance fee**
> **Please accept a payment for fee for forebearance agreement for 24 months and we can discuss the need for your assistance to**
> **answer questions on programs available to get my lender/investor some money !!**
> **We ( us) are presently applied to an available program as they use private and federally funded programs!!**
> **Please assist to allow this to happen by contacting me this morning!!**
> **Pacific time !!**
> **My phone is what ( all ) I have to work as a computer!!**
> **My tax preparer is also a realtor and was on vacation for docs this agency required!!**
> **He had them and I did not have any copies**
> **and it created a hardship!!**
> **I did not expect him to disappear and created appointments that were very far to get to and then be told to come back !!**
> **I would ask that you take the payment information for a one time fee and simply hold the funds so we may speak or complete th**
> **e agreement!!**
> **In the meantime I anxiously await your call and a conference call additionally to the worker !**
> **Thankyou,**
> **Lisa Bryant**
> **7023793011**
> **Sent from my iPhone**

33. On or about May 14, 2018, Plaintiff received an email from Defendant Madison Management Services, LLC, stated that Defendant is not accepting payments less than the full reinstatement amount.

34. On or about May 14, 2018, Plaintiff called Defendant Madison Management Services, LLC, and was informed again that Defendant is not accepted payments less than the

11 OF 18

full reinstatement amount. Plaintiff stated that she will try to come up with money to reinstate.

35. On or about June 27, 2018, Plaintiff called Defendant Madison Management Services, LLC, and stated that she received a letter from the attorney. During this call, Plaintiff stated that she thinks this is fraud and requested loan documents with her signature.

36. On or about December 11, 2019, Plaintiff requested a copy of the Response to the QWR, and Defendant Madison Management Services, LLC provided a copy to Plaintiff via email on the same day.

37. Plaintiff received a response via regular mail from Defendant Madison Management Services, LLC to her QWR dated January 4, 2020.

38. Plaintiff received a response via regular mail from Defendant Madison Management Services, LLC to her QWR dated March 17, 2020.

It is clear from the call logs that Plaintiff was well aware of this loan and was seeking a loan modification on the loan since September 2017. Only in June 2018 did Plaintiff start asserting that the loan was fraudulent.

It is clear from this evidence, at the very least, that there are genuine issues of material fact, particularly as to whether the loan was in fact fraudulent. Other than self-serving testimony, there is no evidence to suggest that the loan was fraudulent. In fact, the evidence pointed to by Defendants shows that indeed the loan was valid. As such, all of Plaintiff's claims regarding FDCPA fall apart because the loan was not fraudulent.

Plaintiff argues that the material facts are not contested that the second note was procured by fraud; however, the Plaintiff offers no evidence that the second note and second deed of trust that was recorded December 5, 2006 was not executed by Plaintiff. In fact, the

notary, Nancy Garnett, testified at the deposition that she did notarize the deed of trust and that she would not have notarized the deed of trust without the Plaintiff signing it. Please see attached deposition transcript of the notary incorporated herein as "Exhibit D." Additionally, the call logs attached as "Exhibit C," show that the Plaintiff knew about the loan and was trying to get a loan modification.

### B. Defendant Waldman & Porras, PLLC is not a Debt Collector.

Plaintiff asserts that Waldman & Porras, PLLC are debt collectors when the case law states otherwise. Federal case law makes it clear that a law firm involved in the foreclosure process, specifically a law firm engaged in nonjudicial foreclosure proceedings, is not attempting to collect a debt, and is therefore not subject to liability under the FDCPA. *See Smith v. Community Lending, Inc.,* 773 F.Supp.2d 941, 944 (D. Nev. 2011) where the Plaintiff failed to state a valid claim under FDCPA because "[f]oreclosure does not constitute debt collection under" the FDCPA, and "'mortgagees and their beneficiaries [such as the Defendants in this case], including mortgage servicing companies, are not debt collectors subject to FDCPA;'" *see also Karl v. Quality Loan Service Corp.,* 759 F. Supp. 2d 1240, 1248 (D. Nev. 2010). Furthermore, the Ninth Circuit has consistently held that FDCPA does not apply to claims arising out of non-judicial foreclosures. While the FDCPA prohibits debt collectors from engaging in unfair activities when collecting a debt, *see* 15 U.S.C. §1692, et seq., "[i]t is well established that non-judicial foreclosures are not an attempt to collect a debt under the Fair Debt Collection Practice Act and similar state statutes." *See Barlow v. BNC Mortg., Inc.*, No. 3:11-CV-0304-LRH-VPC, 2011 U.S. Dist. LEXIS 107291, at *3 (D. Nev. Sept. 19, 2011); *accord Zizi v. U.S. Bank*, N.A., No. 2:11-cv-01511-JCM-PAL, 2011 U.S. Dist. LEXIS 142850, at *8-9 (D. Nev. Nov. 18, 2011) (where the Court dismissed the claims against the

