# EXHIBIT D

Lisa A. Bryant

v.

Madison Management Services, LLC, et al.

Transcript of

Nancy Garnett

Volume I

July 30, 2021



(702) 476-4500 | www.oasisreporting.com | info@oasisreporting.com
400 South Seventh Street, Suite 400, Las Vegas, NV 89101

COURT REPORTING | NATIONAL SCHEDULING | VIDEOCONFERENCING | VIDEOGRAPHY

Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 3 of 16

Nancy Garnett                                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

```
                                                                    Page 1
 1                    UNITED STATES DISTRICT COURT

 2                         DISTRICT OF NEVADA

 3

 4   LISA A. BRYANT,                        )
                                            )
 5              Plaintiff,                  )
                                            )
 6              vs.                         )  Case No.:
                                            )  2:20-cv-00594-JAD-EJY
 7                                          )
     MADISON MANAGEMENT SERVICES, LLC,      )
 8   and WALDMAN & PORRAS, PLLC,            )
                                            )
 9              Defendants.                 )
     _____)

10

11

12

13     VIDEOTAPED, VIDEOCONFERENCED DEPOSITION OF NANCY GARNETT

14

15

16

17                     On Friday, July 30, 2021
                           At 1:36 p.m.
18

19

20

21

22

23

24
     Reported by:  Sarah M. Winn-Boddie, RPR, CCR No. 868
25   Job No. 45705
```

Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 4 of 16

Nancy Garnett                                           Lisa A. Bryant v. Madison Management Services, LLC, et al.

Page 2

```
 1  APPEARANCES:
 2    For the Plaintiff:          GEORGE HAINES, ESQ.
                                  Freedom Law Firm
 3                                8985 South Eastern Avenue
                                  Suite 350
 4                                Las Vegas, Nevada 89123
                                  (702) 880-5554
 5
                                  AND
 6
                                  MARC E. DANN, ESQ.
 7                                Dann Law Firm
                                  2828 Euclid Avenue
 8                                Suite 300
                                  Cleveland, Ohio 44115
 9                                (216) 373-0539
10
      For the Defendant:          No appearance.
11
12    Also Present:               Scott Beck, Videographer
                                  Lisa Bryant
13
14                               *****
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1
 2                       I N D E X
 3  WITNESS                                         PAGE
 4    NANCY GARNETT
 5  Examination by Mr. Dann                            5
 6
 7
 8
 9
10  EXHIBITS                                        MARKED
11    A       7/7/21 Letter                           25
12    B       Deed of Trust                           25
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1            FRIDAY, JULY 30, 2021; LAS VEGAS, NEVADA
 2                         1:36 p.m.
 3                          -oOo-
 4          THE VIDEOGRAPHER:  Good afternoon.  Today is
 5  July 30th, 2021.  The time is approximately 1:36 Pacific
 6  Standard Time.  This is the remote deposition of Nancy Garnett
 7  in the case Lisa A. Bryant versus Madison Management Services,
 8  LLC, et al.  I'm Scott Beck with Oasis Reporting Services.
 9  I'll be monitoring the proceedings and recording both video
10  and audio today.
11          At this time I'll ask counsel to identify
12  themselves, state whom they represent, and agree on the record
13  that there is no objection to the court reporter administering
14  a binding oath to the witness through remote
15  videoconferencing.  If no objection is stated, we will proceed
16  forward with the agreement of all counsel.  We'll begin
17  appearances with the noticing attorneys, please.
18          MR. HAINES:  George Haines from Freedom Law Firm on
19  behalf of the plaintiff, Lisa Bryant.
20          MR. DANN:  And Marc Dann from Dann Law, also for the
21  plaintiff, Lisa Bryant.
22          THE VIDEOGRAPHER:  Thank you.
23          Our court reporter today is Sarah Winn-Boddie with
24  Oasis Reporting Services, and the reporter may now swear in
25  the witness, please.
```

Page 5

```
 1  Whereupon,
 2                       NANCY GARNETT,
 3  having been first duly sworn to testify to the truth, the
 4  whole truth, and nothing but the truth, was examined and
 5  testified as follows:
 6          MR. DANN:  George, if you wouldn't mind putting on
 7  the record your -- your conversation with opposing counsel.
 8          MR. HAINES:  Sure.  I just had a conversation just
 9  prior to this recording with Nick Porras.  He's counsel for
10  the defendant in this case -- for the defendants in this case.
11  He had indicated that he will not be attending this
12  deposition.  He is, I believe, about to jump on a train to go
13  somewhere, but we had filed a notice of deposition with the
14  court.  I had -- so he received the notice through electronic
15  service.  We had also mailed him the notice.  I believe I had
16  emailed him the notice of the subpoena as well.
17          In addition, I emailed him the instructions on how
18  to appear at today's deposition yesterday -- or I believe it
19  was yesterday morning, as soon as I received the instructions.
20  He is not appearing at this deposition.
21          MR. DANN:  Thank you.
22                       EXAMINATION
23  BY MR. DANN:
24     Q.  May I call you Nancy or Ms. Garrett [sic]?
25  Mrs. Garrett?  What do you prefer?
```



Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 5 of 16

Nancy Garnett                                         Lisa A. Bryant v. Madison Management Services, LLC, et al.