trustee "because '[f]oreclosure does not constitute a debt collection under' the FDCPA."); *see also United State Bank Trust vs. Brook,* 2018 Nev. Dist. LEXIS 732 (5th D. Nev. June 27, 2018). Furthermore, Courts have also held that trustees under a Deed of Trust are not debt collectors under the FDCPA. *See Ligon v. JP Morgan Chase Bank,* C 11-2504 MEJ, 2011 U.S. Dist. LEXIS 68839, 2011 WL 2550836 *3 (N.D. Cal. June 27, 2011) (citing *Khast v. Washington Mut. Bank,* 2011 U.S. Dist. LEXIS 26947, 2011 WL 940792, at *3-4 (S.D.Cal. Mar.16, 2011); *Lal v. Am. Home Serv., Inc.,* 680 F. Supp. 2d 1218, 1224 (E.D. Cal.2010) ("The law is well settled that FDCPA's definition of debt collector does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt."); *Mansour v. Cal— Western Reconveyance Corp.,* 618 F.Supp.2d 1178, 1182 (D.Ariz.2009) ("[M]ortgagees and their assignees, servicing companies, and trustee fiduciaries are not included in the definition of 'debt collector.'"). Furthermore, such a trustee's "only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust."See *Vournas v. Fidelity National Title Ins. Co.,* 73 Cal. App. 4th 668, 677, 86 Cal. Rptr. 2d 490 (1999). Such "activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *See Hulse v. Ocwen Fed. Bank, FSB,* (D. Or .2002) 195 F. Supp. 2d 1188, 1204 (holding that the plaintiff improperly brought a claim challenging the lawfulness of foreclosure proceedings pursuant to a deed of trust under the FDCPA); *see also Bates v. Green Farms Condo. Ass'n* where the 6th Circuit - US District Court Cases United States District Court for the Eastern District of Michigan, Southern Division Aug 29, 2019 2019 U.S. Dist. LEXIS 146937 held that a non-judicial foreclosure could not be considered debt collection. Furthermore, the United States Supreme Court in *Obduskeyv. McCarthy & Holthus, LLP*, 139

S. Ct. 1029 (2019) unanimously held that a law firm engaged in nonjudicial foreclosure proceedings is enforcing a security interest and not collecting a debt, and therefore cannot be subject to liability under the FDCPA. *Id.* at 1032. The Supreme Court reasoned that "[f]irst, and most decisive, is the text of the Act itself." *Id.* at 1032.

### C. Plaintiff has not Offered any Evidence that the Second Deed of Trust and Second Note are Fraudulent.

Additionally, Defendants have no knowledge of the alleged fraudulent procurement of the second note and deed of trust. The second deed of trust was recorded in official records more than fifteen years prior. The second deed of trust was assigned to PVK Properties, LLC on or about May 29, 2013 from Mortgage Electronic Registration Systems, Inc., as Nominee for Accredited Home Lenders, Inc., its successors and assigns and the assignment of mortgage was recorded in Official records on September 21, 2017, as Instrument Number 201709210002298, which was before the alleged reconveyance was filed.  PVK Properties, LLC also has possession of the original note with the full allonge chain which shows the Note was transferred from the originator to Bayview Loan Servicing, LLC, then from Bayview Loan Servicing, LLC to Newport Beach Holdings, LLC and then from Newport Beach Holdings, LLC to PVK Properties, LLC. Please see a copy of the original note with allonge chain, a copy of the recorded deed of trust and a copy of the assignment attached hereto as "Exhibit A." Defendants' dispute that First American Title Insurance Company had the authority to file a deed of reconveyance allegedly releasing the second deed of trust on or about August 20, 2018. PVK Properties, LLC owned the loan at the time of the alleged reconveyance and did not authorize the reconveyance. Plaintiff has not offered any evidence that First American Title Insurance Company had the authority to sign and file the reconveyance. PVK Properties, LLC