                                                                6
1   A.  Nancy's fine.
2   Q.  Nancy's fine, because I just butchered your last
3   name, so I'm sorry --
4   A.  That's okay.  Everybody does the same thing, so it's
5   okay.
6   Q.  Nancy, my name is Marc Dann, and I'm a lawyer.  I
7   represent Lisa Bryant, who is the plaintiff in this lawsuit.
8       Have you ever had your deposition taken before?
9   A.  Long time ago.
10  Q.  Okay.  How -- how -- like 10 years?  20 --
11  A.  Oh, years.  Probably 20.
12  Q.  What kind of case were you -- was your deposition
13  taken in?
14  A.  It had to do with tires, faulty tires on a car that
15  was sold to us through a car dealership.
16  Q.  Yes.
17  A.  Yeah.
18  Q.  All right.  So I'm going to remind you, since it's
19  been a while, kind of what the rules are in a deposition.
20  A.  Mm-hmm.
21  Q.  I'm going to ask you questions, and you will -- you
22  have whatever time you need to respond to those questions.  If
23  for some reason you don't understand a question that I'm
24  asking, then I'm happy to rephrase it, and -- so that -- until
25  I get to a question that you can understand and confidently

                                                                7
1   answer.
2       And is it -- and -- and if you don't -- if you
3   answer without asking me to correct the question, is it fair
4   for me to understand -- to -- to conclude that you understood
5   the question and you're answering the question I'm asking?
6   A.  Yes.
7   Q.  Are you under -- on any medication or anything else
8   that would impair your memory or -- or ability to testify or
9   reason today?
10  A.  No.
11  Q.  Okay.  Do you suffer from any -- any physical
12  conditions that might impact your ability to testify
13  truthfully today?
14  A.  No.
15  Q.  Okay.  You -- are you -- you're here as a result of
16  a subpoena; is that correct?
17  A.  That's correct.
18  Q.  Did you get a chance to review the subpoena that was
19  sent to you?
20  A.  I did.
21  Q.  Okay.  And I appreciate you appearing.
22      What did you do, if anything, to prepare for today's
23  deposition.
24  A.  I just had some emails that Lisa and I had exchanged
25  and a letter that I had written her prior to her court date

                                                                8
1   with the -- it was, I don't know, several pages long, just
2   explaining my notary required -- what I'm required to do as a
3   notary, and my signing a -- an agreement with the agency that
4   dispatches me on the jobs to follow their direction on what to
5   do if the client decides not to sign the paperwork.
6   Q.  Okay.  Anything else besides those things?
7   A.  No.
8   Q.  Okay.  Nancy, what is your -- where are you employed
9   now?
10  A.  I am self-employed.  I'm a mobile notary, and I do
11  work with people who are signing mortgages, all kinds, reverse
12  mortgages, business mortgages, conventional mortgages, jumbo
13  loans, all of that.  My primary task is the notarization
14  process and to show the documents that are being signed so
15  that people understand what they're signing.
16  Q.  Could you venture or could you tell me how many
17  documents you've notarized in your career?
18  A.  Thousands.  I started in 2003, and I've been doing
19  it -- it's the only job I have.  That's what I've been doing
20  since 2003.
21  Q.  And did you have any training to become a notary?
22  A.  Yes.
23  Q.  (Indiscernible.)
24      (Reporter interjection.)
25  ///

                                                                9
1   BY MR. DANN:
2   Q.  Did you have any training to become a notary?  Now
3   you may answer.
4   A.  Oh.  Yes.  I started my career and got my training
5   through the National Notary Association, and every two years
6   I'm required to have that same training.  Again it doesn't
7   change very much, because the process is pretty much the same,
8   but I -- let's see.  This is my -- one, two -- I think this is
9   my third or fourth time renewing as a notary.  That's every
10  four years, so however that calculates out.
11      The -- when I first started the notary, the State of
12  Nevada, they still do, actually, had a in- -- in one of the
13  big ballrooms at the hotels, they would have all of the
14  notaries come and do a training, and then that's supposed
15  to -- each time you get your commission renewed, that is
16  continuing, so I just renewed my commission like a year and a
17  half ago and went through there.  It's now online, so I did
18  that training plus the Notary Association as well.
19  Q.  I just want to go back to your preparation.  Did you
20  email with anybody else in preparation for this?  Did you
21  share Lisa's emails or your emails to Lisa?
22  A.  No.  No.
23  Q.  Did you reach out at all to the agency that had
24  hired you to notarize Lisa's documents?
25  A.  I don't even know what that is.  That's



Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 6 of 16

Nancy Garnett                                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

**10**

1  been 16 years ago or 15, however long.  It's been a long time.
2  2006 is when all this happened, and I just -- the information
3  I provided to her through that letter, conversations on the
4  phone has not changed.  It's always been the same, and that
5  is -- I don't know if you want me to go that far now or you
6  want to wait and ask me the question --
7     Q.  Oh, sure --
8     A.  -- the process.
9     Q.  That was my next question, so go right ahead.
10    A.  Okay.  So the process is I'm a contracted employee
11  with multiple loan signing agencies, and I don't remember and
12  I don't have any record of the agency that actually sent me
13  out.  However, the process is the same across the agencies
14  that I do work with when a borrower refuses to sign the
15  paperwork, and I even called the agency when she was there
16  because she refused to sign.  She said the terms were not what
17  she wanted, and that's perfectly fine.  It's not up to me to
18  make that decision.  So while I was there, I called the agency
19  that dispatched me on that job and asked what they wanted me
20  to do with the paperwork that she refused to sign.  I already
21  knew the answer, but I wanted her to hear it from them, and
22  that is to return the paperwork to them unsigned.
23        I sent with that a note back saying, Borrower
24  refused to sign.  They also knew because when I called them, I
25  told them that she was refusing to sign, what should I do, and