has filed a lawsuit against First American Title Insurance Company in case number A-21-835718-C to invalidate the reconveyance and it is still pending. Plaintiff has failed to prove that any alleged violations of the FDCPA took place against the Plaintiff and that the Defendant Waldman & Porras, PLLC are even debt collectors as defined under 15 U.S.C. § 1692.

### D. Defendants Did Not Commit Slander of Title

The Plaintiff has not provided any evidence other than her own self-serving testimony that contradicts her prior actions and testimony based on the call logs that shows the second note and deed of trust were procured fraudulently. The Plaintiff has not met the burden of proof on the elements to establish slander of title. According to *Higgins vs. Higgins,* 103 Nev. 443 (1987), "[I]n order to maintain an action for slander of title one must establish that the words spoken were false, that they were maliciously spoken, and that the plaintiff sustained some special pecuniary damage as a direct and natural result of their having been spoken. The Plaintiff has not showed any evidence that the deed of trust was fraudulent which is what the notice of default and election to sell was based on. Additionally, the Plaintiff has not produced any evidence that showed the Plaintiff did not know about the deed of trust or sign the deed of trust except for her own self-serving testimony. The Notary acknowledged her signature on the deed of trust and the deed of trust has been recorded in public records for over fifteen years. It was not until right before the lawsuit was filed that the Plaintiff stated she allegedly did not sign it or know about it when the evidence clearly shows she did. The Plaintiff has failed to show that the Defendants did anything malicious or false. The Defendants were simply trying to enforce the rights of the owner of the second note and deed of trust. Based on the evidence, the second note and deed of trust are valid and the deed of trust has been recorded for over

fifteen years. Plaintiff has not provided any evidence that the Plaintiff did not receive the funds or benefit of the second note and deed of trust nor did the Plaintiff prove the second note and deed of trust were procured through fraud. Additionally, recording a notice of default and election to sell is in conjunction with a non judicial foreclosure and is not considered to be a debt collection and it was done to enforce a valid deed of trust recorded for over fifteen years.

## CONCLUSION

Indeed, the facts are not undisputed, and Defendants' affirmative defenses and the facts that support these defenses are sufficient to overcome Plaintiff's motion for summary judgment. Other than self-serving testimony of Plaintiff, Plaintiff offered no facts or evidence to establish the absence of a genuine issue of material fact and has thus failed its burden. Defendants, on the other hand, have offered facts and exhibits showing that Plaintiff did in fact execute the loan documents and that Plaintiff was fully aware of the loan and of her default on the loan. Defendants acted within their rights and authority in seeking to foreclose due to Plaintiff's default of a valid loan. Moreover, case law makes it clear that Defendant Waldman & Porras, PLLC is not subject to the FDCPA. Therefore, Plaintiff's Motion for Summary Judgment should be denied.

[Remainder of Page Left Intentionally Blank]

**WHEREFORE,** Defendants respectfully request that this Honorable Court deny Plaintiff's Motion for Summary Judgment, and grant any other relief Defendants' are entitled.

Respectfully submitted,

*/s/ Nicholas Porras*
Nicholas M. Porras, Esq.
Nevada Bar No.: 12849
Waldman & Porras, PLLC
201 West Liberty St. Suite 207
Reno, NV 89501
Telephone: (775)525-9246 | Fax: (888)688-4975
nick@dwaldmanlaw.com
service@dwaldmanlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via Notice of Electronic Filing by CM/ECF transmission to all counsel and parties who are registered to receive such service in this case on April 7, 2022.

*/s/ Nicholas M. Porras*
Nicholas M. Porras, Esq.
Nevada Bar No.: 12849