**11**

1  that's what they told me to do.
2     Q.  What -- what is the process that you use -- and I --
3  first of all, is the process of notarizing a document the same
4  now as it was 16 years ago?
5     A.  Yes.
6     Q.  Can you describe for me and walk us through the
7  process of notarizing a document, what happens and when?
8     A.  Okay.  What I do, and it is slightly different,
9  because of my past experience with people who don't sign in
10  the middle -- we've gone all the way through it halfway and
11  found out the terms are not what they expected, so what I do
12  is I take their ID and I copy it into my journal and I have
13  them sign on the space that says "sign."  So then I start to
14  explain the documents to them one by one, and at that point
15  they either go forward based on the information that's in the
16  documents so that they know that the terms are what they
17  agreed to or they don't.  So if they change -- if they don't
18  change their mind and decide not to sign and we go forward, I
19  notarize them as we go.  We didn't get that far in Lisa's case
20  because she declined to sign.
21    Q.  So she never signed anything and you never notarized
22  anything; is that correct?
23    A.  That's correct.  The only thing she signed was my
24  journal.
25    Q.  And tell me about the journal.  What -- what -- what

**12**

1  is the journal?  How -- why did she sign it?  What's -- what's
2  the process there?
3     A.  Well, we're supposed to take -- through the
4  National -- or with the notary commission, the instructions
5  are to copy down the information from their license, name,
6  address, license number, date of birth, issue date, and
7  expiration date, and it's a one-entry line for the journal
8  that I have.
9         My journal is set up for mortgage documents, because
10  they have little checkboxes that show deed of trust,
11  compliance agreement, all those things that need to be
12  notarized, there's just a checkbox there, and without her
13  signing anything, I wouldn't have recorded anything in the
14  journal, other than the fact that she gave me her ID.
15    Q.  And did you check your journal when -- when Lisa
16  reached out to you?
17    A.  Did I check it?  Yes.  I gave her a copy of the
18  page.
19    Q.  Okay.  And what did you find?
20    A.  There were -- no checkboxes were checked and no
21  document names were written down on the entry where her
22  signature was.
23    Q.  Is there any chance that she could have signed
24  documents and you notarized them --
25    A.  No.

**13**

1     Q.  -- that -- that weren't -- and there wouldn't -- and
2  you might have forgotten to put a check on the checkbox?
3     A.  No.
4     Q.  Why -- why --
5     A.  I wouldn't --
6     Q.  Why --
7     A.  Go ahead.
8     Q.  No, I just want to know why you're so sure about
9  that.
10    A.  Because that's not my process.  I only write down
11  the documents that I notarize with her in front of me, so we
12  didn't even get to the point where we came to a document that
13  needed to be notarized.  The document -- notarized documents
14  are dispersed within the package that we have, and the package
15  could exceed 250 pages.  Again, I don't know in her case, but
16  unless I actually put my stamp and notarized a document with
17  her signature on it, it would not go into my journal, and
18  that -- that's what I'm required to do by the State and that's
19  my process for all these years.
20    Q.  All right.  I'm going to -- oh.  The other thing I
21  didn't tell you is if you need to take a break at any time,
22  you can tell me, as long as --
23    A.  Okay.
24    Q.  -- there's not a question pending, and I'm happy to
25  accommodate you.



Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 7 of 16

Nancy Garnett                                                Lisa A. Bryant v. Madison Management Services, LLC, et al.

**Page 14**

1  A.  No problem.
2  Q.  Okay.  Let me just -- I'm going to share my screen,
3  so if this works, and I'm going to share with you a document.
4  Can you see it?
5  A.  Yes.
6     MR. DANN:  Okay.  And Madam Reporter, this would be
7  our Exhibit A to the deposition.  We have not marked it as
8  such, but I -- we've provided you with a copy, and I would ask
9  that you marked it as Exhibit A, if that's acceptable to you.
10 BY MR. DANN:
11 Q.  Okay.  So I'm going to ask you some questions about
12 this document.
13 A.  Yes.
14 Q.  First of all, it's dated June 7th, 2021.  Can you
15 tell me whether you've seen this document before?
16 A.  Yes.  That's the document that I put together for
17 Lisa prior to her court date, the last court date.  I don't
18 know how many court dates she's had, but this was the most
19 recent one.
20 Q.  So this is an authentic copy of the letter that you
21 sent to Lisa?
22 A.  Yes, it is.
23 Q.  Okay.  And did you indeed send it on June 7th,
24 2021?
25 A.  Yes, I did.

**Page 15**

1  Q.  Okay.  And in this letter it indicates that
2  somewhere during the process, she decided she did not want the
3  loan.  Let me try to find that.
4     Do you recall writing that to her?
5  A.  Yes.
6  Q.  Okay.  And is that what actually happened?
7  A.  Yes.
8  Q.  Okay.  Was there any condition that she had on that
9  or any -- any conversation with anybody else other than you --
10 and then you put her on the phone with -- with whoever sent
11 you there?
12 A.  No.  It was just she and I together.  There was
13 no -- I don't recall any family members there, any children.
14 As far as I remember, it was just she and I.
15 Q.  And you don't recall which signing agency it was
16 that you --
17 A.  No.  I worked for a whole bunch of them, yeah.
18 Q.  Okay.  And did you -- you said that you returned the
19 package, then, to the signing agency?
20 A.  Correct.
21 Q.  And when you --
22 A.  They provide me with a FedEx label going back
23 directly to the -- actually, to the title company, but the
24 signing agency works directly with the title company, and so
25 my instruction was to return it back to the title company,

**Page 16**

1  which was on a FedEx or UPS label that was provided to me when
2  I printed out the documents.
3  Q.  Do you remember who the title company is?
4  A.  I do not.
5  Q.  Okay.  And it was only 16 years ago.  I can't
6  imagine you can't remember.
7  A.  Yeah, I know.  I'm lucky to remember what I did last
8  week.
9  Q.  Understood.
10    Did you have any communication with the originator
11 of the loan, and -- first of all, did you have any direct
12 communication with the title company other than mailing them
13 back the documents?
14 A.  No.  Once the borrower decides not to sign, I know
15 from what I've always supposed to do is return them.
16 Q.  Mm-hmm.
17 A.  I don't even know what made me call the people in
18 front of them, but I think because she was so adamant about
19 taking the documents back, that I said -- because I told her,
20 I have to return them.  That generates an invoice for me as my
21 payment to show up, and then it also keeps them in the loop
22 that I'm returning them.  And so once I left there, the very
23 next day, I put the whole package with the note on there
24 stating that she had refused to sign and put it into the --
25 the return label, either FedEx or UPS, and again, I don't

**Page 17**

1  remember, and dropped it into the box or UPS or FedEx
2  directly.
3  Q.  Nancy, are you paid based -- the same if somebody
4  signs or if somebody doesn't sign?
5  A.  No.  I get half of what the agreed fee is.  Back
6  then, the fee was around $75 for a full signed and executed
7  package, so -- every now and then at that time I would get a
8  hundred dollars, but I would only get 50 percent of that if
9  they chose not to sign, so basically it's a print fee and a
10 show-up fee.
11 Q.  Mm-hmm.  And did -- I'm sorry.  What's -- and what's
12 the fee currently for -- for that -- for that work?
13 A.  Now they're -- it depends on the type of loan.
14 Reverse mortgages are anywhere from a hundred to 150, and then
15 the regular loans are 75 to a hundred.  Reverse mortgages
16 have -- they're like almost 300 pages, and that's why we get
17 paid a little bit more, but typically on a -- let's say an
18 average of a 150-page document, I would get paid a hundred,
19 and that includes the printing fee.
20 Q.  Do you worry that that would give you or somebody
21 else an incentive to try to get documents signed, even if
22 somebody like -- like Lisa Bryant said they didn't want to
23 sign them, because you had a financial incentive?
24 A.  No.  I would not do that.  I'm not -- that's not me.
25 That's not who I am.  I'm very honest.  I built a good



Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 8 of 16

Nancy Garnett                                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

                                                                                    18
1  reputation. I have no reason for anything like that to
2  happen.
3       Q.  All right. You've never been disciplined as a
4  notary or had any -- any action by the State regarding your
5  work as a notary?
6       A.  I did once when somebody questioned the number of
7  appointments that I had, and I proved what I had and I was
8  disciplined and that's never happened again.
9       Q.  What -- what year was that? Do you recall?
10      A.  Oh, gosh. I would say it's at least ten years ago.
11      Q.  And what was the nature of the discipline that --
12 that -- that was decided for you?
13      A.  That particular one, I had a loan officer that I was
14 working with and she asked me to notarize these and I was late
15 getting there, I didn't get there, so she watched them sign
16 and then I verified their signature against their driver's
17 licenses she gave me a copy of, and so that's something I know
18 that is not -- it's not legal. I apologized for it. It's
19 something I would never do again, and I paid the price for it.
20      Q.  And since that time, have you ever done anything
21 like that again?
22      A.  No.
23      Q.  Okay. And -- all right. Let me show you another
24 document.
25          Can you see this one?

                                                                                    19
1       A.  Yes.
2       Q.  Okay. And at the top it says here "Deed of trust."
3           Do you see that?
4       A.  Yes.
5       Q.  Okay. And can you see here --
6           MR. DANN: And Madam Reporter, I'd like to have this
7  marked as Exhibit B, and this is the deed of trust.
8  BY MR. DANN:
9       Q.  The name Lisa Bryant, do you see that?
10      A.  I see it.
11      Q.  Okay. Have you ever seen this document before?
12      A.  I can't -- I mean, I -- I see deeds every day, so I
13 couldn't say specifically unless I see my signature at the
14 bottom, and whether that is my signature or not.
15      Q.  Well, let's take a look at the bottom.
16      A.  That is my signature.
17      Q.  Okay.
18      A.  Go down to the very bottom of that page.
19      Q.  Mm-hmm.
20      A.  Back up.
21      Q.  Back up?
22      A.  Okay. No, you're good.
23          No. I don't know. That's -- that's my writing,
24 that's my signature, I always print my name under it --
25      Q.  Mm-hmm.

                                                                                    20
1       A.  -- but I don't know how she got that since she
2  declined to sign it.
3       Q.  When you say "how she got that," who do you mean by
4  "she"?
5       A.  Lisa. I don't know -- I don't know who provided you
6  that information. I don't know how that happened.
7       Q.  Okay. But you -- to your recollection, Lisa never
8  signed anything in front of you?
9       A.  Not to my knowledge.
10      Q.  Right. And your journal reflects that as well?
11      A.  Yes.
12      Q.  Okay. Was the date of the journal that you checked
13 October 26th of 2006?
14      A.  I sent her a copy of it. Yes, it was. Oh, and
15 the -- on the journal, it shows $95.
16      Q.  Okay. Does the journal indicate that this deed of
17 trust was signed --
18      A.  It does.
19      Q.  It does?
20      A.  It does. Yes, it does. I'm sorry. My memory is
21 not so good. I should have looked at this.
22      Q.  Okay. Okay. So the -- if the deed of trust -- so
23 when you recalled that she didn't sign documents, was it --
24 was it the deed of trust or something else that she didn't
25 agree to sign?

                                                                                    21
1       A.  You know, I really don't remember. I honestly
2  don't. According to this, and I have to go by what the
3  journal says, we must have gotten at least partway through,
4  because the compliance agreement is checked off, the deed of
5  trust is checked off, and the signature affidavit is checked
6  off.
7       Q.  All right. Did you -- did you know Lisa Bryant
8  personally?
9       A.  I did not.
10      Q.  Okay. How did you identify her?
11      A.  With her driver's license.
12      Q.  Had you ever notarized documents that she signed
13 before or after?
14      A.  Not that I recall.
15      Q.  Has anybody else other than Lisa and now today me
16 talked to you about this particular signing and this
17 particular deed?
18      A.  No.
19      Q.  When you did the signings in 2006, if you can -- can
20 you tell me what the order was of documents that you had
21 signed? Did you go in a certain order?
22      A.  Typically I go right from the first page to the
23 last, based on the way it was sent to me.
24      Q.  Okay.
25      A.  It's usually a PDF format. It could be multiple



Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 9 of 16

Nancy Garnett                                       Lisa A. Bryant v. Madison Management Services, LLC, et al.

                                                                                              22
1  attachments, and so I just put them all together, but usually
2  it's one document that I print out.
3      Q.  Like one big, long document, and then you go in
4  order?
5      A.  Yeah.
6      Q.  Do you know where the deed of trust --
7      A.  Correct.
8      Q.  -- usually falls in that order or is it different
9  with each -- with each signing?
10     A.  It's different with each signing.
11     Q.  Do you --
12     A.  A lot of times the title company has a big stack of
13 documents that I do first, because that's who it goes back to,
14 and then the loan documents start after all of the escrow
15 documents, so it could have been in -- from the first page of
16 the loan documents to where the deed was, it could have been
17 anywhere from, let's say, the 10th page to the 50th page.
18 They're just all in different order, basically.
19     Q.  But the -- as you said, the escrow documents, the
20 land title documents get signed first and then -- and then the
21 non-escrow documents afterward?
22     A.  Right.  And there's no hard-and-fast rule.  I could
23 have done the loan documents first and then the escrow
24 documents after, but typically I just always do the escrow
25 documents first and then the loan documents afterwards.

                                                                                              23
1      Q.  And so it's -- is it -- is it reasonable to infer
2  that -- that -- that Lisa Bryant could have signed the deed of
3  trust without having ultimately signed the note?
4      A.  Yes, because the note is not notarized, so it
5  wouldn't go into the journal.
6      Q.  Right.  And you don't have any recollection of
7  whether she signed the note or not, correct?
8      A.  I do not.
9      Q.  But you do know that the process was interrupted at
10 a certain point?
11     A.  Yes.
12     Q.  And you know that for certain, correct?
13     A.  Yes, I do.  Right.
14     Q.  All right.  Have you ever heard from
15 Waldman & Porras or anybody else about this particular matter?
16     A.  No.
17     Q.  Anything from a company called PVK?
18     A.  No.
19         MR. DANN:  I -- let me just take a moment.  I'm
20 going to go off -- off screen for a second and see if --
21         THE WITNESS:  Okay.
22         MR. DANN:  -- and think about whether I have another
23 question to ask.
24         THE WITNESS:  Okay.
25         MR. DANN:  And I'd ask George to call me on my cell

                                                                                              24
1  phone, if he could, so we'll go off the record now.
2          THE VIDEOGRAPHER:  We're off record at 2:04 p.m.
3          (Recess taken from 2:04 p.m. to 2:07 p.m.)
4          THE VIDEOGRAPHER:  We are back on the record, and
5  the time is 2:07 p.m.
6  BY MR. DANN:
7      Q.  Nancy, I just have, I believe, one more question.
8      A.  Sure.
9      Q.  Was anybody else present at the time you and -- and
10 Lisa Bryant were together for this signing?
11     A.  Not that I recall.
12         MR. DANN:  No further questions.  I really
13 appreciate your conscientious participation in this, and you
14 are obviously a good -- a good, honorable citizen, so thank
15 you for participating in this.
16         THE WITNESS:  Thank you.  I hope it comes through,
17 because I'm very -- I'm a Christian woman, so I don't want to
18 do anything that would make my God angry with me.
19         MR. DANN:  Thank you.
20         THE WITNESS:  Thank you.
21         MR. DANN:  You have the right to read this to make
22 sure the court reporter got it down correctly --
23         THE WITNESS:  Okay.
24         MR. DANN:  -- or you can waive that right and she
25 can just go ahead and produce the -- the transcript to me.

                                                                                              25
1          THE WITNESS:  She can -- yeah.  I don't -- I mean,
2  I've given you all that I had.  I apologize for not reviewing
3  what I had prior to, and she can go ahead.
4          MR. DANN:  Okay.  All right.  That's it.  With that,
5  no further -- I think we're done.  Thank you very much.
6          THE WITNESS:  Thank you.
7          THE VIDEOGRAPHER:  This will conclude the video
8  deposition of Nancy Garnett, and we are off record at
9  2:09 p.m.
10         (Exhibits A and B marked for identification.)
11         (The deposition concluded at 2:09 p.m.)
12                        -oOo-



Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 10 of 16

Nancy Garnett                                             Lisa A. Bryant v. Madison Management Services, LLC, et al.

```
                                                            26
 1                         REPORTER'S CERTIFICATE
 2
     STATE OF NEVADA   )
 3                     )  ss:
     COUNTY OF CLARK   )
 4
             I, Sarah M. Winn-Boddie, a Certified Court Reporter
 5   licensed by the State of Nevada, do hereby certify:  That I
     reported the videotaped, videoconferenced deposition of NANCY
 6   GARNETT, commencing on Friday, July 30, 2021 at 1:36 p.m.
 7           That prior to being deposed, the witness was duly
     sworn by me to testify to the truth.  That I thereafter
 8   transcribed my said shorthand notes into typewriting and that
     the typewritten transcript is a complete, true and accurate
 9   transcription of my said shorthand notes, and that review of
     the transcript has been waived.
10
             I further certify that I am not a relative, employee
11   or independent contractor of counsel, of any of the parties,
     nor a relative, employee or independent contractor of the
12   parties involved in said action, nor a person financially
     interested in the action, nor do I have any other relationship
13   with any of the parties or with counsel of any of the parties
     involved in the action that may reasonably cause my
14   impartiality to be questioned.
15           IN WITNESS WHEREOF, I have set my hand in my office
     in the County of Clark, State of Nevada, this 7th day of
16   August, 2021.
17
18                       _____
                         Sarah M. Winn-Boddie, RPR, CCR No. 868
19
20
21
22
23
24
25
```

Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 11 of 16

Nancy Garnett                                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

### $

**$75**
  17:6
**$95**
  20:15

### -

**-oOo-**
  25:12

### 1

**10**
  6:10
**10th**
  22:17
**15**
  10:1
**150**
  17:14
**150-page**
  17:18
**16**
  10:1 11:4 16:5

### 2

**20**
  6:10,11
**2003**
  8:18,20
**2006**
  10:2 20:13 21:19
**2021**
  14:14,24
**250**
  13:15
**26th**
  20:13
**2:04**
  24:2,3
**2:07**
  24:3,5
**2:09**
  25:9,11

### 3

**300**
  17:16

### 5

**50**
  17:8
**50th**
  22:17

### 7

**75**
  17:15
**7th**
  14:14,23

### A

**ability**
  7:8,12
**acceptable**
  14:9
**accommodate**
  13:25
**action**
  18:4
**adamant**
  16:18
**addition**
  5:17
**address**
  12:6
**affidavit**
  21:5
**afterward**
  22:21
**agencies**
  10:11,13
**agency**
  8:3 9:23 10:12,15,18 15:15,
  19,24
**agree**
  20:25

**agreed**
  11:17 17:5
**agreement**
  8:3 12:11 21:4
**ahead**
  10:9 13:7 24:25 25:3
**angry**
  24:18
**answering**
  7:5
**apologize**
  25:2
**apologized**
  18:18
**appearing**
  5:20 7:21
**appointments**
  18:7
**Association**
  9:5,18
**attachments**
  22:1
**attending**
  5:11
**authentic**
  14:20
**average**
  17:18

### B

**back**
  9:19 10:23 15:22,25 16:13,
  19 17:5 19:20,21 22:13 24:4
**ballrooms**
  9:13
**based**
  11:15 17:3 21:23
**basically**
  17:9 22:18
**big**
  9:13 22:3,12
**birth**
  12:6
**bit**
  17:17
**borrower**
  10:14,23 16:14
**bottom**
  19:14,15,18
**box**
  17:1
**break**
  13:21
**Bryant**
  6:7 17:22 19:9 21:7 23:2
  24:10
**built**
  17:25
**bunch**
  15:17
**business**
  8:12
**butchered**
  6:2

### C

**calculates**
  9:10
**call**
  5:24 16:17 23:25
**called**
  10:15,18,24 23:17
**car**
  6:14,15
**career**
  8:17 9:4
**case**
  5:10 6:12 11:19 13:15
**cell**
  23:25
**chance**
  7:18 12:23
**change**
  9:7 11:17,18
**changed**
  10:4
**check**
  12:15,17 13:2
**checkbox**
  12:12 13:2
**checkboxes**
  12:10,20



Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 12 of 16

Nancy Garnett                                      Lisa A. Bryant v. Madison Management Services, LLC, et al.

**checked**
12:20 20:12 21:4,5

**children**
15:13

**chose**
17:9

**Christian**
24:17

**citizen**
24:14

**client**
8:5

**commission**
9:15,16 12:4

**communication**
16:10,12

**company**
15:23,24,25 16:3,12 22:12 23:17

**compliance**
12:11 21:4

**conclude**
7:4 25:7

**concluded**
25:11

**condition**
15:8

**conditions**
7:12

**confidently**
6:25

**conscientious**
24:13

**continuing**
9:16

**contracted**
10:10

**conventional**
8:12

**conversation**
5:7,8 15:9

**conversations**
10:3

**copy**
11:12 12:5,17 14:8,20 18:17 20:14

**correct**
7:3,16,17 11:22,23 15:20 22:7 23:7,12

**correctly**
24:22

**counsel**
5:7,9

**court**
5:14 7:25 14:17,18 24:22

---

**D**

**Dann**
5:6,21,23 6:6 9:1 14:6,10 19:6,8 23:19,22,25 24:6,12, 19,21,24 25:4

**date**
7:25 12:6,7 14:17 20:12

**dated**
14:14

**dates**
14:18

**day**
16:23 19:12

**dealership**
6:15

**decide**
11:18

**decided**
15:2 18:12

**decides**
8:5 16:14

**decision**
10:18

**declined**
11:20 20:2

**deed**
12:10 19:2,7 20:16,22,24 21:4,17 22:6,16 23:2

**deeds**
19:12

**defendant**
5:10

**defendants**
5:10

**depends**
17:13

**deposition**
5:12,13,18,20 6:8,12,19 7:23

14:7 25:8,11

**describe**
11:6

**direct**
16:11

**direction**
8:4

**directly**
15:23,24 17:2

**discipline**
18:11

**disciplined**
18:3,8

**dispatched**
10:19

**dispatches**
8:4

**dispersed**
13:14

**document**
11:3,7 12:21 13:12,13,16 14:3,12,15,16 17:18 18:24 19:11 22:2,3

**documents**
8:14,17 9:24 11:14,16 12:9, 24 13:11,13 16:2,13,19 17:21 20:23 21:12,20 22:13, 14,15,16,19,20,21,23,24,25

**dollars**
17:8

**driver's**
18:16 21:11

**dropped**
17:1

**duly**
5:3

---

**E**

**electronic**
5:14

**email**
9:20

**emailed**
5:16,17

**emails**
7:24 9:21

**employed**
8:8

**employee**
10:10

**entry**
12:21

**escrow**
22:14,19,23,24

**EXAMINATION**
5:22

**examined**
5:4

**exceed**
13:15

**exchanged**
7:24

**executed**
17:6

**Exhibit**
14:7,9 19:7

**exhibits**
25:10

**expected**
11:11

**experience**
11:9

**expiration**
12:7

**explain**
11:14

**explaining**
8:2

---

**F**

**fact**
12:14

**fair**
7:3

**falls**
22:8

**family**
15:13

**faulty**
6:14

**Fedex**
15:22 16:1,25 17:1



Nancy Garnett                                                    Lisa A. Bryant v. Madison Management Services, LLC, et al.

**fee**
 17:5,6,9,10,12,19
**filed**
 5:13
**financial**
 17:23
**find**
 12:19 15:3
**fine**
 6:1,2 10:17
**follow**
 8:4
**forgotten**
 13:2
**format**
 21:25
**forward**
 11:15,18
**found**
 11:11
**fourth**
 9:9
**front**
 13:11 16:18 20:8
**full**
 17:6

### G

**Garnett**
 5:2 25:8
**Garrett**
 5:24,25
**gave**
 12:14,17 18:17
**generates**
 16:20
**George**
 5:6 23:25
**give**
 17:20
**God**
 24:18
**good**
 17:25 19:22 20:21 24:14
**gosh**
 18:10

### H

**HAINES**
 5:8
**half**
 9:17 17:5
**halfway**
 11:10
**happen**
 18:2
**happened**
 10:2 15:6 18:8 20:6
**happy**
 6:24 13:24
**hard-and-fast**
 22:22
**hear**
 10:21
**heard**
 23:14
**hired**
 9:24
**honest**
 17:25
**honestly**
 21:1
**honorable**
 24:14
**hope**
 24:16
**hotels**
 9:13
**hundred**
 17:8,14,15,18

### I

**ID**
 11:12 12:14
**identification**
 25:10
**identify**
 21:10
**imagine**
 16:6
**impact**
 7:12
**impair**
 7:8
**in-**
 9:12
**incentive**
 17:21,23
**includes**
 17:19
**Indiscernible**
 8:23
**infer**
 23:1
**information**
 10:2 11:15 12:5 20:6
**instruction**
 15:25
**instructions**
 5:17,19 12:4
**interjection**
 8:24
**interrupted**
 23:9
**invoice**
 16:20
**issue**
 12:6

### J

**job**
 8:19 10:19
**jobs**
 8:4
**journal**
 11:12,24,25 12:1,7,9,14,15
 13:17 20:10,12,15,16 21:3
 23:5
**jumbo**
 8:12
**jump**
 5:12
**June**
 14:14,23

### K

**kind**
 6:12,19
**kinds**
 8:11
**knew**
 10:21,24
**knowledge**
 20:9

### L

**label**
 15:22 16:1,25
**land**
 22:20
**late**
 18:14
**lawsuit**
 6:7
**lawyer**
 6:6
**left**
 16:22
**legal**
 18:18
**letter**
 7:25 10:3 14:20 15:1
**license**
 12:5,6 21:11
**licenses**
 18:17
**Lisa**
 6:7 7:24 9:21 12:15 14:17,21
 17:22 19:9 20:5,7 21:7,15
 23:2 24:10
**Lisa's**
 9:21,24 11:19
**loan**
 10:11 15:3 16:11 17:13
 18:13 22:14,16,23,25
**loans**
 8:13 17:15
**long**
 6:9 8:1 10:1 13:22 22:3



Case 2:20-cv-00594-CDS-EJY   Document 63-4   Filed 04/07/22   Page 14 of 16

Nancy Garnett                                           Lisa A. Bryant v. Madison Management Services, LLC, et al.

**looked**
20:21
**loop**
16:21
**lot**
22:12
**lucky**
16:7

### M

**Madam**
14:6 19:6
**made**
16:17
**mailed**
5:15
**mailing**
16:12
**make**
10:18 24:18,21
**Marc**
6:6
**marked**
14:7,9 19:7 25:10
**matter**
23:15
**medication**
7:7
**members**
15:13
**memory**
7:8 20:20
**middle**
11:10
**mind**
5:6 11:18
**Mm-hmm**
6:20 16:16 17:11 19:19,25
**mobile**
8:10
**moment**
23:19
**morning**
5:19
**mortgage**
12:9

**mortgages**
8:11,12 17:14,15
**multiple**
10:11 21:25

### N

**names**
12:21
**Nancy**
5:2,24 6:6 8:8 17:3 24:7 25:8
**Nancy's**
6:1,2
**National**
9:5 12:4
**nature**
18:11
**needed**
13:13
**Nevada**
9:12
**Nick**
5:9
**non-escrow**
22:21
**notaries**
9:14
**notarization**
8:13
**notarize**
9:24 11:19 13:11 18:14
**notarized**
8:17 11:21 12:12,24 13:13,
16 21:12 23:4
**notarizing**
11:3,7
**notary**
8:2,3,10,21 9:2,5,9,11,18
12:4 18:4,5
**note**
10:23 16:23 23:3,4,7
**notice**
5:13,14,15,16
**number**
12:6 18:6

### O

**October**
20:13
**officer**
18:13
**one-entry**
12:7
**online**
9:17
**opposing**
5:7
**order**
21:20,21 22:4,8,18
**originator**
16:10

### P

**p.m.**
24:2,3,5 25:9,11
**package**
13:14 15:19 16:23 17:7
**pages**
8:1 13:15 17:16
**paid**
17:3,17,18 18:19
**paperwork**
8:5 10:15,20,22
**participating**
24:15
**participation**
24:13
**partway**
21:3
**past**
11:9
**payment**
16:21
**PDF**
21:25
**pending**
13:24
**people**
8:11,15 11:9 16:17
**percent**

17:8
**perfectly**
10:17
**personally**
21:8
**phone**
10:4 15:10 24:1
**physical**
7:11
**plaintiff**
6:7
**point**
11:14 13:12 23:10
**Porras**
5:9 23:15
**prefer**
5:25
**preparation**
9:19,20
**prepare**
7:22
**present**
24:9
**pretty**
9:7
**price**
18:19
**primary**
8:13
**print**
17:9 19:24 22:2
**printed**
16:2
**printing**
17:19
**prior**
5:9 7:25 14:17 25:3
**problem**
14:1
**process**
8:14 9:7 10:8,10,13 11:2,3,7
12:2 13:10,19 15:2 23:9
**produce**
24:25
**proved**
18:7



Nancy Garnett					Lisa A. Bryant v. Madison Management Services, LLC, et al.

| | | | |
|---|---|---|---|
| **provide** 15:22 | **recorded** 12:13 | **reviewing** 25:2 | 11:8 |
| **provided** 10:3 14:8 16:1 20:5 | **recording** 5:9 | **rule** 22:22 | **sold** 6:15 |
| **put** 13:2,16 14:16 15:10 16:23,24 22:1 | **reflects** 20:10 | **rules** 6:19 | **space** 11:13 |
| **putting** 5:6 | **refused** 10:16,20,24 16:24 | **S** | **specifically** 19:13 |
| **PVK** 23:17 | **refuses** 10:14 | **screen** 14:2 23:20 | **stack** 22:12 |
| **Q** | **refusing** 10:25 | **self-employed** 8:10 | **stamp** 13:16 |
| **question** 6:23,25 7:3,5 10:6,9 13:24 23:23 24:7 | **regular** 17:15 | **send** 14:23 | **start** 11:13 22:14 |
| **questioned** 18:6 | **remember** 10:11 15:14 16:3,6,7 17:1 21:1 | **service** 5:15 | **started** 8:18 9:4,11 |
| **questions** 6:21,22 14:11 24:12 | **remind** 6:18 | **set** 12:9 | **State** 9:11 13:18 18:4 |
| **R** | **renewed** 9:15,16 | **share** 9:21 14:2,3 | **stating** 16:24 |
| **reach** 9:23 | **renewing** 9:9 | **show** 8:14 12:10 16:21 18:23 | **subpoena** 5:16 7:16,18 |
| **reached** 12:16 | **rephrase** 6:24 | **show-up** 17:10 | **suffer** 7:11 |
| **read** 24:21 | **reporter** 8:24 14:6 19:6 24:22 | **shows** 20:15 | **supposed** 9:14 12:3 16:15 |
| **reason** 6:23 7:9 18:1 | **represent** 6:7 | **sic** 5:24 | **sworn** 5:3 |
| **reasonable** 23:1 | **reputation** 18:1 | **sign** 8:5 10:14,16,20,24,25 11:9, 13,18,20 12:1 16:14,24 17:4, 9,23 18:15 20:2,23,25 | **T** |
| **recall** 15:4,13,15 18:9 21:14 24:11 | **required** 8:2 9:6 13:18 | **signature** 12:22 13:17 18:16 19:13,14, 16,24 21:5 | **taking** 16:19 |
| **recalled** 20:23 | **respond** 6:22 | **signed** 8:14 11:21,23 12:23 17:6,21 20:8,17 21:12,21 22:20 23:2, 3,7 | **talked** 21:16 |
| **received** 5:14,19 | **result** 7:15 | **signing** 8:3,11,15 10:11 12:13 15:15, 19,24 21:16 22:9,10 24:10 | **task** 8:13 |
| **recent** 14:19 | **return** 10:22 15:25 16:15,20,25 | **signings** 21:19 | **ten** 18:10 |
| **recess** 24:3 | **returned** 15:18 | **signs** 17:4 | **terms** 10:16 11:11,16 |
| **recollection** 20:7 23:6 | **returning** 16:22 | **slightly** | **testified** 5:5 |
| **record** 5:7 10:12 24:1,2,4 25:8 | **reverse** 8:11 17:14,15 | | **testify** 5:3 7:8,12 |
| | **review** 7:18 | | **thing** 6:4 11:23 13:20 |



Nancy Garnett                                                          Lisa A. Bryant v. Madison Management Services, LLC, et al.

**things**
  8:6 12:11
**Thousands**
  8:18
**time**
  6:9,22 9:9,15 10:1 13:21
  17:7 18:20 24:5,9
**times**
  22:12
**tires**
  6:14
**title**
  15:23,24,25 16:3,12 22:12,
  20
**today**
  7:9,13 21:15
**today's**
  5:18 7:22
**told**
  10:25 11:1 16:19
**top**
  19:2
**train**
  5:12
**training**
  8:21 9:2,4,6,14,18
**transcript**
  24:25
**trust**
  12:10 19:2,7 20:17,22,24
  21:5 22:6 23:3
**truth**
  5:3,4
**truthfully**
  7:13
**type**
  17:13
**typically**
  17:17 21:22 22:24

--- U ---

**ultimately**
  23:3
**understand**
  6:23,25 7:4 8:15
**understood**
  7:4 16:9

**unsigned**
  10:22
**UPS**
  16:1,25 17:1

--- V ---

**venture**
  8:16
**verified**
  18:16
**video**
  25:7

--- W ---

**wait**
  10:6
**waive**
  24:24
**Waldman**
  23:15
**walk**
  11:6
**wanted**
  10:17,19,21
**watched**
  18:15
**week**
  16:8
**woman**
  24:17
**work**
  8:11 10:14 17:12 18:5
**worked**
  15:17
**working**
  18:14
**works**
  14:3 15:24
**worry**
  17:20
**write**
  13:10
**writing**
  15:4 19:23
**written**

  7:25 12:21

--- Y ---

**year**
  9:16 18:9
**years**
  6:10,11 9:5,10 10:1 11:4
  13:19 16:5 18:10
**yesterday**
  5:18,19

